No. 24-12311-J

In the
# United States Court of Appeals
For the Eleventh Circuit

UNITED STATES OF AMERICA,
Appellant,

v.

DONALD J. TRUMP, WALTINE NAUTA,
and CARLOS DE OLIVEIRA
Defendants-Appellees.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
District Court No. 9:23-CR-80101-AMC-1 (Cannon, J.)

**BRIEF FOR THE UNITED STATES**

J.P. COONEY
Deputy Special Counsel

JAY I. BRATT
MICHAEL R. DREEBEN
RAYMOND N. HULSER
Counselors to the Special Counsel

JACK SMITH
Special Counsel

DAVID V. HARBACH II
JOHN M. PELLETTIERI
CECIL W. VANDEVENDER
JAMES I. PEARCE
Assistant Special Counsels
U.S. Department of Justice
950 Pennsylvania Ave., N.W.
Rm. B-206
Washington, D.C. 20530

**CERTIFICATE OF INTERESTED PERSONS**

Pursuant to Fed. R. App. P. 26.1 and 11th Cir. R. 26.1-1 and 26.1-2, the undersigned hereby certifies that the following is a list of persons and entities who have an interest in the outcome of this case:

1.      Advance Publications, Inc.

2.      Alonso, Cristina

3.      America First Legal Foundation

4.      American Broadcasting Companies, Inc., d/b/a ABC News

5.      Ayer, Donald

6.      Blackman, Joshua

7.      Blanche, Todd

8.      Bloomberg, L.P.

9.      Bove, Emil

10.     Bowman, Chad

11.     Bratt, Jay

12.     Cable News Network, Inc.

13.     Calabresi, Steven

14.     Caldera, Louis

15.     Cannon, Hon. Aileen

16. Cate, Matthew

17. CBS Broadcasting, Inc. o/b/o CBS News

18. Citizens United

19. Citizens United Foundation

20. CMG Media Corporation

21. Coleman, Tom

22. Conway, George

23. Cooney, J.P.

24. Cox Enterprises, Inc. (COX) d/b/a The Atlanta Journal-Constitution

25. Dadan, Sasha

26. De Oliveira, Carlos

27. Dow Jones & Company, Inc., publisher of The Wall Street Journal

28. Dreeben, Michael

29. Edelstein, Julie

30. Fields, Lazaro

31. Fitzgerald, Patrick

32. Fort Myers Broadcasting Company

33. Gerson, Stuart

34. Goodman, Hon. Jonathan

35. Gray Media Group, Inc. (GTN)

36. Guardian News & Media Limited

37. Harbach, David

38. Hulser, Raymond

39. Insider, Inc.

40. Irving, John

41. Kise, Christopher

42. Lacovara, Philip Allen

43. Landmark Legal Foundation

44. Lawson, Gary

45. Los Angeles Times Communications LLC, publisher of The Los Angeles Times

46. Maynard, Hon. Shaniek Mills

47. McKay, John

48. McNamara, Anne

49. Meese, Edwin

50. Mishkin, Maxwell

51. Mukasey, Hon. Michael B.

52. Murrell, Larry Donald

53. National Cable Satellite Corporation d/b/a C-SPAN

54. National Public Radio, Inc.

55. Nauta, Waltine

56. NBCUniversal Media, LLC d/b/a NBC News, a subsidiary of Comcast Corporation (CMCSA)

57. Orlando Sentinel Media Group, publisher of the Orlando Sentinel

58. Pearce, James

59. Pellettieri, John

60. POLITICO LLC

61. Potter, Trevor

62. Radio Television Digital News Association

63. Raul, Alan Charles

64. Reinhart, Hon. Bruce E.

65. Reuters News & Media, Inc.

66. Russell, Lauren

67. Salario, Samuel

68. Sasso, Michael

69. Schaerr, Gene

70. Seligman, Matthew

71. Smith, Abbe

72. Smith, Fern

73. Smith, Jack

74. State Democracy Defenders Action

75. Sun-Sentinel Company, LLC, publisher of the South Florida Sun Sentinel

76. TEGNA, Inc. (TGNA)

77. Telemundo Network Group, LLC d/b/a Noticias Telemundo

78. Thakur, Michael

79. The Associated Press

80. The E.W. Scripps Company (SSP)

81. The McClatchy Company, LLC (MNI) d/b/a the Miami Herald

82. The New York Times Company (NYT)

83. The Palm Beach Post and USA TODAY, publications operated by subsidiaries of Gannett Co., Inc. (GCI)

84. Thompson, Larry

85. Tillman, Seth Barrett

86. Tobin, Charles

87. Torres, Hon. Edwin

88. Trent, Edward H.

89. Tribe, Laurence

90. Troye, Olivia

91. Trump, Donald J.

92. Trusty, James

93. Twardy, Stanley

94. United States of America

95. Univision Networks & Studios, Inc.

96. VanDevender, Cecil

97. Weiss, Stephen

98. Weld, William

99. Wharton, Kendra

100. Whitman, Christine Todd

101. Woodward, Stanley

102. WP Company LLC d/b/a The Washington Post

103. WPLG, Inc.

Respectfully submitted,

JACK SMITH
Special Counsel

By:   <u>/s/ James I. Pearce</u>
JAMES I. PEARCE
Assistant Special Counsel
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530

# STATEMENT REGARDING ORAL ARGUMENT

The United States believes that oral argument would assist the Court's decisional process in this case of significant public importance.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ....................................... C-1

STATEMENT REGARDING ORAL ARGUMENT ................................... i

TABLE OF CONTENTS ......................................................................... ii

TABLE OF AUTHORITIES ................................................................... iv

INTRODUCTION ..................................................................................... 1

JURISDICTIONAL STATEMENT ............................................................ 2

STATEMENT OF THE ISSUES ............................................................... 2

STATEMENT OF THE CASE ................................................................... 2

    I.    Course of Proceedings and Disposition Below ............................ 2

    II.    Statement of the Facts ................................................................. 3

        A.    Legal Background ................................................................ 3

        B.    Appointment and Funding of the Special Counsel .............. 5

        C.    The District Court's Dismissal Order ................................. 6

    III.    Standard of Review ..................................................................... 7

SUMMARY OF ARGUMENT ................................................................... 8

ARGUMENT ........................................................................................... 13

    I.    The Attorney General Possessed the Statutory Authority to Appoint the Special Counsel ..................................................... 13

        A.    The Supreme Court's Decision in *United States v. Nixon* Establishes the Attorney General's Appointment Authority ............................................................................. 14

        B.    Statutory Analysis Confirms that *Nixon* Is Correct ........... 20

1. Section 515 ............................................................. 20

2. Section 533 ............................................................. 29

3. Sections 509 and 510 ............................................. 33

C. The Long History of Appointments of Special Counsels Reflects the Attorney General's Authority to Make the Appointment Here ............................................. 42

II. The Special Counsel Was Properly Funded ............................... 57

CONCLUSION ............................................................................ 57

CERTIFICATE OF COMPLIANCE .......................................... 59

CERTIFICATE OF SERVICE .................................................. 60

# TABLE OF AUTHORITIES

## Cases

*Al Bahlul v. United States,*
   967 F.3d 858 (D.C. Cir. 2020) ............................................... 40

*Beecham v. United States,*
   511 U.S. 368 (1994) ............................................................... 31

*Belt v. United States,*
   73 F.2d 888 (5th Cir. 1934) .................................................. 45

*Buckley v. Valeo,*
   424 U.S. 1 (1976) ................................................................... 30

*C.I.R. v. Idaho Power Co.,*
   418 U.S. 1 (1974) ................................................................... 17

*Consumer Fin. Protection Bureau v. Comty. Fin. Services Ass'n of America, Ltd.,*
   601 U.S. 416 (2024) ................................................................. 5

*Corner Post, Inc. v. Bd. of Governors of the Fed. Reserve Sys.,*
   144 S. Ct. 2440 (2024) .......................................................... 17

*Dep't of Transp. v. Ass'n of Am. R.R.,*
   575 U.S. 43 (2015) ................................................................. 21

*Edmond v. United States,*
   520 U.S. 651 (1997) ......................................................... 41, 42

*Ewert v. Bluejacket,*
   259 U.S. 129 (1922) .............................................................. 45

*Fleming v. Mohawk Wrecking & Lumber Co.,*
   331 U.S. 111 (1947) .............................................................. 38

*Fourco Glass Co. v. Transmirra Prods. Corp.,*
   353 U.S. 222 (1957) ......................................................... 25, 28

*Hale v. United States*,
  25 F.2d 430 (8th Cir. 1928) ...................................................... 45

*Henson v. Santander Consumer USA Inc.*,
  582 U.S. 79 (2017) ................................................................... 26

*In re Grand Jury Investigation*,
  315 F. Supp. 3d 602 (D.D.C. 2018) ............................. 17, 30, 33

*In re Grand Jury Investigation*,
  916 F.3d 1047 (D.C. Cir. 2019) ............................ 8, 9, 17, 19

*In re Persico*,
  522 F.2d 41 (2d Cir. 1975) .................................................. 44, 45

*In re Sealed Case*,
  829 F.2d 50 (D.C. Cir. 1987) ............................................... 17, 48

*Lucia v. S.E.C.*,
  585 U.S. 237 (2018) ....................................................... 30, 34, 38

*Marbury v. Madison*,
  5 U.S. (1 Cranch) 137 (1803) .................................................. 21

*May v. United States*,
  236 F. 495 (8th Cir. 1916) ....................................................... 45

*Morrison v. Olson*,
  487 U.S. 654 (1988) ............................................................... 30, 48

*Ortiz v. United States*,
  585 U.S. 427 (2018) ................................................................... 30

*Pa. Dep't of Corr. v. Yeskey*,
  524 U.S. 206 (1998) ................................................................... 32

*Pa. Dep't of Pub. Welfare v. U.S. Dep't of Health & Hum. Servs.*,
  80 F.3d 796 (3d Cir. 1996) ....................................................... 41

*Rudolph v. United States*,
  92 F.4th 1038 (11th Cir. 2024) ................................................ 17

v

*Russell Motor Car Co. v. United States,*
   261 U.S. 514 (1923) ............................................................. 31

*S. D. Warren Co. v. Maine Bd. of Env't Prot.,*
   547 U.S. 370 (2006) ........................................................... 31

*Schwab v. Crosby,*
   451 F.3d 1308 (11th Cir. 2006) ..................................... 14, 19

*Shushan v. United States,*
   117 F.2d 110 (5th Cir. 1941) ............................................ 45

*Six Companies of Cal. v. Joint Highway Dist. No. 13 of Cal.,*
   311 U.S. 180 (1940) ........................................................... 18

*State of Russia v. Nat'l City Bank of N.Y.,*
   69 F.2d 44 (2d Cir. 1934) ................................................. 45

*United States v. Amazon Indus. Chem. Corp.,*
   55 F.2d 254 (D. Md. 1931) ............................................... 45

*United States v. Cohen,*
   273 F. 620 (D. Mass. 1921) .............................................. 45

*United States v. Concord Mgmt. & Consulting LLC,*
   317 F. Supp. 3d 598 (D.D.C. 2018) ........................... 9, 17, 19

*United States v. Crosthwaite,*
   168 U.S. 375 (1897) ........................................................... 43

*United States v. Eaton,*
   169 U.S. 331 (1898) ........................................................... 30

*United States v. Files,*
   63 F.4th 920 (11th Cir. 2023) .......................................... 17

*United States v. Gillis,*
   938 F.3d 1181 (11th Cir. 2019) ........................................ 17

*United States v. Kaley,*
   579 F.3d 1246 (11th Cir. 2009) ........................................ 19

*United States v. Limantour*,
    26 F. Cas. 947 (N.D. Cal. 1858) .............................................. 42

*United States v. Martins*,
    288 F. 991 (D. Mass. 1923) .................................................... 45

*United States v. Milanovich*,
    303 F.2d 626 (4th Cir. 1962) ................................................. 46

*United States v. Morse*,
    292 F. 273 (S.D.N.Y. 1922) ................................................... 45

*United States v. Nixon*,
    418 U.S. 683 (1974) ...........................7, 8, 14, 15, 16, 17, 47

*United States v. Powell*,
    81 F. Supp. 288 (E.D. Mo. 1948) .......................................... 46

*United States v. Rosenthal*,
    121 F. 862 (C.C. S.D.N.Y. 1903) .......................................... 44

*United States v. Sharpe*,
    438 F.3d 1257 (11th Cir. 2006) ............................................... 8

*United States v. Verdugo-Urquidez*,
    494 U.S. 259 (1990) ............................................................. 18

*United States v. Winston*,
    170 U.S. 522 (1898) ............................................................. 44

*Willy v. Administrative Review Bd.*,
    423 F.3d 483 (5th Cir. 2005) ................................................. 40

*Winslow v. F.E.R.C.*,
    587 F.3d 1133 (D.C. Cir. 2009) ............................................ 14

*Yaselli v. Goff*,
    12 F.2d 396 (2d Cir. 1926), *aff'd*, 275 U.S. 503 (1927).............. 45

**Statutes and Rules**

U.S. Const. art. I, § 9, cl. 7 ............................................................ 2, 5

U.S. Const. art. II, § 2, cl. 2 ...........................................2, 3, 8, 13, 31

U.S. Const. art. III, § 1 ................................................................. 14

1 Rev. Stat. 61, tit. VIII, § 366 (1875) ...........................24, 26, 35, 43

5 U.S.C. § 2105 ............................................................................ 27

5 U.S.C. § 301 .............................................................................. 33

5 U.S.C. § 315 (1925-26 ed.) ........................................................ 24

5 U.S.C. § 315 (1946 ed.) .........................................................24, 28

5 U.S.C. § 315 (1952 ed.) ............................................................. 25

5 U.S.C. § 3101 ...................................................................27, 33, 34

10 U.S.C. § 113 ............................................................................ 39

15 U.S.C. § 7a .............................................................................. 37

15 U.S.C. § 7a-2 ........................................................................... 37

15 U.S.C. § 18a ............................................................................ 37

18 U.S.C. § 201 ............................................................................ 30

18 U.S.C. § 793 .............................................................................. 2

18 U.S.C. § 2516 .......................................................................... 39

18 U.S.C. § 3231 ............................................................................ 2

18 U.S.C. § 3731 ............................................................................ 2

18 U.S.C. § 3742 .......................................................................... 39

22 U.S.C. § 2651a .................................................................... 39

28 C.F.R. § 0.1 ......................................................................... 36

28 C.F.R. § 600.1 .................................................................. 4, 30

28 C.F.R. § 600.3 .................................................................... 51

28 C.F.R. § 602.1 .................................................................... 48

28 U.S.C. § 1291 ...................................................................... 2

28 U.S.C. § 503 ............................................................... 3, 21, 24

28 U.S.C. § 504 ...................................................................... 38

28 U.S.C. § 504a .................................................................... 38

28 U.S.C. § 505 ...................................................................... 38

28 U.S.C. § 506 ...................................................................... 38

28 U.S.C. § 509 ....................................... 1, 3, 12, 15, 20, 21, 33

28 U.S.C. § 509B .................................................................... 37

28 U.S.C. § 510 ............................... 1, 3, 12, 15, 20, 33, 34, 36, 54

28 U.S.C. § 515 ................. 1, 4, 9, 10, 15, 20, 21, 22, 25, 27, 50, 54

28 U.S.C. § 516 ................................................................... 3, 15

28 U.S.C. § 519 ................................................................. 10, 29

28 U.S.C. § 533 ............................... 1, 4, 11, 15, 20, 29, 32

28 U.S.C. § 541 ...................................................................... 38

28 U.S.C. § 543 ................................................................. 10, 25

28 U.S.C. § 547 ................................................................... 3, 34

28 U.S.C. § 561 ................................................................................. 38

31 U.S.C. § 321 ................................................................................. 39

52 Fed. Reg. 22,439-01 (June 12, 1987) ......................................... 48

52 Fed. Reg. 35,543-01 (Sept. 22, 1987) ....................................... 48

64 Fed. Reg. 37,038 ........................................................................... 4

64 Fed. Reg. 37,038 (July 9, 1999) ............................................... 51

Act of Apr. 17, 1930, Pub. L. No. 71-133, 46 Stat. 170 ................. 46

Act of Aug. 30, 1890, ch. 837, 26 Stat. 371 .................................. 46

Act of Feb. 25, 1903, Pub. L. No. 57-115, 32 Stat. 854 ................. 46

Act of July 19, 1919, Pub. L. No. 66-21, 41 Stat. 163 ................... 46

Act of June 27, 1866, 14 Stat. 74 .................................................. 27

Act of June 3, 1948, Pub. L. No. 80-597, 62 Stat. 305 .................. 46

Act of Mar. 3, 1891, ch. 542, 26 Stat. 948 .................................... 46

Act of Mar. 3, 1901, ch. 853, 31 Stat. 1133 .................................. 46

Act of Mar. 4, 1921, Pub. L. No. 66-389, 41 Stat. 1367 ................ 46

An Act to Establish the Department of Justice, ch. 150, § 17, 16 Stat.
    162 (1870) ...........................................................23, 26, 35, 43

Ethics in Government Act of 1978, Pub. L. No. 95-521, 92 Stat. 1824 .......... 47

Ethics in Government Act, 28 U.S.C. §§ 591-599 (expired) ........................... 4

*Independent Counsel: In re Madison Guaranty Savings & Loan Association*, 59
    Fed. Reg. 5321-02 (Feb. 4, 1994) ........................................... 49

Office of Special Counsel, 64 Fed. Reg. 37,038 (July 9, 1999) ........................ 4

Offices of Independent Counsel; General Powers and Establishment of
    Independent Counsel—Iran/Contra, 52 Fed. Reg. 7270-02 (Mar. 10,
    1987) ............................................................................................. 48

Pub. L No. 59-404, 34 Stat. 816 (1906) ....................................................... 45

Pub. L. No. 66-338, 41 Stat. 1156 (1921) ..................................................... 32

Pub. L. No. 80-773, 62 Stat. 869 (1948) ................................................. 24, 27

Pub. L. No. 81-109, 63 Stat. 203 (1949) ....................................................... 35

Pub. L. No. 81-921, 64 Stat. 1261 (1950) ................................................ 36, 40

Pub. L. No. 89-554, 80 Stat. 378 (1966) ...................................... 12, 32, 33, 36

Pub. L. No. 90-351, 82 Stat. 197 (1968) ....................................................... 38

Pub. L. No. 100-202, tit. II, § 101(a), 101 Stat. 1329 (1987) ................. 5, 13, 56

Pub. L. No. 109-177, 120 Stat. 192 (2006) ................................................... 36

Reorganization Plan No. 2 of 1973, Pub. L. No. 93-245, 87 Stat. 1091
    (1973) ............................................................................................. 38

## Other Authorities

1919 Att'y Gen. Ann. Rep. .......................................................................... 36

1935 Att'y Gen. Ann. Rep. .......................................................................... 36

American Enterprise Inst. & Brookings Inst., *Project on the Independent
    Counsel Statute: Report and Recommendations* (May 1999) ...................... 50, 51

*Applicability of Appointment Provisions of the Anti-Drug Abuse Act of 1988 to
    Incumbent Officeholders*, 12 Op. O.L.C. 286 (1988) .................................... 36

Att'y Gen. Order No. 155-57 (1957) ............................................................. 37

Att'y Gen. Order No. 518-73 (May 25, 1973) ............................................... 46

Att'y Gen. Order No. 551-73 (Nov. 2, 1973) ................................................. 47

Att'y Gen. Order No. 552-73 (Nov. 5, 1973) ................................................. 47

Att'y Gen. Order No. 5-53 (1953) ................................................. 37

Att'y Gen. Order No. 8-53 (1953) ................................................. 37

Att'y Gen. Order No. 998-83 (1983)................................................. 37

*Black's Law Dictionary* (12th ed. 2024) ................................................21, 30

Brett M. Kavanaugh, *The President and the Independent Counsel*, 86 Geo. L.J. 2133 (1998) ................................................42, 48

Bryan A. Garner et al., *The Law of Judicial Precedent* (2016)................................ 19

Circular No. 114, Order of the Attorney General for Division of Business, Nov. 16, 1909 ................................................. 36

*Civil-Service Bill*, 17 Op. Att'y Gen. 504 (1883) ................................................. 22

Cong. Research Serv., *Independent Counsel Law Expiration and the Appointment of "Special Counsels"* (2002) ................................................. 49

Cynthia Nicoletti, *Secession on Trial: The Treason Prosecution of Jefferson Davis* (Cambridge Univ. Press 2017) ................................................42, 54

David Logan, Cong. Research Serv., *Historical Uses of a Special Prosecutor: The Administrations of Presidents Grant, Coolidge and Truman* (1973) ............ 46

*Death of a Noted Jurist*, N.Y. Times (Mar. 7, 1892) ................................................. 43

Gregory J. Werden, *Establishment of the Antitrust Division of the U.S. Department of Justice*, 92 St. John's L. Rev. 419 (2018) ................................................. 36

H. Campbell Black, *A Dictionary of Law* (1st ed. 1891) ................................................. 21

Homer Cummings & Carl McFarland, *Federal Justice* (1937) ................................ 42

Jerome J. Shestack, *Foreword: The Independent Counsel Act Revisited*, 86 Geo. L.J. 2011 (1998) ................................................. 52

Lincoln Steffens, *The Taming of the West, Pt. II*, in The American Magazine, vol. 64 (Oct. 1907) .............................................................44, 54

Office of the Att'y Gen., Order No. 5559-2022, *Appointment of John L. Smith as Special Counsel* (Nov. 18, 2022)................................................. 5, 6

P. Peters, *The Cambridge Guide to English Usage* (2004) ................................... 26

Treasury Order 101-06 ............................................................................... 40

Walter Dellinger, *Creation of an Office of Investigative Agency Policies* (O.L.C. Mem. Oct. 26, 1993) .................................................................. 37

## Legislative Sources

125 Cong. Rec. H5534 (daily ed. Mar. 20, 1979) ......................................... 48

44 Cong. Rec. H4541 (daily ed. July 19, 1909) ........................................... 44

Cong. Globe, 41st Cong., 2d Sess. 3034-39 (Apr. 27, 1870) .......................... 43

H.R. Doc. No. 58-383 (1904)....................................................................... 44

H.R. Doc. No. 81-504, *Reorganization Plans No. 1 to 13 of 1950* (1950) ............ 35

H.R. Rep. No. 59-2901 (1906) ..................................................................... 45

H.R. Rep. No. 71-229 (1930) ....................................................................... 55

H.R. Rep. No. 80-308 (1947) ....................................................................... 27

House Committee on Oversight and Reform, United States Government Policy and Supporting Positions (2020) .................................................. 38

S. Exec. Doc. 40-13 (1867) ........................................................................ 43

S. Rep. No. 95-170 (1977) .......................................................................... 47

*The Future of the Independent Counsel Act: Hearings Before the Senate Comm. on Governmental Affairs*, S. Hrg. 106-131 (1999) .............................. 48, 49, 50

## INTRODUCTION

Congress has bestowed on the Attorney General, like the heads of many Executive Departments, broad authority to structure the agency he leads to carry out the responsibilities imposed on him by law. Two statutes provide the Attorney General the specific authority to appoint special counsels to carry out his law-enforcement missions. 28 U.S.C. §§ 515(b), 533(1). Two other statutes confer on the Attorney General the necessary overarching authority to staff, structure, and direct the operations of the Justice Department, which includes the power to appoint inferior officers and assign specific matters to attorneys such as the Special Counsel. 28 U.S.C. §§ 509, 510. Precedent and history confirm those authorities, as do the long tradition of special-counsel appointments by Attorneys General and Congress's endorsement of that practice through appropriations and other legislation. The district court's contrary view conflicts with an otherwise unbroken course of decisions, including by the Supreme Court, that the Attorney General has such authority, and it is at odds with widespread and longstanding appointment practices in the Department of Justice and across the government. This Court should reverse.

## JURISDICTIONAL STATEMENT

The district court exercised jurisdiction under 18 U.S.C. § 3231 and entered its order dismissing the indictment on July 15, 2024.  Dkt. 672.[1]  The government filed a timely notice of appeal on July 17, 2024.  Dkt. 673.  This Court has jurisdiction under 18 U.S.C. § 3731 and 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1.    Whether the Attorney General had statutory authority to appoint the Special Counsel such that the appointment was consistent with the Appointments Clause of the Constitution, art. II, § 2, cl. 2.

2.    Whether the statutes the Attorney General invoked to appoint the Special Counsel constitute "other law" under the appropriation for independent counsels, such that using that source of funding for the Special Counsel was consistent with the appropriation and the Appropriations Clause of the Constitution, art. I, § 9, cl. 7.

## STATEMENT OF THE CASE

### I.    Course of Proceedings and Disposition Below

A grand jury in the Southern District of Florida returned a superseding indictment charging defendant Donald Trump with willful retention of national defense information, in violation of 18 U.S.C. § 793(e), and charging Trump and

---

[1] "Dkt." refers to district court docket entries.

two other defendants with multiple counts, including obstructing and conspiring to obstruct an official proceeding and making false statements.  Dkt. 85.  The district court dismissed the indictment.  Dkt. 672.

## II.  Statement of the Facts

### A.    Legal Background

1.  The Appointments Clause of the Constitution provides that officers of the United States shall be appointed by the President with the advice and consent of the Senate.  U.S. Const. art. II, § 2, cl. 2.  But Congress "may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments."  *Id.*

Congress has provided that the Attorney General shall be the "head of the Department of Justice," to be appointed by the President with the advice and consent of the Senate.  28 U.S.C. § 503.  Congress has, with three limited exceptions not relevant here, "vested" in the Attorney General "[a]ll functions of other officers of the Department of Justice," *id.* § 509—including the power to prosecute "all offenses against the United States," *id.* § 547(1), and to supervise "the conduct of litigation" on behalf of the United States, *id.* § 516— and has empowered the Attorney General to authorize "any other officer, employee, or agency of the Department of Justice" to perform any of those functions, *id.* § 510.  In addition, Congress has authorized the Attorney General

to commission attorneys "specially retained under authority of the Department of Justice" as "special assistant[s] to the Attorney General or special attorney[s]" and has provided that "any attorney specially appointed by the Attorney General under law, may, when specifically directed by the Attorney General, conduct any kind of legal proceeding, civil or criminal, . . . which United States attorneys are authorized by law to conduct." *Id.* § 515(a), (b). Congress has further provided that the Attorney General "may appoint officials . . . to detect and prosecute crimes against the United States." *Id.* § 533(1).

In 1999, the Attorney General issued a regulation providing an internal framework for certain special-counsel appointments. 28 C.F.R. §§ 600.1-600.10; Office of Special Counsel, 64 Fed. Reg. 37,038 (July 9, 1999). The Special Counsel regulation replaced the Independent Counsel regime formerly established in Title IV of the Ethics in Government Act, 28 U.S.C. §§ 591-599 (expired); *see* 64 Fed. Reg. 37,038. The Special Counsel regulation provides a procedure for appointing a special counsel who exercises discretion over a particular matter "within the context of the established procedures of the Department," with "ultimate responsibility for the matter and how it is handled . . . continu[ing] to rest with the Attorney General." 64 Fed. Reg. at 37,038. The regulation seeks "to strike a balance between independence and accountability in certain sensitive investigations." *Id.*

2.  The Appropriations Clause provides that "No Money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law."  U.S. Const. art. I, § 9, cl. 7.  The Clause requires no "more than a law that authorizes the disbursement of specified funds for identified purposes." *Consumer Fin. Protection Bureau v. Cmty. Fin. Services Ass'n of America, Ltd.*, 601 U.S. 416, 438 (2024).  In 1987, Congress enacted a "permanent indefinite appropriation" to "pay all necessary expenses of investigations and prosecutions by independent counsel appointed pursuant to the provisions of 28 U.S.C. 591 et seq. or other law."  Pub. L. No. 100-202, tit. II, § 101(a), 101 Stat. 1329, 1329-9 (1987) (28 U.S.C. § 591 note).

## B.   Appointment and Funding of the Special Counsel

On November 18, 2022, the Attorney General appointed John L. Smith as Special Counsel "to conduct the ongoing investigation referenced and described in the United States' Response to Motion for Judicial Oversight and Additional Relief, *Donald J. Trump v. United States*, No. 9:22-CV-81294-AMC (S.D. Fla. Aug. 30, 2022)."  Office of the Att'y Gen., Order No. 5559-2022, *Appointment of John L. Smith as Special Counsel*, ¶ (c) (Nov. 18, 2022).  The Attorney General also authorized the Special Counsel "to conduct the ongoing investigation into whether any person or entity violated the law in connection with efforts to interfere with the lawful transfer of power following the 2020

presidential election or the certification of the Electoral College vote held on or about January 6, 2021." *Id.* ¶ (b). Relying on "the authority vested in the Attorney General, including 28 U.S.C. §§ 509, 510, 515, and 533," the Attorney General appointed a Special Counsel "in order to discharge [the Attorney General's] responsibility to provide supervision and management of the Department of Justice, and to ensure a full and thorough investigation of" the matters entrusted to the Special Counsel. *Id.* (introduction). Consistent with prior practice, the Department of Justice has funded the Special Counsel through the permanent indefinite appropriation for "independent counsel" appointed under a law "other" than the now-defunct Ethics in Government Act.

### C. The District Court's Dismissal Order

Trump moved to dismiss the superseding indictment on the grounds that the Special Counsel's appointment violated the Appointments and Appropriations Clauses of the Constitution. Dkt. 326. He argued that no statute authorized the Attorney General to appoint the Special Counsel and that the permanent indefinite appropriation was not available to the Special Counsel. *Id.* at 5-14.

The district court granted the motion and dismissed the superseding indictment. Dkt. 672. The district court accepted for purposes of its decision that the Special Counsel was an inferior officer whose appointment Congress

could by law vest in the Attorney General. *Id.* at 2. But in the district court's view, none of the four statutes cited by the Attorney General—28 U.S.C. §§ 509, 510, 515, and 533—authorized the Special Counsel's appointment. *Id.* at 23-52. The district court recognized that the Supreme Court stated in *United States v. Nixon*, 418 U.S. 683 (1974), that Congress in those four statutes had "vested" in the Attorney General "the power to appoint subordinate officers," including the Watergate Special Prosecutor, *id.* at 694, but the district court dismissed that statement as non-binding and unpersuasive dicta. Dkt. 672 at 54-55. The district court therefore concluded that the Special Counsel's appointment violated the Appointments Clause and that the appropriate remedy was dismissal of the superseding indictment. *Id.* at 81-85. Relying on its conclusion that no statute permitted the Special Counsel's appointment, the district court also found that the Special Counsel was not eligible to receive funding under the permanent indefinite appropriation because he was not validly appointed under "other law," although the court opted not to impose any remedy for that "Appropriations Clause violation." *Id.* at 87-91.

## III. Standard of Review

The district court's dismissal order raises issues of law that are reviewed de novo. *See United States v. Sharpe*, 438 F.3d 1257, 1258 (11th Cir. 2006); *In re Grand Jury Investigation*, 916 F.3d 1047, 1051 (D.C. Cir. 2019).

## SUMMARY OF ARGUMENT

The Attorney General validly appointed the Special Counsel, who is also properly funded. In ruling otherwise, the district court deviated from binding Supreme Court precedent, misconstrued the statutes that authorized the Special Counsel's appointment, and took inadequate account of the longstanding history of Attorney General appointments of special counsels.

I. Under the Appointments Clause, U.S. Const. art. II, § 2, cl. 2, Congress may vest a Head of Department with the power to appoint an inferior officer. Here, Congress has authorized the Attorney General, by law, to appoint as an inferior officer the Special Counsel.

A. In *United States v. Nixon,* 418 U.S. 683 (1974), the Supreme Court determined that the Attorney General had statutory authority under 28 U.S.C. §§ 509, 510, 515, and 533 to appoint a special prosecutor comparable to the Special Counsel. *Id.* at 694-95. Apart from the district court below, every court to consider the question has concluded that the Supreme Court's determination that those statutes authorized the Attorney General to appoint the Watergate Special Prosecutor was necessary to the decision that a justiciable controversy existed and therefore constitutes a holding that binds lower courts. *See, e.g.*, *In re Grand Jury Investigation*, 916 F.3d 1047, 1053 (D.C. Cir. 2019).

The district court erred when it deemed that conclusion unpersuasive dicta. *Nixon*'s statutory analysis was integral to the Court's "ultimate conclusion[]" and therefore "authoritative." *United States v. Concord Mgmt. & Consulting LLC*, 317 F. Supp. 3d 598, 623 (D.D.C. 2018). The district court likewise erred in reasoning that the Supreme Court had assumed the issue without deciding. The Supreme Court regularly uses qualifying language to indicate assumed premises but included no such caveat in *Nixon* when discussing the Attorney General's authority to appoint the Special Prosecutor. *Nixon* therefore binds this Court, just as it did the district court, and reversal is warranted on that ground alone.

B. The statutes that the Supreme Court cited in *Nixon*—28 U.S.C. §§ 509, 510, 515, and 533—authorized the Attorney General to appoint the Special Counsel here.

1. Section 515 consists of two subsections that, taken together, make clear that the Attorney General may appoint a special counsel. Section 515(b) empowers the Attorney General to "commission[]" attorneys who are "specially retained under authority of the Department of Justice" as "special assistant[s] to the Attorney General" or "special attorney[s]," and who must "take the oath required by law." Section 515(a) confirms that the Attorney General may vest such "specially appointed" attorneys with the power to undertake any civil or

criminal proceedings. Read as a whole, Section 515 thus authorizes the Attorney General to appoint special attorneys and confirms that he can grant them prosecutorial authority over specifically identified matters.

The district court's contrary reasoning lacks merit. Its focus on the absence of the word "appoint" in Section 515(b) ignores that the term "retain" is synonymous with "appoint" as used Section 515—as the statute's enactment history makes clear—and that the word "appoint" appears in Section 515(a), confirming that the statute provides appointment authority. The district court's determination that the phrase "specially retained" in Section 515(b) is a past-tense verb that only applies to already-retained attorneys misunderstands the statute's grammatical construction—"retained" and "appointed" are past participles that take their tense from the surrounding present-tense verbs—and results in a nonsensical interpretation under which an attorney must be hired and only then (potentially minutes later) could become "specially retained" as a special counsel. Finally, the district court erroneously treated two provisions— 28 U.S.C. §§ 519 and 543, which together clarify that the Attorney General's supervision of all federal litigation encompasses U.S. Attorneys and any attorneys assisting them—as a limit on the entirely independent authority under Section 515 for an Attorney General to appoint a special counsel to assist him.

2.   Congress also authorized the Attorney General to appoint special counsels in 28 U.S.C. § 533(1), which provides that he may appoint "officials" to "detect and prosecute crimes against the United States."   The district court found Section 533(1) inapplicable on the theory that "official" means only "nonofficer employee."   The ordinary meaning of the term "official," however, naturally encompasses "officers," and as used in Section 533(1), reaches both employees and officers.   The court purported to draw support for its interpretation from the *noscitur a sociis* canon, but that canon applies only to clarify terms that are obscure—which "official" is not—and appear among a list of other terms with a common feature.   The other subsections in Section 533— which address appointment of officials to protect high-level Executive Branch officers and to undertake investigations on behalf of the State and Justice Departments—share no such common attribute, which is unsurprising given Section 533(1)'s enactment history.   Finally, the district court elevated Section 533's title ("Investigative and other officials") and placement within Title 28 (in a section addressing the FBI) above the provision's plain text, in contravention of a congressional directive not to draw any "inference of a legislative construction" from Section 533's location or caption.   Pub. L. No. 89-554, 80 Stat. 378, 631 (1966).

3. Two other provisions, 28 U.S.C. §§ 509 and 510, which grant the Attorney General broad power to operate the Department of Justice, also authorize him to appoint the Special Counsel in this case. Those provisions, first enacted as part of the law that created the Department of Justice, authorize the Attorney General to structure and staff the Department in order to fulfill his law-enforcement responsibilities, and Attorneys General have long relied on Sections 509 and 510—with Congress's full knowledge and approval—to create the Justice Department's institutional infrastructure. And Congress has long used similar provisions to authorize other department heads, such as the Secretaries of Defense, State, Treasury, and Labor to appoint inferior officers to carry out critical work.

C. The long history of Attorney General appointments of special counsels confirms the lawfulness of the Special Counsel's appointment. From before the creation of the Department of Justice until the modern day, Attorneys General have repeatedly appointed special and independent counsels to handle federal investigations, including the prosecution of Jefferson Davis, alleged corruption in federal agencies (including the Department of Justice itself), Watergate, and beyond. The district court erroneously disregarded this history as "spotty" or "ad hoc," giving undue emphasis to superficial differences in the appointment and roles of certain special and independent counsels. The district

court's rationale could jeopardize the longstanding operation of the Justice Department and call into question hundreds of appointments throughout the Executive Branch.

II. The Department of Justice has properly funded the Special Counsel under a permanent indefinite appropriation that Congress enacted to "pay all necessary expenses of investigations and prosecutions by independent counsel appointed pursuant to the provisions of 28 U.S.C. 591 et seq. or other law." Pub. L. No. 100-202, tit. II, § 101(a), 101 Stat. 1329, 1329-9 (1987) (28 U.S.C. § 591 note). The district court erroneously concluded that Sections 509, 510, 515, and 533 did not constitute "other law" that supported the Special Counsel's appointment.

## ARGUMENT

### I. The Attorney General Possessed the Statutory Authority to Appoint the Special Counsel

The Appointments Clause requires presidential appointment and Senate confirmation for all principal officers, but permits Congress to "vest" the power to appoint "inferior Officers" in the President alone, courts, or a "Head[] of [a] Department[]." U.S. Const. art. II, § 2, cl. 2. As the district court recognized (Dkt. 672 at 2), the Special Counsel is an inferior officer. And he was appointed by the Attorney General, who is the head of a department. The only question presented here is whether Congress has vested the Attorney General, by law,

with the power to make the appointment. The Supreme Court squarely answered that question in *United States v. Nixon,* 418 U.S. 683, 694 (1974), holding that the Attorney General has statutory authority under 28 U.S.C. §§ 509, 510, 515, and 533 to appoint a special prosecutor comparable to the Special Counsel. *Id.* at 694-95. Statutory text, context, and history confirm that *Nixon* was correct.

## A. The Supreme Court's Decision in *United States v. Nixon* Establishes the Attorney General's Appointment Authority

"Vertical stare decisis—both in letter and in spirit—is a critical aspect of our hierarchical Judiciary headed by 'one supreme Court.'" *Winslow v. F.E.R.C.*, 587 F.3d 1133, 1135 (D.C. Cir. 2009) (quoting U.S. Const. art. III, § 1); *see Schwab v. Crosby*, 451 F.3d 1308, 1325-26 (11th Cir. 2006). Where, as here, the Supreme Court has expressly addressed an issue, lower courts are bound to follow it. The district court's treatment of *Nixon* departed from that foundational principle.

In *Nixon*, the Attorney General appointed a Special Prosecutor to investigate and prosecute offenses arising from the 1972 presidential election, empowering the prosecutor through a regulation. 418 U.S. at 694 & n.8. Acting under that regulation, the Special Prosecutor obtained a subpoena issued to the President for the production of evidence, and the district court denied a motion to quash. *Id.* at 687-88. In the Supreme Court, President Nixon contended that

14

the case was not justiciable because it constituted only an "intra-branch dispute" over evidence to be used in a prosecution, in which the President's decision was "final." *Id.* at 692-93. The Supreme Court rejected that contention, explaining that the Special Prosecutor acted pursuant to a proper and legally binding delegation of the Attorney General's authority:

> Congress has vested in the Attorney General the power to conduct the criminal litigation of the United States Government. 28 U.S.C. § 516. It has also vested in him the power to appoint subordinate officers to assist him in the discharge of his duties. 28 U.S.C. §§ 509, 510, 515, 533. Acting pursuant to those statutes, the Attorney General has delegated the authority to represent the United States in these particular matters to a Special Prosecutor with unique authority and tenure.

*Id.* at 694; *see id.* at 694 n.8 (emphasizing that the Attorney General had issued the regulation "pursuant to" his "statutory authority"). The Court therefore held that, as long as the regulation remained in place, it bound the entire Executive Branch and required rejection of the President's argument that he could override the Special Prosecutor's subpoena. *Id.* at 695-96.

The district court erroneously determined (Dkt. 672 at 53-64) that *Nixon*'s reliance on the cited statutory provisions as authorizing the Attorney General to appoint "subordinate officers," such as the Special Prosecutor, was dicta. *Nixon* necessarily evaluated the Attorney General's appointment power because the Special Prosecutor could not assert the Attorney General's authority "to conduct the criminal litigation of the United States Government" and the "explicit power

to contest the invocation of executive privilege" unless the prosecutor had been properly appointed. 418 U.S. at 694-95. If the Attorney General lacked authority to appoint the Special Prosecutor, the regulation empowering that prosecutor to represent the sovereign interests of the United States in litigation would have had no force. The Court's conclusion that statutory authority supported the appointment was not merely a "prefatory, stage-setting paragraph" that "served to tee up the case-or-controversy analysis that followed," Dkt. 672 at 62, but was instead central to its conclusion that "[s]o long as this regulation [conferring authority on the Special Prosecutor] is extant it has the force of law." *Nixon*, 418 U.S. at 695. That conclusion undergirded the Court's determination that a justiciable case existed between an "independent Special Prosecutor with his asserted need for the subpoenaed material" and a "President with his steadfast assertion of privilege against disclosure." *Id.* at 697.

Accordingly, the Court's determination was "a necessary antecedent to determining whether the regulations were valid," which in turn "was necessary to the decision that a justiciable controversy existed." *In re Grand Jury Investigation*, 916 F.3d 1047, 1053 (D.C. Cir. 2019); *see In re Sealed Case*, 829 F.2d 50, 55 & n.30 (D.C. Cir. 1987) (relying on *Nixon*, 418 U.S. at 694-96); *In re Grand Jury Investigation*, 315 F. Supp. 3d 602, 652 (D.D.C. 2018). Because that

statutory analysis was a "necessary step[]" to the Supreme Court's "ultimate conclusions," it is therefore an "authoritative" holding of the Court, not dicta. *United States v. Concord Mgmt. & Consulting LLC*, 317 F. Supp. 3d 598, 623 (D.D.C. 2018); *cf. Rudolph v. United States*, 92 F.4th 1038, 1045 (11th Cir. 2024) (judicial statements that are neither a "holding" nor "necessary to the holding" are dicta) (quoting *United States v. Gillis*, 938 F.3d 1181, 1198 (11th Cir. 2019) (per curiam)); *United States v. Files*, 63 F.4th 920, 929 (11th Cir. 2023) (dicta includes "legal conclusions predicated on facts that aren't actually at issue," "aside-like statements about irrelevant legal matters," and "statements regarding a legal framework that the court initially engages but ends up abandoning in favor of an alternative").

The district court relatedly suggested that *Nixon* is not binding because the Supreme Court "assumed" that the relevant appointment authority existed "without deciding it." Dkt. 672 at 54. But when the Court assumes antecedent issues, it specifically uses such qualifying language. *See, e.g.*, *Corner Post, Inc. v. Bd. of Governors of the Fed. Reserve Sys.*, 144 S. Ct. 2440, 2450 n.2 (2024); *C.I.R. v. Idaho Power Co.*, 418 U.S. 1, 7 n.5 (1974) (same court that authored *Nixon*). No such caveat appears in *Nixon* itself. *Nixon* did not rest on an assumption: it

"expressly address[ed]" the statutory authority for the Special Prosecutor's appointment. *See United States v. Verdugo-Urquidez*, 494 U.S. 259, 272 (1990).[2]

The district court's supposition that *Nixon*'s appointment discussion was dicta because the issue was not presented or contested is likewise flawed. Dkt. 672 at 59-62. Both President Nixon's justiciability challenge and the question presented in the Special Prosecutor's certiorari petition (whether the President "is subject" to a subpoena issued by the Special Prosecutor, *see* Dkt. 672 at 60), necessarily required the Court to determine whether the Attorney General had a lawful basis to appoint the Special Prosecutor. *See Six Companies of Cal. v. Joint Highway Dist. No. 13 of Cal.*, 311 U.S. 180, 187 (1940) (a court's "statement of the ground of its decision" is not "a mere dictum"). The government expressly argued the point and cited the same statutes that the Court cited. Brief for the United States, at 27-28, *United States v. Nixon*, Nos. 73-1766, 73-1835 (filed June 21, 1974). President Nixon's acknowledgement of that point in his reply only strengthens the basis for the Court's determination. *See United States v. Kaley*,

---

[2] The district court relied on (Dkt. 672 at 54, 56, 61, 66) the statement in *Verdugo-Urquidez* that the Supreme Court "often grants certiorari to decide particular legal issues while assuming without deciding the validity of antecedent propositions, . . . and such assumptions—even on jurisdictional issues—are not binding in future cases that directly raise the questions." 494 U.S. at 272. As explained above, however, the Court in *Nixon* did not assume as an antecedent proposition the Attorney General's authority to appoint the Special Prosecutor.

579 F.3d 1246, 1253 n.10 (11th Cir. 2009). And, in any event, the distinction between dicta and a holding does not "depend on whether the point was argued by counsel and deliberately considered by the court, but instead on whether the solution of the particular point was more or less necessary to determining the issues involved in the case." *See* Bryan A. Garner et al., *The Law of Judicial Precedent* 51 (2016).

Even if the relevant language from *Nixon* were dicta, the district court was not entitled to cast aside carefully considered, unequivocal language from a unanimous Supreme Court. *See Schwab*, 451 F.3d at 1325-26 ("[T]here is dicta, and then there is Supreme Court dicta."). The Court's statement in *Nixon* was "not subordinate clause, negative pregnant, devoid-of-analysis, throw-away kind of dicta." *See id.* at 1325. And labeling it as "prefatory," *see* Dkt. 672 at 58, 61, 62, 63, 67, does not license a lower court to cast it aside any more than labeling it a "postscript" does, *Schwab*, 451 F.3d at 1325. *Nixon*'s statement should therefore "be treated as authoritative," even if it were deemed "technically dictum." *In re Grand Jury Investigation*, 916 F.3d at 1053 (internal quotation marks omitted); *see Concord*, 317 F. Supp. 3d at 623.

In sum, the district court erred in failing to treat *Nixon*'s conclusion—that Congress has authorized the Attorney General to appoint special counsels—as controlling. That conclusion was a binding holding, or, at least, authoritative

dictum.  Either way, *Nixon* conclusively defeats the defendants' challenge to the Special Counsel's appointment, as every other court to have considered the issue has found.

### B.    Statutory Analysis Confirms that *Nixon* Is Correct

As *Nixon* recognized, four statutes—28 U.S.C. §§ 509, 510, 515, and 533—authorized the Attorney General to appoint the Special Counsel.  Those statutes provide multiple independently sufficient grounds for the Special Counsel's appointment.

### 1.    Section 515

Section 515 authorizes the Attorney General to appoint "special attorneys" like the Special Counsel.  Section 515(b) empowers the Attorney General to "commission[]" attorneys who are "specially retained under authority of the Department of Justice" as "special assistant[s] to the Attorney General" or "special attorney[s]."  28 U.S.C. § 515(b).  Three textual features confirm that it confers appointment authority on the Attorney General.  First, "specially retained *under authority of the Department of Justice*" necessarily means specially retained by the Attorney General, the head of the Department of Justice who is vested with all its functions and powers.  *See* 28 U.S.C. §§ 503, 509.  Second, the power to issue a commission reflects that an appointment has been made: the commission is the "warrant or authority . . . issuing from the

government . . . empowering a person or persons named to do certain acts, or to exercise jurisdiction, or to perform the duties and exercise the authority of an office." H. Campbell Black, *A Dictionary of Law* 226 (1st ed. 1891); *see also Black's Law Dictionary* (12th ed. 2024) (similar); *Dep't of Transp. v. Ass'n of Am. R.R.*, 575 U.S. 43, 58 (2015) (Alito, J., concurring) ("to be an officer, the person should have sworn an oath and possess a commission"). As *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 157 (1803), recognized, "the constitutional power of appointment has been exercised . . . when the last act, required from the person possessing the power, has been performed. This last act is the signature of the commission." Third, specially retained attorneys must "take the oath required by law," 28 U.S.C. § 515(b)—a requirement associated with a new appointment. Section 515(b) thus authorizes the Attorney General to appoint special attorneys by retaining them, having them take the oath of office, and issuing a commission that vests them with authority to assist the Attorney General in fulfilling his statutory obligations. In turn, Section 515(a) confirms that the Attorney General can "specially appoint[]" attorneys "under law" and "specifically direct[]" that they exercise all criminal (and civil) powers possessed by United States Attorneys. 28 U.S.C. § 515(a). Read as a whole, Section 515 thus authorizes the Attorney General to appoint special attorneys and confirms that he can grant

them prosecutorial authority over specifically identified matters—precisely the role of the Special Counsel.

The district court, however, read Section 515(b) as nothing more than a "logistics-oriented statute" providing "technical and procedural content" to "already-'*retained*' 'special attorneys' or 'special assistants' within DOJ." Dkt. 672 at 26. That conclusion rested on three flawed rationales.

a. First, the district court erroneously attached significance to Section 515(b)'s use of the word "retain[]" rather than "appoint." Dkt. 672 at 27-29. But the terms "retain" and "appoint" function synonymously in Section 515. Section 515(a)'s reference to "attorney[s] specially *appointed* by the Attorney General" refers to the very attorneys who are "specially retained" and "commissioned" by the Attorney General under Section 515(b). *Cf. Civil-Service Bill*, 17 Op. Att'y Gen. 504, 506 (1883) ("The use of the word 'employ' instead of the word 'appoint' is unimportant, the former being sometimes used in our legislation in a sense equivalent to appoint."). The primary purpose of enacting the provision now codified at Section 515(a) was to ensure that the special attorneys retained and commissioned under the predecessor to Section 515(b) could "conduct any kind of legal proceeding" in any district. *See infra* at 44-45 (discussing relevant statutory history). That Congress described those attorneys as having been "appointed by the Attorney General" confirms that Congress

22

intended Section 515(b) (and its predecessors) to vest the Attorney General with the power to appoint special counsels.

Section 515(b)'s history confirms that it is, and always has been, a statute granting the power to appoint. Section 17 of the 1870 Act establishing the Department of Justice was a direct precursor to Section 515(b). *See* An Act to Establish the Department of Justice, ch. 150, § 17, 16 Stat. 162, 164-65 (1870) ("DOJ Act"). It provided that "every attorney . . . who shall be specially retained, under the authority of the Department of Justice, . . . shall receive a commission from the head of said Department, as a special assistant to the Attorney-General, or to some one of the district attorneys, *as the nature of the appointment* may require, and shall take the oath required by law." *Id.* (emphasis added). As the statute made clear, all attorneys who were "specially retained" and "commission[ed]" by the Attorney General were thereby *appointed* by him; the precise role they would play affected only "the *nature* of the appointment." *Id.* (emphasis added).

In 1875, Congress carried over the operative language from Section 17 of the DOJ Act into Section 366 of the Revised Statutes with a marginal note describing the special-retention provision as the "Appointment and oath of special attorneys or counsel." 1 Rev. Stat. 61, tit. VIII, § 366 (1875) ("1875 Act"). That marginal note became the title of the provision when it was added

23

to the U.S. Code, and for decades thereafter.  *See* 5 U.S.C. § 315 (1925-26 ed.); *accord* 5 U.S.C. § 315 (1946 ed.).  And while a statute's title often has limited interpretive value, *see infra* at 32, the use of "Appointment" in the title confirms what the plain language shows: Congress understood the statute authorizing the Attorney General to "specially retain[]" an attorney as a statute granting the Attorney General the power of "[a]ppointment."

In 1948, Congress moved the provisions relating to the U.S. Attorneys (formerly known as district attorneys) into Title 28, while temporarily leaving in Title 5 the provisions relating to other parts of the Department.  *See* Pub. L. No. 80-773, 62 Stat. 869, 909 (1948).  Until that point, a single provision had authorized the Attorney General to appoint special attorneys, regardless of whether they would serve "as a special assistant to the Attorney General, or to some one of the district attorneys, or as a special attorney."  5 U.S.C. § 315 (1946 ed.).  After the statutory reorganization—separating the U.S. Attorney provisions from other DOJ provisions—two separate sections authorized the Attorney General to appoint special attorneys.  One (entitled "Appointment of attorneys") authorized the appointment of special attorneys "to assist United States attorneys."  28 U.S.C. § 503 (1952 ed.).  The other (entitled "Appointment and oath of special attorneys") authorized the appointment of attorneys to serve as "special assistant[s] to the Attorney General or special attorney[s]."  5 U.S.C.

24

§ 315 (1952 ed.). The former provision (which became 28 U.S.C. § 543) used the language "[t]he Attorney General may appoint," while the latter provision (which became 28 U.S.C. § 515(b)) kept language from 1870 and 1875, referring to "specially retained" attorneys. As that history illustrates, Congress continues to authorize the Attorney General to appoint special attorneys, either to assist himself or to assist one of the U.S. Attorneys. That Congress used different terminology when describing the appointment power—using "appoint" in one section and "specially retain[]" in the other—does not reflect any intention to limit the scope of the Attorney General's authority. As the Supreme Court has explained, the history of the 1948 revision to Title 28 makes "uniformly clear that no changes of law or policy are to be presumed from changes of language in the revision unless an intent to make such changes is clearly expressed," and thus "[t]he change of arrangement, which placed portions of what was originally a single section in two separated sections cannot be regarded as altering the scope and purpose of the enactment." *Fourco Glass Co. v. Transmirra Prods. Corp.*, 353 U.S. 222, 227 & n.8 (1957) (internal quotation marks omitted).

b. Second, the court erred in reasoning that Section 515(b) cannot authorize appointments because of its use of the past tense. In the district court's view, Section 515(b) governs special attorneys who have already been appointed (under other authority) because it refers to "any attorney specially *retained*."

Dkt. 672 at 27. But "retained" in Section 515(b), like "appointed" in Section 515(a), is not a past-tense verb. It is part of a participial phrase modifying "attorney." And while it is a *past* participle, "[p]ast participles . . . are routinely used as adjectives to describe the present state of a thing." *Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 84 (2017); *see also id.* ("the term 'past participle' is a 'misnomer, since' it 'can occur in what is technically a present tense.'") (quoting P. Peters, *The Cambridge Guide to English Usage* 409 (2004) (ellipsis omitted)). In fact, the main verbs throughout Section 515 are in the present tense: the specially appointed attorney "may . . . conduct" legal proceedings, and the attorney "shall be commissioned" with a title and "shall take the oath." And those present-tense actions should occur together with the appointment, since it makes little sense to "appoint" a special attorney who has no commission or title, who has not taken the oath of office, and who has no power to act.[3]

---

[3] Section 17 of the DOJ Act likewise described the act of retention using present-tense verbs, referring to every attorney "who *shall be* specially retained." DOJ Act, § 17, 16 Stat. 164-65. That phrase became "who *is* specially retained" in the 1875 Revised Statutes, 1875 Act, § 366, 1 Rev. Stat. 61 (emphasis added), but without any intent to change the meaning, *see* Act of June 27, 1866, 14 Stat. 74 (explaining that the Revised Statutes focused on altering style not substance). Congress then simplified "[e]very attorney or counselor who is specially retained" to "[e]very attorney specially retained," Pub. L. No. 80-773, 62 Stat. 895, explaining that change as designed to "omit[] surplus language" solely for

The district court also overlooked the modifier—"specially"—attached to "retained." An attorney who was "*previously*" retained or "*already* retained," *see* Dkt. 672 at 25, 26, 27, 38, 41, is not an attorney who was "*specially* retained"— that is, retained for the specific purpose of serving "as special assistant to the Attorney General or special attorney," 28 U.S.C. § 515(b). The conclusion that Congress intended Section 515(b) to apply only to attorneys who were previously retained for some *other* purpose, or for no purpose at all, cannot be reconciled with the phrase "specially retained."

The district court's strained reading of "retained" also seemingly ascribes to Congress an inexplicable focus on sequencing. In the court's view, the Attorney General could have relied on Section 515(b) to appoint any of the 10,000 already-retained attorneys in the Department of Justice as special counsel to oversee this case. He likewise could have hired Smith for some *other* purpose, *cf.* 5 U.S.C. § 3101 (authorizing executive agencies to hire employees); 5 U.S.C. § 2105 (defining the term "employee" to include "an officer"), and then after any period of time, perhaps even a second, commissioned him as Special Counsel, since at that point he would have satisfied the requirement of being

---

"style purposes," H.R. Rep. No. 80-308, at A588 (1947). Section 515(b)'s reference to an attorney "specially retained" thus means what it meant in 1870: an attorney who "*shall be* specially retained," not an attorney who was *previously* retained.

"already retained."  The court's conclusion that accomplishing the appointment in a single step, rather than two separate steps, "threaten[s] the structural liberty inherent in the separation of powers," Dkt. 672 at 3, finds no support in text, context, history, or common sense.

c.      Finally, the court erred by reading Sections 519 and 543 to cabin the scope of Section 515(b).  According to the district court, because the Attorney General has authority under Section 543 to "appoint attorneys to assist United States attorneys," and because that section is titled "Special attorneys," it follows that that term's "known meaning" consists solely "of attorneys appointed by the Attorney General to *assist* United States Attorneys."  Dkt. 672 at 30-31.  As shown, however, the Attorney General has long had the authority to appoint special attorneys to play a variety of roles, whether "as a special assistant to the Attorney General, or to some one of the district attorneys, or as a special attorney."  5 U.S.C. § 315 (1946 ed.).  For many years, that authority existed in a single section; later, it was codified in two separate sections.  But there is no evidence that, through this act of statutory reorganization, Congress withdrew the Attorney General's longstanding power to appoint special attorneys to assist him directly.  *See, e.g.*, *Fourco Glass*, 353 U.S. at 227.

The district court's reading of Section 519 was similarly misguided.  That section provides that the Attorney General "shall supervise" all federal litigation

28

involving the United States, and "shall direct all United States attorneys, assistant United States attorneys, and special attorneys appointed under section 543." 28 U.S.C. § 519. According to the district court, because the Attorney General "shall direct . . . special attorneys appointed under section 543," it follows that no other category of special attorney exists. Dkt. 672 at 31-32. But a more plausible reading of Section 519 is that while Congress thought it necessary to clarify that the Attorney General's authority to supervise federal litigation extended even to the work of the U.S. Attorney's Offices—whether conducted by the U.S. Attorney, an Assistant U.S. Attorney, or a Special Assistant U.S. Attorney—it reasonably saw no need to clarify that the Attorney General may also supervise the very attorneys he had appointed to assist him under Section 515(b).

## 2. Section 533

Authority for the Attorney General's appointment power also comes from 28 U.S.C. § 533. Section 533 specifically confirms that "[t]he Attorney General may appoint officials . . . to detect and prosecute crimes against the United States." 28 U.S.C. § 533(1). This description aligns with a Special Counsel, who combines the typical roles of law enforcement and prosecutors by both investigating and prosecuting crimes. *See* 28 C.F.R. § 600.1.

The district court's contrary conclusion (Dkt. 672 at 43-50) relied on a flawed textual analysis, namely, that the term "official" in Section 533(1) does not include "officers." But the term "official" readily encompasses officers. *See Black's Law Dictionary* (defining official, *inter alia*, as a "person elected or *appointed* to carry out some portion of a government's sovereign powers") (emphasis added). The Supreme Court's opinion in *Lucia v. S.E.C.*, 585 U.S. 237 (2018), illustrates that point by stating that "[t]he Appointments Clause of the Constitution lays out the permissible methods of appointing 'Officers of the United States,' a class of government *officials* distinct from mere employees." *Id.* at 241 (emphasis added). Many other cases employ the same usage of "official." *See, e.g., Ortiz v. United States*, 585 U.S. 427, 452-53 (2018); *Morrison v. Olson*, 487 U.S. 654, 672 (1988); *Buckley v. Valeo*, 424 U.S. 1, 131 (1976) (per curiam); *United States v. Eaton*, 169 U.S. 331, 343-44 (1898). And interpreting "officials" in Section 533 to include officers does not contradict Congress's use of the term "officer" in other statutes. Rather, as *Lucia* suggests, "official" is a generic term that most naturally covers both officers and employees, *see In re Grand Jury Investigation*, 315 F. Supp. 3d at 644; *see also, e.g.*, 18 U.S.C. § 201(a)(1) ("public official" includes "an officer or employee or person acting for or on behalf of the

United States").[4]  Despite acknowledging the ordinary understanding that "official" is broader than "officer," *see* Dkt. 672 at 44 ("[W]hile all officers may be officials, not all officials are officers."), the district court artificially narrowed the term "official" in Section 533 to mean only "nonofficer employees."  Dkt 672 at 43.  That construction finds no support in statutory text.

Nor does the *noscitur a sociis* canon support that strained interpretation. *See* Dkt. 672 at 45-47.  That canon is used only to construe terms that are "of obscure or doubtful meaning," not to change the meaning of an unambiguous term such as "officials."  *See Russell Motor Car Co. v. United States,* 261 U.S. 514, 520 (1923).  Moreover, the canon may be invoked only "when a string of statutory terms raises the implication that the words grouped in a list should be given related meaning."  *S. D. Warren Co. v. Maine Bd. of Env't Prot.*, 547 U.S. 370, 378 (2006) (internal quotation marks omitted); *see Beecham v. United States,* 511 U.S. 368, 371 (1994) ("That several items in a list share an attribute counsels in favor of interpreting the other items as possessing that attribute as well.").  It has no application to Section 533, which consists of four separate subsections that permit appointment of different types of officials who share no common

---

[4] Multiple statutes that vest the appointment of officers in the President, a court of law, or a Head of Department, U.S. Const. art. II, § 2, cl. 2, use the term "official" to refer to officers.  *See* Dkt. 640 at 2-4 (providing examples).

attribute: subsection 533(1) covers officials who "detect and prosecute crimes"; subsections 533(2) and (3) cover officials who protect the President and Attorney General, respectively; and subsection 533(4) covers officials who carry out investigations for the Justice and State Departments. Section 533's enactment history confirms that reading, as Congress originally enacted and appropriated funds for several of these provisions separately as "miscellaneous objects," Pub. L. No. 66-338, 41 Stat. 1156, 1175 (1921), and continued to make similar appropriations until 1966, when Section 533 was enacted, *see* Pub. L. No. 89-554, 80 Stat. 378, 616 (1966); 28 U.S.C. § 533 (Historical and Revision Notes). The separate subsections of 533 are thus grouped together as a historical artifact, not because they share a common attribute warranting application of the *noscitur* canon.

Finally, the district court emphasized (Dkt. 672 at 50-52) Section 533's placement in a chapter titled "Federal Bureau of Investigation" with the heading "Investigative and other officials; appointment." But "[t]he title of a statute cannot limit the plain meaning of the text"; the title matters "[f]or interpretive purposes" "only when it sheds light on some ambiguous word or phrase." *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 212 (1998) (brackets, ellipsis, and alterations omitted). And there is no textual hint that Section 533(1) is limited to "nonofficer employees" or FBI investigative agents. To the contrary, Section

533(1) allows the appointment of officials "to detect *and prosecute* crimes," and "only attorneys prosecute crimes." *In re Grand Jury Investigation*, 315 F. Supp. 3d at 652-53. That plain-text reading also implements Congress's directive in 1966, when it codified Section 533, that courts draw no "inference of a legislative construction . . . by reason of the location in the United States Code of a provision enacted by this Act or by reason of the caption or catchline thereof." Pub. L. No. 89-554, 80 Stat. 631.

### 3. Sections 509 and 510

Two other provisions in Title 28—Sections 509 and 510—also authorize the Special Counsel's appointment. Congress has vested virtually all the functions of the Department of Justice in the Attorney General. *See* 28 U.S.C. § 509. Congress has also granted the Attorney General broad powers to structure, manage, and staff the Department. He may "prescribe regulations for the government of his department" and "the distribution and performance of its business." 5 U.S.C. § 301. He may "employ such number of employees . . . as Congress may appropriate for from year to year." 5 U.S.C. § 3101. And he may delegate "any function" vested in him to "any other officer, employee, or agency of the Department of Justice," by making any "such provisions as he considers appropriate." 28 U.S.C. § 510.

The Attorney General's power to delegate the performance of "any" of his myriad functions necessarily encompasses the ability to delegate functions involving the exercise of "'significant authority pursuant to the laws of the United States.'" *Lucia*, 585 U.S. at 245. Such a delegation may take many forms, including the creation of a new "continuing" position, *see id.*, or the assignment of the Attorney General's duties to any "officer" or "employee," *see* 28 U.S.C. § 510, including one newly hired for that purpose, *see* 5 U.S.C. § 3101. It follows that, by granting the Attorney General broad authority to create such offices and delegate such significant authority, Congress has vested him with the power to appoint inferior officers. And because one of the powers the Attorney General may delegate is the power to prosecute "offenses against the United States," 28 U.S.C. § 547, it follows that one of the inferior officers he may appoint under Sections 509 and 510 is an official like the Special Counsel.

The district court incorrectly interpreted Section 510 to prevent the Attorney General from bestowing authority on anyone other than existing Department personnel. *See* Dkt. 672 at 24. Section 510's text is not so limited. The Attorney General's act of appointing an officer or hiring an employee under Section 510 necessarily makes the appointed or hired individual a part of the Department (if that individual is not already) to whom the Attorney General may then assign "any function." Such an interpretation also aligns with

34

Congress's aim in Section 510, discussed below, to enable the Attorney General to manage the Department with flexibility.

The history of Sections 509 and 510 confirms that reading. When Congress created the Department in 1870, it authorized the Attorney General to "require any solicitor or officers of the Department of Justice to perform any duty required of said Department or any officer thereof." DOJ Act, § 14, 16 Stat. 164; *see also* 1875 Act, § 366, 1 Rev. Stat. 61. That general power of delegation was expanded in 1950, when Congress adopted several Reorganization Plans proposed by President Truman. *See* Pub. L. No. 81-109, 63 Stat. 203 (1949). Those Reorganization Plans were designed to improve "efficiency and economy in the executive branch," while promoting accountability through "[c]learer lines of responsibility" aligned to each department head. H.R. Doc. No. 81-504, *Reorganization Plans No. 1 to 13 of 1950*, at 1 (1950) (internal quotation marks omitted). To achieve these goals, the Reorganization Plans concentrated responsibility in department heads "for activities within their agencies for which they" were already "held accountable by the President, the Congress, and the people," and empowered department heads "to effect appropriate internal adjustments" within their departments to increase effectiveness and efficiency. *Id.* at 2. Congress adopted Reorganization

Plan No. 2, Pub. L. No. 81-921, 64 Stat. 1261 (1950), and later codified the first two sections as Sections 509 and 510, *see* Pub. L. No. 89-554, § 4(c), 80 Stat. 612.

Attorneys General have long relied on Sections 509 and 510 (and their predecessors) to structure and staff the Department of Justice. *See Applicability of Appointment Provisions of the Anti-Drug Abuse Act of 1988 to Incumbent Officeholders*, 12 Op. O.L.C. 286, 288 n.5 (1988) ("Congress has by statute vested the Attorney General with the authority to take certain measures, including the creation of inferior offices within the Department of Justice, to carry out the functions of his office." (citing 28 U.S.C. § 510)). The Department currently consists of twenty-three Offices, eight Divisions, six Bureaus, and three boards. *See* 28 C.F.R. § 0.1. Although some of these organizational units, such as the National Security Division, were created by Congress,[5] most were created directly by the Attorney General, including the Public Lands Division (now the Environmental and Natural Resources Division), in 1909;[6] the Criminal Division and the Antitrust Division, in 1919;[7] the Tax Division, in 1933;[8] the

---

[5] *See* Pub. L. No. 109-177, 120 Stat. 192, 248 (2006).

[6] *See* Circular No. 114, Order of the Attorney General for Division of Business, Nov. 16, 1909.

[7] 1919 Att'y Gen. Ann. Rep. 6-7, 53, 75; Gregory J. Werden, *Establishment of the Antitrust Division of the U.S. Department of Justice*, 92 St. John's L. Rev. 419 (2018).

[8] 1935 Att'y Gen. Ann. Rep. 51.

Civil Division, in 1953;[9] the Executive Office for U.S. Attorneys, in 1953;[10] the Civil Rights Division, in 1957;[11] and the Executive Office for Immigration Review (which includes the Board of Immigration Appeals and hundreds of Immigration Judges), in 1983.[12]  "[I]ndeed, the structure of the Department is largely a creation of orders by the Attorney General."  Walter Dellinger, *Creation of an Office of Investigative Agency Policies* 4 (O.L.C. Mem. Oct. 26, 1993).

Congress has repeatedly confirmed the lawfulness of these actions.  For example, Congress routinely enacts statutes premised on the lawful existence of offices and officers created or appointed by the Attorney General.  *See, e.g.*, 15 U.S.C. §§ 7a, 7a-2, 18a (addressing functions of the Antitrust Division); 28 U.S.C. § 509B (requiring the Attorney General to "establish a section within the Criminal Division of the Department of Justice with responsibility for the enforcement of laws against suspected participants in serious human rights offenses").  Against this backdrop, Congress's annual appropriations funding these offices and officers confirm—and indeed ratify, if further ratification were

---

[9] Att'y Gen. Order No. 5-53 (1953).

[10] Att'y Gen. Order No. 8-53 (1953).

[11] Att'y Gen. Order No. 155-57 (1957).

[12] Att'y Gen. Order No. 998-83 (1983).

necessary—the Attorney General's power of appointment. *See Fleming v. Mohawk Wrecking & Lumber Co.*, 331 U.S. 111, 116, 118-19 (1947).

As part of the back-and-forth between Congress and the Executive Branch, Congress sometimes exercises its prerogative under the Appointments Clause to make particular inferior officers subject to presidential appointment, with Senate advice and consent. For example, Congress has identified fourteen senior officials in the Justice Department who are currently subject to presidential appointment and Senate confirmation: the Deputy Attorney General, the Associate Attorney General, the Solicitor General, and 11 Assistant Attorneys General. *See* 28 U.S.C. §§ 504, 504a, 505, 506.[13] But Congress knows that these presidentially-appointed-and-Senate-confirmed officials are not the only people in the Department who hold continuing positions and exercise significant authority pursuant to the laws of the United States. *See Lucia*, 585 U.S. at 245; House Committee on Oversight and Reform, United States Government Policy and Supporting Positions 88-99 (2020).

---

[13] Many other officials in the Department, outside of Main Justice, are likewise identified by statute as subject to presidential appointment with Senate advice and consent, including the U.S. Attorneys, U.S. Marshals, and the Directors of the DOJ law enforcement agencies. *See* 28 U.S.C. §§ 541(a), 561(c), 599A(a)(2); Pub. L. No. 90-351, tit. VI, § 1101, 82 Stat. 197, 236 (1968); Reorganization Plan No. 2 of 1973, Pub. L. No. 93-245, § 5(a), 87 Stat. 1091, 1092 (1973).

Indeed, Congress has expressly authorized inferior officers appointed by the Attorney General to exercise significant authority in certain areas. For example, "a deputy solicitor general" may approve a sentencing appeal by the Government in a criminal case. *See* 18 U.S.C. § 3742(b). And a "Deputy Assistant Attorney General . . . in the Criminal Division or National Security Division" may approve an application for a wiretap order. *See* 18 U.S.C. § 2516(1).

As these statutes and appropriations demonstrate, Congress has vested the Attorney General with a general power to appoint inferior officers. And when Congress wants to qualify that grant of appointment power by identifying certain officers who should be subject to Senate advice and consent, it does so explicitly. *See supra* at 38 & n.13.

Congress's decision to confer appointment authority on a department head through broadly worded vesting-and-delegation provisions (subject to explicit carve-outs for certain Senate-confirmed officials) is not unique to the Department of Justice. To the contrary, Congress has long used similar statutes to vest the power to appoint inferior officers in other department heads, including the Secretaries of Defense, State, Treasury, and Labor. *See* 10 U.S.C. § 113(b), (d) (Department of Defense); 22 U.S.C. § 2651a(a)(3), (4) (Department of State); 31 U.S.C. § 321(b)(2) (Department of the Treasury); Reorganization

Plan No. 6 of 1950, Pub. L. No. 81-921, 64 Stat. 1263 (1950) (Department of Labor).  And the heads of these departments have relied on such statutes to appoint hundreds of inferior officers.  *See, e.g.*, Treasury Order 101-06.

The district court thus erred in its determination that "when Congress 'by Law vest[s] the Appointment of such inferior Officers . . . in the Heads of Departments,' it does so in a particular way"—namely, by "track[ing] the language of the Appointments Clause."  Dkt. 672 at 47.  In fact, Congress uses a wide variety of language to vest appointment power in heads of departments.  Sometimes Congress precisely "tracks the language of the Appointments Clause."  *See id.* at 47-48.  But sometimes Congress uses vesting-and-delegation provisions like those found in Sections 509 and 510.  *See Willy v. Administrative Review Bd.*, 423 F.3d 483, 491-92 (5th Cir. 2005) (holding that the Secretary of Labor was vested "with ample authority to create the [Administrative Review Board], appoint its members, and delegate final decision-making authority to them," based on "[t]he broad language employed by Congress in the Reorganization Plan No. 6 of 1950 and in 5 U.S.C. § 301"); *Al Bahlul v. United States*, 967 F.3d 858, 874 (D.C. Cir. 2020) ("While the explicit use of the term 'appoint' may 'suggest[]' whether a statute vests the appointment power, . . . Congress need not use explicit language to vest an appointment in someone

other than the President." (quoting *Edmond v. United States*, 520 U.S. 651, 658 (1997)).

Ultimately, Congress has broad discretion to decide not only *whether* to vest department heads with appointment authority, but also *how* to do so, and it has exercised that discretion in various ways over time. *See Pa. Dep't of Pub. Welfare v. U.S. Dep't of Health & Hum. Servs.*, 80 F.3d 796, 804-05 (3d Cir. 1996). The district court erred by focusing only on the statutes that follow one particular pattern, while failing to acknowledge the vesting-and-delegation pattern that Congress has used to grant appointment power to the heads of some of the oldest and largest departments in the Executive Branch.

*       *       *

The sole question this case presents is whether Congress has by law authorized the Attorney General to appoint the Special Counsel. Congress has done so in Sections 509, 510, 515, and 533, and the district court was wrong to view that straightforward question of statutory construction as implicating concerns about "structural liberty," "structural integrity," "democratic accountability," or "usurpation . . . 'by indirection.'" *See, e.g.*, Dkt. 672 at 3, 15, 16. Congress is free to vest a department head with the power to appoint inferior officers based on its assessment of "administrative convenience." *Edmond*, 520

U.S. at 660.  Where, as here, Congress does so, it fully satisfies the Appointments Clause.

### C. The Long History of Appointments of Special Counsels Reflects the Attorney General's Authority to Make the Appointment Here

For more than 150 years, Attorneys General have appointed special counsels to investigate and prosecute some of the nation's most consequential cases.  This "deeply rooted tradition of appointing an outside prosecutor to run particular federal investigations," Brett M. Kavanaugh, *The President and the Independent Counsel*, 86 Geo. L.J. 2133, 2142-43 (1998), further confirms the lawfulness of the Special Counsel's appointment.

1.  Attorneys General appointed special counsels even before the creation of the Department of Justice.  In 1857, the Attorney General appointed Edwin Stanton as special counsel to prosecute a land-fraud claim in California.  *See* Homer Cummings & Carl McFarland, *Federal Justice* 134-36 (1937); *United States v. Limantour*, 26 F. Cas. 947 (N.D. Cal. 1858).  And in the wake of the Civil War, Attorneys General appointed outside attorneys to prosecute some of the most significant cases of the day, including the prosecution of Jefferson Davis for treason[14] and the prosecution of John Surratt for aiding and abetting

---

[14] *See* Cynthia Nicoletti, *Secession on Trial: The Treason Prosecution of Jefferson Davis* 39, 47 (Cambridge Univ. Press 2017).

the assassination of President Lincoln.[15]  *See* Cong. Globe, 41st Cong., 2d Sess. 3034-39 (Apr. 27, 1870); S. Exec. Doc. 40-13 (1867).

When creating the Department of Justice, Congress recognized the need for the Attorney General to continue appointing such "leading counsel."  Cong. Globe, 41st Cong., 2d Sess. 3035-36 (Apr. 27, 1870).  Congress thought it more appropriate and cost-effective, however, to hire these attorneys into the Department directly, paying them a salary and ensuring that each "holds a commission under the United States and is responsible to the law and the proper authorities."  *Id.*  Those concerns led directly to language in the 1870 Act, which (as noted) required every attorney "specially retained, under the authority of the Department of Justice," to "receive a commission from the head of said Department, as a special assistant to the Attorney-General, or to some one of the district attorneys, as the nature of the appointment may require."  DOJ Act § 17, 16 Stat. 164-65; *see also* 1875 Act, § 366, 1 Rev. Stat. 61.  Congress thus granted the Attorney General discretion "to determine whether the public interests required the employment of special counsel."  *United States v. Crosthwaite*, 168 U.S. 375, 379 (1897); *see also United States v. Winston*, 170 U.S.

---

[15] *See Death of a Noted Jurist*, N.Y. Times (Mar. 7, 1892).

522, 525 (1898) (when the Attorney General "deems it essential," he may "employ special counsel").

"Armed with these provisions, Attorneys General made extensive use of special attorneys." *In re Persico*, 522 F.2d 41, 54 (2d Cir. 1975). During the administration of Theodore Roosevelt, for example, the Attorney General appointed special counsels to conduct prominent investigations into "gross corruption" in the Post Office Department, *see* H.R. Doc. No. 58-383, at 6, 197 (1904); land fraud in Oregon, *see* 44 Cong. Rec. H4541 (daily ed. July 19, 1909); Lincoln Steffens, *The Taming of the West, Pt. II*, in The American Magazine, vol. 64, at 587-99 (Oct. 1907); and fraudulent importation of Japanese silks, *United States v. Rosenthal*, 121 F. 862 (C.C. S.D.N.Y. 1903).

On the rare occasion when a court raised doubts about the authority of these special counsels, Congress quickly intervened. In *Rosenthal*, for example, the court dismissed the indictment, holding that a special assistant to the Attorney General could not conduct grand jury proceedings. 121 F. at 868. The court acknowledged that Section 366 "recogni[zed] the Attorney General's power, not elsewhere stated, to appoint a 'special assistant to the Attorney General,' 'to assist in the trial of any case.'" *Id.* at 867. But because Section 366 referred only to "trial[s]," the court held that a special assistant could not conduct grand jury proceedings. *See id.* at 865-68. Congress responded in 1906

44

with a law whose "express purpose . . . was to overrule the broad holding in *Rosenthal*," explicitly giving "specially-retained outside counsel" all of the powers of a U.S. Attorney. *In re Persico*, 522 F.2d at 59. That law—the predecessor to Section 515(a)—confirmed that "any attorney or counselor specially appointed by the Attorney-General" was authorized to "conduct any kind of legal proceeding, civil or criminal, including grand jury proceedings," which could otherwise be conducted by U.S. District Attorneys. Pub. L No. 59-404, 34 Stat. 816 (1906). As the House Report explained, "[t]here can be no doubt of the advisability of permitting the Attorney-General to employ special counsel in special cases"; such appointments had "been the practice to do so in the past," and "it will be necessary that this practice shall continue in the future." H.R. Rep. No. 59-2901, at 2 (1906).

Attorneys General regularly appointed special counsels from within and outside the Department in the decades that followed,[16] including one to

---

[16] *See, e.g.*, *May v. United States*, 236 F. 495, 498 (8th Cir. 1916); *United States v. Cohen*, 273 F. 620, 620-21 (D. Mass. 1921); *Ewert v. Bluejacket*, 259 U.S. 129, 133 (1922); *United States v. Morse*, 292 F. 273, 276 (S.D.N.Y. 1922); *United States v. Martins*, 288 F. 991, 992 (D. Mass. 1923); *Yaselli v. Goff*, 12 F.2d 396, 398 (2d Cir. 1926), *aff'd*, 275 U.S. 503 (1927) (per curiam); *Hale v. United States*, 25 F.2d 430, 435 (8th Cir. 1928); *United States v. Amazon Indus. Chem. Corp.*, 55 F.2d 254, 256 (D. Md. 1931); *State of Russia v. Nat'l City Bank of N.Y.*, 69 F.2d 44, 48 (2d Cir. 1934); *Belt v. United States*, 73 F.2d 888, 888 (5th Cir. 1934); *Shushan v. United States*, 117 F.2d 110, 113-14 (5th Cir. 1941); *United States v. Powell*, 81

investigate allegations of corruption within the Justice Department during the Truman Presidency. David Logan, Cong. Research Serv., *Historical Uses of a Special Prosecutor: The Administrations of Presidents Grant, Coolidge and Truman* 26-35 (1973). Congress sometimes amended the applicable statutes to expand and clarify the scope of the Attorney General's authority. In 1930, for example, Congress amended the precursor to Section 515(b) (then codified at 5 U.S.C. § 315) to allow the Attorney General to designate "special attorney[s]" in addition to "special assistant[s] to the Attorney General." *See* Act of Apr. 17, 1930, Pub. L. No. 71-133, 46 Stat. 170. But despite the widespread use of special counsels during this period, Congress never questioned the Attorney General's power to make such appointments. To the contrary, Congress routinely appropriated money to fund their work.[17]

Special counsels received new prominence during Watergate. Citing Sections 509 and 510, Attorney General Elliot Richardson appointed Archibald Cox as the Director of the Watergate Special Prosecution Force. *See* Att'y Gen.

---

F. Supp. 288, 291 (E.D. Mo. 1948); *United States v. Milanovich*, 303 F.2d 626, 629 (4th Cir. 1962).

[17] Act of Aug. 30, 1890, ch. 837, 26 Stat. 371, 409-10; Act of Mar. 3, 1891, ch. 542, 26 Stat. 948, 986; Act of Mar. 3, 1901, ch. 853, 31 Stat. 1133, 1181-82; Act of Feb. 25, 1903, Pub. L. No. 57-115, 32 Stat. 854, 903-04; Act of July 19, 1919, Pub. L. No. 66-21, 41 Stat. 163, 210; Act of Mar. 4, 1921, Pub. L. No. 66-389, 41 Stat. 1367, 1412; Act of June 3, 1948, Pub. L. No. 80-597, 62 Stat. 305, 317.

Order No. 518-73 (May 25, 1973).  Following the so-called Saturday Night Massacre—resulting in the resignation of Richardson and the firing of Cox—Acting Attorney General Robert Bork appointed Leon Jaworski as the Director of the Watergate Special Prosecution Force, again citing Sections 509 and 510 as authority.  *See* Att'y Gen. Order No. 552-73 (Nov. 5, 1973).  Bork also cited Sections 509, 510, and 515 when issuing regulations to "illustrat[e] the authority entrusted to the Special Prosecutor," including the authority to conduct grand jury proceedings and to "contest the assertion of 'Executive Privilege.'"  *See* Att'y Gen. Order No. 551-73 (Nov. 2, 1973).  Roughly eight months later, the Supreme Court confirmed the legality of the Attorney General's actions.  *See Nixon*, 418 U.S. at 694-95.

In the wake of Watergate, Congress passed the Ethics in Government Act of 1978, which authorized the appointment of a "Special Prosecutor" (later relabeled an "Independent Counsel") by a Special Division of the D.C. Circuit. Pub. L. No. 95-521, § 601, 92 Stat. 1824, 1867.  But nothing in that statute purported to limit or revoke the Attorney General's preexisting statutory authority to appoint a special counsel directly.[18]  Instead, the statute created a

---

[18] The lead Senate Report, for example, recounted prominent special counsels appointed by Attorneys General, and highlighted their lack of independence, but expressed no doubt that the Attorney General had been

47

second, parallel mechanism for such appointments. *See, e.g.*, Kavanaugh, *supra*, at 2139 (explaining that "current federal law provides *two* different mechanisms for appointment of special counsel").

Following the Act's passage, Attorneys General continued to appoint special counsels outside of the Act. During the Carter administration, the Attorney General, citing Section 515, appointed a special counsel to investigate financial dealings involving the President's family peanut warehouse.[19] Later, when questions arose about the constitutionality of the appointment provisions of the Ethics in Government Act, *see Morrison*, 487 U.S. at 668, the Attorney General executed a parallel appointment of Lawrence Walsh to investigate the Iran-Contra affair, citing Sections 509, 510, and 515.[20] The Acting Attorney General appointed James McKay in 1987 to investigate allegations of illicit

---

vested with the power to appoint them. *See* S. Rep. No. 95-170, at 2-3, 6-7 (1977).

[19] 125 Cong. Rec. H5534 (daily ed. Mar. 20, 1979) (statement of Rep. Sensenbrenner); *The Future of the Independent Counsel Act: Hearings Before the Senate Comm. on Governmental Affairs*, S. Hrg. 106-131, at 113 (1999).

[20] Offices of Independent Counsel; General Powers and Establishment of Independent Counsel—Iran/Contra, 52 Fed. Reg. 7270-02 (Mar. 10, 1987) (codified at 28 C.F.R. pt. 600 (1988) ("General Powers Of Independent Counsel") & pt. 601 (1988) ("Jurisdiction of the Independent Counsel: Iran/Contra")); *see also In re Sealed Case*, 829 F.2d at 51-52, 55-56.

lobbying and conflicts of interest.[21]    During the George H.W. Bush administration, the Attorney General appointed three separate special counsels from outside the Department to investigate allegations of criminal conduct within the government. *See* Cong. Research Serv., *Independent Counsel Law Expiration and the Appointment of "Special Counsels"* 3-4 (2002).   And when the Independent Counsel Act briefly lapsed during the Clinton Administration, the Attorney General appointed Robert Fiske to investigate the Whitewater allegations against the President and his former business partners.   *See Independent Counsel: In re Madison Guaranty Savings & Loan Association*, 59 Fed. Reg. 5321-02 (Feb. 4, 1994).

When Congress was considering whether to allow the Independent Counsel Act to expire, it repeatedly sought information about "how the Department of Justice would handle matters that" were then handled by statutory Independent Counsels.   *The Future of the Independent Counsel Act: Hearings Before the Senate Comm. on Governmental Affairs*, S. Hrg. 106-131, at 315 (1999).   In response, the Department assured Congress that the Attorney General possessed adequate authority to name a special outside counsel and

---

[21] 28 C.F.R. § 602.1 ("Independent Counsel: In re Franklyn C. Nofziger"); *see* 52 Fed. Reg. 22,439-01 (June 12, 1987); 52 Fed. Reg. 35,543-01 (Sept. 22, 1987).

would exercise that authority if necessary, including to handle particularly sensitive matters "that pose a substantial potential for a significant conflict of interest." *Id.* The Attorney General likewise testified that, in light of the Act's "structural[] flaw[s]," the goals of the Act "would best be served" by letting the Act expire and "return[ing] to the system that existed before the" Act, "when the Attorney General exercised the authority to appoint a special prosecutor in exceptional situations." *Id.* at 243, 245. She "emphasize[d]" that "the Attorney General has the ability to appoint a special prosecutor, and I, for one, would not hesitate to do so in an appropriate case, should the Act lapse." *Id.* at 247. Indeed, during the extensive congressional, scholarly, and public debate about whether the Act should be reauthorized, one point on which there was widespread agreement was that the effect of letting the Act expire would be to return "to the pre-Watergate system" in which "[t]he Attorney General has the statutory authority to appoint special counsel." *Id.* at 4 (statement of Sen. Thompson); *see also id.* at 8, 15, 20, 29, 37, 75, 120-25, 139, 148, 151, 194 (similar statements from other Senators and witnesses).[22] It was against this backdrop that Congress chose to let the Act expire.

---

[22] For example, former Senators Robert Dole and George Mitchell asked the American Enterprise Institute and the Brookings Institution to convene "a bipartisan group of eight distinguished citizens"—including the current Chief Justice—to study and recommend alternatives to the Independent Counsel Act.

After Congress did so, the Attorney General promulgated the regulations that currently govern Special Counsels "selected [by the Attorney General] from outside the United States Government," 28 C.F.R. § 600.3(a), invoking "the authority vested in [her] as Attorney General, including 5 U.S.C. 301 and 28 U.S.C. 509 and 510." 64 Fed. Reg. 37,038, 37,042 (July 9, 1999). In the years since, Attorneys General have continued to appoint special counsels, including John Danforth, Patrick Fitzgerald, Robert S. Mueller III, John Durham, Robert Hur, and David Weiss—some from within the Department and some brought into the Department like Special Counsel Smith. Courts uniformly rejected challenges to those appointments, *see supra* at 16-17, until the district court's decision in this case.

2. In the district court's view (Dkt. 672 at 36-41), however, this history presents nothing more than a "spotty" picture of "an ad hoc, inconsistent practice" that "makes it near impossible to draw any meaningful conclusions

---

*See* American Enterprise Inst. & Brookings Inst., *Project on the Independent Counsel Statute: Report and Recommendations*, at iii (May 1999). The resulting report explained that "[s]ince creation of the Department of Justice in 1870, the Attorney General has had standing statutory authority, now in 28 U.S.C. § 515, to retain a counsel as a 'special assistant to the Attorney General' or as a 'special attorney." *Id.* at 5. Although the report recommended a legislative response to the Act's expiration, it noted that the appointment provision in the proposed legislation merely "duplicates authority that exists in 28 U.S.C. § 515, and other U.S. Code sections." *Id.* at 14 n.6, Appendix A-1.

about Congress's approval of modern special counsels like Special Counsel Smith." *Id.* at 36-41. To reach that conclusion, the district court attached undue weight to several superficial variations in historical practice that shed no light on the question at hand.

To begin, the district court erroneously relied on variations in the mechanism by which special counsels have been appointed, emphasizing (Dkt. 672 at 36-38) that (1) not every special counsel in history has been appointed by the Attorney General, and (2) not every Attorney General who appointed a special counsel explicitly relied on Section 515. But the question is not whether Attorneys General "were *solely* and *exclusively* responsible for the act of appointment." *Id.* at 37 (emphasis added). The question is whether Congress has vested Attorneys General with the power of appointment; the fact that the President has, at times, *also* exercised appointment power, and that on one occasion the President's selections were made subject to Senate confirmation,[23] sheds no light on the Attorney General's power. Nor is it significant that Attorneys General have cited different statutory provisions when appointing a special counsel. Sections 515, 533, and 509/510 each independently authorize

---

[23] *See* Jerome J. Shestack, *Foreword: The Independent Counsel Act Revisited*, 86 Geo. L.J. 2011, 2012 (1998) (noting that the Teapot Dome scandal was "the first and last time Senate consent was involved" with a special counsel's appointment).

the Attorney General to appoint a special counsel, and the fact that the Attorneys General have cited different statutes at different times supports, rather than undermines, their authority to do so.

The district court also attached undue weight to the fact that some special counsels have been appointed from within the Department, while others have been appointed from outside the Department. *See* Dkt. 672 at 38-39. The district court erroneously derived that distinction from Section 515(b)'s use of the past participle "retained," while offering no theory for why Congress would have built such a distinction into the statute. The district court compounded its error by fundamentally mischaracterizing the Special Counsel's role. According to the district court, "Mr. Smith is *a private citizen* exercising the full power of a United States Attorney." *Id.* at 41 (emphasis added). But he is not a private citizen: he is a sworn officer of the Department of Justice. There was a period in American history when "private citizens" prosecuted some of the most consequential cases of the day, such as the prosecution of Jefferson Davis. But that has not been the practice for more than 150 years. And to the extent the district court used the term "private citizen" to refer to someone who was not *already* a member of the Department of Justice before receiving his commission, that definition applies equally to every member of the Department and has no

relevance to the Appointments Clause or to the statutes authorizing the appointment of Special Counsel Smith.

The district court likewise attached undue weight to variations in the degree of independence granted to special counsels, emphasizing (Dkt. 672 at 39) that not all "have operated with the same degree of power and autonomy as Special Counsel Smith." Congress has granted the Attorney General not only the power to appoint special counsels, but discretion to determine how much independence to give them. *See* 28 U.S.C. §§ 510, 515. In some cases, the Attorney General might direct a special counsel to play a relatively minor role. But in other cases, he might direct a special counsel to oversee an entire investigation and prosecution, subject to greater or lesser oversight by the Attorney General as his judgment dictates. Indeed, the latter model has been the norm for the half century since Watergate, and it goes back further still. For example, when Attorney General Knox appointed Francis Heney as a special assistant in 1909 to investigate the land fraud cases in Oregon, the local District Attorney initially "regarded [Heney] as an assistant," but Knox clarified that Heney was "'to be in full charge,'" telling the District Attorney that Heney "was to be obeyed as the Attorney-General himself would be obeyed." Steffens, *supra*, at 587. Likewise, in 1865, William Evarts and John Clifford were "hired to direct the [Jefferson] Davis prosecution," Nicoletti, *supra*, at 126, not merely to

54

serve as assistants to a local District Attorney. The fact that Attorneys General have chosen to give special counsels varying amounts of autonomy in different circumstances in no way casts doubt on their authority to make the appointments in the first instance.

Finally, the district court attached undue weight to variations in nomenclature, finding it significant that "[s]pecial-attorney-like figures bore many titles throughout the decades," including "[s]pecial attorneys," "[s]pecial assistants," "[s]pecial prosecutors," "[i]ndependent counsels," and "special counsels." Dkt. 672 at 38. But any linguistic variation between these terms is entirely superficial. When Congress amended Section 515(b)'s predecessor in 1930 to allow the Attorney General to commission an appointee as either a "special attorney" or a "special assistant to the Attorney General," it did so strictly to avoid potential "confusion and misunderstanding" arising from the latter term, demonstrating that any difference between the two titles was purely semantic. *See* H.R. Rep. No. 71-229, at 1 (1930). And any subtle, non-semantic difference between a special counsel, a special prosecutor, a special attorney, and a special assistant to the Attorney General has no bearing on whether Congress has vested the Attorney General with the power to make such appointments.

3.     The district court's reasoning also needlessly casts doubt on longstanding practices in the Department of Justice and across the Executive Branch.  It suggests that every special counsel throughout history who was appointed from outside the Department of Justice and who did not assist a U.S. Attorney was invalidly appointed; that every Attorney General who made such appointments acted *ultra vires*; that Congress repeatedly overlooked the persistent pattern of errors; and that the Supreme Court itself failed to spot that flaw in *Nixon*.  But it also goes much further.  If the Attorney General lacks the power to appoint inferior officers, that conclusion would invalidate the appointment of every member of the Department who exercises significant authority and occupies a continuing office, other than the few that are specifically identified by statute.  *See supra* at 38-39.  At a minimum, that list includes high-ranking Department positions such as the Deputy Solicitors General and the Deputy Assistant Attorneys General.  The district court's rationale would likewise raise questions about hundreds of appointments throughout the Executive Branch, including in the Departments of Defense, State, Treasury, and Labor, which all rely on statutes resembling Sections 509 and 510 to support their Secretary's authority to appoint inferior officers.  *See supra* at 39-40.  The implausibility of that outcome underscores why the district court's novel conclusions lack merit.

## II. The Special Counsel Was Properly Funded

The Special Counsel is properly funded through the congressionally enacted "permanent indefinite appropriation" to "pay all necessary expenses of investigations and prosecutions by independent counsel appointed pursuant to the provisions of 28 U.S.C. 591 et seq. or other law."  Pub. L. No. 100-202, tit. II, § 101(a), 101 Stat. 1329, 1329-9 (1987) (28 U.S.C. § 591 note).  The district court's contrary conclusion depended solely on its erroneous determination that no "other law" supported the Special Counsel's appointment.  Dkt. 672 at 87. But Sections 509, 510, 515, and 533 authorized the Attorney General to appoint the Special Counsel, as the Supreme Court held in *Nixon*.  *See supra* at 13-56. Because its premise was wrong, so was its conclusion.

## CONCLUSION

The Court should reverse the dismissal order and remand for further proceedings.

Respectfully submitted,

J.P. COONEY
Deputy Special Counsel

JAY I. BRATT
MICHAEL R. DREEBEN
RAYMOND N. HULSER
Counselors to the Special Counsel

JACK SMITH
Special Counsel

DAVID V. HARBACH II
JOHN M. PELLETTIERI
CECIL W. VANDEVENDER
/S/ JAMES I. PEARCE
Assistant Special Counsels
U.S. Department of Justice
950 Pennsylvania Ave., N.W.

Rm. B-206
Washington, D.C. 20530

August 26, 2024

## CERTIFICATE OF COMPLIANCE

1.      This brief contains 12,978 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in proportionally spaced, 14-point serif typeface using Microsoft Office Word 2017.

/s/James I. Pearce
James I. Pearce
Assistant Special Counsel

**CERTIFICATE OF SERVICE**

I hereby certify that on August 26, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit by using the CM/ECF system. I further certify that appellees' counsel are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ James I. Pearce
James I. Pearce
Assistant Special Counsel
