# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

UNITED STATES OF AMERICA,
*Appellant,*

v.

DONALD J. TRUMP, WALTINE NAUTA, and CARLOS DE OLIVEIRA
*Defendants-Appellees*

On appeal from the United States District Court
for the Southern District of Florida
Case No. 23-80101-CR-CANNON

## BRIEF OF AMICI CONSTITUTIONAL LAWYERS, FORMER GOVERNMENT OFFICIALS, AND STATE DEMOCRACY DEFENDERS ACTION SUPPORTING APPELLANT UNITED STATES OF AMERICA AND REVERSAL OF JUDGMENT

MATTHEW A. SELIGMAN
STRIS & MAHER LLP
777 S Figueroa St., Suite 3850
Los Angeles, CA 90017
(213) 995-6873
mseligman@stris.com

*Counsel for Amici*

# CORPORATE DISCLOSURE STATEMENT

State Democracy Defenders Action ("SDDA") submits this corporate disclosure statement pursuant to Federal Rules of Appellate Procedure 26.1 and 29 and 11th Circuit Rule 26.1-2. SDDA is a non-profit organization that has no parent company. It has issued no stock, and as such no person or entity owns ten percent or more of its stock.

# CERTIFICATE OF INTERESTED PERSONS

A list of the *amici* is attached hereto. Undersigned counsel for *amici* certifies that neither *amici* nor counsel for *amici* have a parent corporation, and no company owns a ten percent or greater interest in *amici* or counsel for *amici*. Pursuant to 11th Circuit Rule 26.1-1(b), the undersigned further certifies that the above information will be entered into the web-based stock ticker symbol CIP, indicating that there is nothing to declare.

Pursuant to Federal Rule of Appellate Procedure 26.1 and 11th Circuit Rules 26.1-1 and 26.1-2, and based on the Certificate of Interested Persons set forth on pages C-1 to C-7 of the Brief of the United States filed on August 26, 2024 [doc. 18], the undersigned

hereby certifies that the following is a list of persons and entities who

have an interest in the outcome of this case:

1. Advance Publications, Inc.

2. Alonso, Cristina

3. America First Legal Foundation

4. American Broadcasting Companies, Inc., d/b/a ABC News

5. Ayer, Donald

6. Blackman, Joshua

7. Blanche, Todd

8. Bloomberg, L.P.

9. Bove, Emil

10. Bowman, Chad

11. Bratt, Jay

12. Cable News Network, Inc.

13. Calabresi, Steven

14. Caldera, Louis

15. Cannon, Hon. Aileen

16. Cate, Matthew

17. CBS Broadcasting, Inc. o/b/o CBS News

18. Citizens for Responsibility and Ethics in Washington

19. Citizens United

20. Citizens United Foundation

21. CMG Media Corporation

22. Coleman, Tom

23. Conway, George

24. Cooney, J.P.

25. Cox Enterprises, Inc. (COX) d/b/a The Atlanta Journal-Constitution

26. Dadan, Sasha

27. De Oliveira, Carlos

28. Dow Jones & Company, Inc., publisher of The Wall Street Journal

29. Dreeben, Michael

30. Edelstein, Julie

31. Fields, Lazaro

32. Fitzgerald, Patrick

33. Fort Myers Broadcasting Company

34. Gerson, Stuart

35. Gertner, Nancy

36. Gillers, Stephen

37. Goodman, Hon. Jonathan

38. Gray Media Group, Inc. (GTN)

39. Guardian News & Media Limited

40. Harbach, David

41. Hirsch, Steven A.

42. Hulser, Raymond

43. Insider, Inc.

44. Irving, John

45. Kise, Christopher

46. Lacovara, Philip Allen

47. Landmark Legal Foundation

48. Lawson, Gary

49. Los Angeles Times Communications LLC, publisher of The Los Angeles Times

50. Maynard, Hon. Shaniek Mills

51. McKay, John

52. McNamara, Anne

53. Meese, Edwin

54. Mishkin, Maxwell

55. Mukasey, Hon. Michael B.

56. Murrell, Larry Donald

57. National Cable Satellite Corporation d/b/a C-SPAN

58. National Public Radio, Inc.

59. Nauta, Waltine

60. NBCUniversal Media, LLC d/b/a NBC News, a subsidiary of Comcast Corporation (CMCSA)

61. Orlando Sentinel Media Group, publisher of the Orlando Sentinel

62. Pearce, James

63. Pellettieri, John

64. POLITICO LLC

65. Potter, Trevor

66. Radio Television Digital News Association

67. Raul, Alan Charles

68. Reinhart, Hon. Bruce E.

69. Reuters News & Media, Inc.

70. Russell, Lauren

71. Salario, Samuel

72. Sample, James J.

73. Sasso, Michael

74. Schaerr, Gene

75. Seligman, Matthew

76. Smith, Abbe

77. Smith, Fern

78. Smith, Jack

79. State Democracy Defenders Action

80. Sun-Sentinel Company, LLC, publisher of the South Florida Sun Sentinel

81. TEGNA, Inc. (TGNA)

82. Telemundo Network Group, LLC d/b/a Noticias Telemundo

83. Thakur, Michael

84. The Associated Press

85. The E.W. Scripps Company (SSP)

86. The McClatchy Company, LLC (MNI) d/b/a the Miami Herald

87. The New York Times Company (NYT)

88. The Palm Beach Post and USA TODAY, publications operated by subsidiaries of Gannett Co., Inc. (GCI)

89. Thompson, Larry

90. Tillman, Seth Barrett

91. Tobin, Charles

92. Torres, Hon. Edwin

93. Trent, Edward H.

94. Tribe, Laurence

95. Troye, Olivia

96. Trump, Donald J.

97. Trusty, James

98. Twardy, Stanley

99. United States of America

100. Univision Networks & Studios, Inc.

101. VanDevender, Cecil

102. Weiss, Stephen

103. Weld, William

104. Wharton, Kendra

105. Whitman, Christine Todd

106. Woodward, Stanley

107. WP Company LLC d/b/a The Washington Post

108. WPLG, Inc.

Respectfully submitted,

Dated: September 3, 2024

/s/ Matthew A. Seligman
MATTHEW A. SELIGMAN
*Counsel of Record*
STRIS & MAHER LLP
777 S Figueroa St., Suite 3850
Los Angeles, CA 90017
(213) 995-6873
mseligman@stris.com

*Counsel for Amici*

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ..................................... C-1

CERTIFICATE OF INTERESTED PERSONS ................................ C-1

TABLE OF CONTENTS ....................................................... i

TABLE OF CITATIONS ....................................................... ii

STATEMENT OF INTEREST OF AMICI CURIAE ............................ 1

STATEMENT OF THE ISSUE ................................................ 2

SUMMARY OF THE ARGUMENT ............................................ 2

ARGUMENT AND CITATIONS TO AUTHORITY ............................ 5

    I.   The Special Counsel is an Inferior Officer Under the
Appointments Clause ................................................ 5

    II.  Congress Authorized the Attorney General to Appoint
the Special Counsel ................................................ 20

CONCLUSION ................................................................ 31

CERTIFICATE OF COMPLIANCE ........................................... 31

CERTIFICATE OF SERVICE ................................................ 33

# TABLE OF CITATIONS

**Page(s)**

**Cases**

*Buckley v. Valeo,*
424 U.S. 1 (1976).............................................................. 8

*Ex parte Collett,*
337 U.S. 55 (1949)............................................................ 25

*Donald J. Trump v. United States,*
No. 9:22-CV-81294-AMC (S.D. Fla. Aug. 30, 2022) ............ 2

*Edmond v. United States,*
520 U.S. 651 (1997)............................................... 8, 11, 14*

*Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.,*
561 U.S. 477 (2010)........................................................... 11

*In re Grand Jury,*
916 F.3d 1047 (D.C. Cir. 2019) ...............................8, 15, 16, 28, 30*

*Lawson v. FMR LLC,*
571 U.S. 429 (2014)........................................................... 24

*Ligon v. City of New York,*
736 F.3d 118 (2d Cir. 2013), *vacated in part,* 743 F.3d 362
(2d Cir. 2014) ................................................................... 31

*Lucia v. SEC,*
585 U.S. 237 (2018)..................................................... 11, 23

*Morrison v. Olson,*
487 U.S. 654 (1988).....................2, 8, 10, 11, 15, 18, 19, 20*

*Porter v. Nussle,*
534 U.S. 516 (2002)........................................................... 24

*Ramos v. Louisiana,*
590 U.S. 83 (2020)............................................................ 30

*Richardson v. Ala. State Bd. of Educ.*,
    935 F.2d 1240 (11th Cir. 1991) ........................................... 6

*In re Sealed Case*,
    829 F.2d 50 (D.C. Cir. 1987) ............................................. 15

*Stanley v. City of Sanford, Fla.*,
    83 F.4th 1333 (11th Cir. 2023), *cert. granted sub nom.*
    *Stanley v. City of Sanford*, No. 23-997 (U.S. June 24,
    2024) ........................................................................ 6

*Teel v. Lozada*,
    99 F.4th 1273 (11th Cir. 2024) ........................................... 6

*Trainmen v. Baltimore & Ohio R. Co.*,
    331 U.S. 519 (1947) ...................................................... 24

*Trump v. United States*,
    54 F.4th 689 (11th Cir. 2022) (per curiam) ............................. 4

*United States v. Arthrex, Inc.*,
    594 U.S. 1 (2021) ........................................................ 14

*United States v. Culver*,
    598 F.3d 740 (11th Cir. 2010) ........................................... 6

*United States v. Manafort*,
    321 F. Supp. 3d 640 (E.D. Va. 2018) .................................... 12

*United States v. Nixon*,
    418 U.S. 683 (1974) ......................................... 2, 15, 28, 29*

*United States v. Ron Pair Enters., Inc.*,
    489 U.S. 235 (1989) ..................................................... 25

*United States v. Torkington*,
    874 F.2d 1441 (11th Cir. 1989) ......................................... 5

## Constitutions

U.S. Const., art. II, § 2 ...................................................... 7

U.S. Const. art. II, § 2, cl. 2 ..........................................1, 2, 5, 7, 8, 20, 23*

U. S. Const., art. III, § 1 ........................................................ 30

**Statutes**

2 U.S.C. § 1602 ....................................................................... 22

5 U.S.C. § 3110 ....................................................................... 22

10 U.S.C. § 988(c) ................................................................... 22

18 U.S.C. § 201 ....................................................................... 22

18 U.S.C. § 219 ....................................................................... 22

22 U.S.C. § 285a ...................................................................... 22

22 U.S.C. § 2651a(d) ................................................................ 23

26 U.S.C. § 7611 ...................................................................... 23

28 U.S.C. § 509 ....................................................................... 28

28 U.S.C. § 510 ....................................................................... 28

28 U.S.C. § 515 .................................................................. 27, 28

28 U.S.C. § 533 .................... 2, 3, 4, 20, 21, 22, 23, 24, 25, 26, 27, 28, 30*

28 U.S.C. § 1715(a)(1)(A) .......................................................... 23

28 U.S.C. § 2106 .................................................................. 5, 31

Act of June 25, 1948, Pub. L. No. 80-773, § 33, ch. 646, 62
    Stat. 991 .......................................................................... 25

Act of Sept. 6, 1966, Pub. L. No. 89-554, § 7(e), 80 Stat. 378,
    631 .................................................................................. 26

Ethics in Government Act, Pub.L. 95-521, 92 Stat. 1867
    (1978) (codified at 28 U.S.C. §§ 591-99 (1982)) ........................... 15, 19

## Regulations

28 C.F.R. § 0.55 ........................................................... 27

28 C.F.R. § 0.85 ....................................................... 26, 27

28 C.F.R. § 600.1 ........................................................... 9

28 C.F.R. § 600.4 ........................................................... 9

28 C.F.R. § 600.7(a) ......................................... 10, 13, 14*

28 C.F.R. § 600.7(b) ............................................. 12, 13

28 C.F.R. § 600.7(d) ....................................................... 14

28 C.F.R. § 600.8(b) ..................................................... 12

38 Fed. Reg. 30,739, *as amended by* 38 Fed. Reg. 32,805 ...................... 29

64 Fed. Reg. at 37,038 ...................................... 12, 13, 15*

## Rules

11th Cir. R. 26.1-1 ......................................................... 1

11th Cir. R. 26.1-2 ......................................................... 1

11th Cir. R. 29-1 ........................................................... 1

11th Cir. R. 29-2 ........................................................... 1

11th Cir. R. 32-4 ......................................................... 32

Fed. R. App. P. 26.1 ....................................................... 1

Fed. R. App. P. 29 ......................................................... 1

Fed. R. App. P. 32 ....................................................... 32

## Other Authorities

Justice Manual § 1-13.100 ................................................. 12

Office of the Att'y Gen., Order No. 5559-2022, Appointment of John L. Smith as Special Counsel, Nov. 18, 2022............................3

*Official*, Black's Law Dictionary (11th ed. 2019)....................................20

## STATEMENT OF INTEREST OF AMICI CURIAE[1]

*Amici* are former prosecutors, elected officials, other government officials, constitutional lawyers, and a non-profit organization who have collectively spent decades defending the Constitution, the interests of the American people, and the rule of law. As such, *amici* have an interest in the proper scope of executive power and the faithful enforcement of criminal laws enacted by Congress. Pursuant to Federal Rule of Appellate Procedure 29 and Eleventh Circuit Rules 29-1 and 29-2, *amici* respectfully submit this brief to reinforce why the appointment of the Special Counsel is consistent with the Appointments Clause of the Constitution and the statutes Congress has enacted pursuant to that constitutional provision. Accordingly, the Court should reject Defendant Donald J. Trump's contention that the appointment of Special Counsel John "Jack" Smith is unlawful and reverse the decision below.

---

[1] No party's counsel authored this brief in whole or in part; no party or party's counsel contributed money that was intended to fund preparing or submitting this brief; and no person—other than the *amici curiae*, their members, or their counsel—contributed money that was intended to fund preparing or submitting this brief.

## STATEMENT OF THE ISSUE

Is the Special Counsel lawfully appointed consistent with the Appointments Clause of the Constitution and federal law?

## SUMMARY OF THE ARGUMENT

The Appointments Clause of the Constitution authorizes Congress to vest the power to appoint "inferior officers" in the Attorney General as the head of the Department of Justice. U.S. Const. art. II, § 2, cl. 2. As the Supreme Court has confirmed, a special prosecutor empowered to investigate and prosecute a particular criminal matter is such an inferior officer. *See Morrison v. Olson*, 487 U.S. 654, 670-71 (1988); *United States v. Nixon*, 418 U.S. 683, 694 (1974). Congress, in turn, exercised that power under the Appointments Clause by vesting the Attorney General with the power to "appoint officials . . . to detect and prosecute crimes against the United States." 28 U.S.C. § 533. Attorney General Merrick Garland, acting pursuant to that statutory authority and consistent with the Department of Justice's regulations, then appointed Special Counsel Smith to "conduct the ongoing investigation referenced and described in the United States' Response to Motion for Judicial Oversight and Additional Relief, *Donald J. Trump v. United*

*States*, No. 9:22-CV-81294-AMC (S.D. Fla. Aug. 30, 2022)." Office of the Att'y Gen., Order No. 5559-2022, Appointment of John L. Smith as Special Counsel, ¶ (c) Nov. 18, 2022 ("Appointment Order"). The Constitution, the statutes enacted by Congress to exercise the power the Constitution confers, and the Attorney General's appointment pursuant to that constitutional and statutory authority unmistakably establish the lawfulness of Special Counsel Smith's appointment.

The district court's contrary conclusion was incorrect. Both the district court and apparently Mr. Trump recognize that the Special Counsel qualifies as an inferior officer and thus that the Attorney General could, consistent with the Constitution, appoint Special Counsel Smith if Congress had vested him with that power. The district court held, however, that Congress had not done so and therefore Mr. Smith's appointment was unlawful. That conclusion defies the plain text of Section 533, which unambiguously authorizes the Attorney General to "appoint . . . officials" like the Special Counsel to "prosecute crimes against the United States." 28 U.S.C. § 533. To reach its outlier interpretation, the district court ignored the statute's plain text to hold that "officials" does not include "officers" like the Special Counsel, and it

defied the commands of Congress in its enacting legislation to hold that Section 533 authorizes the appointment of officials only to the Federal Bureau of Investigation.

If this Court reverses the district court, as *amici* urge, it will mark the second time it was called upon to correct the district court's grave errors in this case. Those reversals do not reflect typical differences of opinion among courts and judges. The district court's decision rejecting the lawfulness of the Special Counsel's appointment, in clear defiance of binding Supreme Court precedent and the plain text of Congress's statutes, falls far outside the range of reasonable judicial decision-making. And before an indictment in this case was even filed, this Court reversed Judge Cannon's extraordinary intervention into the government's criminal investigation that ultimately led to this prosecution. As this Court explained, "[t]he law is clear" and the district court's unprecedented approach would work "a radical reordering of [its] caselaw limiting the federal courts' involvement in criminal investigations" and would "violate bedrock separation-of-powers limitations." *Trump v. United States*, 54 F.4th 689, 701 (11th Cir. 2022) (per curiam).

This pattern of unsupportable decisions, along with the district court's inexplicable handling of procedural matters in this case, makes clear that Judge Cannon "has engaged in conduct that gives rise to the appearance of . . . a lack of impartiality in the mind of a reasonable member of the public." *United States v. Torkington*, 874 F.2d 1441, 1446 (11th Cir. 1989). *Amici* therefore urge this Court, in addition to reversing the decision below, to exercise its supervisory authority under 28 U.S.C. § 2106 to reassign the matter to another district judge on remand.

## ARGUMENT AND CITATIONS TO AUTHORITY

### I. The Special Counsel is an Inferior Officer Under the Appointments Clause

The district court "accept[ed] the Special Counsel's contested view that he qualifies as an 'inferior Officer,' not a 'principal' one" "based on the available Supreme Court guidance." Op. at 2, 4. Mr. Trump did not argue before the district court that the Special Counsel is a principal officer. *See* Trump MTD at 1-6.[2] By "fail[ing] to raise this argument

---

[2] Mr. Trump's position before the district court was unclear and internally inconsistent. On the one hand, he claimed that "[a]t best" the Special Counsel is "an employee." Trump Br. at 3. But then he stated that "[t]he Special Counsel's Office does not dispute that the Special

below," he "thus waived the right to raise th[e] argument on appeal 'absent plain error.'" *Teel v. Lozada*, 99 F.4th 1273, 1287 (11th Cir. 2024) (quoting *United States v. Culver*, 598 F.3d 740, 749 n.5 (11th Cir. 2010)).[3] And this Court "will not consider arguments raised only by *amici*." *Stanley v. City of Sanford, Fla.*, 83 F.4th 1333, 1344 (11th Cir. 2023) (quoting *Richardson v. Ala. State Bd. of Educ.*, 935 F.2d 1240, 1247 (11th Cir. 1991)), *cert. granted sub nom. Stanley v. City of Sanford*, No. 23-997 (U.S. June 24, 2024). The district court nonetheless "expresse[d] reservations" about the Special Counsel's status as an inferior officer, finding "compelling arguments in favor of a principal-officer designation given the regulatory framework under which he operates." Op. at 2, 4. Moreover, the district court appeared to suggest (contrary to fact) that Mr. Trump had so argued[4] and "elect[ed] . . . to

---

Counsel is an 'officer' of the United States." Trump Reply Br. at 1. Nowhere did he argue that the Special Counsel is a principal, rather than inferior, officer.

[3] Every court to have addressed the issue, including the Supreme Court, has held that special prosecutors like the Special Counsel are inferior officers. *See infra*. It cannot be plain error to concur with that unanimous consensus.

[4] *See* Op. at 5 ("The Motion argues that his appointment violates the Appointments Clause for two basic reasons: (1) Special Counsel Smith was not nominated by the President or confirmed by the Senate, as

leave the matter for review by higher courts." Op. at 68. Accordingly, out of an abundance of caution, *amici* explain why the district court's "reservations" were misplaced: the Special Counsel is without question an inferior officer.

The Appointments Clause of the Constitution empowers Congress to authorize the Attorney General, as the head of the Department of Justice, to appoint inferior officers such as the Special Counsel. The Appointments Clause establishes the framework for the appointment of "Officers of the United States":

> [The President] shall nominate, and by and with the Advice and Consent of the Senate, shall appoint Ambassadors, other public Ministers and Consuls, Judges of the Supreme Court, and all other Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law: *but the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments.*

U.S. Const., art. II, § 2 (emphasis added).

---

would be required for the appointment of a principal officer or for the appointment of an inferior officer as to which Congress has not authorized such appointment, and (2) even accepting the position that he qualifies as an inferior officer, none of the statutes cited in the Appointment Order vests the Attorney General with [that] authority.") (citations omitted).

The Clause thus provides that the President must appoint "principal officers" with the advice and consent of the Senate, but Congress may vest the power to appoint "inferior officers" in the President alone without the Senate's consent, the federal courts, or the head of a department like the Attorney General. *Morrison*, 487 U.S. at 670-71 (quoting *Buckley v. Valeo*, 424 U.S. 1, 132 (1976)). The Special Counsel, to a much greater degree than the Independent Counsel before him, "clearly falls on the 'inferior officer' side of th[e] line" between principal and inferior officers. *Morrison*, 487 U.S. at 671. *See also In re Grand Jury*, 916 F.3d 1047, 1052 (D.C. Cir. 2019) ("Binding precedent instructs that Special Counsel Mueller is an inferior officer under the Appointments Clause."). Although the Supreme Court's "cases have not set forth an exclusive criterion for distinguishing between principal and inferior officers [under the] Appointments Clause," *Edmond v. United States*, 520 U.S. 651, 661 (1997), every factor the Court has considered weighs in favor of the Special Counsel's status as an inferior officer.

First, the Special Counsel may "perform only certain, limited duties" with jurisdiction circumscribed to the "investigation and, if appropriate, prosecution for certain federal crimes." *Morrison*, 487 U.S.

at 671. Department of Justice regulations provide for the appointment of a Special Counsel when the "criminal investigation of *a person or matter* is warranted." 28 C.F.R. § 600.1 (emphasis added). Attorney General Garland's Appointment Order accordingly limited the Special Counsel's jurisdiction to two incidents: the "investigation into whether any person or entity violated the law in connection with efforts to interfere with the lawful transfer of power following the 2020 presidential election or the certification of the Electoral College vote held on or about January 6, 2021," excluding "investigations and prosecutions of individuals for offenses they committed while physically present on the Capitol grounds"; and "the ongoing investigation" into Mr. Trump's retention of documents at issue in this case. Appointment Order at ¶¶ (b)-(c). The Special Counsel may not exceed those strict boundaries without express authorization by the Attorney General for "additional jurisdiction beyond that specified in his or her original jurisdiction" that he maintains is "necessary in order to fully investigate and resolve the matters assigned, or to investigate new matters that come to light in the course of his . . . investigation." 28 C.F.R. § 600.4(a)-(b). In the course of his investigation and prosecution, he must "comply

with the rules, regulations, procedures, practices and policies of the Department of Justice," including "required review and approval procedures by the designated Departmental component[s]," 28 C.F.R. § 600.7(a). As a result, his "grant of authority does not include any authority to formulate policy for the Government or the Executive Branch, nor does it give [him] any administrative duties outside of those necessary to operate [his] office." *Morrison*, 487 U.S. at 671-72. These express limitations reflect the narrow scope of the task assigned to the Special Counsel by the Attorney General: to investigate and, if necessary, prosecute crimes arising from two specific incidents related to the conduct of a single individual.

Second, the Special Counsel's tenure is limited to the performance of those narrow duties within that circumscribed jurisdiction. Once his investigation and prosecution of the cases arising from the two incidents enumerated in the Appointment Order is completed, his office expires. "Unlike other prosecutors, [the Special Counsel] has no ongoing responsibilities that extend beyond the accomplishment of the mission that she was appointed for and authorized by the [the Attorney General] to undertake." *Morrison*, 487 U.S. at 672. His office is thus

"'temporary' in the sense that an independent counsel is appointed essentially to accomplish a single task, and when that task is over, the office is terminated, either by the counsel [himself] or by action of the [Attorney General]." *Id. See also Edmond*, 520 U.S. at 661 (Scalia, J.) (holding judges of Coast Guard Court of Criminal Appeals to be inferior officers even though "the office of military judge . . . is not 'limited tenure'"). *Cf. Lucia v. SEC*, 585 U.S. 237, 247-48 (2018) (holding Securities Exchange Commission's administrative law judges to be inferior officers rather than mere employees in part because, "far from serving temporarily or episodically," they held "a continuing office established by law" that was a "career appointment") (cleaned up).

Third, the Special Counsel is subject to oversight, control, and ultimately removal by the Attorney General. An inferior officer is "directed and supervised at some level by others who were appointed by Presidential nomination with the advice and consent of the Senate." *Edmund*, 520 U.S. at 663 (emphasis added). *See also Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 510 (2010) ("Whether one is an inferior officer depends on whether he has a superior.") (quotation marks omitted). "The Special Counsel regulations

[] make clear that the Special Counsel remains subject to the Attorney General's oversight following the Special Counsel's appointment, notwithstanding the specific grant of original jurisdiction." *United States v. Manafort*, 321 F. Supp. 3d 640, 654 (E.D. Va. 2018). The regulations pursuant to which Attorney General Garland appointed the Special Counsel emphasize "that ultimate responsibility for the matter and how it is handled will continue to rest with the Attorney General." Office of Special Counsel, 64 Fed. Reg. 37,038-01, 37,038 (July 9, 1999). Although the Special Counsel, like many other prosecutors, "shall not be subject to the day-to-day supervision of any official of the Department," 28 C.F.R. § 600.7(b), the regulations ensure that the Attorney General retains ultimate oversight over major investigatory or prosecutorial steps. The Special Counsel must "notify the Attorney General of events in the course of his . . . investigation in conformity with the Departmental guidelines with respect to Urgent Reports," 28 C.F.R. § 600.8(b), which require, among other things, advance reports of "major developments in significant investigations and litigation." Justice Manual § 1-13.100. The Special Counsel must "consult directly with the Attorney General" for authorization if he "conclude[s] that the

extraordinary circumstances of any particular decision would render compliance with required review and approval procedures by the designated Departmental component [to be] inappropriate." 28 C.F.R. § 600.7(a).

That oversight extends to concrete investigatory and prosecutorial actions. The Special Counsel must "provide an explanation for any investigative or prosecutorial step" to the Attorney General upon request. *Id.* § 600.7(b). And the Special Counsel's prosecutorial decisions are not final, because the Attorney General may block any action he determines "is so inappropriate or unwarranted under established Departmental practices that it should not be pursued." *Id. See* Office of Special Counsel, 64 Fed. Reg. at 37,038 ("[T]he regulations explicitly acknowledge the possibility of review of specific decisions reached by the Special Counsel."). Moreover, whatever deference to the Special Counsel's initial decisions the Regulations suggest, the Attorney General retains the authority to rescind those regulations, and thus that deference, at any time. Accordingly, as the Supreme Court has explained, "[w]hat is significant is that the [Special Counsel] ha[s] no power to render a final decision on behalf of the United States unless

permitted to do so by other Executive officers." *Edmond*, 520 U.S. at 665 (Scalia, J.). *Cf. United States v. Arthrex, Inc.*, 594 U.S. 1, 14 (2021) ("What was significant to the outcome [in *Edmund*]—review by a superior executive officer—is absent here: APJs have the power to render a final decision on behalf of the United States' without *any* such review by their nominal superior or any other principal officer in the Executive Branch.") (cleaned up, emphasis added).

The Attorney General's oversight and control is backed by the legal authority to "discipline[] or remove[]" the Special Counsel. 28 C.F.R. § 600.7(d). The regulations provide that at any time, "[t]he Attorney General may remove a Special Counsel for misconduct, dereliction of duty, incapacity, conflict of interest, or for other good cause, including violation of Departmental policies." *Id.* In addition, each fiscal year the Attorney General must "determine whether the investigation should continue" and thus may terminate the office for any reason at regular intervals. *Id.* § 600.8(a)(2). As the Supreme Court explained with respect to the Independent Counsel, "[a]lthough [she] may not be 'subordinate' to the Attorney General (and the President) insofar as she possesses a degree of independent discretion to exercise

the powers delegated to her under the Act, the fact that she can be

removed by the Attorney General indicates that she is, to some degree,

'inferior' in rank and authority." *Morrison*, 487 U.S. at 671.

Moreover, unlike the Independent Counsel, whose "independent

discretion" and protection from removal arose from a congressional

statute that bound the Attorney General, the Special Counsel's

independence arises from departmental regulations. *Compare* Ethics in

Government Act, Pub. L. 95-521, 92 Stat. 1867 (1978) (codified at 28

U.S.C. §§ 591-99 (1982)), *with* Office of Special Counsel, 64 Fed. Reg.

37,038-01 (July 9, 1999). As a result, the Special Counsel "is subject to

greater executive oversight because the limitations on the Attorney

General's oversight and removal powers are in regulations that the

Attorney General can revise or repeal." *In re Grand Jury Investigation*,

916 F.3d at 1052. *See also Nixon*, 418 U.S. at 696 (explaining

"possib[ility] for the Attorney General to amend or revoke the

regulation defining the Special Prosecutor's authority"); *In re Sealed

Case*, 829 F.2d 50, 56 (D.C. Cir. 1987) ("[T]he Independent Counsel:

Iran/Contra serves only for so long as the March 5, 1987, regulation

remains in force. Subject to generally applicable procedural

requirements, the Attorney General may rescind this regulation at any time, thereby abolishing the Office of Independent Counsel: Iran/Contra."). Special Counsel Smith thus "effectively serves at the pleasure of an Executive Branch officer who was appointed with the advice and consent of the Senate" and "[t]he control thereby maintained means the Special Counsel is an inferior officer." *In re Grand Jury Investigation*, 916 F.3d at 1052-53 (citations omitted). Every court to have addressed the question has agreed with that straightforward conclusion.

The district court's rationales for "express[ing] reservations" about that unanimous consensus are mistaken. First, the district court stated that the "Special Counsel Regulations impose almost no supervision or direction over the Special Counsel" and "give him broad power to render final decisions on behalf of the United States." Op. at 72. As explained above, neither assertion is correct. The district court did not dispute that the Attorney General could reverse the Special Counsel's decisions but suggested that "[i]t is hard to see how this amounts to any meaningful direction or supervision." *Id.* at 75. The district court did not deny that the Attorney General retains the legal authority to

control and, if necessary, terminate the Special Counsel—either pursuant to the Regulations or, if necessary, by rescinding the Regulations. It offered no explanation why the Attorney General's policy-based decision to refrain from exercising that authority to control the investigation and prosecution, as he similarly does with thousands of other attorneys at the Department of Justice every day, converts the Special Counsel's constitutional status into that of a principal officer. It cannot be the case that an inferior officer who, through his strict compliance with the Department's policies and practices, does nothing that the Attorney General deems to warrant reversal is transformed by that exemplary performance into a principal officer and thereby stripped of all authority and thus suffers relegation to the dustheap of unlawfully appointed officials. The Constitution cannot plausibly be read to give officials so perverse a set of incentives.

Second, the district court suggested that "the absence of at-will removal is a key feature that—when combined with the absence of any meaningful supervision or countermanding authority—likely could transform Special Counsel Smith into a principal officer." *Id.* at 76. That suggestion rests on a fundamental misunderstanding. It is

undisputed that the Attorney General could remove the Special Counsel simply by sending a letter.[5] The district court suggested this unfettered removal power is irrelevant because it "must operate on the basis of extant law . . . not on some possible future material change to the removal limitations that has not happened." *Id.* at 77-78. In its view, the "slipperiness" of considering the Attorney General's unexercised power to rescind the Regulations "would not be permitted if the officer were acting pursuant to statute; the court would review the extant law in a fixed manner." *Id.* at 78. The district court thereby mistakenly treated the Attorney General's policy decision to refrain from exercising his oversight and removal powers as if it were a statutory constraint. That mistake makes all the difference.

Because the constraints on removing Special Counsel Smith arise from regulations rather than a statute, he fundamentally differs from the Independent Counsel at issue in *Morrison*. The Court in *Morrison*

---

[5] As the Appointment Order makes clear, the Attorney General did not appoint Special Counsel Smith pursuant to the Regulations and made those Regulations applicable only by force of the letter. *See* Appointment Order at 2. As a result, the Attorney General need not even rescind the Regulations to fire Special Counsel Smith. *See* Op. at 76-77 (agreeing the Attorney General could remove the Special Counsel by "amend[ing] or revok[ing] the Appointment Order").

held that the Independent Counsel was an inferior officer notwithstanding the statutory limitations on the Attorney General's power to remove her. And even if Justice Scalia's dissenting opinion in that case were now the law, Special Counsel Smith would remain an inferior officer. As Justice Scalia explained, he would have rejected the Court's conclusion the Independent Counsel appointed pursuant to the Ethics in Government Act was lawfully appointed as an inferior officer because, in his view, that "*statute* does deprive the President of substantial control over the prosecutory functions performed by the independent counsel, and it does substantially affect the balance of powers." *Morrison*, 487 U.S. at 714-15 (Scalia, J., dissenting) (emphasis added). The problem, according to Justice Scalia, was that Congress had encroached upon the constitutional powers of the President by establishing the Independent Counsel as an officer who could not be removed but for cause. No such congressional encroachment is present with respect to the Special Counsel here. There is no statute that protects him from removal by the President or the Attorney General. The Department of Justice has adopted regulations that embody its policy decision about the Special Counsel's removal, but the Attorney

General could unilaterally rescind those regulations at any time without the need for Congress to enact "some possible future material change to the removal limitations that has not happened." Op. at 77-78. Accordingly, the separation of powers problem that Justice Scalia identified with respect to the Independent Counsel in *Morrison* is wholly absent here.

The Special Counsel's circumscribed role and jurisdiction, limited tenure, and effective control by the Attorney General render him an inferior officer. Accordingly, the Appointments Clause permits Congress to vest the Attorney General with the authority to appoint the Special Counsel.

## II. Congress Authorized the Attorney General to Appoint the Special Counsel

Congress authorized the Attorney General to appoint the Special Counsel to investigate and potentially prosecute crimes. Section 533 provides that "[t]he Attorney General may appoint officials . . . to detect and prosecute crimes against the United States." 28 U.S.C. § 533(1). An "official" is "[s]omeone who holds or is invested with a public office; a person elected or appointed to carry out some portion of a government's sovereign powers." *Official*, Black's Law Dictionary (11th ed. 2019). In

the Appointment Order, the Attorney General appointed the Special Counsel and "authorized" him to "conduct the ongoing investigation" into "efforts to interfere with the lawful transfer of power following the 2020 presidential election or the certification of the Electoral College vote held on or about January 6, 2021," to "conduct the ongoing investigation" involving Mr. Trump's retention of documents, and "authorized" him "to prosecute federal crimes arising from the investigation of these matters." Appointment Order, ¶¶ (b), (c), (d). The plain text of Section 533 thus makes clear that it empowers the Attorney General to appoint the Special Counsel to investigate and prosecute the crimes enumerated in the Appointment Order including those in this case.

The district court's contrary conclusion is incorrect. It first attempted to justify its departure from this straightforward statutory interpretation by claiming that the statutory term "official" does not include "officers." That atextual argument lacks merit. While emphasizing the undisputed proposition that the terms are not synonymous, the district court acknowledged their logical relationship: "Put succinctly: while all officers may be officials, not all officials are

officers." Op. at 44. For that reason, as the district court conceded, "the broader term 'officials' can operate as a catch-all phrase that includes both officers and employees." *Id.* The clear implication of the district court's concession is that Section 533 authorizes the Attorney General to appoint all "officials," including both those who are officers and those who are not. Dozens of congressional statutes[6] and the Supreme Court's

---

[6] *See, e.g.*, 2 U.S.C. § 1602 ("The term 'covered executive branch official' means—(A) the President; (B) the Vice President; (C) any officer or employee, or any other individual functioning in the capacity of such an officer or employee, in the Executive Office of the President; (D) any officer or employee serving in a position in level I, II, III, IV, or V of the Executive Schedule, as designated by statute or Executive order; (E) any member of the uniformed services whose pay grade is at or above O-7 under section 201 of Title 37; and (F) any officer or employee serving in a position of a confidential, policy-determining, policy-making, or policy-advocating character described in section 7511(b)(2)(B) of Title 5"); 5 U.S.C. § 3110 ("'public official' means an officer (including the President and a Member of Congress), a member of the uniformed service, an employee and any other individual . . . ."); 10 U.S.C. § 988(c) ("The term 'covered official of the Department of Defense' means any of the following: (A) A civilian appointed to a position in the Department of Defense by the President, by and with the advice and consent of the Senate."); 18 U.S.C. § 201 ("'public official' means Member of Congress, Delegate, or Resident Commissioner, either before or after he has qualified, or an officer or employee or person acting for or on behalf of the United States, or any department, agency, or branch of Government thereof"); 18 U.S.C. § 219 (same); 22 U.S.C. § 285a ("(a) The President shall appoint--(1) a Governor of the Bank and an alternate for the Governor--(A) by and with the advice and consent of the Senate; or (B) from among individuals serving as officials required by law to be appointed by and with the advice and consent of

cases confirm that broad meaning of the term "officials." *See, e.g.*, *Lucia*, 585 U.S. at 241 ("The Appointments Clause of the Constitution lays out the permissible methods of appointing 'Officers of the United States,' a class of government officials distinct from mere employees.") (quoting Art. II, § 2, cl. 2).

The district court's attempt to evade that conclusion fails. Citing the *noscitur a sociis* canon, it suggested that Section 533's reference to "officials" cannot include officers because (it assumed without argument) subsections 533(2)-(4) list non-officer roles. This suggestion falters as a matter of logic. Under its ordinary meaning, the district court conceded, the term "officials" includes both officers and non-officer employees. Even if the district court were correct in assuming that subsections 533(2)-(4) cover only non-officer employees, it makes perfect sense that Congress would use the broad term "officials" to cover both

---

the Senate."); 22 U.S.C. § 2651a(d) (referring to "officials of the Department of State who are otherwise authorized to be appointed by the President, by and with the advice and consent of the Senate"); 26 U.S.C. § 7611 ("The term 'appropriate high-level Treasury official' means the Secretary of the Treasury or any delegate of the Secretary whose rank is no lower than that of a principal Internal Revenue officer for an internal revenue region"); 28 U.S.C. § 1715(a)(1)(A) ("the term 'appropriate Federal official'  means--(A) the Attorney  General of the United  States").

the employees appointed under those subsections and the officers appointed under subsection 533(1). Indeed, if Congress had meant Section 533 to authorize only the hiring of non-officer employees, it could have drafted the statute to say: "The Attorney General may appoint *employees*" listed in each of the statute's subsections. The fact that it used the broader term "officials" indicates it intended the statute to have a broader scope.

The district court next suggested that Section 533 could not authorize the Attorney General to appoint the Special Counsel because the chapter of the United States Code in which that provision is codified is entitled "Federal Bureau of Investigation." This argument is fundamentally mistaken. The district court first incorrectly elevated the statute's heading over its text. As the Supreme Court has emphasized, a provision's title is "not meant to take the place of the detailed provisions of the text." *Lawson v. FMR LLC*, 571 U.S. 429, 446 (2014). *See also Porter v. Nussle*, 534 U.S. 516, 527-28 (2002) ("[T]he title of a statute and the heading of a section are tools available for the resolution of a doubt about the meaning of a statute.") (emphasis added, quotation marks and citation omitted); *Trainmen v. Baltimore & Ohio R. Co.*, 331

U.S. 519, 528-529 (1947) (adopting "the wise rule that the title of a statute and the heading of a section cannot limit the plain meaning of the text"). And "where, as here, the statute's language is plain, the sole function of the courts is to enforce it according to its terms." *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989) (cleaned up).

The enactment history of Section 533 confirms that its placement in a particular chapter of the United States Code cannot limit the broad meaning of its plain text. When Congress created Title 28, in which Section 533 is now codified, it specified that "[n]o inference of legislative construction is to be drawn by reason of the chapter in Title 28 . . . in which any section is placed, nor by reason of the catchlines used in such title." Act of June 25, 1948, Pub. L. No. 80-773, § 33, ch. 646, 62 Stat. 991. *See Ex parte Collett*, 337 U.S. 55, 59 (1949) (rejecting "contention" that provision's placement in Code narrowed plain text because "we would be required completely to disregard the Congressional admonition that 'No inference of a legislative construction is to be drawn by reason of the chapter in Title 28 in which any section is placed'"). And when Congress subsequently enacted the provision that is now codified as Section 533, it similarly provided that "[a]n inference

of a legislative construction is not to be drawn by reason of the location in the United States Code of a provision enacted by this Act or by reason of the caption or catchline thereof." Act of Sept. 6, 1966, Pub. L. No. 89-554, § 7(e), 80 Stat. 378, 631. Congress thus made clear that Section 533's placement within chapter 33 of title 28 of the United States Code cannot limit the scope of its text. The district court's contrary conclusion cannot stand in the face of that clear congressional command. Accordingly, the plain text reading of Section 533 must prevail: it authorizes the Attorney General to appoint any official within the Department of Justice, not just those within the Federal Bureau of Investigation.

The plain text of Section 533 confirms that conclusion. It authorizes the Attorney General to appoint "officials . . . to detect and *prosecute* crimes against the United States." 28 U.S.C. § 533(1) (emphasis added). By regulation, "FBI officials and agents" perform investigations and collect evidence, while the Criminal Division and other litigating components of the Department of Justice "prosecute crimes." *Compare* 28 C.F.R. § 0.85 (listing "General functions" of the Federal Bureau of Investigation, including "[i]nvestigat[ing] violations

of the laws, including the criminal drug laws, of the United States and collect[ing] evidence" but not including prosecuting crimes), *with id.* § 0.55 (listing "General functions" of Criminal Division, including "[p]rosecutions for Federal crimes not otherwise specifically assigned"). By its plain text, Section 533 thus authorizes the Attorney General to appoint officials to *prosecute* crimes who, by law and by definition, are not part of the Federal Bureau of Investigation.

In any event, even if the district court's limitation on Section 533 to appointing officials in the FBI were correct, it would be irrelevant. The district court never explained why the Special Counsel appointment would be unlawful if he resided within the Federal Bureau of Investigation on the organizational chart of the Department of Justice. Moreover, Section 515(a) removes any doubt that the Attorney General can direct "any attorney" within Department of Justice, including those within the Federal Bureau of Investigation, to prosecute particular crimes. That section provides that "[t]he Attorney General or any other officer of the Department of Justice, or any attorney specially appointed by the Attorney General under law, may, when specifically directed by the Attorney General, conduct any kind of legal proceeding,

civil or criminal." 28 U.S.C. § 515(a). As articulated above, the Special

Counsel is an "attorney specially appointed by the Attorney General

under law" pursuant to Section 533. Attorney General Garland

indisputably "specifically directed" him to "conduct" this "criminal"

"legal proceeding." *See* Appointment Order. Accordingly, even on the

district court's improperly narrow reading of Section 533, it simply does

not matter whether the Special Counsel was appointed to be an official

within the FBI. The Attorney General had the legal authority to

appoint the Special Counsel, and the Special Counsel has legal

authority to prosecute this case, either way.

The Supreme Court and the D.C. Circuit's cases confirm this

straightforward statutory authority. The Supreme Court affirmed the

Attorney General's authority to appoint a special counsel in *Nixon*, 418

U.S. 683. The Court explained that Congress "vested in [the Attorney

General] the power to appoint subordinate officers to assist him in the

discharge of his duties." *Id.* at 694 (citing 28 U.S.C. §§ 509, 510, 515,

533). As the D.C. Circuit recently recognized, the Supreme Court's

"binding precedent [thus] establishes that Congress has 'by law' vested

authority in the Attorney General to appoint the Special Counsel as an

inferior officer." *In re Grand Jury Investigation*, 916 F.3d at 1054. For this Court to conclude to contrary would thus create a conflict between the Eleventh Circuit and the D.C. Circuit that would require the Supreme Court to intervene.

The district court justified its dramatic departure from binding precedent by suggesting that *Nixon*'s statutory holding is mere dicta. That suggestion is incorrect. The Court in *Nixon* faced the question whether the president could invoke executive privilege to defy a subpoena issued by the Watergate special prosecutor. The Court determined that this conflict gave rise to a justiciable case between an "independent Special Prosecutor with his asserted need for the subpoenaed material" and a "President with his steadfast assertion of privilege against disclosure." *Id*. at 697. The Court based that determination on its conclusion that the Department of Justice "regulation gives the Special Prosecutor explicit power to contest the invocation of executive privilege in the process of seeking evidence deemed relevant to the performance of these specially delegated duties. So long as this regulation is extant *it has the force of law*." *Id*. at 694-95 (citing 38 Fed. Reg. 30,739, *as amended by* 38 Fed. Reg. 32,805)

(emphasis added). That regulation had the "force of law" only because, as the Court's reliance on Section 533 and its adjoining provisions confirms, Congress enacted statutes that authorized the Attorney General to appoint the Special Counsel.

The existence of that justiciable controversy thus depended on the lawfulness of the appointment of the special prosecutor; that is precisely why the Supreme Court made a point to state the statutory authority on which that appointment was based. *See In re Grand Jury Investigation*, 916 F.3d at 1053 (Attorney General's statutory authority to appoint the Special Counsel "a necessary antecedent to determining whether the regulations [under which the special prosecutor was appointed] were valid," which in turn "was necessary to the decision that a justiciable controversy existed"). Accordingly, the Supreme Court's statement that Section 533 authorized the Attorney General to appoint the special prosecutor was not mere dicta, but binding precedent for lower courts to follow. *See, e.g., Ramos v. Louisiana*, 590 U.S. 83, 124 (2020) (Kavanaugh, J., concurring) ("[V]ertical stare decisis is absolute, as it must be in a hierarchical system with 'one supreme Court.'") (quoting U. S. Const., art. III, § 1).

Because the plain text of the statute and binding authority from the Supreme Court establish that Congress authorized Attorney General Garland to appoint the Special Counsel, the Court should hold that the Special Counsel's appointment is lawful.

## CONCLUSION

For the reasons stated above, the Court should reverse the judgment below. In addition, *amici* urge this Court to exercise its supervisory authority under 28 U.S.C. § 2106 to reassign the matter to another district judge on remand.[7]

Respectfully submitted,

*/s/ Matthew A. Seligman*
MATTHEW A. SELIGMAN
*Counsel of Record*
STRIS & MAHER LLP
777 S Figueroa St., Suite 3850
Los Angeles, CA 90017
(213) 995-6873
mseligman@stris.com

*Counsel for Amici*

---

[7] This Court may reassign the matter *sua sponte*. *See Ligon v. City of New York*, 736 F.3d 118, 129 (2d Cir. 2013), *vacated in part*, 743 F.3d 362 (2d Cir. 2014) ("In numerous cases in recent years, we have found it appropriate to reassign a case without the issue having been raised or briefed by the parties or considered by the district judge.").

# CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B)(i) because, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) and Eleventh Circuit Rule 32-4, and inclusive of Attachment – List of Amici, this brief contains 7,052 words.

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in font size 14, Century Schoolbook.

*/s/ Matthew A. Seligman*
MATTHEW A. SELIGMAN
*Counsel of Record*
STRIS & MAHER LLP
777 S Figueroa St., Suite 3850
Los Angeles, CA 90017
(213) 995-6873
mseligman@stris.com

*Counsel for Amici*

# CERTIFICATE OF SERVICE

I hereby certify that on September 3, 2024, a true and correct copy of the foregoing document was electronically filed through CM/ECF. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system.

September 3, 2024

/s/ Matthew A. Seligman
MATTHEW A. SELIGMAN
*Counsel of Record*
STRIS & MAHER LLP
777 S Figueroa St., Suite 3850
Los Angeles, CA 90017
(213) 995-6873
mseligman@stris.com

*Counsel for Amici*

# ATTACHMENT - LIST OF *AMICI CURIAE*

Institutional affiliations are included for identification purposes only.

**Donald Ayer** – Donald B. Ayer served as Deputy Attorney General in the George H.W. Bush Administration (1989-1990); Principal Deputy Solicitor General in the Reagan Administration (1986-1988); and U.S. Attorney for the Eastern District of California in the Reagan Administration (1981-1986). He currently serves as a Board Member of the Society for the Rule of Law.

**Louis Caldera** – Louis E. Caldera served as United States Secretary of the Army, (1998-2001); Director of the White House Military Office (2009); President, University of New Mexico (2003- 2006); California State Assembly member (1992-1997); United States Army officer (1978-1983); and serves currently as a Senior Lecturer of Business Administration, Harvard Business School.

**Tom Coleman** – Tom Coleman served as a Member of the U.S. House of Representatives (R-MO) (1976-1993) and as an assistant attorney general in Missouri (1969-1972).

**George T. Conway III** – George T. Conway III serves as Board President for the Society for the Rule of Law.

**Stuart M. Gerson** – Stuart M. Gerson served as Acting Attorney General (1993); Assistant Attorney General for the Civil Division (1989–1993); and Assistant United States Attorney for the District of Columbia (1972–1975). He currently serves as Board Treasurer of the Society for the Rule of Law.

**Philip Allen Lacovara** – Philip Allen Lacovara served as Deputy Solicitor General in the Nixon Administration (1972-1973); Counsel to the Special Prosecutor, Watergate Special Prosecutor's Office (1973-1974); and drafted the brief for the United States and presented argument in *United States v. Nixon*, 418 U.S. 683 (1974).

**John McKay** – John McKay served as U.S. Attorney for the Western District of Washington in the George W. Bush Administration (2001-2007).

**Trevor Potter** – Trevor Potter served as Chairman of the Federal Election Commission (1994); Commissioner of the Federal Election Commission, appointed by President George H.W. Bush (1991-1995); and an attorney in the Office of Legal Policy at the Department of Justice (1982-1984).

**Alan Charles Raul** – Alan Charles Raul served as Associate Counsel to the President (1986-1988); General Counsel of the Office of Management and Budget (1988-1989); General Counsel of the U.S. Department of Agriculture (1989-1993); Vice Chairman of the Privacy and Civil Liberties Oversight Board (2006-2008); and currently serves as a Lecturer on Law at Harvard Law School and Board Secretary of the Society for the Rule of Law.

**Abbe Smith** – Abbe Smith is the Scott K. Ginsburg Professor of Law at Georgetown University Law Center, a member of the American Board of Criminal Lawyers, and was previously the Deputy Director of the Criminal Justice Institute at Harvard Law School.

**Fern Smith** – Fern M. Smith served as Judge of the U.S. District Court for the Northern District of California, appointed by President Reagan (1988-2005); and Director of the Federal Judicial Center (1999-2003).

**Larry Thompson** – Larry Thompson served as the Deputy Attorney General (2001- 2003); Independent Counsel to the Department of Justice (1995-1998); United States Attorney for the Northern District of Georgia (1982-1986); and currently serves as the John A. Sibley Chair of Corporate and Business Law at University of Georgia Law School and Of Counsel at Finch McCranie, LLC.

**Christine Todd Whitman** – Christine Todd Whitman served as the Governor of New Jersey (1994-2001) and Administrator of the Environmental Protection Agency in the George W. Bush Administration (2001-2003).

**Laurence H. Trib**e – Laurence H. Tribe is the Carl M. Loeb University Professor of Constitutional Law Emeritus at Harvard University and the former Director of the Office of Access to Justice in the U.S. Justice Department.

**Olivia Troye** – Olivia Troye served as Special Advisor, Homeland Security and Counterterrorism to Vice President Mike Pence (2018-2020).

**William Weld** – William F. Weld served as U.S. Attorney for Massachusetts (1981-1986); Assistant U.S. Attorney General in charge of the Criminal Division (1986-1988); and Governor of Massachusetts (1991-1997).

**Stanley Twardy Jr.** – Stanley A. Twardy, Jr. served as a United States Attorney for the District of Connecticut (1985-1991) and Chief of Staff to Connecticut Governor Lowell P. Weicker, Jr (1991-1993).

**State Democracy Defenders Action** – State Democracy Defenders Action is a 501(c)(4) focused on defeating election sabotage and continuing the fight against autocratic risks to democracy.