No. 24-12311-J

# In the United States Court of Appeals for the Eleventh Circuit

UNITED STATES OF AMERICA,

*Appellant,*

v.

DONALD J. TRUMP, WALTINE NAUTA, and CARLOS DE OLIVEIRA
*Defendants-Appellees.*

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
District Court No. 9:23-CR-80101-AMC-1 (Cannon, J.)

*AMICUS CURIAE* BRIEF OF
THE AMERICAN CENTER FOR LAW AND JUSTICE,
SUPPORTING APPELLEES

JAY ALAN SEKULOW
JORDAN SEKULOW
STUART J. ROTH
ANDREW J. EKONOMOU
BENJAMIN P. SISNEY
NATHAN J. MOELKER
AMERICAN CENTER FOR LAW & JUSTICE
201 Maryland Ave., NE
Washington, DC 20002
Phone: (202) 546-8890
bsisney@aclj.org

November 1, 2024          *Counsel for Amicus Curiae*

*United States v. Donald J. Trump, Waltine Nauta, and Carlos De Oliveira*
Case No. 24-12311-J

## CORPORATE DISCLOSURE STATEMENT AND CERTIFICATE OF INTERESTED PERSONS

The American Center for Law and Justice ("ACLJ") submits this corporate disclosure statement pursuant to Federal Rules of Appellate Procedure 26.1 and 29 and Eleventh Circuit Rule 26.1-2. The ACLJ is a non-profit legal corporation dedicated to the defense of constitutional liberties secured by law. The ACLJ has no parent corporation and issues no stock.

*Amicus Curiae* the ACLJ certifies that the following is a complete list of interested persons as required by Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1 and 26.1-2, and based on the Certificate of Interested Persons set forth on pages C-1 to C-7 of the Brief of the United States filed on August 26, 2024 [Doc. 18], the undersigned hereby certifies that the following is a list of persons and entities who have an interest in the outcome of this case:

1.    American Center for Law and Justice

2.    Advance Publications, Inc.

3.    Alonso, Cristina

4.    America First Legal Foundation

5.    American Broadcasting Companies, Inc., d/b/a ABC News

C – I-1 of 8

*United States v. Donald J. Trump, Waltine Nauta, and Carlos De Oliveira*
Case No. 24-12311-J

6.      Ayer, Donald

7.      Blackman, Joshua

8.      Blanche, Todd

9.      Bloomberg, L.P.

10.     Bove, Emil

11.     Bowman, Chad

12.     Bratt, Jay

13.     Cable News Network, Inc.

14.     Calabresi, Steven

15.     Caldera, Louis

16.     Cannon, Hon. Aileen

17.     Cate, Matthew

18.     CBS Broadcasting, Inc. o/b/o CBS News

19.     Citizens for Responsibility and Ethics in Washington

20.     Citizens United

21.     Citizens United Foundation

22.     CMG Media Corporation

23.     Coleman, Tom

C – I-2 of 8

*United States v. Donald J. Trump, Waltine Nauta, and Carlos De Oliveira*
Case No. 24-12311-J

24.    Conway, George

25.    Cooney, J.P.

26.    Couzo, Amber Aurora

27.    Cox   Enterprises, Inc. (COX) d/b/a/ The Atlanta Journal Constitution

28.    Dadan, Sasha

29.    De Oliveira, Carlos

30.    Dow Jones & Company, Inc., publisher of The Wall Street Journal

31.    Dreeben, Michael

32.    Edelstein, Julie

33.    Ekonomou, Andrew J.

34.    Fields, Lazaro

35.    Fitzgerald, Patrick

36.    Fort Myers Broadcasting Company

37.    Fugate, Rachel Elise

38.    Garland, Merrick B.

39.    Gerson, Stuart

40.    Gertner, Nancy

41.    Gilbert, Karen E.

*United States v. Donald J. Trump, Waltine Nauta, and Carlos De Oliveira*
Case No. 24-12311-J

42.    Gillers, Stephen

43.    Goodman, Hon. Jonathan

44.    Gray Media Group, Inc. (GTN)

45.    Guardian News & Media Limited

46.    Harbach, David

47.    Hirsch, Steven A.

48.    Hulser, Raymond

49.    Insider, Inc.

50.    Irving, John

51.    Kise, Christopher

52.    Klugh, Richard C.

53.    Lacovara, Philip Allen

54.    Landmark Legal Foundation

55.    Lawson, Gary

56.    Li, XiXi

57.    Los Angeles Times Communications LLC, publisher of The Los Angeles Times

58.    Maynard, Hon. Shaniek Mills

*United States v. Donald J. Trump, Waltine Nauta, and Carlos De Oliveira*
Case No. 24-12311-J

59.   McElory, Dana Jane

60.   McKay, John

61.   McNamara, Anne

62.   Meese, Edwin

63.   Mishkin, Maxwell

64.   Moelker, Nathan J.

65.   Mukasey, Hon. Michael B.

66.   Murrell, Larry Donald

67.   National Cable Satellite Corporation d/b/a C-SPAN

68.   National Public Radio, Inc.

69.   Nauta, Waltine

70.   NBCUniversal Media, LLC d/b/a NBC News, a subsidiary of Comcast
       Corporation (CMCSA)

71.   Orlando Sentinel Media Group, publisher of the Orlando Sentinel

72.   Pearce, James I.

73.   Pellettieri, John M.

74.   POLITICO LLC

75.   Potter, Trevor

C – I-5 of 8

*United States v. Donald J. Trump, Waltine Nauta, and Carlos De Oliveira*
Case No. 24-12311-J

76.    Radio Television Digital News Association

77.    Raul, Alan Charles

78.    Ray, Robert W.

79.    Reeder, L. Martin Jr.

80.    Reinhart, Hon. Bruce E.

81.    Reuters News & Media, Inc.

82.    Reynolds, Brett

83.    Roth, Stuart J.

84.    Russell, Lauren

85.    Salario, Samuel

86.    Sample, James J.

87.    Sekulow, Jay Alan

88.    Sekulow, Jordan

89.    Sasso, Michael Adam

90.    Schaerr, Gene

91.    Seligman, Matthew

92.    Sisney, Benjamin P.

93.    Smith, Abbe

C – I-6 of 8

*United States v. Donald J. Trump, Waltine Nauta, and Carlos De Oliveira*
Case No. 24-12311-J

94.   Smith, Fem

95.   Smith, Jack

96.   State Democracy Defenders Action

97.   Sun-Sentinel Company, LLC, publisher of the South Florida Sun Sentinel

98.   TEGNA, Inc. (TGNA)

99.   Telemundo Network Group, LLC d/b/a Noticias Telemundo

100.  Thakur, Michael

101.  The Associated Press

102.  The E.W. Scripps Company (SSP)

103.  The McClatchy Company, LLC (MNI) d/b/a the Miami Herald

104.  The New York Times Company (NYT)

105.  The Palm Beach Post and USA TODAY, publications operated by subsidiaries of Gannett Co., Inc. (GCI)

106.  Thompson, Larry

107.  Tillman, Seth Barrett

108.  Tobin, Charles

109.  Torres, Hon. Edwin

*United States v. Donald J. Trump, Waltine Nauta, and Carlos De Oliveira*
Case No. 24-12311-J

110.  Trent, Edward H.

111.  Tribe, Laurence

112.  Troye, Olivia

113.  Trump, President Donald J.

114.  Trusty, James

115.  Twardy, Stanley

116.  United States of America

117.  Univision Networks & Studios, Inc.

118.  VanDevender, Cecil W.

119.  Weiss, Stephen

120.  Weld, William

121.  Wharton, Kendra

122.  Whitman, Christine Todd

123.  Woodward, Stanley

124.  WP Company LLC d/b/a The Washington Post

125.  WPLG, Inc.

<u>/s/ Benjamin P. Sisney</u>
Benjamin P. Sisney
*Counsel for Amicus Curiae*

C – I-8 of 8

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT AND CERTIFICATE OF INTERESTED PERSONS ..................................................................................I-1

TABLE OF AUTHORITIES ..................................................................................II

INTEREST OF AMICUS ...................................................................................... 1

INTRODUCTION .................................................................................................. 2

ARGUMENT.......................................................................................................... 3

     I.     Jack Smith and other Special Counsels, Granted Broad and Unaccountable Authority, are Principal Officers who Must be Confirmed by the Senate. ..................................................................... 4

     II.    Special Counsel Smith has not Successfully Identified Any Statutory Authority to Support His Appointment. ............................. 18

CONCLUSION .................................................................................................... 24

CERTIFICATE OF COMPLIANCE WITH TYPE VOLUME LIMIT, TYPEFACE REQUIREMENTS AND TYPE-STYLE REQUIREMENTS .............................. 25

CERTIFICATE OF SERVICE ............................................................................ 26

# TABLE OF AUTHORITIES

## Cases

*Bowsher v. Synar*,
    478 U.S. 714 (1986) ................................................................. 8

*Buckley v. Valeo*,
    424 U.S. 1 (1976) ................................................................... 5

*Edmond v. United States*,
    520 U.S. 651 (1997) ........................................... 4, 8, 9, 10, 13, 17

*Glasscox v. City of Argo*,
    903 F.3d 1207 (11th Cir. 2018) ................................................ 5

*In re Grand Jury Investigation*,
   916 F.3d 1047 (D.C. Cir. 2019) .......................................... 13, 16
*In re Sealed Case*,
    829 F.2d 50 (D.C. Cir. 1987) ................................................. 13

*Johnson Enters. of Jacksonville v. FPL Group*,
    162 F.3d 1290 (11th Cir. 1998) ............................................... 6

*Lucia v. SEC*,
    585 U.S. 237 (2018) ........................................................ 5. 21

*Morrison v. Olson*,
    487 U.S. 654 (1988) .................................................... 7, 16, 17

*Myers v. United States*,
    272 U.S. 52 (1926) ................................................................ 8

*Sosa v. Chase Manhattan Mortg. Corp.*,
    348 F.3d 979 (11th Cir. 2003) ................................................ 6

*Trump v. Anderson*,
    601 U.S. 100 (2024) ............................................................. 6

*Trump v. United States*,
144 S. Ct. 2312 (2024) ................................................................ 7, 23

*United States ex rel. Accardi v. Shaughnessy*,
347 U.S. 260 (1954) ......................................................................... 14

*United States v. Aguillard*,
217 F.3d 1319 (11th Cir. 2000) ........................................................ 19

*United States v. Al-Arian*,
514 F.3d 118 (11th Cir. 2008) ............................................................ 5

*United States v. Caraballo-Martinez*,
866 F.3d 1233 (11th Cir. 2017) ........................................................ 19

*United States v. Germaine*,
99 U.S. 508 (1878) ............................................................................. 4

*United States v. Nixon*,
418 U.S. 683 (1974) ............................................................ 14, 15, 18

*United States v. Trump*,
2024 U.S. Dist. LEXIS 123552 (S.D. Fla. 2024) ................... 6, 7, 10, 15, 16, 19

**Statutes and Rules**

28 C.F.R. § 600.6 ............................................................................. 10

28 C.F.R. § 600.7 ................................................................... 9, 11, 12

28 U.S.C. § 541 .................................................................................. 9

28 U.S.C. §§ 509 ................................................................. 18, 20, 22

28 U.S.C. §§ 510 ................................................................. 18, 20, 22

28 U.S.C. §§ 515 ....................................................................... 18, 20

28 U.S.C. §§ 533 ........................................................................ 18, 20, 21

**Other Authorities**

Letter from Thomas Jefferson to George Hay (Jun. 23, 1807), *in* 10
     The Works of Thomas Jefferson (Paul Leicester Ford ed., Fed.
     Edition) (1905) .................................................................... 23

Steven Calabresi & Gary Lawson, *Why Robert Mueller's Appointment as Special
     Counsel was Unlawful*, 95 Notre Dame L. Rev. 87, 109 (2019)........................ 21

**Constitutional Provisions**

U.S. Const. art. II, § 2 ................................................................ 4

## INTEREST OF AMICUS[1]

The American Center for Law and Justice ("ACLJ") is an organization dedicated to the defense of constitutional liberties secured by law. ACLJ attorneys have appeared often before the Supreme Court as counsel for parties, e.g., *Trump v. Anderson*, 601 U.S. 100 (2024); *Heritage Foundation v. Parker*, U.S. No. 21A249 (2021); and *Trump v. Vance*, 591 U.S. 786 (2020); or for *amici, e.g.*, *Fischer v. United States*, 144 S. Ct. 2176 (2024); and *McDonnell v. United States*, 579 U.S. 550 (2016), addressing various constitutional issues.

The ACLJ is particularly equipped to address this matter as counsel for the ACLJ represented President Trump related to the appointment and investigation of Special Counsel Robert Mueller, where the constitutionality of the appointment of a private citizen as Special Counsel was at issue. Since, although the case was ultimately decided in the ACLJ's favor by the Supreme Court on other grounds, one of the central issues litigated in *Trump v. Anderson*, wherein the ACLJ represented the Respondent Colorado Republican Party, was the scope and meaning of the Constitution's Appointments Clause.

---

[1]All parties consented to the filing of this *amicus* brief. No party's counsel in this case authored this brief in whole or in part. No party or party's counsel contributed any money intended to fund preparing or submitting this brief. No person, other than amicus, its members, or its counsel contributed money that was intended to fund preparing or submitting this brief.

1

## INTRODUCTION

The principal officers of the United States may only be appointed by the President and may only be confirmed by Congress. Special Counsel Jack Smith assumes that he is not such an officer and presents no argument to this Court to support that conclusion. This Court should not take that premise for granted. On the contrary, the evidence shows that Special Counsel Smith is, in fact, a principal officer and that regardless of statute, he could not be appointed by the Attorney General. Special Counsel Smith, unlike United States Attorneys, may only be removed for cause. Unlike United States Attorneys, he does not have to report to the Attorney General or proceed according to his instruction and direction. In fact, Special Counsel Smith has expressly been granted the authority to act independently of the Attorney General and not be subject to his direction or control. The Attorney General has only a narrowly defined ability to attempt to overrule the Special Counsel's decisions; otherwise, Special Counsel Smith answers to no one. In the absence of that control, the Constitution's obligation is clear; only the President could have legitimately appointed him.

But at best, the Special Counsel is still at least an officer of the United States, who must identify specific statutory authority that would justify his appointment. He has not done so. Instead, he cites statutes that simply authorize the appointment

into special roles of individuals who are *already* officers or employees of the Department of Justice. He points to no statute that justifies the *ab initio* creation of a new officer, a special counsel, by the Attorney General's appointment of a private citizen. A statute formerly allowed the Attorney General to appoint special counsels, but that statute has expired. In its absence, there is simply no authority for the Attorney General to replace those attorneys confirmed by Congress, United States Attorneys, with a new officer, a Special Counsel who has never received such a confirmation.

## ARGUMENT

This case presents a straightforward problem; the statute authorizing the Attorney General to appoint independent counsel has expired but nonetheless the Attorney General has chosen to continue to attempt such appointments. The Attorney General has appointed private citizens like Robert Mueller or Jack Smith as special counsels with broad authority to replace the United States Attorneys who were actually confirmed by Congress, despite no statute allowing the Attorney General to do so. In the absence of specific articulate authority to not merely hire employees but to actually appoint officers of the United States, the Attorney General could not appoint Jack Smith and his actions in prosecuting President Trump were unlawful.

3

The Appointments Clause gives the President authority to appoint all

Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law: but the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments.

U.S. Const. art. II, § 2. As Justice Scalia pointed out in *Edmond v. United States*, "the Appointments Clause of Article II is more than a matter of 'etiquette or protocol'; it is among the significant structural safeguards of the constitutional scheme." 520 U.S. 651, 659 (1997) (quoting *Buckley* v. *Valeo*, 424 U.S. 1, 125 (1976)). That structural safeguard must be preserved against encroachment here by recognizing that the vast authority entrusted to Special Counsel Smith rendered him a principal officer who must have been confirmed by the Senate. Alternatively, there must have been at a bare minimum statutory authorization of his role as an officer. No such authorization exists. Accordingly, in either case, his appointment was unlawful.

## I.    Jack Smith and other Special Counsels, Granted Broad and Unaccountable Authority, are Principal Officers who Must be Confirmed by the Senate.

"The Constitution for purposes of appointment very clearly divides *all* its officers into two classes." *United States v. Germaine*, 99 U.S. 508, 509 (1878) (emphasis added). "Principal officers are selected by the President with the advice and consent of the Senate. Inferior officers Congress may allow to be appointed by

4

the President alone, by the heads of departments, or by the Judiciary." *Buckley v. Valeo*, 424 U.S. 1, 132 (1976). Accordingly, no one may serve as an officer of the United States without authorization that occurs pursuant to the constitutionally prescribed means; the Appointments Clause "prescribes the exclusive means of appointing 'Officers [of the United States].'" *Lucia v. SEC*, 585 U.S. 237, 244 (2018).

If Jack Smith is a principal officer, then the Appointments Clause absolutely requires that he have been appointed by the President and confirmed by the Senate, which indisputably did not occur here. In his briefing to this Court, he makes essentially no argument in his favor on this point; his brief takes as given the district court's tentative conclusion that he is an inferior officer. In fact, the sum total of Special Counsel Smith's argument on this point is: "[a]s the district court recognized (Dkt. 672 at 2), the Special Counsel is an inferior officer." App. Br. 13. What this "argument" misses is that this Court "may affirm for any reason supported by the record, even if not relied upon by the district court." *Glasscox v. City of Argo*, 903 F.3d 1207, 1217 n.12 (11th Cir. 2018) (quoting *United States v. Al-Arian*, 514 F.3d 1184, 1189 (11th Cir. 2008)). This Court has made clear that a district court can be affirmed in its judgement even for a reason that the district court rejected. "A correct judgment may be affirmed on any ground regardless of the grounds addressed,

adopted or rejected by the district court." *Sosa v. Chase Manhattan Mortg. Corp.*, 348 F.3d 979, 983 (11th Cir. 2003) (citing *Johnson Enters. of Jacksonville v. FPL Group*, 162 F.3d 1290, 1311 n.50 (11th Cir. 1998)).[2]

The necessity of this court's independent examination of the principal officer issue is heightened by the district court's recognition that that analysis was far from over. The district court carefully highlighted that "the absence of at-will removal is a key feature that—when combined with the absence of any meaningful supervision or countermanding authority—likely could transform Special Counsel Smith into a principal officer," but it held "off on that view to allow whatever evaluation of this topic may be conducted by higher courts." *United States v. Trump*, 2024 U.S. Dist. LEXIS 123552, *101-102 (S.D. Fla. 2024). Smith has sought to avoid that evaluation and instead completely assumed that the principal officer issue needs no further discussion. This Court should not make this assumption or avoid the question of whether the Special Counsel Smith is a principal officer; if he is, "his appointment is invalid because the Special Counsel was not nominated by the President and

---

[2] The Supreme Court recently applied this principle in *Trump v. Anderson*, 601 U.S. 100 (2024). The trial court concluded that it could apply Section Three of the Fourteenth Amendment but decided that it would not remove President Trump from the ballot because he is not an "Officer of the United States." The Supreme Court concluded, instead, that the trial court had no authority to remove President Trump from the ballot at all.

6

confirmed by the Senate, as principal officers must be." *Trump v. United States*, 144 S. Ct. 2312, 2351 (2024) (Thomas, J., concurring).

The court below noted the chief argument in favor of finding that Special Counsel Smith is a principal officer: "it is a point worthy of consideration given the virtually unchecked power given to Special Counsel Smith under the Special Counsel Regulations." *United States v. Trump*, 2024 U.S. Dist. LEXIS 123552, *89 (S.D. Fla. 2024). Although the court rejected President Trump's argument on this point, it recognized the argument was compelling and that the matter needed to be left "for review by higher courts." *Id.* That review is crucial because Special Counsel Smith wields authority comparable to—if not broader than—a United States Attorney per the regulations that establish his authority, without a functional superior supervising or directing him, and without the important tool of at-will removal. Special Counsel Smith has independent, self-directed authority that renders him a principal officer.

The line between principal and inferior officers is drawn by looking at key factors, such as whether the officer is subject to removal by a higher official, whether the officer is empowered "to perform only certain, limited duties," and whether the authority of the officer is limited by the direction of a superior. *Morrison v. Olson*, 487 U.S. 654, 671 (1988). A key indicia of an officer's status as a principal officer

7

is whether he reports to and is controlled by other officers. *Edmond v. United States*, 520 U.S. 651, 662-93 (1997).

> Generally speaking, the term "inferior officer" connotes a relationship with some higher ranking officer or officers below the President: Whether one is an "inferior" officer depends on whether he has a superior. It is not enough that other officers may be identified who formally maintain a higher rank, or possess responsibilities of a greater magnitude. If that were the intention, the Constitution might have used the phrase "lesser officer." Rather, in the context of a Clause designed to preserve political accountability relative to important Government assignments, we think it evident that "inferior officers" are officers whose work is directed and supervised at some level by others who were appointed by Presidential nomination with the advice and consent of the Senate.

*Id.* at 662-63.

*Edmond* stressed that "[t]he power to remove officers . . . is a powerful tool for control," noting and relying heavily on the parties' concession that the judicial officer at issue was removable without cause to reach a conclusion that he was an inferior officer. *Id.* at 664 (citing *Bowsher v. Synar*, 478 U.S. 714, 727 (1986), and *Myers v. United States*, 272 U.S. 52 (1926)). The Supreme Court also emphasized the degree to which an inferior officer's decisions can be "reverse[d]" or countermanded by a higher entity or officer, ultimately concluding that the judges at issue remained inferior, because their decisions still were reviewed and controlled by a higher court, and because they lacked "power to render a final decision on behalf of the United States unless permitted to do so by other Executive officers."

8

*Id.* at 665. Ultimately, in *Edmond*, the Supreme Court applied three factors to determine whether an officer was inferior: whether there is oversight by others, who has final decision-making authority, and removability. *Id.* at 663-66. All three of these factors weigh in favor of concluding that Special Counsel Smith is a principal officer.

First, take the authority to remove. The Attorney General does not have authority to remove Jack Smith whenever he may wish. *Edmond* made clear that whether a principal officer, like the Attorney General, can remove an official at will is a strong indication of whether that individual is a principal officer. An individual removeable at will by a superior officer is subordinate to that officer. But here, the Attorney General cannot remove the Special Counsel at will but can only remove for good cause. 28 C.F.R. § 600.7(d). In fact, there is an entire process that the Attorney General must follow if he wishes to remove the Special Counsel; he must take "personal action" to remove the Special Counsel for good cause and inform the Special Counsel in writing of the specific reason for the removal.  This places the Special Counsel even above United States Attorneys, who are, in sharp contrast, removable at will. 28 U.S.C. § 541(c). Those attorneys are confirmed by the Senate, but the Special Counsel, with no statutory authorization for his appointment at all or any confirmation process, has greater employment protections.

9

Then, look at the lack of oversight authority from the Attorney General. In order to be an inferior officer, one must have a principal officer, a boss, "who is direct[ing] and supervis[ing] at some level," *Edmond*, 520 U.S. at 663, the work that the inferior officer is doing. The current Special Counsel regulations are set up intentionally and explicitly so that the Attorney General will not supervise or control his work. In fact, the Special Counsel regulations "impose virtually no mechanism for supervision or control by the Attorney General." *United States v. Trump*, 2024 U.S. Dist. LEXIS 123552, *95. A Special Counsel is under no mandatory regulatory obligation to consult with the Attorney General "about the conduct of his or her duties and responsibilities." 28 C.F.R. § 600.6. Quite the opposite. The law leaves entirely in the hands of the Special Counsel to determine whether to consult with the Attorney General at all: "the Special Counsel shall determine whether and to what extent to inform or consult with the Attorney General or others within the Department about the conduct of his or her duties and responsibilities." *Id.* The Special Counsel is granted "the full power and independent authority to exercise all investigative and prosecutorial functions of any United States Attorney." *Id.*

The Special Counsel regulations give full discretion to the Special Counsel whether to "consult directly with the Attorney General"—even when the Special Counsel "conclude[s] that the extraordinary circumstances of any particular decision

10

would render compliance with required review and approval procedures by the designated Departmental component inappropriate." *Id.* § 600.7(a). The Special Counsel has authority to determine *not* to follow Department of Justice procedures, based on his own conclusion that the procedures should not be followed, and does not even need permission from the Attorney General to do so. Even in those extraordinary circumstances, the Special Counsel is the one to decide "whether to consult directly with the Attorney General," again leaving no mandatory consultation or reporting in the regulations themselves. Instead, the Special Counsel "may" choose to only "consult" with the Attorney General. 28 CFR § 600.7(a) gives the Special Counsel full authority to refuse to comply "with required review and approval procedures." No United States Attorney possesses the ability to do anything remotely comparable.

Finally, Special Counsel Smith has been vested with decision-making authority. Regulations expressly say that the Special Counsel is not subject to the Attorney General's direction but instead has ample authority to proceed independently. 28 C.F.R. § 600.7(b).

> The Special Counsel shall not be subject to the day-to-day supervision of any official of the Department. However, the Attorney General may request that the Special Counsel provide an explanation for any investigative or prosecutorial step, and may after review conclude that the action is so inappropriate or unwarranted under established Departmental practices that it should not be pursued. In conducting that

11

> review, the Attorney General will give great weight to the views of the Special Counsel. If the Attorney General concludes that a proposed action by a Special Counsel should not be pursued, the Attorney General shall notify Congress as specified in § 600.9(a)(3).

*Id.* § 600.7(b). This provision, reduced to its essence, sets up a default that the Attorney General will not have authority to control or direct the decisions and actions of the Special Counsel and makes clear that the Special Counsel is not subject to "day-to-day supervision." *Id.*

The provision leaves the Attorney General a very slim route to countermand a decision by the Special Counsel, but only after the Attorney General has given "great weight to the views of the Special Counsel"; only when the decision is "so inappropriate or unwarranted under established Departmental policies"; and subject to a strict congressional notification requirement that mandates the Attorney General notify Congress of his "countermanding" decision at the conclusion of the investigation. *Id.* § 600.7(b). This is a limited window of being able to countermand only the most egregious orders, and even then, only by following a narrowly defined and enumerated process that imposes significant hurdles on the Attorney General. It contrasts markedly with the Attorney General's authority to simply direct the United States Attorneys, nominated by the President and confirmed by Congress, who report to him.

12

For an officer to be an inferior officer, at a minimum his or her work must be "directed and supervised at some level" by a principal officer. *Edmond*, 520 U.S. at 663. Special Counsel Smith is expressly not directed and supervised by the Attorney General. Instead, there is only a very limited stopgap for the Attorney General to potentially be able to countermand particularly egregious decisions. Otherwise, the Special Counsel makes his own decisions and supervises himself.

In *In re Grand Jury Investigation*, 916 F.3d 1047, 1052 (D.C. Cir. 2019), the D.C. Circuit erroneously concluded that Special Counsel Robert Mueller was not a principal officer, despite the broad authority he was granted under the Special Counsel Regulations. Despite the fact that the Special Counsel can only be removed for good cause, has explicit independent authority, and possesses substantial final decision-making power, the D.C. Circuit still concluded that he is only an inferior officer. And why? The court held that "an independent counsel was an inferior officer because his office was created pursuant to a regulation and 'the Attorney General may rescind this regulation at any time.'" *In re Grand Jury Investigation*, 916 F.3d 1047, 1052 (D.C. Cir. 2019) (quoting *In re Sealed Case*, 829 F.2d 50 (D.C. Cir. 1987)). The reasoning, in other words, was that because the Attorney General has authority to rescind or alter Special Counsel regulations, those regulations should be ignored in deciding whether a special counsel is a principal officer. The D.C.

13

Circuit's reasoning would lead courts to ignore the actual terms of the Special Counsel regulations on the hypothetical that they might someday be altered.

The problem with that argument is a problem the district court pointed out; the Special Counsel must rely for his constitutional status and authority on those very same regulations. For the Special Counsel to do anything, he must point the court to the regulations which authorize his appointment, as certainly no specific statute expressly authorizes his appointment. It is a truism that regulations can be amended subject to ordinary legal principles and any applicable restraints, by following the proper process for altering duly prescribed regulations.

The same is true of laws. But until they are changed, these regulations have the force of law so long as they remain operative, which they are here. *United States v. Nixon*, 418 U.S. 683, 695 (1974) ("So long as this regulation is extant it has the force of law.") (citing *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954)). In *Nixon*, President Nixon argued that a dispute between himself and a Special Prosecutor was a political question. The Court rejected the argument, explaining

> [I]t is theoretically possible for the Attorney General to amend or revoke the regulation defining the Special Prosecutor's authority. But he has not done so. So long as this regulation remains in force the Executive Branch is bound by it, and indeed the United States as the sovereign composed of the three branches is bound to respect and to enforce it.

14

*Id.* at 696.

The exact principle applies here. It is of course possible that the Special Counsel regulations might be amended in the future and special attorneys appointed according to some different mechanism. But the current mechanism is the one before the Court, and the Court is adjudicating the appointment of Jack Smith, appointed according to the current regulations, not some hypothetical different regulation. "[T]hat inquiry, it seems to this Court, must operate on the basis of extant law (a point on which the Special Counsel otherwise agrees)—not on some possible future material change to the removal limitations that has not happened." *United States v. Trump*, 2024 U.S. Dist. LEXIS 123552, *103-104. As the district court pointed out, trafficking in such hypotheticals requires a court to "suspend reality and reject the challenge on the basis of something other than the operative regulations." *Id.* at 104.

The question before this Court is not whether a future special counsel, under regulations that might be created at some possible point in the future, is a principal officer. It is whether Special Counsel Jack Smith, under these regulations where he is specially made unremovable, given his own authority to make his own decisions, and told explicitly he does not have to report to the Attorney General, is a principal officer. Under the regulations, the Special Counsel *does not* serve "at the pleasure of an Executive Branch officer who was appointed with the advice and consent of the

15

Senate." *In re Grand Jury Investigation*, 916 F.3d at 1052. Control is *not* maintained by the Attorney General. Thus, a special counsel appointed pursuant to the current regulations is simply a principal officer.

As Chief Justice Rehnquist wrote for the majority in *Morrison*, the line between inferior and principal is sometimes far from clear, and so the Court considered several factors. In that instance, the appellant was:

> empowered by the Act to perform only certain, limited duties. An Independent counsel's role is restricted primarily to investigation and, if appropriate, prosecution for certain federal crimes. Admittedly, the Act delegates to appellant "full power and independent authority to exercise all investigative and prosecutorial functions and powers of the Department of Justice," § 594(a), but this grant of authority does not include any authority to formulate policy for the Government or the Executive Branch, nor does it give appellant any administrative duties outside of those necessary to operate her office. The Act specifically provides that in policy matters appellant is to comply to the extent possible with the policies of the Department. § 594(f).

*Morrison v. Olson*, 487 U.S. 654, 671–72 (1988).

By contrast, the Special Counsel here is not empowered to perform only certain, limited duties. His authority is broad, at least "as broad as those possessed by a United States Attorney," *United States v. Trump*, 2024 U.S. Dist. LEXIS 123552, *105 and in some ways broader, as he can exercise jurisdiction across multiple districts. In fact, throughout this matter Special Counsel Smith has in fact emphasized his own substantial authority and independence to operate. App. Br. 54

16

(The Attorney General "might direct a Special Counsel to oversee an entire investigation and prosecution, subject to greater or lesser oversight by the Attorney General as his judgment dictates."). That substantial authority he possesses reflects the fact that he has been established as an independent, principal officer with independent authority, not directly answerable to the Attorney General.

The Special Counsel claimed in his brief that "[t]he sole question this case presents is whether Congress has by law authorized the Attorney General to appoint the Special Counsel." App. Br. 41. He is wrong. The first and most important question for this Court is whether the Special Counsel is a principal officer such that *no* law could justify his appointment. Because the Special Counsel cannot be removed, controlled, or directed by the Attorney General, he is himself a principal officer.

As Justice Souter's concurrence in *Edmond* made clear, a nominal boss does not alone make someone an inferior officer. "Having a superior officer is necessary for inferior officer status, but not sufficient to establish it." *Edmond v. United States,* 520 U.S. 651, 667 (Souter, J., concurring) (citing *Morrison v. Olson*, 487 U. S. 654, 722 (1997) (Scalia, J., dissenting), for the proposition that, "[t]o be sure, it is not a sufficient condition for 'inferior' officer status that one be subordinate to a principal officer. Even an officer who is subordinate to a department head can be a principal

17

officer."). Special Counsel Smith may be nominally a subordinate. But he has been vested with independent authority, independent tenure, and independent jurisdiction, rendering him a principal officer.

## II.    Special Counsel Smith has not Successfully Identified Any Statutory Authority to Support His Appointment.

Even if he is only an inferior officer, Special Counsel Smith must still identify purported authority that would allow the Attorney General to appoint him, as at a minimum, he is clearly at least an inferior officer. He has not done so. The Special Counsel cites four statutes: 28 U.S.C. §§ 515(b), 533(1), 509, and 510. None of those statutes contain explicit reference to the appointment of additional officers of the United States, private citizens appointed from outside the government, or vest in the Attorney General the authority to create new officer roles from scratch.

*United States v. Nixon*, 418 U.S. 683, 694 (1974) is not to the contrary. The case contained a brief reference to the Attorney General's broad authority:

> Congress has vested in the Attorney General the power to conduct the criminal litigation of the United States Government. 28 U.S.C. § 516. It has also vested in him the power to appoint subordinate officers to assist him in the discharge of his duties. 28 U.S.C. §§ 509, 510, 515, 533.

The district court here analyzed at length why this sentence should be considered dicta. The specific issue of the Attorney General's authority to appoint a Special Counsel from outside the government was simply not a point in dispute in *Nixon*,

18

nor did the Court address the actual meaning of the relevant statutes. The appointment authority was not a question upon which the Supreme Court granted *certiorari. United States v. Trump*, 2024 U.S. Dist. LEXIS 123552, *77-79. Ultimately, "the 'holding' of a prior decision can reach only as far as the facts and circumstances presented to the Court in the case which produced that decision." *United States v. Caraballo-Martinez*, 866 F.3d 1233, 1244 (11th Cir. 2017) (citing *United States v. Aguillard*, 217 F.3d 1319 (11th Cir. 2000)). The actual scope of the Attorney General's authority to appoint special counsels was simply not a point actually raised to the Court, at issue in its analysis, or ultimately part of its holding. *Nixon*'s holding instead concerned the authority of the special prosecutor to seek a subpoena. Whether the Attorney General had authority to appoint a Special Prosecutor at all was simply not litigated in *Nixon.*

Accordingly, this Court should directly address these statutes. None of them contain any authorization for the Attorney General to appoint as officers private citizens from outside the government. No statutory or constitutional provision remotely authorized the appointment by the Attorney General of a private citizen to receive extraordinary criminal law enforcement power under the title of Special Counsel. Jack Smith never claims to be a mere employee, which would indeed be an extraordinary claim considering the vast authority he possesses. His appointment

19

therefore as an officer must occur pursuant to the statutes he cites: 28 U.S.C. §§ 509, 510, 515, 533. But not one of these statutes contain any such authority to appoint private individuals as new officers of the United States.

Section 515(b) empowers the Attorney General to "commission[]" attorneys who are "specially retained under authority of the Department of Justice" as "special assistant[s] to the Attorney General" or "special attorney[s]." 28 U.S.C. § 515(b). The statute is a logistics-oriented statute that allows the designation of already-"*retained*" "special attorneys" or "special assistants" within the Department of Justice. It specifies that those already retained shall be "commissioned," that is, designated, or tasked, to assist in litigation in other locations.

Nowhere in this sequence does Section 515(b) give the Attorney General independent power to appoint new officers like Special Counsel Smith. Instead, it allows the Attorney General to designate those who have been "retained" to perform specific additional acts. Its wording refers in the past tense only to attorneys "specially retained under the authority of the Department of Justice" to whom it gives a title, salary, and commission. *Id.* This is clearly not a grant of new power to retain or to hire new officers, but simply a provision for administrative rescheduling. "Section 515(b) is phrased in the past tense and refers to hires that have already been made." Steven Calabresi & Gary Lawson, *Why Robert Mueller's Appointment as*

*Special Counsel was Unlawful*, 95 Notre Dame L. Rev. 87, 109 (2019).

Likewise, 28 U.S.C. § 533 specifically confirms that "[t]he Attorney General may appoint officials . . . to detect and prosecute crimes against the United States." 28 U.S.C. § 533. Crucially, the term "official" in Section 533(1) is not identical to officer. Because the two terms are not so identical, a general reference to "officials" does not contain within it the more specific constitutional term "officers." The Special Counsel does not point to any authority otherwise. On the contrary, he reinforces this point and the authority he cites recognizes this very distinction. For example, in *Lucia v. SEC*, the Supreme Court illustrated this very point by stating that "[t]he Appointments Clause of the Constitution lays out the permissible methods of appointing 'Officers of the United States,' a class of government officials distinct from mere employees." 585 U.S. 237, 241 (2018) (emphasis added).

The Special Counsel's argument that "official" is a generic term that covers both officers and employees misses the point. In order to possess the authority to appoint officers of the United States, the Attorney General must expressly identify statutory authority to appoint those officers, not merely permission to hire employees or officials in a general sense. A generic reference to public officials does not constitute that authority, because it does not expressly and directly include officers but instead uses a broader term that might also include employees. In other words,

21

the very point that Special Counsel Smith relies on, the fact that the ordinary understanding of "official" is broader than "officer," is precisely what should lead this Court to recognize that a generic statute allowing the appointment of officials does not confer Article II appointment power to appoint officers.

Finally, the last two statutes, 28 U.S.C. §§ 509 and 510, that the Special Counsel relies on provide even less of a basis for his appointment. Neither statute contains any hint of authority to appoint special counsels as officers of the United States: one statute simply indicates that the authority of the Department of Justice is vested in the Attorney General, 28 U.S.C. § 509, and the other states that "[t]he Attorney General may from time to time make such provisions as he considers appropriate authorizing the performance by any other officer, employee, or agency of the Department of Justice of any function of the Attorney General." 28 U.S.C. § 510.

Neither statute contains the remotest suggestion that the Attorney General has such authority to appoint people outside the Department of Justice to serve as officer of the United States. Instead, 28 U.S.C. § 510 specifically allows the Attorney General to make rules regarding "performance" of already appointed officers or employees. Like the other statutes, it does not describe appointing new officers. The authority to delegate responsibilities to already existing officers is vastly different

22

from an authority to appoint members of the public as officers of the United States.

The constitutional safeguards against the Attorney General being able to appoint new officers of the United States are of particular importance here, where that purported officer was appointed to prosecute a former President. The United States Constitution imposes upon the person of the President a particular set of duties to be undertaken on behalf of hundreds of millions of people with global impact. Preservation of their ability to perform those duties is crucial to our constitutional order. Were it not the case, as Thomas Jefferson wrote, "the several courts could bandy him from pillar to post, keep him constantly trudging from north to south & east to west, and withdraw him entirely from his constitutional duties." Letter from Thomas Jefferson to George Hay (Jun. 23, 1807), *in* 10 The Works of Thomas Jefferson, 404-5 (Paul Leicester Ford ed., Fed. Edition) (1905). As the Supreme Court has recently highlighted, "[t]he enfeebling of the Presidency and our Government that would result from such a cycle of factional strife is exactly what the Framers intended to avoid." *Trump v. United States*, 144 S. Ct. 2312, 2346 (2024). Just as those dangers were avoided by the doctrine of presidential immunity, they can be avoided here by recognizing the unconstitutionality of the appointment of a Special Counsel without congressional authorization or confirmation.

## CONCLUSION

For the foregoing reasons, *Amicus Curiae* respectfully asks this Court to affirm the district court's judgment.

Respectfully Submitted,

JAY ALAN SEKULOW
JORDAN SEKULOW
STUART J. ROTH
ANDREW J. EKONOMOU
/s/ *Benjamin P. Sisney*
BENJAMIN P. SISNEY
NATHAN J. MOELKER
AMERICAN CENTER FOR LAW &
JUSTICE
201 Maryland Ave., NE
Washington, DC 20002
Phone: (202) 546-8890
Fax: (202) 546-9309
bsisney@aclj.org
*Counsel for Amicus Curiae*

24

**CERTIFICATE OF COMPLIANCE WITH TYPE VOLUME LIMIT,
TYPEFACE REQUIREMENTS AND TYPE-STYLE REQUIREMENTS**

This brief complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(b) because it contains 5,626 words, excluding the parts of the Brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft word for office 365 in 14-point Times New Roman font.

**Signature** */s/ Benjamin P. Sisney*          **Date:** November 1, 2024

## CERTIFICATE OF SERVICE

I hereby certify that on November 1, 2024, I electronically filed a copy of the foregoing *Amicus Curiae* Brief using the ECF System which will send notification of that filing to all counsel of record in this litigation. I also certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: November 1, 2024

*/s/ Benjamin P. Sisney*
Benjamin P. Sisney
*Counsel for Amicus Curiae*