No. 24-12311

## In the
## United States Court of Appeals for the Eleventh Circuit

UNITED STATES OF AMERICA,
*Appellant*,
v.
DONALD J. TRUMP, WALTINE NAUTA, AND CARLOS DE OLIVERA,
*Defendants-Appellees.*

**On Appeal from the
United States District Court for
the Southern District of Florida**

**Brief *Amicus Curiae* of America's Future, America First Policy Institute,
Gun Owners of America, Gun Owners Foundation, Gun Owners of
California, U.S. Constitutional Rights Legal Defense Fund, Public Advocate of
the United States, One Nation Under God Foundation, and
Conservative Legal Defense and Education Fund
in Support of Defendants-Appellees and Affirmance**

WILLIAM J. OLSON
JEREMIAH L. MORGAN
 WILLIAM J. OLSON, P.C.
 Vienna, VA  22180

PAMELA J. BONDI
MATTHEW WHITAKER
JESSICA HART STEINMANN
MICHAEL BERRY
 AMERICA FIRST POLICY INST.
 Fort Worth, TX  76107

PATRICK M. MCSWEENEY*
ROBERT J. CYNKAR
MCSWEENEY, CYNKAR
 & KACHOUROFF, PLLC
 3358 John Tree Hill Rd.
 Powhatan, VA  23139
 (703) 621-3300
 patrick@mck-lawyers.com
 *Attorney of Record

November 1, 2024

*Attorneys for Amici Curiae*

C-1 of 3

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

The *amici curiae* herein, America's Future, America First Policy Institute, Gun Owners of America, Gun Owners Foundation, Gun Owners of California, U.S. Constitutional Rights Legal Defense Fund, Public Advocate of the United States, One Nation Under God Foundation, and Conservative Legal Defense and Education Fund, through their undersigned counsel, submit this Certificate of Interested Persons and Corporate Disclosure Statement pursuant to Federal Rules of Appellate Procedure 26.1 and Eleventh Circuit Rules 26.1-1, 26.1-2, and 26.1-3.

America's Future, America First Policy Institute, Gun Owners of America, Gun Owners Foundation, Gun Owners of California, U.S. Constitutional Rights Legal Defense Fund, Public Advocate of the United States, One Nation Under God Foundation, and Conservative Legal Defense and Education Fund are non-stock, nonprofit corporations, none of which has any parent company, and no person or entity owns them or any part of them.

The following is a list of persons or parties, in addition to those listed in Appellants' and Appellees' opening briefs and any other *amicus* briefs that may be filed, that have an interest in the outcome of this matter:

C-2 of 3

1.    America First Policy Institute (*Amicus*)

2.    America's Future (*Amicus*)

3.    Berry, Michael (Counsel for *Amicus* America First Policy Institute)

4.    Bondi, Pamela J. (Counsel for *Amicus* America First Policy Institute)

5.    Conservative Legal Defense and Education Fund (*Amicus*)

6.    Cynkar, Robert J. (Counsel for *Amici* America's Future, *et al.*)

7.    Gun Owners Foundation (*Amicus*)

8.    Gun Owners of America (*Amicus*)

9.    Gun Owners of California (*Amicus*)

10.   McSweeney, Cynkar & Kachouroff, PLLC (Counsel for *Amici* America's Future, *et al.*)

11.   McSweeney, Patrick (Counsel for *Amici* America's Future, *et al.*)

12.   Morgan, Jeremiah L. (Counsel for *Amici* America's Future, *et al.*)

13.   Olson, William J. (Counsel for *Amici* America's Future, *et al.*)

14.   One Nation Under God Foundation (*Amicus*)

15.   Public Advocate of the United States (*Amicus*)

16.   Steinmann, Jessica Hart (Counsel for *Amicus* America First Policy Institute)

C-3 of 3

17.    U.S. Constitutional Rights Legal Defense Fund (*Amicus*)

18.    Whitaker, Matthew (Counsel for *Amicus* America First Policy Institute)

19.    William J. Olson, P.C. (Counsel for *Amici* America's Future, *et al*.)

____s/Patrick M. McSweeney____

Patrick M. McSweeney

**TABLE OF CONTENTS**

Page

Certificate of Interested Persons ............................................................ C-1

Table of Authorities ................................................................................... ii

Interest of *Amici Curiae* ............................................................................ 1

Statement of the Case ................................................................................ 2

Summary of Argument .............................................................................. 3

Argument

I.   THE APPOINTMENT OF SPECIAL COUNSEL SMITH VIOLATED THE
     APPOINTMENTS CLAUSE ................................................................... 5

     A.   Special Counsel Smith Is neither an Inferior Officer of the
          United States nor a Mere Employee of the Department of
          Justice ........................................................................................ 5

     B.   The Special Counsel Is a Principal Officer ....................... 15

     C.   No Binding Precedent or Tradition Precludes Invalidation of the
          Appointment .......................................................................... 18

II.  THE STATUTES ON WHICH THE SPECIAL COUNSEL RELIES VIOLATE THE
     NON-DELEGATION DOCTRINE ........................................................ 22

III. THE INDEPENDENCE GIVEN THE SPECIAL COUNSEL VIOLATES THE
     VESTING AND TAKE CARE CLAUSES ............................................. 24

Conclusion ............................................................................................... 26

# TABLE OF AUTHORITIES

Page

**UNITED STATES CONSTITUTION**

Art. I, §1 ....................................................................................22
Art. I, §9, cl. 7 .............................................................................2
Art. II, §1, cl. 1 ..........................................................................24
Art. II, §2, cl. 2 ..............................................................2, 4, 7, 22
Art. II, §3 ...................................................................................24

**STATUTES**

5 U.S.C. § 301 ..............................................................................8
5 U.S.C. § 3101 ............................................................................6
28 U.S.C. § 509 ..............................................................2, *passim*
28 U.S.C. § 510 ..............................................................6, *passim*
28 U.S.C. § 515 ..............................................................2, *passim*
28 U.S.C. § 533 ..............................................................2, *passim*
28 U.S.C. § 541 ..........................................................................11
28 U.S.C. § 547 ..........................................................................11

**REGULATIONS**

28 C.F.R. § 600.6 ..................................................................11, 16
28 C.F.R. § 600.7 ........................................................................16
28 C.F.R. § 600.9 ........................................................................16
38 *Fed. Reg.* 14,688 ....................................................................7
64 *Fed. Reg.* 37,038 ....................................................................8

**CASES**

*Buckley v. Valeo,* 424 U.S. 1 (1976)..........................................10, *passim*
*Burnap v. United States,* 252 U.S. 512 (1920)............................6, *passim*
*CBS Inc. v. Primetime 24 Joint Venture,* 245 F.3d 1217 (11th Cir. 2001) ...............12
*Dobbs v. Jackson Women's Health Organization,* 597 U.S. 215 (2022)..................19
*DOT v. Ass'n of Am. R.R.,* 575 U.S. 43 (2015) ..............................................16
*Edmond v. United States,* 520 U.S. 651 (1997) ...............................14, 15, 17
*Free Enterprise Fund v. Public Company Accounting Oversight Bd.,*
    561 U.S. 477 (2010)....................................................................25
*Freytag v. Commissioner,* 501 U.S. 868 (1991) ...........................9, *passim*
*Gundy v. United States,* 588 U.S. 128 (2019) ..............................................24
*Hayes v. Nat'l Services, Inc.,* 196 F.3d 1252 (11th Cir. 1999)................................13
*Immigration & Naturalization Service v. Chadha,* 462 U.S. 919 (1983)................20
*In re Persico,* 522 F.2d 41 (2d Cir. 1975) ...............................................13

*Janus v. State, County & Municipal Employees,* 585 U.S. 878 (2018) ..................19
*Legal Services Corp. v. Dana,* 1982 U.S. Dist. LEXIS 18320 (D.D.C. 1982) ........15
*Lucia v. SEC,* 585 U.S. 237 (2018) ............................................................ 6, *passim*
*McDonnell v. United States,* 579 U.S. 550 (2016) ...................................................17
*Morrison v. Olson,* 487 U.S. 654 (1988) .......................................... 10, *passim*
*NLRB v. Noel Canning,* 573 U.S. 513 (2014) ....................................................20, 21
*NLRB v. SW General, Inc.,* 580 U.S. 288 (2017) ....................................................20
*Panama Refining Co. v. Ryan,* 293 U.S. 388 (1935) ...............................................22
*Parsons v. United States,* 167 U.S. 324 (1897) ......................................................11
*Ponzi v. Fessenden,* 258 U.S. 254 (1922) ...............................................................25
*Printz v. United States*, 521 U.S. 898 (1997) .........................................................26
*Rankin v. McPherson,* 483 U.S. 378 (1987) ...........................................................14
*Seila Law LLC v. CFPB,* 591 U.S. 197 (2020) .................................................6, 25
*Southwest Airlines Co. v. Saxon,* 596 U.S. 450 (2022) ..........................................12
*United States v. Arthrex, Inc.,* 594 U.S. 1 (2021) ..............................................10, 16
*United States v. Cox,* 342 F.2d 167 (5th Cir. 1965) ...............................................25
*United States v. Germaine,* 99 U.S. 508 (1878) ...........................................10, 13, 15
*United States v. Gonzales,* 520 U.S. 1 (1997) .........................................................12
*United States v. Maurice,* 26 F. Cas. 1211 (C.C.D.Va.1823) .................................13
*United States v. Nixon,* 418 U.S. 683 (1974) .................................................. 4, *passim*
*Weiss v. United States,* 510 U.S. 163 (1994) ..................................................... 6, *passim*
*Whitman v. American Trucking Associations,* 531 U.S. 457 (2001) .......................23
*Wilkinson v. Austin,* 545 U.S. 209 (2005) ...............................................................14
*Wise v. Withers,* 7 U.S. 331 (1806) ...........................................................................9

**MISCELLANEOUS**

A. Coan, *A Special Kind of Prosecutor* (Jan. 2019) .................................................11
D. Corn & D. Friedman, "The Far-Right Pushes a New Conspiracy Theory to
    Discredit Jack Smith," *Mother Jones* (Dec. 23, 2023) ..................................17
Merriam-Webster Dictionary ("significant") (revised ed. 2022) ............................12
B. Williams, S. Joshi & S. Musgrave, "How the Secretive 'Discipline'
    Process for Federal Prosecutors Buries Misconduct Cases,"
    *The Intercept* (Oct. 10, 2019) .......................................................................17
I. Wurman, "*As-Applied Nondelegation*," 96 TEX. L. REV. 975 (2018) .................24
A. Yablonsky, "Runaway Prosecutorial Discretion," 102 TEX. L. REV. ONLINE 1
    (2023).................................................................................................................24

## INTEREST OF AMICI CURIAE[1]

America's Future is exempt from taxation under section 501(c)(3) of the Internal Revenue Code ("IRC"), is one of the nation's oldest policy-oriented nonprofit organizations, having been founded in 1946, and is a leader in the fight to protect the American People's God-given liberties.  America First Policy Institute is a 501(c)(3) non-profit, non-partisan research institute dedicated to advancing policies that put the American people first, and its guiding principles are liberty, free enterprise, the rule of law, America-first foreign policy, and a belief that American workers, families, and communities are the key to our country's success.  Gun Owners of America, Gun Owners Foundation, Gun Owners of California, U.S. Constitutional Rights Legal Defense Fund, Public Advocate of the United States, One Nation Under God Foundation, and Conservative Legal Defense and Education Fund are nonprofit organizations, exempt from federal taxation under IRC sections 501(c)(3) or 501(c)(4).  Each is dedicated, *inter alia*, to the correct construction, interpretation, and application of law.

---

[1] This brief was not authored in whole or in part by counsel for any party and no person other than *amici curiae* or their counsel has made a monetary contribution toward the preparation or submission of this brief. Counsel for the parties consented to the filing of this Brief *Amicus Curiae*.

## STATEMENT OF THE CASE

On November 18, 2022, Attorney General Merrick B. Garland announced that he had appointed John L. Smith "to conduct the ongoing investigation referenced and described in the United States' Response to Motion for Judicial Oversight and Additional Relief, *Donald J. Trump v. United States,* No. 9:22-CV-81294-AMC (S.D. Fla. Aug. 30, 2022)." Office of the Attorney General, Order No. 5559-2022, *Appointment of John L. Smith as Special Counsel,* ¶ (c) (Nov. 18, 2022). The Attorney General's Order authorized the Special Counsel "to conduct the ongoing investigation into whether any person or entity violated the law in connection with efforts to interfere with the lawful transfer of power following the 2020 presidential election or the certification of the Electoral College vote held on or about January 6, 2021." *Id.,* ¶ (b). The Order relied on 28 U.S.C. §§509, 515, and 533 as authority for the appointment. *Id.* (Introduction).

On February 22, 2024, former President Trump moved to dismiss the superseding indictment, on the grounds that the appointment of the Special Counsel violated the Appointments Clause of the Constitution (Art. II, §2, cl. 2) and that the funding for the Special Counsel from the permanent indefinite appropriation for the Department of Justice violated the Appropriations Clause (Art. I, §9, cl. 7). *United States v, Trump,* No. 9:23-CR-80101-AMC, Doc. No. 326. On July 15, 2024, the District Court granted Trump's motion to dismiss. *Id.,* Doc.

No. 672. Special Counsel Smith has appealed the District Court's dismissal order to this Court.

## SUMMARY OF ARGUMENT

The appointment of Special Counsel Smith violated the express requirement of the Constitution's Appointments Clause that the office in question "shall be established by Law." Congress has not enacted a statute establishing the office of Special Counsel and cannot be said to have done so by implication, as the Special Counsel argues.

Special Counsel Smith contends that he is an officer of the United States and not simply an employee of the Department of Justice. Beyond question, his position has been vested with significant authority (pursuant to regulations promulgated by a previous Attorney General) even if his jurisdiction is limited to the matters described in the order appointing him. The regulations purport to create a position that is continuing even though Special Counsel Smith's appointment would appear to expire upon the resolution of the matters assigned to him.

Special Counsel Smith contends that he is an inferior officer. However, he is acting as a principal officer because he (i) is not effectively supervised by a superior officer, and (ii) has the authority to bind the United States as he executes his responsibilities in the two matters that he has been assigned. Due to the extraordinary attributes of that office which call for independence of the Special

Counsel, the selection of the individual to serve in that position should not be consigned to the Executive Branch exclusively, but requires "the Advice and Consent of the Senate…."

The delegation of authority claimed by the Special Counsel presupposes a grant of legislative power to the Attorney General to establish an office of the United States in violation of the Framers' check on the power of the Executive Branch to create offices by requiring they "be established by Law." The claimed statutory authority of the Attorney General to create an office that exercises "the full power and independent authority" of a United States Attorney with no effective supervision of or control over the Special Counsel violates the non-delegation doctrine.

The Special Counsel Regulations promulgated by the Attorney General restrict the ability of the President and the Attorney General to hold the Special Counsel accountable for his actions and decisions, thereby clearly violating the Constitution's Vesting Clause and the Take Care Clause.

The statement in *United States v. Nixon,* 418 U.S. 683, 694 (1974) that Congress has given the Attorney General the authority to appoint a Special Prosecutor does not mean that the Attorney General has the authority to create an office of the United States. No party in *Nixon* raised the issue of the Attorney General's authority to create a federal office, and the *Nixon* Court never addressed

4

that issue. The absence of any reasoning to support the proposition that is claimed to be binding certainly does not have that effect.

This nation's checkered history of appointing Special Prosecutors, Independent Counsel, and Special Counsel provides no consistent or relevant factual pattern that can overcome the constitutional bar to appointing the Special Counsel to an office which has not been "established by Law." The examples on which Special Counsel Smith relies are inapposite and cannot overcome the express requirement of the Appointments Clause.

## ARGUMENT

## I.     THE APPOINTMENT OF SPECIAL COUNSEL SMITH VIOLATED THE APPOINTMENTS CLAUSE.

### A.     Special Counsel Smith Is neither an Inferior Officer of the United States nor a Mere Employee of the Department of Justice.

Special Counsel Smith contends that he is an inferior officer of the United States. U.S. Br. at 1.  Some *amici* have argued below that Special Counsel Smith is an employee of the Department of Justice.[2]  In this *amicus* brief, these *amici* take the position that Special Counsel Smith is an officer of the United States, and his appointment violated the Appointments Clause because Congress has not

---

[2] *Amici* Seth Barrett Tillman and Landmark Legal Foundation disputed that contention below, arguing that the Special Counsel is simply a temporary government employee. *United States v. Trump,* No. 9:23-cr-80101-AMC (S.D.Fla.), Doc. 410-2, at 6-22.

established the office to which he was appointed, namely, the office of Special

Counsel.  And further, he is not as an inferior officer as he asserts, but rather is

serving as a principal (or superior) officer whose appointment requires

confirmation by the U.S. Senate.

    1.  *The Office of Special Counsel Has Not Been Established by Law.*

    Seeking to prevent this Court focusing on the Constitutional flaw in his

appointment -- the fact that Congress has not established the Office of Special

Counsel -- Special Counsel Smith argues that the only issue on this appeal is

whether Congress has by law authorized the Attorney General to appoint him. U.S.

Br. at 41. However, under the Constitution, every officer of the United States must

be appointed pursuant to the Appointments Clause. *Weiss v. United States,* 510 U.S.

163, 169-70 (1994). No officer of the United States, whether principal or inferior,

may be appointed unless his office has been established by congressional

enactment. *See Seila Law LLC v. CFPB,* 591 U.S. 197, 266 (2020) (Kagan, J.,

concurring in the judgment with respect to severability and dissenting in part);

*Lucia v. SEC,* 585 U.S. 237, 254-55 (2018) (Thomas, J., concurring); *Weiss,* 510

U.S. at 184 (Souter, J., concurring); *Burnap v. United States,* 252 U.S. 512, 516-17

(1920).

    Special Counsel Smith argues that pursuant to 5 U.S.C. § 3101 and 28

U.S.C. § 510, the Attorney General has been granted "broad authority to *create*

6

such offices [as his is]." U.S. Br. at 34 (emphasis added).[3] Such a construction of those statutes violates the Appointments Clause, which by its terms requires that all offices of the United States be "established by Law."

During the 1973 confirmation process for Elliot Richardson as Attorney General, he presented proposed regulations that established the office of Special Prosecutor without congressional authorization.[4] After being confirmed, Richardson promulgated those regulations, 38 *Fed. Reg.* 14,688 (June 4, 1973), after appointing Archibald Cox to that office. Order No. 518-73 (May 25, 1973). As of that time, Congress had not enacted a statute creating that office. Months after promulgating those regulations in June 1973, and after his resignation as Attorney General on October 20, 1973, Richardson testified at a November 6, 1973, hearing of the Senate Judiciary Committee, stating:

> My own view is that the preferable approach would be to provide for the appointment of a Special Prosecutor by the President subject to confirmation by the Senate, and to provide in the statute creating the position subject to confirmation that he could be removed only for extraordinary improprieties, to use the phrase that was embodied in the original Cox charter.[5]

---

[3] The District Court below noted that the Special Counsel had not argued that his office had been established by law in its Order Granting Motion to Dismiss Superseding Indictment Based on Appointments Clause Violation at 23.

[4] Hearings before the Senate Committee on the Judiciary, 93d Cong., 1st Sess., on Nomination of Elliot Richardson to Be Attorney General, at 144-46 (May 21, 1973).

[5] Hearings before the Committee on the Judiciary, United Staes Senate, 93d Cong., 1st Sess., on Special Prosecutor, at 239.

After the Watergate investigation ended, Congress enacted the Ethics in Government Act in 1978, which established the Office of Independent Counsel. Upon the expiration of the Independent Counsel Act in 1999, Attorney General Janet Reno promulgated regulations establishing the office of Special Counsel that were similar to the Richardson regulations, claiming as authority for such promulgation:  5 U.S.C. § 301 and 28 U.S.C. §§ 509 and 510.[6]  Since 1999, there has been no Congressionally enacted statute creating an office of Special Counsel.

Nevertheless, Special Counsel Smith contends that the Attorney General possesses the authority to "delegate 'any function' vested in him to 'any other officer, employee, or agency of the Department of Justice.'" U.S. Br. at 33. This raises the question of whether the Attorney General has the constitutional authority consistent with the Appointments Clause to create the office of Special Counsel, which Special Counsel Smith maintains is an office of the United States. *Id.* at 8, 13. Clearly, the Attorney General does not possess such authority.

A statute authorizing a department head to *make appointments* to an existing office cannot be construed to authorize *the creation* of an office of the United States. The two actions are separate and distinct. *See Weiss,* 510 U.S. at 173 ("[W]hile Congress may create an office, it cannot appoint the officer….").

---

[6] 64 *Fed. Reg*. 37,038 (July 9, 1999) (codified in 28 CFR Part 600) (the "Special Counsel Regulations").

Establishing an office cannot be accomplished by implication but must be done expressly and with specification of the powers of the officer and the method of removal. *See id.* at 170-71; *Freytag v. Commissioner,* 501 U.S. 868, 876 (1991) ("When a statute creates an office to which it assigns duties, those duties outline the attributes of the office."); *Burnap,* 252 U.S. at 516 ("Whether the incumbent is an officer or an employee is determined by the manner in which Congress has *specifically* provided for the creation of the several positions, their duties and appointment thereto.") (emphasis added); *Wise v. Withers,* 7 U.S. 331, 336 (1806) ("powers, as defined by law"). Because there was no legislation specifically creating an office of Special Counsel when the Attorney General appointed Mr. Smith on November 18, 2022, the challenged appointment must be invalidated because Congress had not established the office of Special Counsel as the Appointments Clause requires.

2.  *The Special Counsel Is Not Simply an Employee.*

   Certain *amici* below (*see* n.2, *supra*) have argued that the Appointments Clause does not apply here because the Special Counsel is simply an employee of the Department of Justice and not an officer of the United States. *United States v. Trump,* No. 9:23-cr-80101-AMC (N.D.Ga.), Doc. 410-2, at 6-22. They mistakenly equate the position of Special Counsel with numerous other positions to which the Attorney General and several other department heads are authorized to make

9

appointments pursuant to various federal statutes. The appointees that they reference are indeed mere employees, but the Special Counsel is not, based on the powers with which he was vested.

In *Buckley v. Valeo,* 424 U.S. 1 (1976) (*per curiam*), the issue of whether a position is an office of the United States or simply a position of government employment was decided based on the significance of the duties assigned to the position. *Id.* at 126. Other decisions of the Court considered additional factors, including "tenure, duration, emolument, and duties." *E.g., United States v. Germaine,* 99 U.S. 508, 511 (1878). Application of the various factors has been inconsistent. *See, e.g., United States v. Arthrex, Inc.,* 594 U.S. 1, 13 (2021) (significant authority); *Lucia v. SEC,* 585 U.S. at 245-46 (continuing and permanent, significant authority); *Freytag,* 501 U.S. at 881-82 (significant authority); *Morrison v. Olson,* 487 U.S. 654, 671-72 (1988) (no policymaking authority, temporary assignment, limited jurisdiction); *Buckley,* 424 U.S. at 126 (significant authority). The prominent factor in this line of cases has been the existence of significant authority.

The "employee" argument fails to acknowledge the unique role played by the Special Counsel and the inherently and extraordinarily sensitive nature of the

position.[7]  The Special Counsel exercises significant authority comparable to that exercised by United States Attorneys:

> Subject to the limitations in the following paragraphs, the Special Counsel shall exercise, within the scope of his or her jurisdiction, the **full power and independent authority** to exercise all investigative and prosecutorial functions **of any United States Attorney**. Except as provided in this part, the Special Counsel shall determine whether and to what extent to inform or consult with the Department about the conduct of his or her duties and responsibilities.  [28 C.F.R. § 600.6 (emphasis added).]

In one respect, the Special Counsel actually exercises broader authority than a U.S. Attorney because the former exercises nationwide jurisdiction. Additionally, the Special Counsel also is subject to removal only for cause, unlike a U.S. Attorney who can be removed at will. 28 U.S.C. § 541(c); *Parsons v. United States,* 167 U.S. 324, 343 (1897). And, of course, unlike the office of Special Counsel, the office of United States Attorney is established by law. 28 U.S.C. §§ 541 and 547.

The role of Special Counsel is unlike that of every other governmental position because it involves an unavoidable conflict between the constitutional requirement of accountability of the President, on the one hand, and the need for independence in conducting investigations and prosecutions of the sitting President or his administration and a former President, on the other hand. This conflict poses a challenge that makes the selection of a Special Counsel a particularly difficult

---

[7] *See generally* A. Coan, *A Special Kind of Prosecutor* (Jan. 2019) ("the unique role that special prosecutors play in the American constitutional system").

decision. The constitutional implications of limiting the authority of the President or the Attorney General to supervise Special Counsel's decisions and actions are not present with respect to other appointments, and therefore those other appointments are in no sense comparable.

### 3. *The Authority Exercised by the Special Counsel Is Significant.*

All individuals exercising "significant authority" under the laws of the United States are officers of the United States. *Buckley,* 424 U.S. at 126. According to the popular meaning and common usage of the term "significant," the authority granted to the Special Counsel is certainly significant. *See Southwest Airlines Co. v. Saxon,* 596 U.S. 450, 455 (2022); *United States v. Gonzales,* 520 U.S. 1, 5 (1997); *CBS Inc. v. Primetime 24 Joint Venture,* 245 F.3d 1217, 1222-23 (11th Cir. 2001). "Significant" means important or consequential.[8] The authority granted to the Special Counsel pursuant to the Special Counsel Regulations, although that grant violates the Appointments Clause because the office had not been established by law, is significant by any definition of that term.

One test of whether a position carries with it "significant authority" is whether the occupant exercises "the power to bind the government … in [his] own name rather than in the name of a superior officer." *Lucia,* 895 U.S. at 245-46. The Special Counsel, as lead counsel in litigation, has such authority to bind the United

---

[8] Merriam-Webster Dictionary ("significant") (revised ed. 2022).

States. *See Hayes v. Nat'l Services, Inc.,* 196 F.3d 1252, 1254 (11th Cir. 1999); *In re Persico,* 522 F.2d 41, 56-62 (2d Cir. 1975).

4. *The Office Created by the Special Counsel Regulations Is Continuing.*

A federal office is one that is "continuing." *Germaine,* 99 U.S. at 511-12. The question is whether the *position*, rather than the *occupant,* is continuing. As a replacement for the expired Independent Counsel Act, the Special Counsel Regulations were promulgated in 1999 to continue indefinitely, with individuals chosen to serve as Special Counsel from time to time. Unlike employees hired on a temporary basis pursuant to contract and without the need for a formalized position, *United States v. Maurice,* 26 F. Cas. 1211, 1214 (C.C.D.Va.1823), an officer can occupy a position that is formally established although he or she does not become a permanent occupant of that position. *See Freytag,* 501 U.S. at 881-82.

Even if the Office of Special Counsel could be deemed a "temporary position," such a conclusion does not provide an independent basis for determining that he is merely a typical government employee. The ultimate determination of whether the Special Counsel is an officer of the United States or simply a government employee is based on an evaluation of several factors including: significant authority, tenure, duration, and emolument. *Buckley,* 424 U.S. at 126; *Germaine,* 99 U.S. at 511. That evaluation is laden with value judgments. The

13

various factors on which that determination is made are not of equal value.  Certain *amici* below urged a test that allows the determination to turn on an evaluation of a single feature, such as continuity, in isolation instead of balancing all features. However, evaluation of multiple factors and their relative values is the preferred method of making that determination, as has been used in other situations. *See, e.g., Wilkinson v. Austin,* 545 U.S. 209, 224-30 (2005); *Rankin v. McPherson,* 483 U.S. 378, 388-92 (1987); *see also Edmond v. United States,* 520 U.S. 651, 667-69 (1997) (Souter, J., concurring in part and concurring in the judgment) (urging balancing in determining whether an office is a principal or inferior one).

In *Freytag,* the Court held that a special trial judge appointed by the Chief Judge of the U.S. Tax Court was an inferior officer of the United States. 501 U.S. at 882. It reached that conclusion because of "the significance of the duties and discretion that special trial judges possess." *Id.* at 881. Their duties "are specified by statute." *Id.* A special trial judge was assigned cases by the Chief Judge on a limited basis, just as the Attorney General assigned only two matters to Special Counsel Smith. The duties of both the special trial judge and the Special Counsel conclude with the resolution of the matters assigned. Neither the special trial judge in *Freytag* nor Mr. Smith undertook a permanent role. The *Freytag* Court relied on the significance of the statutory duties to be exercised by the special trial judge in concluding that he was an officer of the United States. *Id.  See also Buckley*, 424

14

U.S. at 125-26; *Legal Services Corp. v. Dana*, 1982 U.S. Dist. LEXIS 18320 at
*10-12 (D.D.C. 1982), *aff'd* 679 F.2d 261 (D.C. Cir. 1982) (Table) (LSC directors
were Officers of the United States because they are charged with the discretionary
task of determining funding eligibility pursuant to broad statutory standards). The
Office of the Special Counsel as delineated in the Special Counsel Regulations is a
continuing office, not a temporary one.

As the *Freytag* decision demonstrates, the "continuing and permanent"
factor announced in *Germaine* is neither dispositive nor the singular factor that
determines whether a position is an office of the United States or mere
employment. The degree of significance of the duties involved is the overriding
factor. *See id.* at 881.

### B.    The Special Counsel Is a Principal Officer.

The Supreme Court has not established a bright-line test for deciding
whether an officer is a principal or inferior officer. *See Edmond,* 520 U.S. at 661
("Our cases have not set forth an exclusive criterion for distinguishing between
principal and inferior officers for Appointments Clause purposes."); *Morrison,* 487
U.S. at 671 ("The line between 'inferior' and 'principal' officers is one that is far
from clear, and the Framers provided little guidance into where it should be
drawn."). Several factors have been considered in making that determination. In
*Edmond,* the controlling factor was whether the officer was supervised by another

15

officer. 520 U.S. at 666. A similar approach was followed in *Arthrex.* 594 U.S. at 27.

The Special Counsel Regulations do not assure effective supervision of Special Counsel Smith. He is not subject to day-to-day supervision, but rather has been given broad power to "exercise, within the scope of his … jurisdiction, the full power and independent authority to exercise all investigative and prosecutorial functions of any United States attorney." 28 C.F.R. § 600.6. Mr. Smith is under no obligation to consult with the Attorney General about the responsibilities of the Special Counsel. *Id.* Nothing in the regulations limits his decision-making regarding the investigation or prosecution function. The Attorney General has no authority to countermand or direct the Special Counsel's decisions. 28 C.F.R. § 600.7(b). If the Attorney General disagrees with a decision of the Special Counsel, the Attorney General must notify Congress but has no authority to countermand or revise that decision.[9] 28 C.F.R. § 600.9(a)(3).

The heightened interest in assuring the independence of the investigation of the former President in this case[10] made the selection of the Special Counsel a

---

[9] "[I]t is common ground that an officer without a supervisor must be a principal." *DOT v. Ass'n of Am. R.R.*, 575 U.S. 43, 63-64 (2015) (Alito, J., concurring).

[10] Both Attorney General Garland and Special Counsel Smith emphasized the need for independence when the appointment was announced.
https://www.justice.gov/opa/pr/appointment-special-counsel-0;
https://www.justice.gov/sco-smith/pr/statement-special-counsel-jack-smith.

process especially appropriate for Senate confirmation. The Framers were

concerned that "exclusive Presidential appointment power 'may be abused.'"

*Weiss,* 510 U.S. at 186 (quoting The Federalist No. 76). For that reason, Senate

confirmation was required by the Appointments Clause. *Id.* Scrutiny by the Senate

of Mr. Smith's integrity, background, and commitment to the rule of law, including

examination of his role as the chief prosecutor at The Hague in the investigation

and prosecution of Kosovo war crimes[11] and his involvement in the failed

prosecution of Virginia Governor Robert McDonnell,[12] would have "'promote[d] a

judicious choice'" of the Special Counsel. *Edmond,* 520 U.S. at 659.

   The circumstances of Elliot Richardson's decision to appoint Archibald Cox

as Special Prosecutor during the Watergate scandal inform the issue presented in

this case as to the proper role, if any, for the United States Senate in the

appointment of Special Counsel. The selection of an independent prosecutor, such

as the Special Counsel, is a decision that should not be left exclusively to the

Executive Branch.

———————————

[11] *See* Whistleblower Complaint filed with the Inspector General of the U.S.
Department of Justice on November 28, 2023, by Brian R. Della Rocca, Esquire on
behalf of John Francis Moynihan, discussed in D. Corn & D. Friedman, "The Far-
Right Pushes a New Conspiracy Theory to Discredit Jack Smith," *Mother Jones*
(Dec. 23, 2023). An identical complaint was filed with the Department's Office of
Professional Responsibility. *See also* B. Williams, S. Joshi & S. Musgrave, "How
the Secretive 'Discipline' Process for Federal Prosecutors Buries Misconduct
Cases," *The Intercept* (Oct. 10, 2019).
[12] *McDonnell v. United States,* 579 U.S. 550 (2016).

The Richardson confirmation process had reached a stalemate over the issue of the perceived need for independence in the investigation of potential offenses associated with the Watergate scandal. On constitutional grounds, the Nixon Administration and its supporters in the Senate would not agree to an investigation totally independent of the President and the Attorney General. A majority of the members of the Senate Judiciary Committee, however, would not report the Richardson nomination without a satisfactory resolution of the issue of the independence of the special prosecutor. The stalemate ended when an agreement was reached that Richardson would appoint as Special Prosecutor an individual, Archibald Cox, who was considered by a majority of the members of the committee to possess the independent integrity required for the position, and that Richardson would promulgate regulations assuring that Cox could function with the necessary independence.[13] The committee heard extensive testimony from Cox during the Richardson confirmation process.[14]

### C.   No Binding Precedent or Tradition Precludes Invalidation of the Appointment.

The Special Counsel argues that his position is supported by precedent and "the long tradition of special-counsel appointments by Attorneys General and

---

[13] Hearings before the Committee on the Judiciary, U.S. Senate, 93d Cong., 1st Sess., on the Nomination of Elliot L. Richardson to be Attorney General (1973).
[14] *Id.* at 146-225.

18

Congress's endorsement of that practice through appropriations and other legislation." U.S. Br. at 1. In both respects, he is mistaken.

1. *The Statement in Nixon Is Not Binding.*

The brief and conclusory statement in *United States v. Nixon,* 418 U.S. at 694, which the Special Counsel asserts is "binding precedent," was not the result of any articulated constitutional analysis or made in response to a position advocated or developed in argument by either party to the litigation. The *Nixon* Court did not address the issue of whether the Office of Special Prosecutor was an office of the United States which the Appointments Clause required Congress to establish. Because Special Counsel Smith asserts that he is an officer of the United States, the statutes that the *Nixon* decision addressed cannot justify his appointment unless Congress had created the office of Special Counsel. Those statutes cannot be read to create an office of the United States by implication. *See Weiss,* 510 U.S. at 170-71; *Freytag,* 501 US. at 876; *Burnap,* 252 U.S. at 516; and the discussion, *supra,* at 5.

The reasoning in *Nixon* that supports the statement upon which Special Counsel Smith relies was not just "exceptionally weak," but also non-existent. *See Dobbs v. Jackson Women's Health Organization,* 597 U.S. 215, 231 (2022) (exceptionally weak reasoning does not compel continuing adherence); *see also Janus v. State, County & Municipal Employees,* 585 U.S. 878, 917 (2018) (quality

19

of reasoning). That statement in the *Nixon* opinion is also irrelevant to the issue of whether Special Counsel Smith was appointed in violation of the Appointments Clause.

As the District Court correctly observed, the record of proceedings in *Nixon* reflects that "[t]he issue of the Attorney General's appointment authority was not raised, briefed, argued, or disputed" by any party. *United States v. Trump,* No. 9:23-cr-80101-AMC, Doc. 672, at 54. This appeal presents a vitally important issue regarding the legitimacy of the appointment of Special Counsel Smith that deserves careful and thorough evaluation commensurate with its importance rather than a mechanical acceptance of a statement in *Nixon* that was not supported by any analysis.

2. *The Historical Practice Has Been Repeatedly Challenged and Involves Substantially Different Circumstances.*

The Special Counsel's argument that there is a "long tradition" of similar officers cannot justify the constitutionality of the appointment challenged in this case.  In *Immigration & Naturalization Service v. Chadha,* 462 U.S. 919 (1983), for example, the Court invalidated the longstanding congressional practice of enacting a provision for legislative veto of executive action. *See NLRB v. Noel Canning,* 573 U.S. 513, 572 (2014) (Scalia, J., concurring in the judgment); *see also NLRB v. SW General, Inc.,* 580 U.S. 288, 308 (2017) (rejecting historical practice).

20

The Special Counsel's argument is particularly unpersuasive here because the examples referenced by Special Counsel Smith were not similar, but rather each involved varying fact settings that render them inapposite. Some positions were created by Congress. Some were created by regulations promulgated by an Attorney General. Some were not formally established by either statute or regulation. The specifications of duties, removal power, and supervision often differed substantially from those involved in this case.

There is no "long-settled and established practice" of resorting to Special Prosecutors, Independent Counsel, and Special Counsel. *NLRB v. Noel Canning*, 573 U.S. at 524. The appointment of such officers has not gone "unchallenged." The related constitutional issues have been the subject of recurring debate since the beginning of the practice.[15] Special Counsel Smith relies on Attorney General Richardson's appointment of Archibald Cox as Special Prosecutor, U.S. Br. at 46-47, but does not acknowledge Richardson's reversal of position on the proper method of establishing the Office of Special Prosecutor, when he advocated that the office be created by Congress with appointment by the President subject to Senate confirmation. *See* discussion, *supra,* at 6-7.

---

[15] *See, e.g.,* Hearings before the Committee on the Judiciary, U.S. Senate, 93d Cong., 1st Sess., on Special Prosecutor (1973); Hearings before the Committee on the Judiciary, U.S. Senate, 93d Cong., 2d Sess., on Removing Politics from the Administration of Justice (1974).

21

## II.    THE STATUTES ON WHICH THE SPECIAL COUNSEL RELIES VIOLATE THE NON-DELEGATION DOCTRINE.

The non-delegation doctrine is derived from the Legislative Vesting Clause of the Constitution. Art. I, §1; *Panama Refining Co. v. Ryan,* 293 U.S. 388, 421 (1935): "The Congress manifestly is not permitted to abdicate, or to transfer to others, the essential legislative functions with which it is thus vested." The Appointments Clause vests the power to establish offices of the United States exclusively in Congress. Art. II, §2, cl. 2. The statutes on which the Special Counsel has relied to support his argument that the Attorney General has the authority to appoint him, 28 U.S.C. §§ 509, 510, 515, and 533, would delegate the power to create an office of the United States and would give the Special Counsel unbridled authority to investigate and prosecute without effective supervision. In both respects, the statutes violate the non-delegation doctrine.

In requiring that "all other Officers of the United States … shall be established by Law," the Framers intended that the Appointments Clause would be a check on the power of the Executive Branch to create new offices. Art. II, §2, cl. 2.  They were addressing the grave concern about potential abuse of the appointment power that had prompted the signers of the Declaration of Independence to charge the Crown for "erect[ing] a Multitude of new Offices." *See Weiss,* 510 U.S. at 184 (Souter, J., concurring). Any delegation by Congress to the

Executive Branch of the power to create new offices of the United States would defeat the purpose of the Appointments Clause.

Here, Special Counsel Smith seeks to establish the constitutional legitimacy for his Office by cloaking it with the statutory authority that delegates to the Attorney General garden-variety authority to run the massive operation that is now the Department of Justice. 28 U.S.C. §§ 509, 510, 515, 533. However, no express authority can be found in those statues allowing the Attorney General to create any federal office, much less an office such as the one that Special Counsel Smith now leads with the exceptionally broad power it wields. The creation of an office of the United States cannot be accomplished by implication. *See Weiss,* 510 U.S. at 170-71; *Burnap,* 252 U.S. at 516. But Special Counsel Smith contends that these statutes *can be applied* to constitutionally justify the creation by the Attorney General of such an office. U.S. Br. at 34 ("It follows that, by granting the Attorney General broad authority to create such offices and delegate such significant authority, Congress has vested him with the power to appoint inferior officers.").

The error in that contention is exposed simply by asking whether an *express* delegation to the Attorney General of such authority to create powerful federal offices as he sees fit would pass muster under the Appointments Clause or under bedrock non-delegation principles barring the delegation of uncabined legislative power to the Executive Branch. *See Whitman v. American Trucking Associations,*

23

531 U.S. 457, 472 (2001); *see Lucia,* 585 U.S. at 256 (Thomas, J., concurring);
*Gundy v. United States,* 588 U.S. 128, 149 (2019) (Gorsuch, J., dissenting); A.
Yablonsky, "Runaway Prosecutorial Discretion," 102 TEX. L. REV. ONLINE 1
(2023). Clearly, it would not.

    At bottom, then, Special Counsel Smith advocates an application of Sections
509, 510, 515, and 533 that violates the non-delegation doctrine. This as-applied
violation of the non-delegation doctrine should be rejected. *See* I. Wurman, "*As-
Applied Nondelegation,*" 96 TEX. L. REV. 975 (2018).

## III.   THE INDEPENDENCE GIVEN THE SPECIAL COUNSEL VIOLATES THE VESTING AND TAKE CARE CLAUSES.

    The independent and virtually unsupervised power given to Special Counsel
Smith by the Attorney General's Order effectively restricts the authority of the
President and his Attorney General to hold the Special Counsel accountable for his
decisions and actions and for his failure to act. Such a restriction violates the
Executive Vesting Clause (Art. II, § 1, cl. 1), and the Take Care Clause (Art. II,
§ 3).

    The objective of balancing the competing interests of accountability and
independence when establishing a position in the Executive Branch to enforce
federal criminal laws against the President, or a former President, as well as
subordinate executive officials, must satisfy the constitutional requirements
identified by Justice Scalia in his dissent in *Morrison,* 487 U.S. at 697. On what

authority can the Attorney General rely to promulgate regulations establishing such a position that intentionally "deprive[s] the President of substantial control over the prosecutory functions" of the Special Counsel? *Id.* at 714. The prosecution of offenses against the United States is an executive function. *Ponzi v. Fessenden,* 258 U.S. 254, 262 (1922). As Justice Scalia has made clear on multiple occasions, "'[t]he executive Power shall be vested in *a President of the United States*.'" *Morrison*, 487 U.S. at 699. That means *all of* the executive power, not *some of* it. *Id.* at 705.

This raises the issue as to whether an Attorney General can by regulation, such as the Special Counsel Regulations, limit the President's constitutional authority, as well as the Attorney General's own responsibility as "the hand of the President in taking care that the laws of the United States in legal proceedings and in the prosecution of offenses, be faithfully executed." *United States v. Cox,* 342 F.2d 167, 171 (5th Cir. 1965); s*ee Free Enterprise Fund v. Public Company Accounting Oversight Bd.,* 561 U.S. 477, 483 (2010) ("Since 1789, the Constitution has been understood to empower the President to keep [his] officers accountable---by removing them from office, if necessary."); *Seila Law LLC,* 591 U.S. at 240 ("The Framers 'insist[ed]' upon 'unity in the Federal Executive' to

25

'ensure both vigor and accountability' to the people." (quoting *Printz v. United States*, 521 U.S. 898, 922 (1997)).[16]

## CONCLUSION

For the foregoing reasons, the District Court's July 15, 2024 Order Granting Motion to Dismiss Superseding Indictment Based on invalidity of the appointment of Jack Smith as Special Counsel should be affirmed.

Respectfully submitted,

|  | */s/Patrick M. McSweeney* |
|---|---|
| WILLIAM J. OLSON | PATRICK M. MCSWEENEY* |
| JEREMIAH L. MORGAN | ROBERT J. CYNKAR |
| WILLIAM J. OLSON, P.C. | MCSWEENEY, CYNKAR |
| 370 Maple Ave. W., Ste. 4 | & KACHOUROFF, PLLC |
| Vienna, VA  22180 | 3358 John Tree Hill Rd. |
| (703) 356-5070 | Powhatan, VA  23139 |
| wjo@mindspring.com | (703) 621-3300 |
|  | patrick@mck-lawyers.com |
| PAMELA J. BONDI | *Attorney of Record |
| MATTHEW WHITAKER | November 1, 2024 |
| JESSICA HART STEINMANN |  |
| MICHAEL BERRY |  |
| AMERICA FIRST POLICY INSTITUTE | *Attorneys for Amici Curiae* |
| 1635 Rogers Road |  |
| Fort Worth, TX  76107 |  |
| mberry@americafirstpolicy.com |  |

---

[16] In addition to the consideration of this constitutional question by the Senate Committee on the Judiciary in the 1973 Richardson confirmation hearings, it has been extensively explored in other congressional hearings. *See, e.g.,* Hearings on S.1735 and S.1741 Before the Senate Judiciary Committee, 115th Cong., on Special Counsels and the Separation of Powers (2017).

## CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that service of the foregoing Brief *Amicus Curiae* of America's Future, *et al.*, in Support of Defendants-Appellees and Affirmance, was made, this 1ˢᵗ day of November, 2024, by the Court's Case Management/ Electronic Case Files system upon the attorneys for the parties.

  /s/Patrick M. McSweeney
Patrick M. McSweeney
Attorney for *Amici Curiae*

## <u>CERTIFICATE OF COMPLIANCE</u>

IT IS HEREBY CERTIFIED:

1.      That the foregoing Brief *Amicus Curiae* of America's Future, *et al.*, in Support of Defendants-Appellees and Affirmance complies with the type-volume limitation of Rule 29(a)(5), Federal Rules of Appellate Procedure, because this brief contains 5,971 words, excluding the parts of the brief exempted by Rule 32(f).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

<u>  /s/Patrick M. McSweeney</u>
Patrick M. McSweeney
Counsel for *Amici*

Dated: November 1, 2024