Case No. 24-12311-J

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

---

UNITED STATES OF AMERICA,
*Appellant*,

v.

DONALD J. TRUMP, WALTINE NAUTA, AND CARLOS DE
OLIVEIRA
*Defendants-Appellees*

---

On appeal from the United States District Court
for the Southern District of Florida
Case No. 23-80101-CR-CANNON

---

## BRIEF OF *AMICUS CURIAE* ALEX KOZINSKI

---

ROBERT HENNEKE
CHANCE WELDON
MATTHEW MILLER
ERIC HEIGIS
TEXAS PUBLIC POLICY FOUNDATION
901 CONGRESS AVENUE
Austin, Texas 78701
Telephone: (512) 472-2700
Facsimile: (512) 472-2728

*Counsel for Amicus Curiae*

## CERTIFICATE OF INTERESTED PERSONS

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rules 26.1-1 and 26.1-2, *Amicus* hereby certifies that except for the following, all trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of the particular case are listed in the Brief for Appellee President Donald J. Trump (filed on October 25, 2024) pp. C-1–C-2.

1. Heigis, Eric

2. Henneke, Robert

3. Kozinski, Alex

4. Miller, Matthew

5. Texas Public Policy Foundation

6. Weldon, Chance

## CORPORATE DISCLOSURE STATEMENT

Texas Public Policy Foundation (TPPF) submits this corporate disclosure statement Federal Rules of Appellate Procedure 26.1 and 29 and Eleventh Circuit Rule 26.1-2. TPPF is a non-profit organization that has no parent company. It has issued no stock, and as such no person or entity owns ten percent or more of its stock.

/s/ *Eric Heigis*
ERIC HEIGIS

## TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS .......................................... 1

CORPORATE DISCLOSURE STATEMENT ............................................ 1

TABLE OF AUTHORITIES ....................................................................... iii

STATEMENT OF INTEREST OF AMICUS CURIAE* ........................... 1

SUMMARY OF THE ARGUMENT ............................................................ 2

ARGUMENT .............................................................................................. 2

   I.   JACK SMITH IMPROPERLY EXERCISED THE POWERS OF AN OFFICER OF THE UNITED STATES. ....................................................... 5

     A.   Unilaterally signing an indictment is an "exercise of significant authority" that is exclusive to officers of the United States. ............................................................................... 6

     B.   Jack Smith brought an indictment in his own name. ............... 7

   II.   HISTORICAL PRACTICE CONFIRMS SPECIAL COUNSELS ARE RETAINED AS MERE EMPLOYEES. ......................................................... 10

     A.   Comptroller of the Treasury and Attorney General opinions deciding pay and benefit disputes concluded special counsels are employees. ............................................................ 10

       1.   Comptroller of the Treasury Decisions ................................... 10

         a.   Reynolds's Case (1895) ......................................................... 10

         b.   Pagin's Case (1904) ............................................................... 13

         c.   Harr's Case (1905) ................................................................ 14

       2.   Attorney General Opinion (1918) ........................................... 15

     B.   Special counsels—including a sitting Member of Congress—were treated as employees. ..................................... 16

i

    1.    The Constitution's Incompatibility Clause did not prevent a Member of Congress from serving as a special counsel. .... 16

    2.    Special Counsel Charles Bonaparte, retained during the Theodore Roosevelt Administration, characterized his position as "temporary employment" and not as an "office in the constitutional sense of the term." ................................. 17

    3.    Records submitted to Congress describe special counsels as employees. .................................................................... 19

  C.    Cases deciding pay disputes in the late nineteenth and early twentieth centuries held special counsels are employees. ................................................................................. 23

    1.    Wilson's Case (1875) ................................................................ 23

    2.    *Lee v. United States* (1910)........................................................ 24

    3.    *United States v. Rosenthal* (1903) ............................................ 25

    4.    *Cole v. United States* (1893) .................................................... 29

  D.    Attorney General Garland described the Special Counsel as an employee of the Justice Department................................... 31

CONCLUSION ......................................................................................... 32

# TABLE OF AUTHORITIES

## Cases

*Buckley v. Valeo*,
   424 U.S. 1 (1976) ............................................................... 5, 6, 7

*Cole v. United States*,
   28 Ct. Cl. 501 (1893) ............................................................... 29

*Confiscation Cases*,
   74 U.S. (7 Wall.) 454 (1869) .................................................... 26

*Edmond v. United States*,
   520 U.S. 651 (1997) ................................................................... 5

*Lee v. United States*,
   45 Ct. Cl. 57 (1910) ...................................................... 24, 25, 30

*United States v. Crispino*,
   392 F. Supp. 764 (S.D.N.Y. 1975) ........................................... 28

*United States v. Hartwell*,
   73 U.S. (6 Wall.) 385 (1868) .................................................... 11

*United States v. Maurice,*
   26 F. Cas. 1211, 1823 U.S. App. LEXIS 350 (C.C. D. Va. 1823) ......... 12

*United States v. Rosenthal*,
   121 F. 862 (C.C. S.D.N.Y. 1903) ................................. 25, 26, 27, 30

*United States v. Trump,*
   No. 1:23-cr-257-TSC (filed D.D.C. Dec. 27, 2023) .................... 8

*United States v. Trump,*
   No. 23-80101-CR-CAN, 2024 U.S. Dist. LEXIS 123552 (S.D. Fla.
   July 15, 2024) ............................................................................ 3

*Wilson v. United States*,
   11 Ct. Cl. 565 (1875) ........................................................................23, 24

**Statutes**

28 U.S.C. § 515 ..............................................................................................25

28 U.S.C. § 541 ................................................................................................6

28 U.S.C. § 543 ..............................................................................................24

Act of August 2, 1861, ch. XXXVII, 12 Stat. 283 ....................................24

Act of July 31, 1894, ch. 174, 28 Stat. 162 (1894)....................................11

Act of May 28, 1896 § 8, ch. 252, 29 Stat. 140, 181 (1896).....................24

Rev. Stat. § 1063 (2d ed. 1878)...........................................................10, 14

Rev. Stat. § 1765 ..................................................................13, 15, 29

Rev. Stat. § 359 ..............................................................................................27

Rev. Stat. § 363 (2d ed. 1878)...............................................10, 11, 16, 24

Rev. Stat. § 366 ..................................................................14, 25, 26, 28

Rev. Stat. § 367 ..............................................................................................27

**Other Authorities**

Counsel Employed by the Attorney General,
   H.R. Ex. Doc. No. 98, 40th Cong. 5 (1868)............................................20

Crowley, Richard, Biographical Directory of the United States
   Congress..............................................................................................17

Decisions of the Comptroller of the Treasury 141 (Volume XII,
   1906)...................................................................................................14

Decisions of the Comptroller of the Treasury 271 (Volume II, 1896) ... 11, 12, 14

Decisions of the Comptroller of the Treasury 279 (Volume XI, 1905) .. 13, 14

Employee's Compensation Act: Assistant United States Attorney, 31 Op. Att'y Gen. 201 (1918) ......................................................... 15, 16

*Employment of an Assistant United States Attorney as a Special Assistant Attorney to Perform Special Services Outside of His District* (Dec. 9, 1904) ........................................................................... 13

*Holding Two Employments at the Same Time* (Sept. 16, 1905) ............. 14

*In re Account of Matthew G. Reynolds for Compensation as Special Assistant United States Attorney* (Dec. 3, 1895) .................................. 10

Letter from Charles Bonaparte to Alford W. Cooley, Commissioner, U.S. Civil Service Commission (Aug. 14, 1903) .................................... 19

Letter from Charles Bonaparte to President Theodore Roosevelt (Nov. 2, 1904) .................................................................................... 17, 18

Office of the U.S. Attorney General, Appointment of John L. Smith as Special Counsel, Order No. 5559-2022 (Nov. 18, 2022) ...................................................................... 6

*Oversight of the U.S. Department of Justice: Hearing Before the H. Comm. on the Judiciary*, 118th Cong. 41 (2024) ........................................................................ 32

Ryan J. Reilly, *Attorney General Garland Emphasizes Special Counsel's 'Independence' In Trump Probe*, NBC NEWS (June 14, 2023) .............. 8

Senate Report No. 3835, 59th Cong. (1906) ............................................ 28

*Testimony taken by the Committee on Expenditures in the Department of Justice*,
48th Cong. 60, 62 (1884) ........................................................................ 16

U.S. Department of Justice, Annual Report of the Attorney-General for the Fiscal Year Ending June 30, 1883 (Dec. 3, 1883) ................... 21

U.S. Department of Justice, Annual Report of the Attorney-General of the United States 30–31 (Jan. 8, 1877) .......................................... 21

United States Court of Federal Claims, The People's Court ................. 23

XXII Miscellaneous Documents of the House of Representatives No. 38, pt. 1 (1884) .................................................................................. 16, 17

## Regulations

28 C.F.R. § 600.6 ....................................................................................... 2, 6

## STATEMENT OF INTEREST OF AMICUS CURIAE*

Alex Kozinski served as a judge of the Court of Appeals for the Ninth Circuit from 1985 to 2017, and as that circuit's Chief Judge from 2007 to 2014. From 1982 until 1985, he served as the first Chief Judge of the United States Claims Court (now the United States Court of Federal Claims), the immediate successor to the trial division of the United States Court of Claims. Amicus presents new historical evidence to assist the Court in deciding this appeal.

* No party's counsel authored this brief in whole or in part, and no person other than the Amicus and their counsel—including any party or party's counsel—contributed money that was intended to fund the preparation or submission of this brief. Amicus represents President Donald J. Trump in *Trump v. Twitter, Inc.*, No. 22-15961 (9th Cir. filed June 28, 2022). Amicus does not represent Trump in *United States v. Trump* and has not had contact with counsel for this case.

## SUMMARY OF THE ARGUMENT

The modern Special Counsel regulation allows a person retained as a Special Counsel to exercise "all investigative and prosecutorial functions of any United States Attorney." 28 C.F.R. § 600.6. Article II of the Constitution limits the exercise of these powers, such as the power to bring an indictment on behalf of the United States, to officers of the United States. Jack Smith is not an officer of the United States. He therefore has no authority to bring the present indictment.

If Jack Smith holds any position in government, he is a mere employee. Nearly a century of practice—as described in Comptroller of the Treasury decisions, an Attorney General opinion, congressional records, and court decisions—confirms that special counsels are retained as mere employees who assist officers of the United States. Mere employees may not exercise the full powers of an officer of the United States, such as a U.S. Attorney. Thus, Smith does not have the power to bring an indictment in his own name.

## ARGUMENT

The District Court held that Jack Smith was not properly appointed as an officer of the United States because no statute vests the Attorney

2

General with authority to appoint such an officer. *United States v. Trump*, No. 23-80101-CR-CAN, 2024 U.S. Dist. LEXIS 123552, at *29 (S.D. Fla. July 15, 2024) [hereafter "District Court Decision"]. In reaching this decision, the District Court analyzed the historical practice of retaining special counsels and found no example of a special counsel before Watergate that had similar authority as Smith. District Court Decision at *47–*54. Amicus agrees with the District Court's analysis and bring forth additional historical evidence—not presented in the District Court or by others in this appeal—showing that special counsels were long treated as employees, not officers of the United States. This historical evidence is consistent with the evidence that Robert Ray, Professor Seth Barrett Tillman, and the Landmark Legal Foundation set forth in their amicus brief (hereafter "Ray-Tillman-Landmark Brief").

Specifically, the Comptroller of the Treasury—charged with determining pay disputes for officers and employees—uniformly treated special assistants to federal district attorneys (now called U.S. Attorneys) and to the Attorney General as employees holding temporary positions. These special assistant positions are the predecessors to the modern Special Counsel. Contemporary pay records submitted to Congress

support this conclusion, as do payments made to a Member of Congress for serving concurrently as a special assistant. Such concurrent service by members and special assistants would be barred by the Constitution's Incompatibility Clause, if and only if special assistants are officers.

In addition, Court of Claims cases from the late nineteenth and early twentieth centuries directly held that special assistants were employees, not officers. The Attorney General favorably cited these Court of Claims cases as well. All of this evidence confirms that the historical antecedents to Jack Smith's position were employees, not officers. And just this year Attorney General Garland, in congressional testimony, correctly referred to special counsels as "an employee of the Justice Department." *See* Mot. For Leave to File Notice of Suppl. Authority, ECF No. 630.

This historical record shows that since the antebellum period, special assistants were regarded as mere employees, authorized to conduct trials but not initiate criminal prosecutions or sign indictments. Jack Smith was retained for a similar, non-continuous position but is exercising much broader powers. The current Special Counsel regulation allows a person retained as a Special Counsel to exercise all the powers

of a United States Attorney. This authority includes the power to initiate a prosecution and sign an indictment in his own name. But as a mere employee, Smith does not have the constitutional power to bring an indictment in his own name. To date, Smith has refused to state whether his indictment was actually approved or even authorized by an officer of the United States. Mot. to Dismiss Hr'g Tr. at 149, ECF. No. 647.

## I.  JACK SMITH IMPROPERLY EXERCISED THE POWERS OF AN OFFICER OF THE UNITED STATES.

Mere employees may not exercise the powers of an officer of the United States. Rather, a person must be an officer of the United States to "exercis[e] significant authority pursuant to the laws of the United States." *Buckley v. Valeo*, 424 U.S. 1, 126 (1976). "The exercise of 'significant authority pursuant to the laws of the United States' marks, not the line between principal and inferior officer for Appointments Clause purposes, but rather, as we said in *Buckley*, the line between officer and non-officer." *Edmond v. United States*, 520 U.S. 651, 662 (1997). Initiating a criminal prosecution and signing an indictment on behalf of the United States is such an "exercise of significant authority"— and that power rests exclusively with officers of the United States.

5

**A. Unilaterally signing an indictment is an "exercise of significant authority" that is exclusive to officers of the United States.**

The Special Counsel regulation allows a person retained as a Special Counsel to exercise "all investigative and prosecutorial functions of any United States Attorney." 28 C.F.R. § 600.6. All United States Attorneys are officers of the United States. 28 U.S.C. § 541(a). The primary duty of a United States Attorney is to "prosecute for all offenses against the United States." *Id.* § 547(1). That is also Jack Smith's primary duty. 28 C.F.R. § 600.6; Office of the U.S. Attorney General, Appointment of John L. Smith as Special Counsel, Order No. 5559-2022 (Nov. 18, 2022), available at https://perma.cc/8P3L-J8AX ("The Special Counsel is authorized to prosecute federal crimes arising from the investigation of these matters.").

*Buckley* made it clear that "any appointee exercising *significant authority* pursuant to the laws of the United States *is* an 'Officer of the United States,' and must, therefore, be appointed in the manner prescribed by §2, cl. 2, of [Article II]." *Buckley*, 424 U.S. at 126 (emphases added). In contrast, "[e]mployees are lesser functionaries subordinate to officers of the United States." *Id.* at 126 n.162. Consequently, an

employee may not exercise significant authority. Instead, employees are limited to assisting officers of the United States, to whom they are "subordinate." The power to bring an indictment requires "exercising the "significant authority" that only officers can exercise. *See id.* at 126. That power may not be exercised by a mere employee.

## B. Jack Smith brought an indictment in his own name.

Smith exercised that "significant authority" by returning an indictment signed by Smith alone.[1] District Court Decision at *6–*7 (citing ECF Nos. 3, 85). No person outside the Special Counsel's staff signed the indictment, and the Special Counsel's attorneys refused to tell the District Court whether the Attorney General or any other Justice Department officer approved, or even reviewed, the indictment before or after it was filed. District Court Decision at *95 n.57.

During the motion-to-dismiss hearing, the District Court asked an attorney for Smith point blank: "Did the Attorney General have any sort of oversight role in seeking the indictment?" Mot. to Dismiss Hr'g Tr. at 149, ECF. No. 647. Counsel declined to answer. *Id.* ("I am telling you that

---

[1] Smith provided the signature required by Federal Rule of Civil Procedure 7(c)(1). Jay Bratt, Counselor to the Special Counsel, signed a related filing that was attached to the indictment.

I am not in a position on behalf of the Department as a whole to make representations about that . . . .". But in another case where Smith's powers were contested, Smith represented to that court that "coordination with the Biden Administration" is "non-existent." Gov't Mot. in Limine at 6, *United States v. Trump*, No. 1:23-cr-257-TSC (filed D.D.C. Dec. 27, 2023), ECF No. 191. And in press reports, the Attorney General has disclaimed directing or controlling Smith's activities, saying Smith was retained to act independently from the Department of Justice. Ryan J. Reilly, *Attorney General Garland Emphasizes Special Counsel's 'Independence' In Trump Probe*, NBC News (June 14, 2023), https://tinyurl.com/4nnfy6a3.

This is where Smith's actions depart from historical precedent. As discussed *infra*, historic special counsels *assisted* officers of the United States. In the cases cited below, as well as the cases cited in the Ray-Tillman-Landmark Brief, the special counsels did not bring indictments in their own names. Rather, as a general matter, such special assistants or special counsels were temporary employees who merely assisted federal prosecutors. It was the latter—all officers of the United States— who initiated the prosecutions. The signature is proof of approval by the

Officer of the United States. These special counsels were not given the powers of United States Attorneys; they merely assisted them. Smith, by contrast, is not assisting others. He is signing indictments for the office of special counsel's unilateral actions.

It is not a trivial matter that the power to initiate a criminal prosecution is exclusive to officers of the United States. The Supreme Court has recognized that criminal prosecutions involve special considerations on the part of the executive, and have specific procedural protections baked into the Constitution. *See, e.g.*, *Trump v. United States*, 603 U.S. 593, 613 (2024) ("Potential criminal liability, and the peculiar public opprobrium that attaches to criminal proceedings, are plainly more likely to distort Presidential decisionmaking than the potential payment of civil damages."). Criminal prosecutions involve a significant amount of power and also a significant amount of discretion, calling for political accountability. It is crucial that this power be wielded only by officers of the United States. Because Smith is not an officer, he does not have the power to initiate a criminal prosecution or sign an indictment in his own name.

## II. HISTORICAL PRACTICE CONFIRMS SPECIAL COUNSELS ARE RETAINED AS MERE EMPLOYEES.

Records from varied sources between 1858 and 1918 overwhelmingly treated special counsels as employees, not officers.

### A. Comptroller of the Treasury and Attorney General opinions deciding pay and benefit disputes concluded special counsels are employees.

1. Comptroller of the Treasury Decisions

In the late nineteenth and early twentieth centuries, persons who disputed the amount of salary or other compensation they received or were owed from the federal government could file claims directly with an executive department. *See* Rev. Stat. § 1063 (2d ed. 1878). On matters of pay, these disputes were routinely referred to the Comptroller of the Treasury. Three cases from 1895, 1904, and 1905 treated special assistants to federal district attorneys and the Attorney General as employees, not officers.

> *a. Reynolds's Case (1895)*

The first decision concluded that a special assistant to a U.S. Attorney retained under Revised Statutes § 363 was an employee, not an officer. *In re Account of Matthew G. Reynolds for Compensation as Special Assistant United States Attorney* (Dec. 3, 1895), *in* Decisions of the

10

Comptroller of the Treasury 271 (Volume II, 1896) [hereafter "Reynolds's Case"], https://perma.cc/N8TL-3RN8. Matthew Reynolds held "the office of attorney for Court of Private Land Claims." *Id.* at 271 (emphasis removed). The Attorney General retained him as special assistant to the United States Attorney for the Territory of New Mexico under Revised Statutes § 363 to prepare and conduct the trial of the "Baron of Arizona" James A. Peralta Reavis for alleged fraudulent land claims. *Id.* at 272. The question was whether the Act of July 31, 1894, ch. 174, 28 Stat. 162 (1894), prevented Reynolds from holding both positions. That Act stated "No person who holds an office the salary or annual compensation attached to which [is $2,500 or more] shall be appointed to or hold any other *office* to which compensation is attached unless . . . specially authorized thereto by law." *Id.* § 2, 28 Stat. 205 (emphasis added). If the special assistant position was an "office," then the statute prevented him from holding that position.

Applying *United States v. Hartwell*, 73 U.S. (6 Wall.) 385 (1868), the Comptroller determined that an office must have "'tenure, duration, emolument, and duties.'" Reynolds's Case at 272 (quoting *Hartwell*, 73 U.S. at 393). Reynolds was retained to handle a single trial. *Id.* The

11

Comptroller found the position was not continuous, and thus lacked "duration." *Id.* Therefore, this position did not constitute an office.[2] *Id.* at 273. The Comptroller also cited *United States v. Maurice*, where Chief Justice Marshall said "'[a]lthough an office is "an employment," it does not follow that every employment is an office. A man may certainly be employed under a contract, express or implied, to do an act, or perform a service, without becoming an officer.'" *Id.* (quoting *United States v. Maurice*, 26 F. Cas. 1211, 1214, 1823 U.S. App. LEXIS 350, *10–11 (C.C. D. Va. 1823) (Marshall, Circuit Justice)). Finding that Reynolds's position was an employment rather than an office, the Comptroller affirmed that Reynolds's special assistant position to the U.S. Attorney was an employee, not an officer. Therefore, Reynolds did not hold two offices and paying him did not violate the Act of July 31, 1894. *Id.*

---

[2] Indeed, the Supreme Court in *Lucia v. SEC* recognized that an employee's duties are only "'occasional or temporary' rather than 'continuing and permanent.'" 585 U.S. 237, 245 (2018) (quoting *United States v. Germaine*, 99 U.S. 508, 511–12 (1878)). For more details on *Lucia* and *Germaine*, *see* Ray-Tillman-Landmark Br. at 23–25.

### b. *Pagin's Case (1904)*

The second decision concluded that a special assistant to the Attorney General under Revised Statutes § 366 is an employee, not an officer. *Employment of an Assistant United States Attorney as a Special Assistant Attorney to Perform Special Services Outside of His District* (Dec. 9, 1904), *in* Decisions of the Comptroller of the Treasury 279 (Volume XI, 1905) [hereafter "Pagin's Case"], https://perma.cc/XW4Q-MD37. Oliver Pagin was employed as an Assistant United States Attorney in Illinois. *Id.* at 280. The Attorney General then retained him under Revised Statutes § 366 as a special assistant to assist in preparing indictments for a postal fraud case outside of Illinois. *Id.* at 280–81. The question was whether the sum he was owed as a special assistant violated the statutory ban on receiving more than one government salary (Rev. Stat. § 1765). *Id.* at 282. Revised Statutes § 1765 stated:

> No officer in any branch of the public service, or any other person whose salary, pay, or emoluments are fixed by law or regulations, shall receive any additional pay, extra allowance, or compensation, in any form whatever, for the disbursement of public money, or for any other service or duty whatever, unless the same is authorized by law, and the appropriation therefor explicitly states that it is for such additional pay, extra allowance, or compensation.

The Comptroller cited Reynolds's Case, saying: "It was held by this office, in a well-considered case (2 Comp. Dec. 271), that a special assistant to a district attorney was *not an officer, but held a mere employment*." *Id.* at 283 (emphasis added). The Comptroller then extended that precedent to special assistants to the Attorney General.

### c.  Harr's Case (1905)

The third decision confirmed that both special assistants to district attorneys and the Attorney General are employees, not officers. *Holding Two Employments at the Same Time* (Sept. 16, 1905), *in* Decisions of the Comptroller of the Treasury 141 (Volume XII, 1906) [hereafter "Harr's Case"], https://perma.cc/7BMB-6XAX. William Harr was employed as a special assistant to the Attorney General under Revised Statutes § 366. *Id.* at 141–42. The Attorney General then retained him at the same time as special assistant to the United States Attorney for the District of Oklahoma under Revised Statutes § 363 to handle a corruption trial involving the local clerk of the U.S. District Court. *Id.*

Similar to Pagin's Case, the question was whether these dual employments violated the statutory ban on receiving more than one

14

government salary (Rev. Stat. § 1765). The Comptroller held that "neither of the employments is an office . . . ."

2. Attorney General Opinion (1918)

In 1918, the chairman of the United States Employees' Compensation Commission requested an Attorney General opinion as to whether an Assistant U.S. Attorney is eligible for benefits under the Federal Employees' Compensation Act. Employee's Compensation Act—Assistant United States Attorney, 31 Op. Att'y Gen. 201 (1918), https://perma.cc/2DN6-75J2. That Act had been amended to remove "officers" from eligibility. *Id.* at 201. In resolving whether the position was an employee or officer, the Attorney General said:

> the inquiry must always be into the nature of the service to be rendered. If the appointee himself performed any of the functions of government, he is an officer. If he merely renders assistance to another in the performance of those functions, he is an employee.

*Id.* at 203–04.

The Attorney General noted that full-time or permanent Assistant U.S. Attorneys appear in court "with precisely the same authority the [United States] district attorney would have if present." *Id.* at 205. By contrast with special assistants to district attorneys, "supervision of their conduct and proceedings" rests with the United States district attorney.

15

Rev. Stat. § 363 (2d ed. 1878). Primarily due to the "nature of the service to be rendered," the Attorney General concluded that regular Assistant U.S. Attorneys are officers within the meaning of the Federal Employees' Compensation Act. 31 Op. Att'y Gen. at 205. But the Attorney General did not hold that special assistants are officers.

### B. Special counsels—including a sitting Member of Congress—were treated as employees.

1. The Constitution's Incompatibility Clause did not prevent a Member of Congress from serving as a special counsel.

The Constitution's Incompatibility Clauses prohibit a "Person [from] holding any Office under the United States" while serving as "a Member of either House during his Continuance in Office." U.S. Const. art. I § 6, cl. 2. Yet historical records show that a Member of Congress served as a special counsel.

In May 1882 and January 1883, the Attorney General retained Richard Crowley as a special assistant to district attorneys in New York and South Carolina. *Testimony taken by the Committee on Expenditures in the Department of Justice*, 48th Cong. 60, 62 (1884) (containing employment letters), *in* XXII Miscellaneous Documents of the House of Representatives No. 38, pt. 1 (1884), https://www.google.com/books/edition/House_documents/xi25Xzzo-

JkC?hl=en&gbpv=0. Crowley acquired this employment while he was serving as a U.S. Representative from New York, and he later testified that "I am not the only member of Congress who has presented bills to the Government for services rendered while he was a member." *Id.* at 61; Biographical Directory of the United States Congress, CROWLEY, Richard, Congress.gov, https://tinyurl.com/ycx58vbe (in office March 4, 1879 to March 3, 1883) (last visited Oct. 25, 2024).

If the special assistant position were an office, the Incompatibility Clause would have prevented him from continuing his service in the U.S. House of Representatives. Yet neither the Attorney General nor anyone in Congress raised this objection.

2. <u>Special Counsel Charles Bonaparte, retained during the Theodore Roosevelt Administration, characterized his position as "temporary employment" and not as an "office in the constitutional sense of the term."</u>

Prior to the 1904 presidential election, Charles Bonaparte agreed to have his name put "on the official ballot as elector" for the state of Maryland. At the time he held (at least) three positions:  Indian Commissioner, a special assistant in the Justice Department, and a special inspector in the Interior Department. Letter from Charles Bonaparte to President Theodore Roosevelt (Nov. 1, 1904),

https://perma.cc/YH8P-8QWV. The Constitution's Electoral Incompatibility Clause prohibits "a Person holding an Office of Trust or Profit under the United States" from being "appointed an Elector." Id. art. II, § 1, cl. 2. In a letter to President Theodore Roosevelt, Bonaparte stated that his Indian Commissioner position was an "'office of trust' (although hardly 'of profit') under the United States." *Id.* But as to the special assistant and special inspector positions, he said "I do not think either of these positions is an office in the constitutional sense of the term, and probably my *employment* ought to be regarded as already terminated." *Id.* (emphasis added). That means Bonaparte did not consider the antecedent to the special counsel position as an office. To resolve any doubts surrounding his potential appointment as an Elector, Bonaparte formally resigned all three positions—even though he did not think that step would be required for his position as special counsel. *Id.*

Bonaparte's opinion on this subject is notable, as he would later serve as Secretary of the Navy and Attorney General in the Theodore Roosevelt Administration. U.S. Department of Justice, Attorney General:

Charles Joseph Bonaparte, https://www.justice.gov/ag/bio/bonaparte-charles-joseph (last visited October 31, 2024).

This is not the only occasion Bonaparte characterized his special assistant role as an "employment." In a 1903 letter, Bonaparte blamed a tardy reply on his "temporary employment under the Department of Justice." Letter from Charles Bonaparte to Alford W. Cooley, Commissioner, U.S. Civil Service Commission (Aug. 14, 1903), https://perma.cc/6MQJ-YWXV.

The historic records from Bonaparte and Crowley show that these special assistants did not consider themselves officers.

3. <u>Records submitted to Congress describe special counsels as employees.</u>

During the Buchanan, Andrew Johnson, Grant, Garfield, and Arthur Administrations, the Attorney General submitted to Congress expense reports that characterize special counsels as employees.[3] In the Buchanan and Johnson administrations, these special counsels were

---

[3] Several of these special counsels were discussed in the Ray-Tillman-Landmark Brief at 7–9. To avoid repeating that information, Amicus is presenting additional primary source evidence to support the same conclusion: that historic special counsels were regarded as employees, not officers.

listed in a report titled *Counsel **Employed** by the Attorney General*. Counsel Employed by the Attorney General, H.R. Ex. Doc. No. 98, 40th Cong. 5 (1868), https://perma.cc/FBT9-D2V3 [Figure 1]. The Buchanan Administration hired as a "special agent", Edwin Stanton, who would later serve as Secretary of War." *Id.* And the Johnson Administration retained several special counsels to assist the Jefferson Davis prosecution. *Id.*

STATEMENT B.—*Special counsel to assist district attorneys.*

| Date. | To whom paid. | Amount. | By whom employed. | Cases or business in which the services were rendered. |
|---|---|---|---|---|
| 1861. | | | | |
| April 8 | E. Randolph | $2,500 00 | Attorney General Black | New Almaden land case, in United States courts northern district of California. |
| April 9 | E. Randolph | 5,000 00 | P. Della Torre, U.S. att'y, and E. M. Stanton, special agent. | United States *vs.* John Parrott, California land case; northern district of California. |
| October 24 | J. B. Williams | 2,000 00 | Attorney General Stanton | Land cases in northern district of California. |
| December 13 | J. O. Broadhead | 1,500 00 | Attorney General Bates | United States *vs.* Tucker. Treason and investigation of frauds, conspiracies, and other crimes; eastern district of Missouri. |
| December 31 | W. M. Evarts | 1,250 00 | do | United States *vs.* Baker. Piracy, United States circuit court, southern district of New York. |
| 1862. | | | | |
| January 23 | C. Gibbons | 1,050 00 | Attorney General Bates | Services in United States courts in eastern district of Pennsylvania. [Contract dated October 12, 1861, at $350 per month during illness of the district attorney.] |
| July 9 | R. P. Ranney | 250 00 | do | United States *vs.* Court *et als.* Conspiracy, in United States circuit court, northern district of Ohio. |
| July 15 | W. D. Kelley | 500 00 | do | United States *vs.* Crews of Privateers, in United States circuit court, eastern district of Pennsylvania. |
| July 16 | Geo. H. Earle | 500 00 | do | Do. do. |
| September 13 | P. Della Torre | 7,500 00 | do | Land cases in United States district court, northern district of California. |
| 1863. | | | | |
| April 4 | E. L. Gould | 1,000 00 | Attorney General Bates | Gomez *vs.* United States, in United States district court southern district of California. |
| December 10 | J. M. Jordan | 500 00 | do | United States *vs.* John Racey *et al.* Conspiracy, in United States circuit court southern district of Ohio. |
| 1864. | | | | |
| April 25 | I. Hartman | 2,559 00 | Attorney General Bates | Land cases, in United States district court southern district of California. |
| May 17 | T. Campbell | 3,000 00 | do | United States *vs.* Ridgely Greathouse *et al.* Treason, in United States circuit court of California. |
| 1865. | | | | |
| July 5 | B. White | 500 00 | Attorney General Speed | United States *vs.* Rosenthal & Merrick. Conspiracy, in United States circuit court northern district of Ohio. |
| July 20 | I. Hartman | 19,000 50 | Special agent E. M. Stanton, with approval of Attorney General Black. | Mission cases and Almaden case. Land claims, southern district of California. [For continuous services since 1858.] |
| 1866. | | | | |
| June 14 | W. Y. Gholson | 500 00 | Attorney General Speed | United States *vs.* Medary *et al.* Conspiracy and Treason, in United States circuit court southern Ohio. |
| July 20 | E. C. Carrington | 680 00 | Att'ys Gen'l Bates and Speed. | Special reports to Attorney General in thirty-four cases of convictions in criminal court, Dist. of Columbia. |
| 1867. | | | | |
| January 17 | T. V. Russell | 500 00 | Attorney General Stanbery | United States *vs.* Fester. Murder, United States district court, Montana. |
| May 29 | W. M. Evarts | 5,450 00 | do | United States *vs.* Jefferson Davis. Treason, in United States circuit court, Virginia. |
| November 15 | R. H. Dana, jr. | 1,000 00 | do | Do. do. |
| November 15 | H. H. Wells | 1,000 00 | do | Do. do. |

COUNSEL EMPLOYED BY THE ATTORNEY GENERAL. 5

Figure 1. Special Counsels in the Buchanan and Johnson Administrations.

In addition to the report's title, the report also lists "By whom" each special counsel was "*employed*". This label signifies the special counsel

were employees, not officers. This same report also stated "There are no other special counsel now *employed* to assist the Attorney General in the Supreme Court, or as assistant counsel in his department." *Id.* at 7 (emphasis added).

During the Grant Administration, the 1876 Attorney General's Annual Report listed several special assistants who resigned or were "discontinued." This description is not consistent with a continuing office that has duration. U.S. Department of Justice, Annual Report of the Attorney-General of the United States 30–31 (Jan. 8, 1877), https://perma.cc/Q7G3-336E. The report also lists these special assistants' positions as "Employment." *Id.* at 30. Similarly, in the Garfield and Arthur Administrations, the Attorney General's Annual Report lists special counsels "and their employment." U.S. Department of Justice, Annual Report of the Attorney-General for the Fiscal Year Ending June 30, 1883, p. 122 (Dec. 3, 1883), https://www.govinfo.gov/content/pkg/SERIALSET-02193_00_00-004-0008-0000/pdf/SERIALSET-02193_00_00-004-0008-0000.pdf#page=122 [https://perma.cc/5PZ4-GLB8] [Figure 2].

122                REPORT OF THE ATTORNEY-GENERAL.

EXHIBIT P.—*Statement showing the number of assistants to the United States attorneys, their employment and compensation, &c.*—Continued.

REGULAR ASSISTANTS—Continued.

| District. | Names. | Compensation. | Remarks |
|---|---|---|---|
| Pennsylvania, western district. | G. C. Wilson | $2,500 per annum | |
| Do | David Cameron | $1,250 per annum | |
| South Carolina | John Wingate | $2,000 per annum | |
| Tennessee, eastern district. | John P. Smith | $1,200 per annum | |
| Tennessee, middle district. | J. R. Dillon | $1,200 per annum | |
| Tennessee, western district. | J. B. Clough | $1,500 per annum | |
| Texas, eastern district | J. R. Burns | $1,500 per annum | To January 1, 1883. |
| Do | ......do | $600 per annum | To April 1, 1883. |
| Utah | E. T. Sprague | $1,500 per annum | |
| Do | Zern Snow | $1,000 per annum | |
| West Virginia | G. W. Patton | $300 per annum | |
| Wisconsin, western district. | O. B. Thomas | $3,500 per annum | |
| Washington | C. H. Hanford | Fees | |

SPECIAL ASSISTANTS.

| District. | Names. | Compensation. | Remarks |
|---|---|---|---|
| Alabama, northern district. | George Turner | $332.40 | In election cases. |
| Alabama and middle district. | ......do | $5,454.05 | Mineral-land suits. |
| Alabama, northern district. | Paul L. James | $150 | In election cases. |
| Arizona | Jerry Miller | Undetermined | Defense of Indians. |
| Arkansas, eastern district. | J. C. Palmer | $150 | Prosecution for murder of a witness in United States court. |
| California | W. W. Bishop | $1,000 | Services in opium cases. |
| Do | Bunson & Wells | Without compensation. | Land-patent cases. |
| Do | M. G. Cobb | ...do | Do. |
| Do | Brunson & Wells | ...do | Resigned Mission Indians. |
| Colorado | W. H. Stearns | $107 | Services, September term, 1882, at Del Norte |
| Do | J. A. Bentley | Without compensation. | Maxwell Land Grant Co. |
| Do | T. H. N. McPherson | ...do | Do. |
| Do | James Colman | ...do | Do. |
| District of Columbia. | H. H. Wells | $2,822.45 | Star-route cases. |
| Do | ......do | $1,700 | Detective cases. |
| Do | Frank Irvine | $671.01 | Do. |
| Do | W. A. Cook | $1,000 | Star-route cases. |
| Do | E. B. Smith | $2,000 | Guiteau case. |
| Do | W. S. Perry | 15 per cent. on amount collected. | Collect forfeited recognizance. |
| Do | R. T. Merrick | $27,500 | Star-route cases. |
| Do | W. W. Ker. | $20,020.12 | Star-route, cases &c. |
| Do | George Bliss | $12,653.21 | Do. |
| Do | T. H. N. McPherson | $5,000 or less | Collect certificates and interest. |
| Georgia, northern district. | John S. Bigby | $250 | v. Howard. |
| Illinois, northern district | Horace F. White | Without compensation. | v. C. Canton. |
| Do. | John N. Jewett | ...do | |
| Kansas | C. F. Ware | Undetermined | v. McElroy. |
| Massachusetts | Prentiss Cummings | ...do | v. H. Sangborn et al. |
| Michigan, eastern district | G. O. N. Lathrop | ...do | Rothschild cases. |
| Do | C. A. Kent | ...do | Do. |
| Minnesota | C. A. Congdon | $75 per month | Pre-emption cases. |
| Mississippi, northern district. | J. H. Chalmers | $500 | Election cases. |
| Missouri, eastern district. | Jeff Chandler | $500 | v. Britton & Curtis. |
| New Mexico | A. J. Fountain | $500 | Defense of Indians. |
| Do | A. F. Chavis | $400 | v. Postmaster at Socorro. |
| Do | S. M. Barnes | Undetermined | v. G. P. Armstrong. |
| New York, northern district. | Richard Crowley | $2,654.20 | v. J. M. Bailey. |
| Do | ......do | $5,982.35 | v. Lee and Hall. |
| New York, southern district. | W. H. Arnoux | $1,000 | S. J. Tilden. |
| Do | L. C. Ragever | Without compensation. | v. J. Gunning. |

Figure 2. Special Counsels in the Garfield and Arthur Administrations.

22

The weight of this historic evidence from the Buchanan, Johnson, Grant, Garfield, and Arthur Administrations—and from contemporary figures who served as a special assistant—shows that special counsels were treated as employees, and not as officers.

## C. Cases deciding pay disputes in the late nineteenth and early twentieth centuries held special counsels are employees.

Between 1855 and 1982, the United States Court of Claims decided pay disputes for persons that rendered services to the government. *See* United States Court of Federal Claims, The People's Court, https://perma.cc/QY46-XYLQ (last visited Oct. 23, 2024). At the time, there were statutory bans on receiving more than one government salary and on Justice Department officers holding more than one office. Some cases therefore turned on whether the person was an officer or employee.

1. Wilson's Case (1875)

In 1863, the Attorney General retained Nathaniel Wilson as an assistant to the United States District Attorney (a position now called the United States Attorney) for the District of Columbia. *Wilson v. United States*, 11 Ct. Cl. 565, 566 (1875). Under the Act of August 2, 1861, the Attorney General could "*employ and retain*, in the name of the United

23

States, such attorneys and counselors at law as he may think necessary to assist the district attorneys in the discharge of their duties." *Id.* at 568 (citing Act of August 2, 1861, ch. XXXVII, 12 Stat. 283) (emphasis added). That statute is a predecessor of the modern 28 U.S.C. § 543.[4]

The court held "If the claimant can recover, it must be in the *character of an employe; for he was not a civil officer*, a clerk, a messenger, or a watchman." *Wilson*, 11 Ct. Cl. at 568 (emphasis added). Thus, based on the statute that created the position, the court held that assistants to district attorneys are employees, not officers.

2. <u>*Lee v. United States* (1910)</u>

On several occasions between 1904 and 1907, the Attorney General retained Frank Lee as a special assistant to the United States Attorney for the Central District of the Indian Territory. *Lee v. United States*, 45 Ct. Cl. 57, 58 (1910). However, Lee's position lapsed during July and August 1906. *Id.* at 60. The Attorney General retroactively retained him

---

[4] Congress later authorized the Attorney General to "appoint[]" assistant district attorneys when the district judge and district attorney agreed they are needed in a given district. Act of May 28, 1896 § 8, ch. 252, 29 Stat. 140, 181 (1896). By contrast, Revised Statutes § 363 referred to the Attorney General's power to "employ and retain" special counsels.

in that position for those months, and Lee sought payment for the services he had rendered during the lapse. *Id.* at 58, 60.

In rejecting Lee's claim, the Court of Claims held that "[t]he position of a special United States assistant attorney is not an office. It is only an employment, and the amount to be paid for such service is for work done by the individual so employed." *Id.* The court further distinguished the special assistant position from an office, saying the former is "specially retained" for a particular purpose, not to exercise continuing duties. *Id.* This precedent bears directly on Revised Statutes § 366—the section that Smith has called the "precursor" to 28 U.S.C. § 515. Appellant's Br. at 23–25.

### 3. *United States v. Rosenthal* (1903)

The officer-versus-employee distinction also arose in a criminal case the District Court described as a "closer resemblance" to the present one—and not just because both Special Counsels were named Smith. *See* District Court Decision at *52 n.30. In 1902 the Attorney General retained W. Wickham Smith as a special assistant to the Attorney General to investigate fraudulent Japanese silk imports. *United States v. Rosenthal*, 121 F. 862, 863 (C.C. S.D.N.Y. 1903). W. Smith presented

25

evidence to the grand jury, and the grand jury returned an indictment against defendants Rosenthal and Cohn. *Id.* at 865. The Defendants moved to quash the indictment, alleging that W. Smith—an agent of the Attorney General—could only conduct a trial, not present to the grand jury. *Id.*

Revised Statutes section 366 only allowed special assistants "'to assist in the trial of any case'" and that "the trial of a case would not include proceedings before the grand jury." *Id.* (quoting Rev. Stat. § 366). So § 366 alone did not give W. Smith the authority to present to the grand jury.

The court then looked to other authorities. The court explained that prior to the Department of Justice's creation, the Attorney General did not have a role in criminal prosecutions. *Id.* at 866. Instead, the Attorney General handled civil matters and appeals to the Supreme Court, while federal District Attorneys had exclusive power to bring criminal cases. *Id.* (citing *Confiscation Cases*, 74 U.S. (7 Wall.) 454, 454 (1869)). This practice could only change by statute. When Congress created the Department of Justice, it expanded the Attorney General's authority to allow the Attorney General, Solicitor General, or "any other officer of the

Department of Justice . . . to attend to the interests of the United States in any suit pending in any of the courts of the United States." *Id.* at 866–67 (quoting Rev. Stat. § 367, and citing Rev. Stat. § 359). For the special assistant to exercise these powers, he must be an "officer of the Department of Justice." *Id.*

The court flatly rejected the government's argument: "a special assistant to the Attorney General is not an 'officer' within the meaning of sections 359 or 367." *Id.* at 867. Rather, the "other officer[s]" referred to in Revised Statutes sections 359 and 367 are the eight offices created under sections 348 and 349. *Id.* The court then noted that sections 350, 358–61, and 367 all refer to "officers," while section 366 does not. *Id.* at 868. By that omission, "a special assistant to the Attorney General is not such officer." *Id.* Because (1) section 366 did not allow special assistants to present to the grand jury, and (2) a special assistant is not an "other officer of the Department of Justice," the court held W. Smith did not have the authority to bring the indictment and granted the motion to quash.[5] *Id.* at 868.

---

[5] Notably, W. Smith acted "with the sanction and co-operation of the District Attorney" when appearing before the grand jury. *Rosenthal*, 121 F. at 865. Yet the court still quashed the indictment because W. Smith

As Jack Smith points out in his brief, Congress acted to fix the result in *Rosenthal*. Appellant's Br. at 44–45. But Congress merely lifted the restriction that limited special assistants to trials only. In other words, the amended statute allowed special assistants to present a case before the grand jury. But the statute left the special assistant's "employee" status intact. Congress did not disturb the court's holding that a special assistant under Revised Statutes § 366 is an employee, not an officer. There is evidence that this omission was intentional. The Senate report for the bill that amended the special assistant statute explained *Rosenthal* this way:

> In 1903 the Attorney-General, appointed a special assistant to investigate and report in the Japanese silk fraud cases, and it was held (121 F. 826 [862], U.S. v. Rosenthal) that **a special assistant to the Attorney-General is not an officer of the Department of Justice** under Sections 359 and 367, Revised Statutes, or other provisions of the United States Statutes . . . .

Senate Report No. 3835, 59th Cong. (1906), quoted in *United States v. Crispino*, 392 F. Supp. 764, 771 n.17 (S.D.N.Y. 1975) (emphasis added).

---

"in great part conducted" the grand jury proceedings. *Id.* at 874. This is relevant to whether Jack Smith had the power to bring an indictment in his own name, potentially without supervision or approval of other Justice Department officers.

Jack Smith has expressly waived any argument that a mere employee could carry out the duties Smith claims he may lawfully perform. *See* Ray-Tillman-Landmark Brief at 31–32.

4. *Cole v. United States* (1893)

Charles Cole and Hugh Taggart served as district attorney and assistant to the district attorney, respectively, for the District of Columbia. *Cole v. United States*, 28 Ct. Cl. 501, 502 (1893). Cole and Taggart assisted the federal commission established to create Rock Creek Park with miscellaneous legal work. *Id.* When they finished, they sought reimbursement for this work from an appropriation for Rock Creek Park—which was in addition to their regular government pay. *Id.* at 503.

The Court of Claims denied the claim for additional compensation based on the statutory ban (Revised Statutes § 1765) on receiving more than one government salary. The court held that Cole (as District Attorney) was an officer of the United States. *Cole*, 28 Ct. Cl. at 509–10. As to Taggart, the court used both "employ" and "officer" to describe his position. With little explanation, the court said "we must hold that [Taggart] was an officer of the United States in a branch of the public service within the meaning of section 1765." *Id.* at 510.

29

This case is an outlier. First, *Lee* was decided by the same court court and involved the same statutes: Revised Statutes sections 363 and 366. If *Cole* conclusively determined that assistants to district attorneys are officers, then the *Lee* decision would not have unequivocally declared "[t]he position of a special United States assistant attorney is not an office." *Lee v. United States*, 45 Ct. Cl. 57, 61 (1910). Likewise, *Rosenthal* did not cite to *Cole* when that court held "a special assistant to the Attorney General is not such officer." *United States v. Rosenthal*, 121 F. 862, 868 (C.C. S.D.N.Y. 1903).

Second, the Comptroller of the Treasury did not cite *Cole* in the Reynolds, Pagin, or Harr Cases—even though Reynolds's Case was decided just two years after *Cole*. Instead, in Reynolds's Case the Comptroller applied *Hartwell* to determine that the special assistant position was not continuous, so it could not be an office. Reynolds's Case at 272–73. Pagin's Case and Harr's Case also concerned the same statutes as *Cole*, yet both found that the special assistants were employees, not officers.

Finally, if *Cole* were binding, then the Incompatibility Clause would have barred Representative Crowley from serving as a special assistant.

And Charles Bonaparte would not have considered his special assistant position an "employment." In light of this record, it appears that contemporary actors did not apply *Cole* to resolve the officer versus employee distinction. Instead, the *Hartwell* test—that an office must be continuous—determined that special assistants are employees, not officers. The ipse dixit in *Cole* must be viewed as abrogated by the reasoned analysis of later-decided cases.

### D. Attorney General Garland described the Special Counsel as an employee of the Justice Department.

In June 2024, while testifying before the U.S. House of Representatives Committee on the Judiciary, Attorney General Merrick Garland accurately described the special counsel as "an employee of the Justice Department." The exchange occurred as follows:

> Mr. MASSIE: So the [independent counsel statute] expired. So, what gives you the authority to appoint a Special Counsel to create—you have created an office in the U.S. Government that does not exist without authorization from Congress.

> Attorney General GARLAND: There are regulations under which the Attorney General appoints Special Counsel. They have been in effect for 30 years, maybe longer, under both parties. The matter that you are talking about whether somebody can have **an employee of the Justice Department serve as Special Counsel**, has been adjudicated.

*Oversight of the U.S. Department of Justice: Hearing Before the H. Comm. on the Judiciary*, 118th Cong. 41 (2024) (emphasis added), https://perma.cc/BFR4-2ZBZ; Mot. For Leave to File Notice of Suppl. Authority, ECF No. 630 (same). Given the historical record above, it makes sense that the Attorney General would call special counsels "employees." The overwhelming historical practice has treated special counsels as mere employees, not officers.

## CONCLUSION

Jack Smith exercised the exclusive powers of an officer of the United States without holding such an office. For that reason, the judgment below should be affirmed.

Dated: November 1, 2024,                    Respectfully submitted,


                                            */s/Eric Heigis*
                                            ROBERT HENNEKE
                                            Texas Bar No. 24046058
                                            rhenneke@texaspolicy.com
                                            CHANCE WELDON
                                            cweldon@texaspolicy.com
                                            Texas Bar No. 24076767
                                            MATTHEW MILLER
                                            Texas Bar No. 24046444
                                            mmiller@texaspolicy.com
                                            ERIC HEIGIS
                                            Virginia Bar No. 98221
                                            ccalvin@texaspolicy.com

TEXAS PUBLIC POLICY
FOUNDATION
901 Congress Avenue
Austin, Texas 78701
Telephone: (512) 472-2700
Facsimile: (512) 472-2728
*Counsel for Amicus Curiae*

## CERTIFICATE OF COMPLIANCE (FRAP 32(g))

1.    This brief contains 5,977 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced, 14-point serif typeface using Microsoft Office Word.

*/s/ Eric Heigis*
ERIC HEIGIS

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 1, 2024, a true and correct copy of the foregoing document was electronically filed through CM/ECF. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system.

*/s/ Eric Heigis*
ERIC HEIGIS