No. 24-12311

# United States Court of Appeals for the Eleventh Circuit

UNITED STATES OF AMERICA,

*Plaintiff-Appellant*,

v.

DONALD J. TRUMP, *et al.*,

*Defendants-Appellees*.

On Appeal from the United States District Court
for the Southern District of Florida
No. 9:23-cr-80101-AMC; Hon. Aileen Cannon

**BRIEF OF FORMER ATTORNEYS GENERAL EDWIN MEESE III AND MICHAEL B. MUKASEY, PROFESSORS STEVEN CALABRESI AND GARY LAWSON, CITIZENS UNITED, AND CITIZENS UNITED FOUNDATION AS *AMICI CURIAE* SUPPORTING AFFIRMANCE**

MICHAEL BOOS
DANIEL H. JORJANI
CITIZENS UNITED
CITIZENS UNITED FOUNDATION
1006 Pennsylvania Avenue, S.E.
Washington, DC 20003

GENE C. SCHAERR
  *Counsel of Record*
KENNETH A. KLUKOWSKI
JUSTIN A. MILLER
SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006
Telephone: (202) 787-1060
gschaerr@schaerr-jaffe.com

*Counsel for Amici Curiae*

NOVEMBER 1, 2024

No. 24-12311

*USA v. Donald Trump, et al.*

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Under Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rules 26.1-1 through 26.1-3, and in addition to those persons and entities identified by the Appellants, Appellees, and other *Amici*, *Amici* here identify all additional attorneys, persons, associations of persons, firms, partnerships, or corporations associated with this brief that have an interest in the outcome of this case:

1.  Boos, Michael, *Counsel*

2.  Calabresi, Steven, *Amicus Curiae*

3.  Citizens United, *Amicus Curiae*

4.  Citizens United Foundation, *Amicus Curiae*

5.  Jorjani, Daniel H., *Counsel*

6.  Klukowski, Kenneth A., *Counsel*

7.  Lawson, Gary, *Amicus Curiae*

8.  Meese, Edwin, III, Former Attorney General, *Amicus Curiae*

9.  Miller, Justin A., *Counsel*

10. Mukasey, Michael B., Former Attorney General, *Amicus Curiae*

11. Schaerr, Gene C., *Counsel*

12. Schaerr | Jaffe LLP, *Counsel*

No. 24-12311
*USA v. Donald Trump, et al.*

Citizens United is a nonprofit corporation headquartered in Washington, D.C., and recognized as a social welfare organization under Section 501(c)(4) of the Internal Revenue Code. Citizens United Foundation is a nonprofit corporation headquartered in Washington, D.C., and recognized as an educational organization under Section 501(c)(3) of the Internal Revenue Code.

None of these *amici* has a parent corporation or issued stock, therefore no publicly held company owns 10 percent of their stock.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND
CORPORATE DISCLOSURE STATEMENT ........................................ C1

TABLE OF AUTHORITIES ..................................................................... ii

INTRODUCTION AND INTEREST OF *AMICI CURIAE* ...................... 1

ISSUE ...................................................................................................... 2

SUMMARY OF ARGUMENT ................................................................. 2

ARGUMENT ........................................................................................... 6

    I.    SMITH AS SPECIAL COUNSEL IS NOT "ESTABLISHED BY LAW"
        BECAUSE CONGRESS PASSED NO STATUTE AUTHORIZING HIS
        POSITION. ..................................................................................... 6

        A.    Only Congress can create a federal office. ......................... 6

        B.    No statute created an Office of Special Counsel. ............... 8

    II.    EVEN IF HIS POSITION WERE AUTHORIZED BY STATUTE, SMITH
        WOULD BE A PRINCIPAL OFFICER REQUIRING PRESIDENTIAL
        NOMINATION AND SENATE CONFIRMATION. .................................. 22

        A.    The Appointments Clause's default is that officers
            require presidential nomination and Senate
            confirmation. .................................................................. 22

        B.    Smith's vast, unaccountable authority requires
            presidential nomination and Senate confirmation. ......... 25

    III.    THIS COURT IS NOT BOUND BY OBSERVATIONS IN *UNITED
        STATES V. NIXON*. ......................................................................... 31

CONCLUSION ....................................................................................... 33

CERTIFICATE OF COMPLIANCE ........................................................ 35

# TABLE OF AUTHORITIES

## Cases

*Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs.*,
594 U.S. 758 (2021) ................................................................21

*Biden v. Nebraska*,
600 U.S. 477 (2023) ...............................................................23

*Buckley v. Valeo*,
424 U.S. 1 (1976) ....................................................................23

*Burban v. City of Neptune Beach*,
920 F.3d 1274 (11th Cir. 2019) ............................................20

*Darden v. United States*,
708 F.3d 1225 (11th Cir. 2013) ............................................33

*Edmond v. United States*,
520 U.S. 651 (1997) ....................................................5, 25, 27

*Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg.*
*& Constr. Trades Council*, 485 U.S. 568 (1988) ...................20

*Farah v. U.S. Att'y Gen.*,
12 F.4th 1312 (11th Cir. 2021) .............................................32

*FDA v. Brown & Williamson Tobacco Corp.*,
529 U.S. 120 (2000) ...............................................................21

*Florida v. Nixon*,
543 U.S. 175 (2004) ...............................................................33

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*,
561 U.S. 477 (2010) ...............................................................27

*Kappos v. Hyatt*,
566 U.S. 431 (2012) ...............................................................32

*Laskar v. Hurd*,
972 F.3d 1278 (11th Cir. 2020) ............................................32

*Lucia v. SEC*,
    585 U.S. 237 (2018) ........................................................... 9, 15, 21, 25

*Morrison v. Olson*,
    487 U.S. 654 (1988) .................................................................... 5, 25

*Pine v. City of W. Palm Beach, Inc.*,
    762 F.3d 1262 (11th Cir. 2014) .......................................................... 21

*Seila Law LLC v. CFPB*,
    591 U.S. 197 (2020) ................................................................ 7, 8, 26

*United States v. Bloom*,
    149 F.3d 649 (7th Cir. 1998) ............................................................. 32

*United States v. Nixon*,
    418 U.S. 683 (1974) ............................................................ 4, 15, 31, 33

## Constitutional Provisions

U.S. Const. art. I, § 8 ......................................................................... 6

U.S. Const. art. II, § 1 ....................................................................... 16

U.S. Const. art. II, § 2 ..................................................................... 7, 22

U.S. Const. art. II, § 4 ....................................................................... 16

## Statutes

5 U.S.C. § 301 ........................................................................... 10, 11

5 U.S.C. § 3101 ............................................................................... 9

7 U.S.C. § 610 ............................................................................... 24

18 U.S.C. § 4041 ............................................................................ 24

20 U.S.C. § 346 ............................................................................. 24

28 U.S.C. § 501 *et seq.* ....................................................................... 8

28 U.S.C. § 509 ...................................................................... 2, 10, 11, 12

28 U.S.C. § 510 ........................................................................ 2, 10, 11, 12

28 U.S.C. § 515 .................................................................. 2, 10, 12, 13, 14

28 U.S.C. § 516 ................................................................................ 10, 14

28 U.S.C. § 517 ................................................................................ 10, 14

28 U.S.C. § 518 ................................................................................ 10, 14

28 U.S.C. § 519 ................................................................................ 10, 14

28 U.S.C. § 532 ........................................................................................ 17

28 U.S.C. § 533 .................................................................. 2, 10, 15, 16, 17

28 U.S.C. § 534 ........................................................................................ 17

28 U.S.C. § 543 ................................................................................ 14, 18

42 U.S.C. § 913 ........................................................................................ 24

49 U.S.C. § 323 ........................................................................................ 24

Ethics in Government Act of 1978,
   Pub. L. No. 95-521, 92 Stat. 1984 ........................................................ 9

**Regulations**

28 C.F.R. § 600.1 ..................................................................................... 10

28 C.F.R. § 600.3 ..................................................................................... 10

*Office of Special Counsel*, 64 Fed. Reg. 37,038 (July 9, 1999)
   (codified at 28 C.F.R. §§ 600.1–600.10) ............................................. 10

**Other Authorities**

*Annals of Cong.* (1789) ............................................................................. 8

Steven G. Calabresi & Gary Lawson,
   *The U.S. Constitution: Creation, Reconstruction,*
   *the Progressives, and the Modern Era* (2020) ...................................... 7

Steven G. Calabresi & Gary Lawson,
*Why Robert Mueller's Appointment as*
*Special Counsel Was Unlawful*,
95 Notre Dame L. Rev. 87 (2019) .............................. 6, 7, 25, 30, 31, 32

Bryan A. Garner et al.,
*The Law of Judicial Precedent* (2016) .................................. 32

Gov't Mot. in Limine,
*United States v. Trump*, No. 1:23-cr-257-TSC
(D.D.C. Dec. 27, 2023), ECF No. 191 .................................. 26

Robert H. Jackson, U.S. Att'y Gen.,
Address at the Second Annual Conference of
United States Attorneys: The Federal Prosecutor
(Apr. 1, 1940) .................................................................... 29, 30

Gary Lawson & Christopher D. Moore,
*The Executive Power of Constitutional Interpretation*,
81 Iowa L. Rev. 1267 (1996) ................................................ 8

Off. of Att'y Gen., Order No. 5559-2022 .................................. 10

*The Records of the Federal Convention of 1787*
(Max Farrand ed., 1911) .................................................. 7, 23

Ryan J. Reilly,
*Attorney General emphasizes special counsel's*
*'independence' in Trump probe*, NBC News
(June 14, 2023) .................................................................... 28

v

## INTRODUCTION AND INTEREST OF *AMICI CURIAE*[1]

Jack Smith does not have authority to prosecute this case because his appointment lacks any legitimate statutory basis and thus violates the Appointments Clause. And, regardless of the conduct at issue in this prosecution, that lack of authority presents a serious problem for the rule of law.

Given their interest in and demonstrated commitment to the rule of law, moreover, that problem is of immense importance to *amici*. *Amicus* Edwin Meese III served as the seventy-fifth Attorney General of the United States after serving as Counselor to the President, and is now the Heritage Foundation's Ronald Reagan Distinguished Fellow Emeritus. During his tenure as Attorney General, the Department of Justice steadfastly defended proper limits on federal power. *Amicus* Michael B. Mukasey was the eighty-first Attorney General of the United States after serving as a judge on the United States District Court for the Southern District of New York. Professors Calabresi and Lawson are

---

[1] No party opposes filing this brief, but because *amici* did not receive affirmative consent, *amici* moved for leave of court to file. No counsel for any party authored any part of this brief, nor did any person other than *amici curiae* contribute money toward its preparation or submission.

scholars of the original public meaning of the Constitution. Citizens United (a 501(c)(4) social welfare organization) and Citizens United Foundation (a 501(c)(3) educational and legal organization) are dedicated to restoring government to the people by promoting federalism, free enterprise, individual liberty, and limited government.

## ISSUE

Whether the Attorney General had statutory authority to appoint the Special Counsel such that the appointment was consistent with the Appointments Clause of the Constitution, art. II, § 2, cl. 2.

## SUMMARY OF ARGUMENT

Regardless of what one thinks about other issues in this prosecution, Jack Smith has no authority to prosecute. Only persons properly appointed as officers to properly created federal offices can lead prosecutions. As the district court held, neither Smith nor his Special Counsel position meets those criteria.

Attorney General Garland purported to appoint Smith to serve as Special Counsel for the Department of Justice ("DOJ"), citing authority under 28 U.S.C. §§ 509, 510, 515, and 533. But none of those statutes, nor any other law, remotely authorizes the Attorney General's appointing

a government employee to receive extraordinary criminal law enforcement power under the title "Special Counsel."

I.    The Appointments Clause requires that all federal offices "not herein otherwise provided for" in the Constitution must be "established by Law," and no statute establishes the Office of Special Counsel in DOJ. The statutory provisions DOJ has relied on to appoint Special Counsels over the past half century do not authorize prosecutors with the powers of U.S. Attorneys.

This is confirmed by comparing the statutes concerning the Attorney General's appointment authority to the authority granted to some other Department Heads whom Congress has explicitly empowered to appoint inferior officers. For example, the Agriculture Secretary "may appoint such officers and employees … as are necessary." Similarly, the Education Secretary "is authorized to appoint ... such officers and employees as may be necessary." Likewise, the Homeland Security Secretary "is authorized to appoint … officers and employees" generally. And the Transportation Secretary "may appoint … officers and employees." But no statute grants the Attorney General such general officer-appointing power.

3

Indeed, the government's cavalier construction of the Attorney General's authority would allow him to create an entire shadow Department of Justice. The obvious answer to such a dystopian and frightening version of the Nation's top domestic law enforcement agency is that Congress created a much different structure, one that answers to the American people through their elected lawmakers and President.

Common tools of statutory interpretation confirm that Smith's appointment is illegal. For example, the canon of constitutional doubt requires Congress to speak clearly if it intends a statute to push the limit of constitutionality. Yet the statutes Smith claims for his authority contain no clear statement, and thus fail under this rule.

Nor is this Court bound by comments in *United States v. Nixon*, 418 U.S. 683 (1974), about the statutory authority the Attorney General had invoked for the Special Counsel appointment in that case. Those observations do not even constitute dictum (much less a holding) because they did not purport to address either the statutory or the constitutional question presented here, that is, (1) whether a statute *actually* authorizes the Attorney General to appoint a Special Counsel and (2) if so, whether that authorization is constitutional. Indeed, both parties

4

*stipulated* to the validity of *Nixon*'s special prosecutor. Besides noting as a factual matter which statutes had been invoked there, the portion of the *Nixon* opinion cited by Smith simply addressed the institutional relationship between a President and the Department of Justice—not the proper interpretation of any of the statutes on which Smith relies.

II.   In any event, the Special Counsel, if a valid officer, is a principal (or non-inferior) rather than inferior officer, and thus requires senatorial confirmation regardless of what any statutes say. This is true under both original meaning and case law—once one understands that neither *Morrison v. Olson*, 487 U.S. 654 (1988), nor *Edmond v. United States*, 520 U.S. 651 (1997), can really be read to say that any person who is in any fashion subordinate to an executive official other than the President is an "inferior" officer. Such a reading leads to the ludicrous result that there is only one noninferior officer in every executive department. Moreover, the constitutional problem is easily solved simply by appointing a sitting U.S. Attorney to serve as Special Counsel whenever needed.

# ARGUMENT

I. **SMITH AS SPECIAL COUNSEL IS NOT "ESTABLISHED BY LAW" BECAUSE CONGRESS PASSED NO STATUTE AUTHORIZING HIS POSITION.**

The Constitution itself creates no executive positions other than the presidency and vice presidency. Instead, it commits the power to create federal offices to Congress under the Necessary and Proper Clause. That Clause in turn gives Congress power "[t]o make all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers, and all other Powers vested by this Constitution in the Government of the United States, or in any Department or Officer thereof." U.S. Const. art. I, § 8, cl. 18. But no law currently in effect authorizes the position of Special Counsel.

## A. Only Congress can create a federal office.

A law creating offices to carry out executive functions is quintessentially "necessary and proper for carrying into Execution" federal powers. Moreover, "Congress has the *exclusive* constitutional power to create federal offices." Steven G. Calabresi & Gary Lawson, *Why Robert Mueller's Appointment as Special Counsel Was Unlawful*, 95 Notre Dame L. Rev. 87, 101 & n.74 (2019) ("Calabresi & Lawson, *Mueller*") (discussing 2 *The Records of the Federal Convention of 1787*, at

6

550 (Max Farrand ed., 1911)); *see also Seila Law LLC v. CFPB*, 591 U.S. 197, 266 (2020) (Kagan, J., concurring in judgment with respect to severability and dissenting in part). English monarchs could create offices, but the Framers consciously denied that power to the President. *See* Steven G. Calabresi & Gary Lawson, *The U.S. Constitution: Creation, Reconstruction, the Progressives, and the Modern Era* 382 (2020). Accordingly, the Constitution does not give the President or agency heads the power to create offices. Instead, it requires that Congress first create *all* federal offices.

The Appointments Clause confirms this, providing for appointing officers "established by Law." U.S. Const. art. II, § 2, cl. 2. Adding that phrase was deliberate. "On September 15, 1787, '[a]fter "Officers of the U.S. whose appointments are not otherwise provided for," were added the words "and which shall be established by law.""" Calabresi & Lawson, *Mueller* , *supra*, at 101 & n.77 (quoting 2 *The Records of the Federal Convention of 1787*, at 628). This addition's plain import is that the "law" that establishes the office must be a statute. A regulation or Executive Order is not the kind of "law" that can create an office under the

7

Appointments Clause. *See Seila Law*, 591 U.S. at 266 (Kagan, J.) (citing 1 *Annals of Cong.* 582 (1789) (Madison)).

Indeed, the Constitution consistently uses "law" and "laws," when otherwise unqualified, to mean statutes. *See* Gary Lawson & Christopher D. Moore, *The Executive Power of Constitutional Interpretation*, 81 Iowa L. Rev. 1267, 1315 (1996). If no statute establishes an office, no one can be appointed to it.

## B.     No statute created an Office of Special Counsel.

And here, no statute authorizes the position of Special Counsel or authorizes the Attorney General to fill that office. Under current statutes, DOJ's structure includes an Attorney General, Deputy Attorney General, Associate Attorney General, Solicitor General, eleven Assistant Attorneys General, one U.S. Attorney for each judicial district, a director of the Federal Bureau of Investigation, a director of the U.S. Marshals Service, one U.S. Marshal for each judicial district, a director of the Bureau of Alcohol, Tobacco, Firearms, and Explosives, a director of the Bureau of Prisons, twenty-one U.S. Trustees, and as many assistant United States Attorneys and "special attorneys" as the Attorney General deems necessary. *See* 28 U.S.C. § 501 *et seq.*

8

This does not include over 100,000 people who work at DOJ. The vast majority of federal workers, including those at DOJ, are not "officers of the United States." They are instead employees, whose appointments are not controlled by the Appointments Clause. For them, Congress instead provides that "[e]ach Executive agency, military department, and the government of the District of Columbia may employ such number of employees of the various classes recognized by chapter 51 of this title as Congress may appropriate for from year to year." 5 U.S.C. § 3101. But officer positions must be specifically "established by Law." And employees cannot exercise the power of officers. *See Lucia v. SEC*, 585 U.S. 237, 245–46 (2018).

To be sure, the Ethics in Government Act of 1978, Pub. L. No. 95-521, 92 Stat. 1984 ("EGA"), added to the mix an "independent counsel" (originally "special prosecutor") appointed by a special three-judge court upon referral by the Attorney General. But the statutory provisions for the independent counsel expired in 1999 when Congress did not reauthorize them.

Shortly before that expiration, Attorney General Janet Reno promulgated regulations—still purportedly in force today—providing for

9

an "Office of Special Counsel." *See Office of Special Counsel*, 64 Fed. Reg. 37,038 (July 9, 1999) (codified at 28 C.F.R. §§ 600.1–600.10) ("Reno Regulations"). Under these regulations, the Attorney General may, in some circumstances, "appoint an outside Special Counsel to assume responsibility for the matter." 28 C.F.R. § 600.1. The regulations clarify that "outside" means someone "from outside the United States Government." *Id*. § 600.3(a). The Reno Regulations, like the independent counsel statute, contemplate appointment, as a putative inferior officer, of a nongovernmental official to an office that is fully the equivalent of a U.S. Attorney. But regulations are not the kind of "law" that can "establish[]" a federal office. Under the Appointments Clause, only a statute can do that, and no statute creates a Special Counsel with the jurisdiction and authority Smith wields.

The Reno Regulations cite as authority 5 U.S.C. § 301 and 28 U.S.C. §§ 509, 510, 515–519. Attorney General Garland's order appointing Smith also cited 28 U.S.C. § 533. Order No. 5559-2022 at 1. These statutes, singly or collectively, provide no such authority.

10

1. *Section 301.*

First, 5 U.S.C. § 301 is a general authorization for the issuance of regulations by department heads: "The head of an Executive department or military department may prescribe regulations for the government of his department, the conduct of its employees, the distribution and performance of its business, and the custody, use, and preservation of its records, papers, and property." This is merely a general housekeeping provision. Nothing in it creates offices or authorizes the creation of offices. Indeed, if § 301 were taken as general authorization for appointment of officers, the entirety of the more numerous specific provisions for appointment of officers throughout the U.S. Code would be superfluous. That is an absurd construction of § 301.

2. *Sections 509 and 510.*

The next statute cited in the Reno Regulations, 28 U.S.C. § 509, merely says that "[a]ll functions of other officers of the Department of Justice and all functions of agencies and employees of the Department of Justice are vested in the Attorney General" except for some functions not relevant here. But this provision likewise does not authorize creating offices. It simply says that the Attorney General can control all his

11

subordinates in DOJ or personally assume and exercise their responsibilities.

Similarly, 28 U.S.C. § 510 merely says, "The Attorney General may from time to time make such provisions as he considers appropriate authorizing the performance by any other officer, employee, or agency of the Department of Justice of any function of the Attorney General." As with § 509, the statute provides for shifting authority among the persons who work at DOJ, but it says nothing about who those persons are, what their positions are, or how they got there. Indeed, as noted below, under Smith's argument (SCO Br. 33–41), Section 510 would empower the Attorney General to create an entire shadow DOJ that circumvents all constitutional requirements for presidential and senatorial action.

3. *Section 515.*

The next cited provision, 28 U.S.C. § 515, likewise doesn't authorize the creation or filling of Smith's Special Counsel position. Section 515(a) confers only the following power:

> [A]ny other officer of the Department of Justice, or any attorney specially appointed by the Attorney General under law, may, when specifically directed by the Attorney General, conduct any kind of legal proceeding, civil or criminal, including grand jury proceedings and proceedings before committing magistrate judges, which United States attorneys are authorized by law to conduct, whether

12

or not he is a resident of the district in which the proceeding is brought.

Section 515(a) does not create offices or authorize their creation. Instead, it concerns the powers of people who have already been properly appointed to offices "under law" pursuant to *other statutory provisions*, and to prosecute a case regardless of whether he is a resident of that district.

Section 515(a) is thus a geographical and jurisdictional allocative provision. For example, it allowed Patrick Fitzgerald, the Senate-confirmed U.S. Attorney for the Northern District of Illinois, to prosecute Scooter Libby in Washington, D.C. It permits geographical flexibility.

Nor does subsection (b) of § 515 provide the requisite authority to appoint Smith to his current position:

> Each Attorney specially retained under authority of the Department of Justice shall be commissioned as special assistant to the Attorney General or special attorney, and shall take the oath required by law.

Again, this subsection is not a grant of a new power to retain or hire, but instead provides that attorneys who have *already* been hired or retained—and who may be only employees—can also have a title and salary.

To be sure, Sections 515(a) and (b) assume there are going to be attorneys "specially appointed by the Attorney General under law" and "specially retained under the authority of the Department of Justice." And as discussed below, 28 U.S.C. § 543 explicitly authorizes the Attorney General to hire such persons, who can then be denominated and commissioned as "special assistant[s]" or "special attorney[s]" under § 515(b). But these provisions confer no authority to create new inferior offices.

4. *Sections 516–519.*

Sections 516–519 likewise concern the internal allocation of authority among existing DOJ personnel and provide no authority to create offices. Section 519, for example, provides:

> Except as otherwise authorized by law, the Attorney General shall supervise all litigation to which the United States, an agency, or officer thereof is a party, and shall direct all United States attorneys, assistant United States attorneys, and special attorneys appointed under section 543 of this title in the discharge of their respective duties.

That is not office-creating language.

14

5. *Section 533.*

Nor does Section 533 provide the requisite authority, either as an original matter, or by virtue of the Supreme Court's opinion in *United States v. Nixon*, discussed in Part III.

Section 533, relied upon by Attorney General Garland but not in the Reno Regulations, is part of a chapter dealing with the FBI and is entitled "Investigative and other officials; appointment." It says:

> The Attorney General may appoint officials—(1) to detect and prosecute crimes against the United States; (2) to assist in the protection of the person of the President; and (3) to assist in the protection of the person of the Attorney General[;] (4) to conduct such other investigations regarding official matters under the control of the Department of Justice and the Department of State as may be directed by the Attorney General.

But Section 533(1) is not a general authorization to the Attorney General to appoint officers. It specifically and solely authorizes the appointment of "Investigative and other officials"—*officials*, not *officers*—connected with the FBI. Such officials, as that term is used in the statute,[2] are not

---

[2] An eighteenth-century statute might have used a term such as "officials" to have a broader meaning than applies to 28 U.S.C. § 533. *See Lucia*, 585 U.S. at 252–54 (Thomas, J., concurring). As a matter of statutory interpretation, however, there is no plausible case for reading the term as it appears in Section 533 to be coextensive with the constitutional meaning of "officer."

15

Article II "officers of the United States" and cannot perform the functions of officers of the United States. They are nonofficer employees, who, as FBI agents, must be subject to the supervision and direction of officers of the United States. The FBI needs office and field personnel to perform its functions, and Section 533 allows the agency to have them. But those office and field personnel are not officers of the United States and do not have the portfolio and powers of a Special Counsel.

To the contrary, the word "Officer" is a constitutional term of art, not only because it is used that way in the Appointments Clause, but also because Article II, Section 4 allows for the impeachment and removal from office of "all civil Officers of the United States[.]" U.S. Const. art. II, § 4. Congress can impeach the Deputy Attorney General or FBI Director, but no one thinks Congress can impeach DOJ trial attorneys or FBI field personnel. What is more, officers can be put by Congress in the line of succession to the presidency. *See* U.S. Const. art. II, § 1, cl. 6. But no one thinks DOJ trial attorneys can be put in that line of succession. That simply is not how Congress was using the term "officials" in Section 533.

The rest of the statutory context confirms that Section 533 does not include Special Counsels. It is part of Chapter 33 of Title 28,

16

encompassing Sections 531–540D, governing the "Federal Bureau of Investigation." Section 532 is entitled "Director of the Federal Bureau of Investigation," and specifies the Attorney General's authority over the FBI. Section 534 concerns preserving evidence in criminal cases. Section 533 thus clearly deals with *FBI* officials and agents, not Special Counsel-type prosecutors. The government long understood Section 533 this way—as simply the basis for the FBI's law enforcement authority.

Finally on this point—and tellingly—a cavalier reading of Section 533 to authorize hiring beyond its obvious scope obliterates the careful structure of Title 28. That Title is divided into chapters dealing with the Attorney General; FBI; U.S. Attorneys; U.S. Marshals Service; U.S. Trustees; Bureau of Alcohol, Tobacco, Firearms and Explosives; and the now-sunsetted independent counsel. Wide-ranging Special Counsels of Smith's sort are not part of these provisions outside of the now-defunct EGA sections.

At a more granular level, the result of loosely reading these statutes is even more absurd. Congress, as noted earlier, has explicitly provided for the appointment of all DOJ officers, from the Deputy Attorney General to U.S. Attorneys. Reading Section 533 to grant the Attorney

17

General sweeping inferior-officer appointment power wreaks havoc on this structure. It would empower the Attorney General to appoint an entire shadow DOJ to replace the functions of every statutorily specified officer. No wonder the Reno Regulations did not invoke it.

6. *Section 543.*

By contrast, Section 543 contains *explicit* authority for the Attorney General to appoint "special attorneys." Yet neither the Reno Regulations nor the Garland memo makes any mention of this provision, because Section 543 does not authorize the kind of Special Counsel contemplated by the Reno Regulations. Indeed, the government for decades has refused to rely on this provision for the obvious reason that it contains internal limitations that the government seeks to avoid. This is clear from the text of § 543(a), which provides:

> The Attorney General may appoint attorneys to *assist* United States attorneys when the public interest so requires, including the appointment of qualified tribal prosecutors and other qualified attorneys to assist in prosecuting Federal offenses committed in Indian country.

Far from authorizing the appointment of a Special Counsel as a kind of alternative U.S. Attorney, then, this provision obviously and explicitly

authorizes the appointment of attorneys who merely *assist* U.S. Attorneys.

There are many contexts in which appointing such persons makes sense. The government often encounters problems for which private lawyers have expertise, either gained from past government service or private experience. Those lawyers may not want a permanent government position but are willing to help the government on a limited basis, perhaps as part of a team dealing with specific complex litigation requiring expert knowledge. An appointment as "special assistant" or "special counsel," under the control and direction of a U.S. Attorney, is an obvious win-win in such instances.

The government's problem regarding the Reno Regulations and Smith appointment is that those actions do not contemplate "special counsels" who *assist* U.S. Attorneys. Instead, they contemplate Special Counsels who *replace* U.S. Attorneys. Smith was hired as a powerful standalone officer who replaces rather than assists the functions of U.S. Attorneys within the scope of his jurisdiction. This is precisely the role that the prior Ethics in Government Act authorized for Independent Counsels. But that statute no longer exists, and in the absence of that

19

statute or a similar one, there is simply no statutory Office of Special Counsel to which Smith could be appointed to function as a stand-in for a U.S. Attorney.

7. *Applicable Canons.*

Even if it were possible to read the relevant statutes as creating an Office of Special Counsel, common tools of statutory interpretation do not countenance such an interpretation.

For example, the canon of constitutional doubt requires Congress to clearly state when they are conferring on a government official enormous power raising constitutional questions, and the statutes listed above lack any such clear statement. Pursuant to that canon, this Court "avoid[s] statutory interpretations that raise constitutional problems." *Burban v. City of Neptune Beach*, 920 F.3d 1274, 1282 (11th Cir. 2019). And the Supreme Court has made clear that, "where an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress." *Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568, 575 (1988). Put succinctly, "when one

20

interpretation of the law raises serious constitutional problems, courts will construe the law to avoid those problems so long as the reading is not plainly contrary to legislative intent." *Pine v. City of W. Palm Beach, Inc.*, 762 F.3d 1262, 1270 (11th Cir. 2014).

As explained below, any interpretation of these statutes allowing the Attorney General to appoint a prosecutor with the kind of power exercised by Smith raises (at a minimum) serious questions under the Appointments Clause. Accordingly, this Court does not need to go beyond constitutional avoidance to affirm the district court's decision.[3]

In short, the position supposedly held by Smith was not "established by Law." The authority exercised by him as a so-called "Special Counsel" far exceeds the power exercisable by a mere employee. *See Lucia*, 585 U.S. at 245–47. He is acting as an officer, but aside from the specific offices listed in the statutes discussed above, there is no office

---

[3] Smith's appointment also fails under the clear-statement requirement of the major questions doctrine, as President Trump explained. Br. 11–12; *see also, e.g.*, *Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs.*, 594 U.S. 758, 764 (2021); *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 159–61 (2000). Conferring upon a prosecutor never confirmed by the Senate the power to (potentially) alter the Nation's political history is certainly a major political question.

for him to hold. That alone deprives him of authority to represent the United States in any capacity, including before this Court.

## II. EVEN IF HIS POSITION WERE AUTHORIZED BY STATUTE, SMITH WOULD BE A PRINCIPAL OFFICER REQUIRING PRESIDENTIAL NOMINATION AND SENATE CONFIRMATION.

Even if one somehow thinks that existing statutes authorize appointment of standalone Special Counsels with the full powers of a U.S. Attorney, Smith was not properly appointed to such an "office" in any event, because no appointment to an office with such vast powers could be valid under the Appointments Clause.

### A. The Appointments Clause's default is that officers require presidential nomination and Senate confirmation.

The Appointments Clause provides that the President:

> shall appoint Ambassadors, other public Ministers and Consuls, Judges of the supreme Court, and all other Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law: but the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments.

U.S. Const. art. II, § 2. This provision makes three things clear. First, the default mode of appointment for officers is presidential nomination and Senate confirmation. Second, for inferior officers, this default

22

presumption can *only* be overridden by statute. And third, even for inferior officers, Congress must speak in commonsense language to authorize an appointment process other than nomination and confirmation. *Cf. Biden v. Nebraska*, 600 U.S. 477, 507–15 (2023) (Barrett, J., concurring).

These commonsense notions are implicit in the Appointments Clause and constitutional structure. That Clause is both a separation-of-powers and federalism provision. It divides appointment power between the President and Senate—not the President and Congress as a whole—which lacks power to confirm appointees. *See Buckley v. Valeo,* 424 U.S. 1, 127 (1976) (per curiam). And the Senate is the body in which States receive equal representation, regardless of size—a mechanism that guards against large-state Presidents underrepresenting smaller States in the executive and judicial branches. As one Constitutional Convention participant put it, presidential appointment power without the check of the Senate would allow presidents "to gain over the larger States, by gratifying them with a preference of their Citizens." 2 *The Records of the Federal Convention of 1787*, at 43 (Max Farrand ed., 1911) (statement of Mr. Bedford reported by James Madison), https://tinyurl.com/4jpxdfun.

These structural concerns warrant an interpretative presumption in favor of a statement of congressional intent to authorize appointment of an inferior officer by any means other than nomination and confirmation.

But here, ordinary statutory interpretation demonstrates that Congress gave the Attorney General no power to appoint Special Counsels as *inferior officers*. Comparing the statues discussed in Part I.B with the organic statutes relating to other Heads of Departments shows as much. For example, the Agriculture Secretary "may appoint such officers and employees … as are necessary." 7 U.S.C. § 610(a). Similarly, the Education Secretary "is authorized to appoint ... such officers and employees as may be necessary." 20 U.S.C. § 3461. Likewise, the Secretary of Health and Human Services "is authorized to appoint … officers and employees" generally. 42 U.S.C. § 913. And the Transportation Secretary "may appoint … officers and employees." 49 U.S.C. § 323(a).

But the Attorney General enjoys no such general authority. Instead, the Attorney General's *only* officer-appointing power is for the Bureau of Prisons. *See* 18 U.S.C. § 4041.

24

And for that reason, the general presumption applies: Anyone whom the Attorney General wishes to establish as an officer wielding substantial power under the United States must be subject to Presidential appointment and Senate confirmation.

### B. Smith's vast, unaccountable authority requires presidential nomination and Senate confirmation.

This brings us to Smith and the authority he purports to wield. If he legitimately had the power to convene grand juries, issue subpoenas, direct and conduct prosecutions, and litigate in this Court, he would obviously be an "Officer of the United States" rather than a mere employee. *See Lucia*, 585 U.S. at 248; *Buckley*, 424 U.S. at 139–40; Calabresi & Lawson, *Mueller*, *supra*, at 128–34. More than that, he would be a *principal* officer. And by the plain terms of the Appointments Clause, principal officers *must* be appointed by the President with the Senate. But that is not how Smith was appointed, and thus he could not serve as Special Counsel even if Congress created such a position by statute.

1.  The only plausible argument to the contrary rests not on original meaning, but on a wild overreading of the Supreme Court's decisions in *Morrison v. Olson,* 487 U.S. 654 (1988), and *Edmond v. United States,* 520 U.S. 651 (1997). Those decisions, especially *Edmond,* contain

25

language that some lower courts have read to mean that anyone who had a superior on an agency organization chart must be an "inferior" officer. But if that were true, senior DOJ appointees—even the Deputy Attorney General—would be inferior officers, because they all answer at some level to the Attorney General. Could Congress therefore let the Attorney General unilaterally appoint the Deputy Attorney General? Of course not.

In fact, one can be a principal rather than inferior officer in two ways. One is to have no decisional superior other than the President. Some of Smith's court filings insist that he is independent from his nominal superior (the Attorney General), and even the President: He has assured courts that "coordination with the Biden Administration"— which includes President Biden and Attorney General Garland—is "non-existent." Gov't Mot. in Limine at 6, *United States v. Trump*, No. 1:23-cr-257-TSC (D.D.C. Dec. 27, 2023), ECF No. 191. By his own admission, then, Smith has no functional superior, necessarily rendering him a principal officer. And this lack of accountability only compounds the invalidity of his purported appointment. *See Seila Law*, 591 U.S. at 213–18.

The other way to be a principal officer is to have so much power and authority that one is superior in a substantive sense.[4] As Justice Souter perceptively wrote in his *Edmond* concurrence: "Because the term 'inferior officer' implies an official superior, one who has no superior is not an inferior officer…. It does not follow, however, that if one is subject to some supervision and control, one is an inferior officer. Having a superior officer is *necessary* for inferior officer status, but not sufficient to establish it." 520 U.S. at 667 (Souter, J., concurring in part and concurring in the judgment) (emphasis added). Deputy Secretaries, Assistant Secretaries, and U.S. Attorneys exercise so much power that they must be Senate-confirmed superior officers.

Either way, if he is an officer at all, Smith is a principal officer. By his own account he has no superior actively supervising or directing him as required by *Edmond* and *Free Enterprise Fund v. Public Company Accounting Oversight Board*, 561 U.S. 477 (2010). Attorney General Garland does not supervise or direct him, as he assured the Nation he

---

[4] This group of senior officers can be distinguished from agency heads, perhaps labeling them "superior officers" rather than "principal officers." But the Supreme Court has not yet had occasion to consider that particular distinction.

would not when he appointed Smith as Special Counsel. *See* Ryan J. Reilly, *Attorney General emphasizes special counsel's 'independence' in Trump probe*, NBC News (June 14, 2023), https://tinyurl.com/3r2ba5sa. And Smith is appearing in this Court on behalf of the United States. He is prosecuting a former President, the first time that has happened in our Nation's history. And, by the time this Court hears this case, that former President may be the President-Elect.

In short, Smith is purporting to exercise at least as much power as a U.S. Attorney, and arguably more since he has brought cases in both Florida and Washington, D.C. That is the hallmark of a principal officer, who must be appointed as such.

The absence of such an appointment means that Smith lacks authority to prosecute Trump—or anyone else—on behalf of the United States. And that is a powerful, sufficient reason to affirm the decision below.

2. This conclusion finds additional support in insights offered eighty years ago by Attorney General Robert Jackson, prior to serving as a Justice. Speaking to what are now called U.S. Attorneys—Justice Jackson reasoned:

> The prosecutor has more control over life, liberty, and reputation than any other person in America. His discretion is tremendous. He can have citizens investigated and, if he is that kind of person, he can have this done to the tune of public statements and veiled or unveiled intimations. Or the prosecutor may choose a more subtle course and simply have a citizen's friends interviewed.

Robert H. Jackson, U.S. Att'y Gen., Address at the Second Annual Conference of United States Attorneys: The Federal Prosecutor 1 (Apr. 1, 1940), https://tinyurl.com/2s4dmdsz. Outlining the various other powers of a United States Attorney, Justice Jackson added:

> The prosecutor can order arrests, present cases to the grand jury in secret session, and on the basis of his one-sided presentation of the facts, can cause the citizen to be indicted and held for trial. He may dismiss the case before trial, in which case the defense never has a chance to be heard. Or he may go on with a public trial.

*Id.* And a United States Attorney's powers don't end there: "If he obtains a conviction, the prosecutor can still make recommendations as to sentence, as to whether the prisoner should get probation or a suspended sentence, and after he is put away, as to whether he is a fit subject for parole." *Id.*

The Attorney General and future Justice concluded by explaining why anyone exercising such enormous federal power requires presidential appointment and Senate confirmation:

> Because of this immense power to strike at citizens, not with mere individual strength, but with all the force of government itself, the post of Federal District Attorney from the very beginning has been *safeguarded by presidential appointment, requiring confirmation of the Senate of the United States.* You are thus required to win an expression of confidence in your character by both the legislative and the executive branches of the government before assuming the responsibilities of a federal prosecutor.

*Id.* (emphasis added).

For all the reasons that Justice Jackson articulated with respect to U.S. Attorneys, Smith exercises the power of a principal officer, as they do, and as such requires both nomination by the President and support from a majority of the Senate. Smith has neither.

Indeed, as two of the present *amici* have observed, "[o]ne shudders to think what abuses might have been condoned in the McCarthy era if Attorneys General had unlimited and unchecked power to create inferior officer special counsels." Calabresi & Lawson, *Mueller, supra*, at 94.

30

### III.  THIS COURT IS NOT BOUND BY OBSERVATIONS IN *UNITED STATES V. NIXON*.

Contrary to Smith's opening brief, and for reasons explained both by President Trump (Br. 51–59) and in Calabresi & Lawson, *Mueller*, *supra*, the Supreme Court's decision in *United States v. Nixon* does not compel a contrary conclusion.

*First,* the cited passage did not even address the question at issue here, that is, whether the cited statutes actually *authorize* the Attorney General to create special prosecutors. *Nixon* merely recounted, in passing, that the Attorney General had *invoked* those statutes as authority to appoint. *See* 418 U.S. at 694. The Court did not opine on whether those statutes had been *validly* invoked—i.e., opining on the actual scope of the statutes. The issue was not even briefed or argued. Accordingly, *Nixon*'s comment doesn't even properly count as "dictum" on that question.

*Second,* even if the *Nixon* statement were taken as an opinion on the proper scope of those statutes, it is *at most* dictum. The case involved only the relationship between the President and DOJ as an institution; the same arguments would have been raised if the Attorney General personally, or any U.S. Attorney, rather than the special prosecutor, had

31

brought the suit. *See* Calabresi & Lawson, *Mueller*, *supra,* at 120–23. The proper scope of the cited statutes was not relevant to that question—and hence any discussion of those statutes, to the extent it went beyond providing background information, could only have been dictum.

And it is not entitled to any weight here. As one treatise has explained, "not all dicta are created equal." *Farah v. U.S. Att'y Gen.*, 12 F.4th 1312, 1323 (11th Cir. 2021) (Pryor, C.J.) (quoting Bryan A. Garner et al., *The Law of Judicial Precedent* § 4, at 69 (2016)) (alterations omitted). That treatise—which this Court authoritatively cites, *Laskar v. Hurd*, 972 F.3d 1278, 1291 (11th Cir. 2020)—explains that dictum should be accorded precedential value when:

> [t]he question had been briefed by the parties, so the statement was informed[;] that supply more extensive analysis and is not incompatible with any decision before or since… [and would not give] litigants an outcome other than the one the Supreme Court would be likely to reach were the case heard there.

Garner, *supra*, § 4 at 61 (quoting *United States v. Bloom*, 149 F.3d 649, 653 (7th Cir. 1998)) (Easterbrook, J.). Such dictum is distinguishable from obiter dictum, where a matter was not briefed or analyzed. *Id.* at 62. And "ill-considered dicta" do not carry much weight. *Kappos v. Hyatt*, 566 U.S. 431, 443 (2012).

Those authorities counsel against treating *Nixon*'s dictum—if it is even that—as controlling. Those statutes' proper interpretation was never briefed or considered, *Nixon* contained no relevant legal analysis, and it had nothing to do with the disposition of that case.

Accordingly, Smith's opening brief here "overreads *Nixon*'s dicta." *Darden v. United States*, 708 F.3d 1225, 1232 (11th Cir. 2013) (referring to *Florida v. Nixon*, 543 U.S. 175, 187 (2004)). And, "[w]ithout further direction from the Supreme Court," this Court should decline Smith's "invitation to expand what that Court intended to be a limited" decision on whether the Attorney General has authority to create and fill the office of Special Counsel, then have that office prosecute a former President. *Id. Nixon* cannot control here.

## CONCLUSION

Smith is among the most powerful officials in the Government. He cannot wield such power without Senate confirmation, or even holding any office created by Congress.

The Court should affirm the judgment below.

33

November 1, 2024                          Respectfully submitted,

                                          */s/ Gene C. Schaerr*
                                          GENE C. SCHAERR
                                              *Counsel of Record*
                                          KENNETH A. KLUKOWSKI
                                          JUSTIN A. MILLER
                                          SCHAERR | JAFFE LLP
                                          1717 K Street NW, Suite 900
                                          Washington, DC 20006
                                          Telephone: (202) 787-1060
                                          gschaerr@schaerr-jaffe.com

                                          MICHAEL BOOS
                                          DANIEL H. JORJANI
                                          CITIZENS UNITED
                                          CITIZENS UNITED FOUNDATION
                                          1006 Pennsylvania Avenue, S.E.
                                          Washington, DC 20003
                                          Telephone: (202) 547-5420

                                          *Counsel for Amici Curiae*

34

## CERTIFICATE OF COMPLIANCE

The foregoing Brief complies with the type-volume limit of Fed. R. App. P. 29(a)(5), because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 6,494 words.

This brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

*/s/ Gene C. Schaerr*
Gene C. Schaerr

Dated: November 1, 2024