# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

———————————

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

v.

WALTINE NAUTA and CARLOS DE OLIVEIRA,

Defendants-Appellees.

———————————

On Appeal from the United States District Court
for the Southern District of Florida

———————————

## OPPOSITION TO MOTION FOR INJUNCTION

———————————

BRIAN M. BOYNTON
  *Principal Deputy Assistant Attorney General*

MARKENZY LAPOINTE
  *United States Attorney*

MARK R. FREEMAN
  *Appellate Staff*
  *Civil Division, Room 7519*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-5714*

## AMENDED CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Eleventh Circuit Rule 26.1-1, counsel for Plaintiff-Appellant the United States of America certify that the following have an interest in the outcome of this appeal:

1.    Advance Publications, Inc.

2.    Alonso, Cristina

3.    America First Legal Foundation

4.    America First Policy Institute

5.    America's Future

6.    American Broadcasting Companies, Inc., d/b/a ABC News

7.    American Center for Law and Justice

8.    Ayer, Donald

9.    Bell, Daniel W.

10.   Berry, Michael

11.   Bird, Brenna

12.   Blackman, Joshua

13.   Blanche, Todd

14.   Bloomberg, L.P.

15.   Bondi, Pamela J.

\* Additions to previous certificate marked with an asterisk.

16.  Boos, Michael

17.  Bove, Emil

18.  Bowman, Chad

19.  Bratt, Jay

20.  Cable News Network, Inc.

21.  Calabresi, Steven

22.  Caldera, Louis

23.  Cannon, Hon. Aileen

24.  Cate, Matthew

25.  CBS Broadcasting, Inc. o/b/o CBS News

26.  Citizens for Responsibility and Ethics in Washington

27.  Citizens United

28.  Citizens United Foundation

29.  CMG Media Corporation

30.  Coleman, Russell

31.  Coleman, Tom

32.  Commonwealth of Kentucky

33.  Conservative Legal Defense and Education Fund

34.  Conway, George

35.  Cooney, J.P.

36.  Cox Enterprises, Inc. (COX) d/b/a The Atlanta Journal-Constitution

37.    Cynkar, Robert J.

38.    Dadan, Sasha

39.    De Oliveira, Carlos

40.    Dow Jones & Company, Inc., publisher of The Wall Street Journal

41.    Dreeben, Michael

42.    Drummond, Gentner

43.    Edelstein, Julie

44.    Ekonomou, Andrew J.

45.    Fields, Lazaro

46.    Fitzgerald, Patrick

47.    Forrester, Nathan A.

48.    Fort Myers Broadcasting Company

49.    *Freeman, Mark R.

50.    Fugate, Rachel

51.    *Garland, Merrick B.

52.    Gerson, Stuart

53.    Gertner, Nancy

54.    Gilbert, Karen E.

55.    Gillers, Stephen

56.    Goodman, Hon. Jonathan

57.    Gray Media Group, Inc. (GTN)

58.    Griffin, Tim

59.    Guardian News & Media Limited

60.    Gun Owners Foundation

61.    Gun Owners of America

62.    Gun Owners of California

63.    Harbach, David

64.    Heigis, Eric

65.    Henneke, Robert

66.    Hilgers, Michael T.

67.    Hirsch, Steven A.

68.    Hulser, Raymond

69.    Insider, Inc.

70.    Irving, John

71.    Jackley, Marty J.

72.    Jorjani, Daniel H.

73.    Kise, Christopher

74.    Klugh, Jr., Richard Carroll

75.    Klukowski, Kenneth A.

76.    Knudsen, Austin

77.    Kobach, Kris

78.   Kozinski, Alex

79.   Labrador, Raúl R.

80.   Lacovara, Philip Allen

81.   Landmark Legal Foundation

82.   *Lapointe, Markenzy

83.   Lawson, Gary

84.   Los Angeles Times Communications LLC, publisher of The Los Angeles Times

85.   Marshall, Steve

86.   Maynard, Hon. Shaniek Mills

87.   McElroy, Dana J.

88.   McKay, John

89.   McNamara, Anne

90.   McSweeney, Patrick M.

91.   Meese, Edwin

92.   Miller, Justin A.

93.   Miller, Matthew

94.   Mishkin, Maxwell

95.   Moelker, Nathan J.

96.   Monson, Darrick W.

97.   Moody, Ashley

98. Morgan, Jeremiah L.

99. Morrisey, Patrick

100. Mukasey, Hon. Michael B.

101. Murrell, Larry Donald

102. National Cable Satellite Corporation d/b/a C-SPAN

103. National Public Radio, Inc.

104. Nauta, Waltine

105. NBCUniversal Media, LLC d/b/a NBC News, a subsidiary of Comcast Corporation (CMCSA)

106. Nielson, Aaron L.

107. Olson, William J.

108. One Nation Under God Foundation

109. Orlando Sentinel Media Group, publisher of the Orlando Sentinel

110. Paxton, Ken

111. Pearce, James

112. Pellettieri, John

113. Pettit, Lanora C.

114. POLITICO LLC

115. Potter, Trevor

116. Public Advocate of the United States

117. Radio Television Digital News Association

118.  Raul, Alan Charles

119.  Ray, Robert W.

120.  Reinhart, Hon. Bruce E.

121.  Reuters News & Media, Inc.

122.  Reyes, Sean

123.  Rokita, Theodore E.

124.  Roth, Stuart J.

125.  Russell, Lauren

126.  Salario, Samuel

127.  Sample, James J.

128.  Sasso, Michael

129.  Schaerr, Gene

130.  Sekulow, Jay Alan

131.  Sekulow, Jordan

132.  Seligman, Matthew

133.  Sisney, Benjamin P.

134.  Skrmetti, Jonathan

135.  Smith, Abbe

136.  Smith, Fern

137.  Smith, Jack

138.  State Democracy Defenders Action

139.   State of Alabama

140.   State of Alaska

141.   State of Arkansas

142.   State of Florida

143.   State of Idaho

144.   State of Indiana

145.   State of Iowa

146.   State of Kansas

147.   State of Louisiana

148.   State of Mississippi

149.   State of Missouri

150.   State of Montana

151.   State of Nebraska

152.   State of Oklahoma

153.   State of South Carolina

154.   State of South Dakota

155.   State of Tennessee

156.   State of Texas

157.   State of Utah

158.   State of West Virginia

159.   Steinman, Jessica Hart

160. Sun-Sentinel Company, LLC, publisher of the South Florida Sun Sentinel

161. TEGNA, Inc. (TGNA)

162. Telemundo Network Group, LLC d/b/a Noticias Telemundo

163. Texas Public Policy Foundation

164. Thakur, Michael

165. The Associated Press

166. The E.W. Scripps Company (SSP)

167. The McClatchy Company, LLC (MNI) d/b/a the Miami Herald

168. The New York Times Company (NYT)

169. The Palm Beach Post and USA TODAY, publications operated by subsidiaries of Gannett Co., Inc. (GCI)

170. Thompson, Larry

171. Tillman, Seth Barrett

172. Tobin, Charles

173. Torres, Hon. Edwin

174. Treg, Taylor

175. Trent, Edward H.

176. Tribe, Laurence

177. Troye, Olivia

178. Trump, Donald J.

179. Trusty, James

180.   Twardy, Stanley

181.   United States of America

182.   Univision Networks & Studios, Inc.

183.   U.S. Constitutional Rights Legal Defense Fund

184.   VanDevender, Cecil

185.   Webster, Brent

186.   Weiss, Stephen

187.   Weld, William

188.   Weldon, Chance

189.   Wessan, Eric H.

190.   Wharton, Kendra

191.   Whitaker, Henry C.

192.   Whitaker, Matthew

193.   Whitman, Christine Todd

194.   Wilson, Alan

195.   Woodward, Stanley

196.   WP Company LLC d/b/a The Washington Post

197.   WPLG, Inc.

Respectfully submitted,


By:   /s/ Mark R. Freeman
        MARK R. FREEMAN

# TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................... 1

BACKGROUND ...................................................................................................... 4

ARGUMENT ........................................................................................................... 8

I.    An Injunction Is Unwarranted and Unnecessary to Protect Defendants'
Interests ................................................................................................................ 9

II.   Defendants' Remaining Arguments Are Without Merit ..................................... 12

III.  This Court Should Refuse Defendants' Invitation to Remand .......................... 17

CONCLUSION ..................................................................................................... 18

CERTIFICATE OF COMPLIANCE

## INTRODUCTION

The United States respectfully files this response in opposition to defendants'
emergency motion for an injunction. Defendants ask this Court (i) to enjoin Special
Counsel Jack Smith from transmitting his final report (Final Report) to the Attorney
General and (ii) to prohibit the Attorney General from making any portion of that
Final Report available to the public. Defendants' motion should be denied.

As explained in more detail below, there is neither any need nor legal basis for
an injunction. The Special Counsel has already transmitted his Final Report to the
Attorney General (as permitted by the district court's recent order). The Final Report
comprises two volumes. Volume One relates to the Special Counsel's investigation
and prosecution of President Donald Trump relating to the 2020 presidential election
(Election Case). Volume Two relates to the Special Counsel's investigation and
prosecution of defendants Waltine Nauta and Carlos De Oliveira, as well as President
Trump, relating to mishandling of classified documents (Classified Documents Case).
The Attorney General intends to release Volume One to Congress and the public
consistent with 28 C.F.R. § 600.9(c) and in furtherance of the public interest in
informing a co-equal branch and the public regarding this significant matter. But to
avoid any risk of prejudice to defendants Nauta and De Oliveira, the Attorney
General has determined, at the recommendation of the Special Counsel, that he will
not publicly release Volume Two so long as defendants' criminal proceedings remain
pending. For the time being, Volume Two will be made available for in camera

review only by the Chairmen and Ranking Members of the House and Senate Judiciary Committees upon their request and agreement not to release any information from Volume Two publicly. This limited disclosure will further the public interest in keeping congressional leadership apprised of a significant matter within the Department while safeguarding defendants' interests. The essential premise of defendants' emergency motion—that, absent this Court's intervention, "Attorney General Garland is certain to make [the Final Report] immediately public" and thereby cause irreparable prejudice to defendants' criminal proceedings (Mot. 1)—is thus mistaken.

Defendants' remaining arguments are without merit. Defendants appear to urge that the Attorney General should be enjoined from releasing any portion of the Final Report—including Volume One, which as noted, addresses the unrelated prosecution brought by the Special Counsel in Washington, D.C. Defendants Nauta and De Oliveira have no cognizable interest in that volume of the Final Report, however, nor any plausible theory of Article III standing that would justify their asking this Court to grant relief with respect to it. Nor would there be any legal basis for any other interested party to seek to block release of Volume One.

Defendants also reiterate their claim that the Special Counsel was unlawfully appointed. The United States has thoroughly rebutted that contention in its merits briefs in this appeal. But in any event, the argument is irrelevant to the only action here at issue—the handling of the Final Report by the Attorney General. The district

court, in dismissing the indictments against defendants, did not purport to enjoin the operations of the Special Counsel nationwide, nor could it have properly done so in this criminal case. Accordingly, as required by Department of Justice regulations, the Special Counsel duly prepared and transmitted his confidential Final Report to the Attorney General yesterday (as permitted by the district court's recent order). 28 C.F.R. § 600.8(c) ("Closing documentation."). What defendants now ask this Court to enjoin is not any action by the Special Counsel, but the Attorney General's authority to decide whether to make such a report public. *See id.* § 600.9(c); 28 U.S.C. § 509. As noted above and discussed in more detail below, the Attorney General determined that he will not make a public release of Volume Two while defendants' cases remain pending. That should be the end of the matter.

Defendants' motion should therefore be denied. To avoid the potential need for further emergency litigation in this Court, the United States respectfully requests that this Court make clear in denying the motion that its resolution of this question should be the last word (absent review by the en banc court or the Supreme Court). The district court specified that its temporary injunction barring release of any portion of the Final Report, including Volume One, "remains in effect until three days after resolution by the Eleventh Circuit of the Emergency Motion, unless the Eleventh Circuit orders otherwise," Dkt. 682 at 2 (emphasis omitted), and that defendants' parallel motion for emergency relief "remains pending before this Court subject to any directives from the Eleventh Circuit," *id.* at 3. The United States respectfully

requests that, if this Court agrees that no injunction against the Attorney General is warranted, the Court should say so in an order binding on the district court and vacate the district court's temporary injunction.

## BACKGROUND

1.  Department of Justice regulations authorize the Attorney General to appoint a Special Counsel to oversee a criminal investigation under certain prescribed circumstances.  *See* 28 C.F.R. § 600.1.  The Special Counsel regulations further provide that "[a]t the conclusion of the Special Counsel's work, he or she shall provide the Attorney General with a confidential report explaining the prosecution or declination decisions reached by the Special Counsel."  *Id.* § 600.8(c).  The Attorney General then has the discretion to determine whether "public release of these reports would be in the public interest, to the extent that release would comply with applicable legal restrictions."  *Id.* § 600.9(c).

2.  Special Counsel Smith was appointed by the Attorney General to investigate certain matters.  Office of the Attorney Gen., Order No. 5559-2022, *Appointment of John L. Smith as Special Counsel* ¶ (c) (Nov. 18, 2022).  Those investigations resulted in two separate prosecutions.  The indictment from which this litigation arises alleged that President-elect Trump willfully retained national defense information, and it charged Trump, Nauta, and De Oliveira with multiple counts, including obstructing and conspiring to obstruct an official proceeding and making false statements.  Dkt.

85. That indictment was dismissed by the district court as to all three defendants, and this appeal challenges that dismissal order.

The other proceeding, brought in the District of Columbia, concerned the Election Case. Neither Nauta or De Oliveira were defendants or otherwise implicated in the proceeding in the District of Columbia.

3. After President Trump's re-election, the Special Counsel dismissed the proceeding in the District of Columbia. The Special Counsel also withdrew the government's appeal of the dismissal of the indictment against Trump in this case but maintained the appeal as to the other two defendants. Responsibility for the case was then transferred to the U.S. Attorney for the Southern District of Florida.

4. The Special Counsel began preparing the Final Report for the Attorney General required by Department of Justice regulations. 28 C.F.R. § 600.8(c) ("Closing documentation"). The Final Report was structured with two separate volumes, the first devoted to the Election Case and the second devoted to the subject matter of this litigation, the Classified Documents Case.

Given the clarity of the Department's regulations requiring a final report, as well as the past practice of the Department with respect to other Special Counsels' final reports (including the Mueller Report and, recently, Special Counsel Hur's and Special Counsel Durham's final reports), it should have been no surprise that Special Counsel Smith planned to prepare the final report required by Department regulations. In all events, defendants' counsel became aware not later than the week

of December 9 that a final report was being prepared.  Mot. Ex. B, at 2.  Counsel for all three original defendants then requested the opportunity to review the draft report.  Although not required by the applicable regulations, the Special Counsel, consistent with an example set by Special Counsel Hur, allowed counsel for all three defendants to do so.  Counsel for President-elect Trump was provided an opportunity to review both volumes of the Final Report.  Counsel for Nauta and De Oliveira were allowed to review Volume Two (the only volume relevant to them).

5.  On January 6, with the Final Report nearing completion, defendants Nauta and De Oliveira filed an emergency motion in the district court seeking to enjoin the Special Counsel from transmitting the Final Report to the Attorney General and the Attorney General from releasing any portion of the Final Report.  Dkt. 679.  President-elect Trump filed a motion to intervene in the proceeding to support the remaining defendants' emergency motion.  Dkt. 681.  The morning of January 7, defendants filed the instant motion seeking emergency relief from this Court.

Shortly before noon on January 7, the district court issued an order stating that "[p]ending resolution of the Emergency Motion filed in the Eleventh Circuit and/or any further direction from the Eleventh Circuit" various government officials are temporarily enjoined from releasing or sharing the Final Report "outside the Department of Justice."  Dkt. 682 at 2.  The order specified that this prohibition would "remain[] in effect until three days after resolution by the Eleventh Circuit of the Emergency Motion, unless the Eleventh Circuit orders otherwise."  *Id.* (emphasis

omitted).  The order did not preclude the Special Counsel from transmitting the Final Report to the Attorney General.  The court further noted that its order "shall not be construed as a final ruling on the merits of the Emergency Motion, which remains pending before this Court subject to any directives from the Eleventh Circuit."  *Id.* at 3.  The order did not address Trump's motion for intervention, which remains pending.

6.  On the evening of January 7, both volumes of the report were transmitted by the Special Counsel to the Attorney General.  Consistent with Justice Department practice, the Attorney General did not review the report before its transmission. Because Volume Two discusses the roles of defendants Nauta and De Oliveira, and because those matters remain pending appeal before this Court, the Special Counsel explained in his cover letter to the Attorney General that, "consistent with Department policy, Volume Two should not be publicly released while their case remains pending."  The Special Counsel further explained that "[b]oth volumes minimize the identification of witnesses and co-conspirators, consistent with accepted Department practice, and we have provided a redacted version of Volume Two that identifies certain information that remains under seal or is restricted from public disclosure by Federal Rule of Criminal Procedure 6(e)."

Consistent with the Special Counsel's recommendation, and Southern District of Florida Local Rule 77.2, the Attorney General does not intend to make Volume Two of the Final Report public while the case against Nauta and De Oliveira remains

pending.  But in light of congressional interest in the work of Special Counsel Smith, a redacted version of Volume Two of the Final Report (redacting only grand-jury and sealed information that the Department is prohibited by law or court order from disseminating), together with the appendices for Volume Two, will be made available to the Chairmen and Ranking Members of the House and Senate Judiciary Committees for review in camera upon their request and agreement prohibiting any public release of the Final Report's contents.  *Cf.* 28 C.F.R. § 600.9(a).  The redacted version of Volume Two that will be provided for limited congressional review will redact all information that remains under seal or is restricted from public disclosure under Rule 6(e).

As noted above, the Attorney General intends to publicly release Volume One and to make it available to Congress.  Volume One does not contain any information restricted from public disclosure under Rule 6(e).

## ARGUMENT

Defendants' requests for emergency injunctive relief should be denied. Because the Special Counsel has now transmitted his Final Report to the Attorney General, defendants' novel request to enjoin that internal Departmental transmission is moot.  And because the Attorney General has determined not to release to the public Volume Two of the Final Report to the public while defendants' case remains pending—the volume that concerns the proceedings against defendants—an injunction is unnecessary to protect defendants' interests or the integrity of future

criminal proceedings against them. Defendants' remaining arguments are meritless, irrelevant, or both. There is no basis for defendants or anyone else to seek to bar the Attorney General from disclosing Volume One publicly (or to Congress) or from disclosing Volume Two to select members of Congress in the manner described above. The Court should deny the emergency motion, vacate the district court's temporary injunction, and make clear that there is no basis for further emergency litigation in the district court regarding the Attorney General's disposition of the Special Counsel's Final Report.

## I.     An Injunction Is Unwarranted and Unnecessary to Protect Defendants' Interests

Defendants fail to establish any entitlement to injunctive relief. As an initial matter, to the extent defendants seek to prevent the Special Counsel from transmitting his Final Report to the Attorney General, *see* Mot. 3, their request has been overtaken by events. Defendants asked the district court to enjoin that intra-Departmental transfer in addition to any public release of the Final Report. In response, the government advised the district court that the Special Counsel would transmit his Final Report to the Attorney General no earlier than 1:00 pm yesterday, January 7, 2025. Dkt. 680 at 1-2. Although the district court, acting before that deadline, entered a temporary injunction barring transmission of the Final Report "outside the Department of Justice," Dkt. 682 at 2, the district court did not purport to restrain the Special Counsel's intra-Departmental transmittal to the Attorney

General.  Accordingly, the Final Report was delivered to Attorney General Garland on the evening of January 7, 2025.  Any request to enjoin that transmission is now moot.

The heart of defendants' claim for emergency injunctive relief is their assertion that "Attorney General Garland is certain to make [the Final Report] immediately public" and thereby prejudice defendants in the event this Court reverses the dismissal of their indictments.  Mot. 1.  But that prediction is incorrect.  Attorney General Garland is committed to ensuring the integrity of the Department's criminal prosecutions.  Considering the risk of prejudice to defendants Nauta's and De Oliveira's criminal case, the Attorney General has agreed with the Special Counsel's recommendation that Volume Two of the Final Report should not be publicly released while those cases remain pending.  *See* 28 C.F.R. § 600.9(c).  There is therefore no risk of prejudice to defendants and no basis for an injunction against the Attorney General.

As discussed, the Final Report comprises two volumes.  Volume One, the Election Case, concerns an unrelated prosecution brought by the Special Counsel in Washington, D.C and, accordingly, Volume One does not refer to either Nauta or De Oliveira or describe the evidence or charges against them.  Volume Two concerns the criminal investigation, indictments, and proceedings in the Southern District of Florida against defendants Nauta and De Oliveira, as well as former defendant and now President-elect Trump.  The Attorney General's determination not to authorize

the public release of Volume Two fully addresses the harms that defendants seek to avoid in their emergency motion. As noted, consistent with 28 C.F.R. 600.9(a), the Attorney General intends to make Volume Two of the Final Report available for in camera review by the Chairmen and Ranking Members of the House and Senate Judiciary Committees, pursuant to restrictions to protect confidentiality. Even then, however, consistent with legal requirements, the Department will redact grand jury information protected by Rule 6(e) as well as information sealed by court order from the version made available in camera for congressional review. Defendants have no colorable claim to prejudice from these carefully circumscribed in camera disclosures.

There is also no valid basis for this Court to pretermit the Attorney General's discretion with respect to Volume One. That Volume does not concern defendants Nauta or De Oliveira or the district court proceedings in this case. Defendants identify no plausible theory of Article III standing that would justify this Court in enjoining, at defendants' behest, the Attorney General's disposition of a volume of the Final Report that does not implicate them. Under Article III, "a plaintiff's remedy must be limited to the inadequacy that produced his injury." *Gill v. Whitford*, 585 U.S. 48, 66 (2018) (alteration and quotation marks omitted). Defendants' injury here is limited to Volume Two. Indeed, with respect to Volume One of the Final Report, defendants are hardly differently situated than any other member of the public. Nor, for that matter, do defendants offer any merits theory that would justify this Court in enjoining the release of Volume One.

President-elect Trump has not made any request of this Court, but he too would have no basis to seek to block the public release of Volume One of the Final Report. In particular, none of the arguments raised by defendants Nauta and De Oliveira regarding prejudice to their potential defenses to prosecution in this matter would apply, since the President-elect is no longer a defendant in any Special Counsel matter.

## II. Defendants' Remaining Arguments Are Without Merit

Defendants advance a number of additional arguments to support their assertion that the Final Report cannot be lawfully released (Mot. 13-19). None withstands scrutiny.

1. Defendants argue at length that the Special Counsel is not, in fact, a valid Special Counsel, and therefore cannot prepare or transmit a valid Special Counsel report to the Attorney General. The United States has explained in its merits briefs in this appeal the multiple errors in defendants' appointments- and appropriations-related arguments. But in any event, those arguments are irrelevant at this stage in light of the Special Counsel's transmission yesterday of the Final Report to the Attorney General. All that is left is for the Attorney General to determine how to handle that report, and his authority in this respect is clear.

Although the district court in this case concluded that the Special Counsel was not properly appointed and ordered that the indictment be dismissed as a remedy, the district court did not purport to enjoin the ongoing operations of the Special

Counsel's Office nationwide. This is a criminal case, and the district court limited its remedy to dismissal of the indictment. *See* Dkt. 672 at 93. The court did not purport to issue—and it could not properly have issued—a nationwide injunction barring the Special Counsel from discharging the functions of his office in Washington, D.C. or elsewhere.

Indeed, while defendants argue that the order appointing the Special Counsel became "void" upon issuance of the district court's judgment in this case, Mot. 14, the district court was clear that its order was "confined to this proceeding," *see* Dkt. 672 at 93. —*i.e.*, to this criminal prosecution. The district court never barred the Special Counsel from performing other duties, including the preparation of the Final Report. Had it purported to do so, the district court would have had to grapple with the fact that the D.C. Circuit—whose law governs Department headquarters and the Special Counsel's offices where the Final Report was prepared—has rejected the same Appointments Clause theory that the district court accepted. *See, e.g.*, *In re Grand Jury Investigation*, 916 F.3d 1047, 1053 (D.C. Cir. 2019). The district court with responsibility for the Election Case did so as well.

Even if one accepted arguendo defendants' premise that the Special Counsel was invalidly appointed, moreover, it still would not follow that the Final Report was somehow improper. There can be no serious question that the Attorney General had, at a minimum, the statutory authority to hire Jack Smith and his staff as employees of the Department of Justice. *See* 5 U.S.C. § 3101. The Supreme Court has recognized

that investigative reports can be prepared by individuals who have not been appointed as officers of the United States. *See Buckley v. Valeo*, 424 U.S. 1, 137 (1976) (per curiam) (holding that non-officers can perform tasks of "an investigative and informative nature"). There is, therefore, no appointments-based reason to doubt Special Counsel Smith's authority to draft a report summarizing the activities of his office or to prevent the Attorney General from receiving or disposing of that report under Department regulations.

The Attorney General is the Senate-confirmed head of the Department of Justice and is vested with the authority to supervise all officers and employees of the Department. The Attorney General thus has authority to decide whether to release an investigative report prepared by his subordinates. That authority is inherent in the office of Attorney General, *cf.* 28 U.S.C. § 509; it does not depend on the lawfulness of the Special Counsel's appointment to take actions as an inferior officer of the United States or on the Department's specific regulations authorizing the Attorney General to approve the public release of Special Counsel reports, *see* 28 C.F.R. § 600.9(c). Indeed, the Attorney General would have the authority to decide whether to publicly release a report prepared and provided to the Department by wholly private citizens. Defendants' objections to the Special Counsel's appointment thus simply have no bearing on the Attorney General's authority here.

In any case, as we have explained, the Special Counsel was properly appointed. The district court's conclusion that the Attorney General lacks general statutory

authority to appoint inferior officers runs directly contrary to the Supreme Court's conclusion regarding Special Counsel Cox that the Attorney General has "the power to appoint subordinate officers to assist him in the discharge of his duties." *United States v. Nixon*, 418 U.S. 683, 694 (1974). As explained at greater length in our merits briefs, the district court erred in dismissing this directly applicable reasoning as mere dicta and in breaking sharply with long-established practice. And the district court's finding of an Appropriations Clause violation was derivative of its flawed Appointments Clause analysis. *See* Dkt. 672, at 86. Thus, even if it were necessary to consider the underlying merits of defendants' attack on the Special Counsel's authority, relief would not be warranted.

2. Defendants also briefly argue that the Attorney General's release of the Final Report would violate the Presidential Transition Act and the Special Counsel regulations. Mot. 17-19. These arguments likewise are without merit.

Defendants' invocation of the Presidential Transition Act is misplaced. First, it is doubtful that defendants have standing to raise any such claim. They are not personally affected by the Presidential Transition Act, and President-elect Trump is no longer a party in this Court or in the district court. The Act, moreover, contains no private right of action. Indeed, the portion defendants invoke does not even impose binding restrictions. Section 2 provides merely that "*it is the intent of the Congress* that" federal officers "promote orderly transitions in the office of President." 3 U.S.C. § 102 note (emphasis added) (Section 2 of the Presidential Transition Act).

In any event, the public release of the Special Counsel report—which, again, is consistent with uniform recent practice, including practice involving reports addressing the conduct of multiple sitting Presidents—is in no way inconsistent with an "orderly transition[]." *Id.* In addition, the Attorney General has decided against public release of Volume Two of the Final Report while defendants' case remains pending. To the extent defendants have standing and a merits theory under the Presidential Transition Act to object to the release of the only portion of the Final Report that affects their interests, the Attorney General's determination not to release Volume Two fully addresses any injury.

Nor would the Attorney General's release of the Final Report violate the Special Counsel regulations contemplating that the Special Counsel will provide the Attorney General with a report "[a]t the conclusion of" the Special Counsel's work. 28 C.F.R. § 600.8(c). That provision governs only the Special Counsel, not the Attorney General, and the Special Counsel has already transmitted his Final Report to the Attorney General. All that is left is for the Attorney General make the entire Final Report available to Members of Congress as described above, and to release Volume One publicly. The Attorney General's authority to do so is certainly not constrained by the provision defendants invoke, 28 C.F.R. § 600.8(c). It is a different provision of the regulations that governs reporting to Congress. *See id.* § 600.9. Moreover, the Attorney General's authority exists independent of those regulations. And, in any case, defendants' argument under 28 C.F.R. § 600.8(c) is meritless. The investigative

work of the Special Counsel concluded when he ceased to pursue the prosecutions that were the impetus for his appointment. Nothing in 28 C.F.R. § 600.8(c) precludes a Special Counsel from issuing a final report when his own investigative work is finished, even if prosecutions arising from his work continue to be handled by others with the Department of Justice. Special Counsel Mueller issued his final report under similar circumstances. Finally, the Special Counsel regulations provide no enforceable rights. *See id.* § 600.10.

## III. This Court Should Refuse Defendants' Invitation to Remand

Defendants characterized their motion as one for emergency relief and asked this Court to rule by January 10 (Mot. 3), yet they also suggest both in their initial filing and in a later supplemental filing that this Court might instead avoid the merits and remand to the district court. This Court should reject that invitation for several reasons.

First, a remand would entail further delay, which is inappropriate in light of the exigencies recognized in defendants' own request for emergency relief. Second, the motion presents a straightforward legal question this Court is well-suited to address in the first instance. Third, the district court itself has made clear that it is looking to "resolution of the Emergency Motion filed in the Eleventh Circuit and/or any further direction from the Eleventh Circuit." Dkt. 682, at 2. And fourth, remanding to the district court to resolve the motion in the first instance may well simply generate further emergency litigation in this Court.

17

The United States respectfully requests that the Court deny the motion on the merits and, for the benefit of the parties and the avoidance of unnecessary further litigation, make clear in doing so that its resolution of this question should be the last word on the subject, absent intervention by the en banc Court or the Supreme Court.

## CONCLUSION

We respectfully request that this Court deny the motion on the merits, set aside the district court's temporary injunction in full, and make clear that there is no impediment to the Attorney General allowing for limited congressional review of Volume Two as described above and the publicly release of Volume One.

Respectfully submitted,

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney General*

MARKENZY LAPOINTE
*United States Attorney*

 *s/ Mark R. Freeman*
MARK R. FREEMAN
*Director, Appellate Staff*
*Civil Division, Room 7519*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-5714*
*Mark.freeman2@usdoj.gov*

January 2025

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 4,382 words. This brief also complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E) and 32(a)(5)-(6) because it was prepared using Microsoft Word in Garamond 14-point font, a proportionally spaced typeface.

*s/ Mark R. Freeman*
MARK R. FREEMAN