No. 24-12311-J

In the United States Court of Appeals
for the Eleventh Circuit

UNITED STATES OF AMERICA,
Plaintiff-Appellant,

v.

WALTINE NAUTA and CARLOS DE OLIVEIRA
Defendants-Appellees.

On Appeal from the United States District Court for the
Southern District of Florida, No. 23 Cr. 80101 (Cannon, J.)

**BRIEF OF PRESIDENT DONALD J. TRUMP AS *AMICUS CURIAE***

Emil Bove
Todd Blanche
Kendra Wharton
Blanche Law PLLC
99 Wall Street, Suite 4460
New York, New York 10005

*Counsel for Amicus Curiae
President Donald J. Trump*

*United States v. Waltine Nauta, et ano*, No. 24-12311-J

**<u>Certificate of Interested Persons</u>**

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rules 26.1-1 and 26.1-2, undersigned counsel hereby certifies that the following is a list of persons and entities who have an interest in the outcome of this case not included in the brief filed by Appellant on November 26, 2024:

1. Freeman, Mark R.
2. Garland, Merrick B.
3. Lapointe, Markenzy

Dated: January 8, 2025    <u>/s/ Kendra L. Wharton</u>
Kendra L. Wharton

# Table of Contents

Certificate of Interested Persons ........................................................... C-1

Table of Contents ................................................................................... i

Interest of *Amicus Curiae* ..................................................................... 1

Argument ............................................................................................... 2

    I.   Garland cannot issue a report of an unconstitutionally appointed and funded Special Counsel. ............................................................... 2

    II.   Issuance of the Final Report violates the Presidential Transition Act and the Vesting Clause. ................................................................. 6

    III.   The Court should block release of the entire Final Report. .......... 9

Conclusion ............................................................................................ 11

Certificate of Compliance ................................................................... 12

Certificate of Service .......................................................................... 13

## Interest of *Amicus Curiae*

President Trump files this brief as *amicus curiae* in support of Nauta and De Oliveira ("Defendants").[1] Like them, President Trump is a subject of the Final Report. Indeed, he has been *the* target of Smith, who brought two prosecutions against him (the "Election Case" and this one), both of which were constitutionally suspect from the start. As the district court properly concluded here, Smith was unconstitutionally appointed and funded. Moreover, the Election Case unconstitutionally relied on immune Presidential acts. *See generally Trump v. United States*, 603 U.S. 593 (2024). Fortunately, the American people roundly rejected Smith's prosecution of President Trump. On November 5, 2024, they resoundingly elected President Trump to be the 47th President of the United States. As the President-Elect and soon-to-be 47th President, President Trump has an interest in a smooth transition and efficacious vesting of executive power.

There is thus more than a little irony in Smith's and Garland's attempt to release the Final Report. The report is nothing less than

---

[1] *Amicus* submits this brief pursuant to Federal Rule of Appellate Procedure 29(a)(2). No counsel for a party authored this brief in whole or in part, and no person other than the *amici curiae* or their counsel made a monetary contribution intended to fund the preparation or submission of this brief. *Amicus* has filed a motion for leave of the court to file the attached brief.

1

another attempted political hit job which sole purpose is to disrupt the Presidential transition and undermine President Trump's exercise of executive power. Attempting to publish the Final Report evidences complete disregard for the district court, which found that Smith is unconstitutionally appointed and funded. Instead of respecting that ruling, Garland seeks to defy the district court by publishing the Final Report in a manner inconsistent with the rule of law and the principles of constitutional governance. This Court should not countenance it.

## Argument

**I. Garland cannot issue a report of an unconstitutionally appointed and funded Special Counsel.**

Garland cannot issue the Final Report because Smith is invalidly appointed, and the regulations authorizing his appointment are unconstitutional and thus void. That the D.C. district court reached a contrary conclusion is of no moment. *See* Opp'n 13. The D.C. district court was bound by distinguishable D.C. Circuit precedent that applied *Nixon* in an unpersuasive fashion. *See* Defs' Br. at 58-59. The district court here was not bound by that holding, and it explained why the D.C. Circuit's precedent is wrong. *See* Dkt. 672 at 65-67.

Indeed, the district court's analysis vitiates the entire regulatory apparatus involving the Special Counsel (28 C.F.R. §§ 600.1-600.10, and promulgated at 64 Fed. Reg. 37,038 (1999)), which includes Garland's authority to appoint a special counsel, Smith's authority to compile and transmit the Final Report, and Garland's authority to release the Final Report to the public.

There is, therefore, no authority for Smith to do anything that he did. "The acts of all [the federal government's] officers must be justified by some law, and in case an official violates the law to the injury of an individual the courts generally have jurisdiction to grant relief." *Am. Sch. of Magnetic Healing v. McAnnulty*, 187 U.S. 94, 108 (1902); *see Free Enter. Fund v. PCAOB*, 561 U.S. 477, 491 n.2 (2010) (noting "as a general matter" "a right to relief" for claims where there have been a constitutional violation, including for separation-of-powers claims); *Chamber of Commerce of U.S. v. Reich*, 74 F.3d 1322, 1328 (D.C. Cir. 1996) ("'When an executive acts *ultra vires*, courts are normally available to reestablish the limits on his authority.'") (quoting *Dart v. United States*, 848 F.2d 217, 224 (D.C. Cir. 1988)). Indeed, Congress expressly approved such a remedy for final agency acts like the Appointment Order. *See* 5 U.S.C. § 706(2).

Defendants' requested relief is therefore not just part of this Court's general equitable authority, it is congressionally sanctioned. *See* 5 U.S.C. § 705.

Whether Garland could have hired Smith as an employee is irrelevant. *Contra* Opp'n 13-15. The fact is he did not, and the Government cannot attempt to justify Smith's appointment in this *post hoc* manner. *See, e.g.*, *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 20 (2020) ("[J]udicial review of agency action is limited to the grounds that the agency invoked when it took the action.") (cleaned up). The Government's analogy between Smith and a federal employee fails. This case is thus far afield from *Buckley v. Valeo*, 424 U.S. 1 (1976) (per curiam), which the Government cites. Opp'n 14. The Supreme Court has since limited *Buckley* to its facts and held that that the proper remedy for a successful Appointments Clause challenge is voiding the putative official's acts. *See Ryder v. United Sates*, 515 U.S. 177, 182-83 (1995).

The Government also claims an unbounded authority for Garland to publish material. Opp'n 14. But publication in this context is simply an extension of the unlawful acts of an unconstitutionally appointed and funded officer. The regulations authorizing the public release do not let Garland alter what Smith says; he only decides whether to publish the report publicly. *See* 28 C.F.R. § 600.9(c). Garland simply functions as a

4

mouthpiece for the unconstitutionally-appointed Smith. Furthermore, because the Special Counsel Regulations are void, and because that is the authority the Government says authorizes Garland to produce the Final Report, Opp'n 14, Garland cannot release the Final Report. In spirit, if not the letter, Garland's release of the report would be akin to avoiding a judicial "decree by carrying out prohibited acts through aiders and abettors." *Waffenschmidt v. MacKay*, 763 F.2d 711, 717 (5th Cir. 1985). At a minimum, respect for the conclusions of a federal judge, that the appointment and funding of Smith and his office are unlawful, should have made Garland pause before plowing ahead.

Furthermore, Garland cannot simply publish a report prepared by anyone. For one, he needs statutory authorization, *see FEC v. Cruz*, 596 U.S. 289, 301 (2022), and the Government's claim, Opp'n 14, that a generic authorization statute provides it is insufficient, *see Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412 (2024) (overruling *Chevron* deference). Moreover, there are statutes barring the release of information identifying individuals, *see* 5 U.S.C. § 552a(b), or grand jury material, *see* FED. R. CRIM. P. 6. Both are contained in the Final Report.

For much the same reasons, the Appropriations Clause requires relief. As the Government notes, Opp'n 15, the Appropriations Clause

5

violation follows from the Appointments Clause violation since both stem from the same lack of statutory authority.

## II. Issuance of the Final Report violates the Presidential Transition Act and the Vesting Clause.

Issuing the Final Report also violates the Executive Vesting Clause, U.S. CONST. art. II, § 1, cl. 1, and Congress's goal, embodied in the Presidential Transition Act (the "Act"), 3 U.S.C. § 102 note, of ensuring a smooth and orderly transition of power.

Congress intended the Act to facilitate "the orderly transfer of the executive power in connection with the expiration of the term of office of a President and the inauguration of a new President." 3 U.S.C. § 102 note (§ 2 of the Act). "Any disruption" of the transition "could produce results detrimental to the safety and well-being of the United States and its people." *Id.* And thus "all officers of the Government" are "to avoid or minimize disruptions that might be occasioned by the transfer of the executive power, and . . . otherwise to promote orderly transitions in the office of President." *Id.*

Congress was wise to do that. "The transition period insures that the candidate will be able to perform effectively the important functions of his or her new office as expeditiously as possible." Memorandum from

Randolph D. Moss, Assistant Attorney General, OLC, *Definition of "Candidate" Under 18 U.S.C. §207(j)*, 2000 WL 33716979, at *4 (Nov. 6, 2000). That is what the Final Report promises—and promises in a way similar to an indictment. An indictment threatens "public stigma and opprobrium" and so could "compromise the President's ability to fulfill his constitutionally contemplated leadership role with respect to foreign and domestic affairs." Memorandum from Randolph D. Moss, Assistant Attorney General, OLC, *A Sitting President's Amenability to Indictment and Criminal Prosecution*, 2000 WL 33711291, at *19 (Oct. 16, 2000). That is a burden on the President's constitutional responsibilities, and so why "a proper balancing of constitutional interests in the criminal context dictates a presidential immunity from . . . prosecution." *Id.* at *22; *see id.* (discussing why that is so).

The Final Report is constitutionally no different. Like an indictment, it alleges (wrongly) that President Trump and others committed crimes. Indeed, it is worse. The Final Report goes into *more* detail about the alleged crimes President Trump and others supposedly committed and involves evidence that was never released to the public—indeed, evidence that could *not* be released, such as those involving official acts. Moreover, the Final Report is one-sided, and it makes no effort to point out shortcomings in the

7

evidence or obvious defenses or explanations to the conduct they claim is "criminal." And significantly, unlike a court filing or traditional processes in a typical criminal prosecution, President Trump cannot respond to it except via his own statements in the press, and without the use of any evidence to support his responses because of a restrictive protective order.

In sum, public release of the Final Report threatens the same, if not more, stigma and opprobrium as an indictment and, thus, represents an equal, if not greater, infringement on the exercise of the executive power, and completely disregards Congress's intent in the Presidential Transition Act. Public release is thus contrary to the Constitution and to the applicable statutory law.

The Government's contention that release of the Final Report is consistent "with an orderly transition," Opp'n 16 (cleaned up), is unsupported *ipse dixit*. President Trump says otherwise. As the President-Elect overseeing the transition, his views on the subject are worth considerably more than the "convenient litigating positions" of the Government. *Regents*, 591 U.S. at 23 (cleaned up).

Thus, the Government tries to duck the issue, suggesting that Defendants lack standing to raise it. Opp'n 15. But Defendants would be injured by issuance of the Final Report. In separation-of-powers challenges

8

like this one, it is "sufficient that the challenger sustains injury from an executive act that allegedly exceeds the official's authority." *Seila Law LLC v. CFPB*, 591 U.S. 197, 211 (2020) (cleaned up). Furthermore, President Trump's participation as an *amicus* allays any prudential concerns. *See United States v. Windsor*, 570 U.S. 744, 761 (2013). Indeed, he has moved to intervene in the district court. *See* Dkt. 681.

**III. The Court should block release of the entire Final Report.**

Finally, the Court should enjoin the release of the Final Report *in toto*. As to Volume One, the Government's argument is that "Defendants' injury here is limited to Volume Two." Opp'n 11. But the Government ignores the fact the Volumes cross-reference each other; they are not siloed. Furthermore, the Government promises injury by distributing Volume Two to members of Congress. *See* Opp'n 1-2. There is no way to stop those members or their staff from leaking the complete report, especially to attack President Trump. *See* Victor Nava, *Mike Pompeo Accuses Adam Schiff of Leaking Classified Info During Time on House Intel Panel*, N.Y. POST (Jan. 25, 2023), https://nypost.com/2023/01/25/mike-pompeo-accuses-adam-schiff-of-leaking-classified-information/.

The premise that injury only arises out of Volume Two is also just plain wrong. Nauta and De Oliveira have been inextricably linked with the

9

President in the context of the Special Counsel's investigations, from being called "Co-Conspirators" in the superseding indictment, *see* Dkt. 85 at 4, to the references in the press.[2] The Government cannot undo statements from the last couple of years linking the three. A slanted report attacking President Trump will have thus have collateral effects on Defendants.

"As part of [its duty to do justice in criminal prosecutions], courts must prevent the prejudice to the trial process at its inception." *United States v. Trump*, 88 F.4th 990, 1004 (D.C. Cir. 2023) (cleaned up). Even if the Court decides some portion of the Final Report could—despite Smith's unconstitutional appointment and funding—be made public, it should maintain the district court's temporary restraining order and direct that court to review the Final Report and verify the Government's claims about the manner in which the Final Report was prepared and transmitted to the Attorney General. The district court could then fashion relief with the

---

[2] *See, e.g.*, *Carolos De Oliveira*, PBS NEWS (last visited Jan. 8, 2025), https://www.pbs.org/newshour/tag/carlos-de-oliveira (providing a compilation of news sources linking De Oliveira to President Trump); Robert Legare & Daniel Shepherd, *Trump Aide Walt Nauta Front and Center During Contentious Hearing in Classified Documents Case*, CBS NEWS (May 22, 2024), https://www.cbsnews.com/news/trump-aide-walt-nauta-classified-documents-case/; Evan Perez et al., *Trump Aide Walt Nauta Indicted in Classified Documents Case*, CNN (June 9, 2023), https://www.cnn.com/2023/06/09/politics/walt-nauta-trump-indicted/index.html.

benefit of having reviewed the Final Report and with briefing and argument from the parties.

## Conclusion

For those reasons, President Trump respectfully requests that the Court to grant Defendants' motion.

Dated: January 8, 2025

Respectfully submitted,

*/s/ Todd Blanche / Emil Bove*
Todd Blanche
toddblanche@blanchelaw.com
Emil Bove
emil.bove@blanchelaw.com
Kendra L. Wharton
Fla. Bar No. 1048540
k.wharton@whartonlawpllc.com
BLANCHE LAW PLLC
99 Wall Street, Suite 4460
New York, New York 10005
(212) 716-1250

*Counsel for Amicus Curiae
President Donald J. Trump*

## Certificate of Compliance

Counsel for President Donald J. Trump hereby certifies pursuant to Federal Rules of Appellate Procedure 29(a), 32(a), and 32(g) that this brief is proportionately spaced, has a typeface of 14 points, and contains 2,179 words, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f).

Dated: January 8, 2025  /s/ *Kendra L. Wharton*
Kendra L. Wharton

## Certificate of Service

Counsel for President Donald J. Trump hereby certifies that on January 8, 2025, the foregoing motion was filed with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit using the Court's electronic filing system. Counsel further certifies that all participants in the case are represented by counsel registered with the electronic filing system and that service will be accomplished by that system.

Dated: January 8, 2025
/s/ *Kendra L. Wharton*
Kendra L. Wharton