# In the United States Court of Appeals for the Eleventh Circuit

THE UNITED STATES OF AMERICA

*Plaintiff-Appellant,*

v.

WALTINE NAUTA AND CARLOS DE OLIVEIRA

*Defendant-Appellee*

On Appeal from the United States District Court
for the Southern District of Florida, Atlanta Division,
No. 23 Cr. 80101 (Cannon, J.)

## BRIEF OF *AMICUS CURIAE* JEFFREY B. CLARK

**CALDWELL, CARLSON, ELLIOTT & DELOACH, LLP**

HARRY W. MACDOUGALD
Georgia Bar No. 463076
6 Concourse Parkway
Suite 2400
Atlanta, Georgia 30328
404-843-1956
hmacdougald@ccedlaw.com

*Counsel for Amicus Curiae Jeffrey B. Clark*

## CERTIFICATE OF INTERESTED PARTIES AND CORPORATE DISCLOSURE STATEMENT

To the best of Appellant's knowledge, no associations of persons, partnerships, or corporations have an interest in the outcome of this case or appeal, including subsidiaries, conglomerates, affiliates, parent corporations, any publicly held corporation that owns 10% or more of the party's stock.

The following is a list, in alphabetical order, of all trial judges, attorneys, law firms, and persons with an interest in this appeal:

1.    Advance Publications, Inc.

2.    Alonso, Cristina

3.    America First Legal Foundation

4.    America First Policy Institute

5.    America's Future

6.    American Broadcasting Companies, Inc., d/b/a ABC News

7.    American Center for Law and Justice

8.    Anulewicz, Christopher Scott, attorney for Robert David Cheeley, Defendant in Georgia v. Trump

9.    Aul, Francis, attorney for Mark R. Meadows, Defendant in Georgia v. Trump

10.   Ayer, Donald

11.     Bailey, Andrew

12.     Barron, Lynsey M., attorney for Scott Graham Hall

13.     Beckermann, Wayne R., attorney for Robert David Cheeley, Defendant in Georgia v. Trump

14.     Bell, Daniel

15.     Bernard, Catherine S., attorney for Defendant Jeffrey B. Clark

16.     Berry, Michael

17.     Bever, Thomas Dean, attorney for Shawn Micah Tresher Still, Defendant in Georgia v. Trump

18.     Bird, Brenna

19.     Bittman, Robert, attorney for Mark R. Meadows, Defendant in Georgia v. Trump

20.     Blackman, Joshua

21.     Blanche, Todd

22.     Bloomberg, L.P.

23.     Bondi, Pamela J.

24.     Bondurant Mixson & Elmore LLP

25.     Boos, Michael

26.     Bove, Emil

27.     Bowman, Chad

28.     Bratt, Jay

29.     Cable News Network, Inc.

30.     Calabresi, Steven

31.     Caldera, Louis

32.     Cannon, Hon. Aileen

33.     Cate, Matthew

34.     CBS Broadcasting, Inc. o/b/o CBS News

35.     Cheeley, Robert David, Defendant in Georgia v. Trump

36.     Christenson, David Andrew, pro se, denied intervention below

37.     Citizens for Responsibility and Ethics in Washington

38.     Citizens United

39.     Citizens United Foundation

40.     Clark, Jeffrey Bossert, Defendant in Georgia v. Trump

41.     CMG Media Corporation

42.     Coleman, Russell

43.     Coleman, Tom

44.     Commonwealth of Kentucky

45.     Conservative Legal Defense and Education Fund

46.     Conway, George

47.     Cooney, J.P.

48.     Couzo, Amber Aurora

49.     Cox Enterprises, Inc. (COX) d/b/a The Atlanta Journal- Constitution

50.     Cromwell, William Grant, attorney for Cathleen Alston Latham, Defendant in Georgia v. Trump

51.     Cross Kincaid LLC

52.     Cross, Anna Green, Fulton County District Attorney's Office

53.     Cynkar, Robert J.

54.     Dadan, Sasha

55.     De Oliveira, Carlos

56.     Dow Jones & Company, Inc., publisher of The Wall Street Journal

57.     Dreeben, Michael

58.     Drummond, Gentner

59.     Durham, James D., attorney for Mark R. Meadows, Defendant in Georgia v. Trump

60.     Eastman, John Charles, Defendant in Georgia v. Trump

61.     Edelstein, Julie

62.     Ekonomou, Andrew J.

63.     Englert, Joseph Matthew, attorney for Mark R. Meadows, Defendant in Georgia v. Trump

64.     Fields, Lazaro

65. Fitch, Lynn

66. Fitzgerald, Patrick

67. Floyd, Harrison William Prescott, Defendant in Georgia v. Trump

68. Floyd, John Earl, Fulton County District Attorney's Office

69. Forrester, Nathan

70. Fort Myers Broadcasting Company

71. Francisco, Michael Lee, attorney for Mark R. Meadows, Defendant in Georgia v. Trump

72. Freeman, Mark R.

73. Freeman, Mark R.

74. Fugate, Rachel Elise

75. Fulton County District Attorney's Office

76. Garland, Merrick B.

77. Garland, Merrick B.

78. Gerson, Stuart

79. Gertner, Nancy

80. Gilbert, Karen E.

81. Gillen, Craig A., attorney for David James Shafer, Defendant in Georgia v. Trump

82. Gillers, Stephen

83.     Giuliani, Rudolph William Louis, Defendant in Georgia v. Trump

84.     Goodman, Hon. Jonathan

85.     Gray Media Group, Inc. (GTN)

86.     Griffin Durham Tanner & Clarkson LLC

87.     Griffin, Tim

88.     Guardian News & Media Limited

89.     Gun Owners Foundation

90.     Gun Owners of America

91.     Gun Owners of California

92.     Hampton, Misty (a/k/a Emily Misty Hayes), Defendant in Georgia v. Trump

93.     Harbach, David

94.     Harding, Todd A., attorney for Harrison William Prescott Floyd, Defendant in Georgia v. Trump

95.     Heigis, Eric

96.     Henneke, Robert

97.     Hilgers, Michael T.

98.     Hirsch, Steven A.

99.     Hulser, Raymond

100.    Insider, Inc.

101.     Irving, John

102.     Jackley, Marty J.

103.     Jorjani, Daniel H.

104.     Kelley, Emily E., attorney for Mark R. Meadows, Defendant in Georgia

         v. Trump

105.     Kise, Christopher

106.     Klugh, Richard C.

107.     Klukowski, Kenneth A.

108.     Knudsen, Austin

109.     Kobach, Kris

110.     Kozinski, Alex

111.     Kutti, Trevian C., Defendant in Georgia v. Trump

112.     Labrador, Raúl R.

113.     Lacovara, Philip Allen

114.     Lake, Anthony C., attorney for David James Shafer, Defendant in

         Georgia v. Trump

115.     Landmark Legal Foundation

116.     Lapointe, Markenzy

117.     Lapointe, Markenzy

118.     Latham, Cathleen Alston, Defendant in Georgia v. Trump

119.    Lawson, Gary

120.    Lee, Stephen Cliffgard, Defendant in Georgia v. Trump

121.    Li, XiXi

122.    Little, Jennifer L., attorney for Donald J. Trump, Defendant in Georgia

        v. Trump

123.    Los Angeles Times Communications LLC, publisher of The Los

        Angeles Times

124.    MacDougald, Harry W., attorney for Jeffrey B. Clark

125.    Marshall, Steve

126.    Maynard, Hon. Shaniek Mills

127.    McAfee, Scott, Fulton County Superior Court Judge

128.    McElroy, Dana Jane

129.    McGuireWoods, LLP

130.    McKay, John

131.    McNamara, Anne

132.    McSweeney, Patrick M.

133.    Meese, Edwin

134.    Miller, Justin A.

135.    Miller, Matthew

136.    Mishkin, Maxwell

137.     Moelker, Nathan J.

138.     Monson, Darrick

139.     Moody, Ashley

140.     Moran, John S., attorney for Mark R. Meadows, Defendant in Georgia v. Trump

141.     Morgan, Jeremiah L.

142.     Morris, Bruce H., attorney for Ray Stallings Smith, III, Defendant in Georgia v. Trump

143.     Morrisey, Patrick

144.     Mukasey, Hon. Michael B.

145.     Murrell, Larry Donald

146.     Murrill, Liz

147.     National Cable Satellite Corporation d/b/a C-SPAN

148.     National Public Radio, Inc.

149.     Nauta, Waltine

150.     NBCUniversal Media, LLC d/b/a NBC News, a subsidiary of Comcast Corporation (CMCSA)

151.     Ney, Adam, Fulton County District Attorney's Office

152.     Nielson, Aaron L.

153.    Novay, Kristen Wright, attorney for Ray Stallings Smith, III, Defendant in Georgia v. Trump

154.    Olson, William J.

155.    One Nation Under God Foundation

156.    Orlando Sentinel Media Group, publisher of the Orlando Sentinel

157.    Palmer, Amanda, attorney for Ray Stallings Smith, III, Defendant in Georgia v. Trump

158.    Parker, Wilmer, attorney for John Charles Eastman, Defendant in Georgia v. Trump

159.    Paxton, Ken

160.    Pearce, James

161.    Pellettieri, John

162.    Pettit, Lanora C.

163.    Pierson, Holly Anne, attorney for David James Shafer, Defendant in Georgia v. Trump

164.    POLITICO LLC

165.    Potter, Trevor

166.    Powell, Sidney

167.    Public Advocate of the United States

168.    Radio Television Digital News Association

169. Ragas, Arnold M., attorney for Harrison William Prescott Floyd, Defendant in Georgia v. Trump

170. Raskin, David

171. Raul, Alan Charles

172. Ray, Robert W.

173. Reeder, L. Martin Jr.

174. Reinhart, Hon. Bruce E.

175. Reuters News & Media, Inc.

176. Reyes, Sean

177. Reynolds, Brett

178. Rice, Richard A., Jr., attorney for Robert David Cheeley, Defendant in Georgia v. Trump

179. Rokita, Theodore E.

180. Roman, Michael A., Defendant in Georgia v. Trump

181. Rood, Grant H., Fulton County District Attorney's Office

182. Roth, Stuart J.

183. Russell, Lauren

184. Sadow, Steven H., attorney for Donald J. Trump, Defendant in Georgia v. Trump

185. Salario, Samuel

186.    Sample, James J.

187.    Samuel, Donald Franklin, attorney for Ray Stallings Smith, III, Defendant in Georgia v. Trump

188.    Sasso, Michael

189.    Schaerr, Gene C.

190.    Sekulow, Jay Alan

191.    Sekulow, Jordan

192.    Seligman, Matthew A.

193.    Shafer, David James, Defendant in Georgia v. Trump

194.    Sisney, Benjamin P.

195.    Skrmetti, Jonathan

196.    Smith, Abbe

197.    Smith, Fern

198.    Smith, Jack

199.    Smith, Ray Stallings, III, Defendant in Georgia v. Trump

200.    State Democracy Defenders Action

201.    State of Alabama

202.    State of Alaska

203.    State of Arkansas

204.    State of Florida

205.    State of Idaho

206.    State of Indiana

207.    State of Iowa

208.    State of Kansas

209.    State of Louisiana

210.    State of Mississippi

211.    State of Missouri

212.    State of Montana

213.    State of Nebraska

214.    State of Oklahoma

215.    State of South Carolina

216.    State of South Dakota

217.    State of Tennessee

218.    State of Texas

219.    State of Utah

220.    State of West Virginia

221.    Steinmann, Jessica Hart

222.    Still, Shawn Micah Tresher, Defendant in Georgia v. Trump

223.    Sun-Sentinel Company, LLC, publisher of the South Florida Sun Sentinel

224. Taylor, Treg

225. TEGNA, Inc. (TGNA)

226. Telemundo Network Group, LLC d/b/a Noticias Telemundo

227. Terwilliger, George J., III, attorney for Mark R. Meadows

228. Texas Public Policy Foundation

229. Thakur, Michael

230. The Associated Press

231. The E.W. Scripps Company (SSP)

232. The McClatchy Company, LLC (MNI) d/b/a the Miami Herald

233. The New York Times Company (NYT)

234. The Palm Beach Post and USA TODAY, publications operated by subsidiaries of Gannett Co., Inc. (GCI)

235. Thompson, Larry

236. Tillman, Seth Barrett

237. Tobin, Charles

238. Torres, Hon. Edwin

239. Trent, Edward H.

240. Tribe, Laurence

241. Troye, Olivia

242. Trump, Donald J., Defendant in Georgia v. Trump

243.     Trump, President Donald J.

244.     Trusty, James

245.     Twardy, Stanley

246.     U.S. Constitutional Rights Legal Defense Fund

247.     United States of America

248.     Univision Networks & Studios, Inc.

249.     VanDevender, Cecil

250.     Wade & Campbell Firm

251.     Wakeford, Francis McDonald IV, Fulton County District Attorney's Office

252.     Waxman, Seth P., attorney for amici below

253.     Webster, Brent

254.     Weiss, Stephen

255.     Weld, William

256.     Weldon, Chance

257.     Wertheimer, Fred, attorney for amici below

258.     Wessan, Eric H.

259.     Wharton, Kendra

260.     Whitaker, Henry C.

261.     Whitaker, Matthew

262.     Whitman, Christine Todd

263.     Willis, Fani T., Fulton County District Attorney's Office

264.     Wilmer Cutler Pickering Hale and Dorr LLP

265.     Wilson, Alan

266.     Woodward, Stanley

267.     Wooten, John William, Fulton County District Attorney's Office

268.     WP Company LLC d/b/a The Washington Post

269.     WPLG, Inc.

270.     Young, Daysha D'Anya, Fulton County District Attorney's Office

# TABLE OF AUTHORITIES

## Cases

*Loper Bright Enters. v. Raimondo*,
   603 U.S. 369 (2024)..................................................................... 8, 11, 13

*Trump v. United States*,
   603 U.S. 593 (2024)........................................................................ passim

*United States v. Derr*,
   726 F.2d 617 (10th Cir. 1984) ...............................................................10

*United States v. Strayer*,
   846 F.2d 1262 (10th Cir. 1988) .............................................................10

*United States v. Vavlitis*,
   9 F.3d 206 (1st Cir. 1993)......................................................................10

*United States v. Welborn*,
   849 F.2d 980 (5th Cir. 1988) .................................................................10

*Wendt v. Fischer*,
   243 N.Y. 439 (1926) ................................................................................5

## Rules

D.C. Bar Rule of Professional Conduct 3.8(f)........................................14

D.C. Bar Rule of Professional Conduct 5.1 .................................... 14, 15

Federal Rule of Criminal Procedure 6(e).................................................8

New York Rule of Professional Conduct 3.6 .........................................15

## Regulations

28 C.F.R. § 600.8 ............................................................................ 12, 13

28 C.F.R. § 600.9 ...................................................................... 11, 12, 13

# TABLE OF CONTENTS

Certificate of Interested Parties and Corporate Disclosure Statement ...................... i

Table of Authorities ............................................................................ xvii

Table of Contents ............................................................................. xviii

Interest of *Amicus Curiae* ......................................................................1

Argument.......................................................................................5

    I.    Publication of the Report would Be Unlawful and Would Cause Undue Prejudice to Mr. Clark and Others. ...................................5

        **A.**  The *Per Se* Evidence Bar Prohibits Any Reporting on Conduct Within the Exclusive and Preclusive Zone of Presidential Authority. ...................................................5

        **B.**  Publication Would Cause Undue Prejudice to Mr. Clark and Others in Related Proceedings. .............................................7

    II.  Publication of the Report Would Violate the Special Counsel Regulations.......................................................................9

    III. Publication of the Report Would Violate the Rules of Professional Responsibility.......................................................14

Conclusion ...................................................................................16

Certificate of Service .........................................................................18

Certificate of Compliance .....................................................................19

# INTEREST OF *AMICUS CURIAE*

Jeffrey B. Clark has a compelling interest in whether the report of former Special Counsel Jack Smith's investigation is publicly released. This interest arises because of the distinct possibility, if not likelihood that the first volume of former Special Counsel's report of the investigation for the criminal case filed against the forty-fifth President in the District of Columbia, *United States v. Trump*, No. 1:23-cr-00257-TSC (the "Election Case"), will include discussions of Mr. Clark, who was alleged unindicted co-conspirator no. 4 in the original indictment in that case (until he was removed by Jack Smith in the wake of the Supreme Court's immunity decision *Trump v. United States*, 603 U.S. 593 (2024)). *See* Election Case Indictment, ECF Doc. #1 at ¶8(d).[1]

---

[1] To be clear, we do not know for a fact whether Mr. Clark is mentioned in this report. Neither the former Special Counsel nor the Department of Justice have notified us that Mr. Clark is mentioned, nor have they provided us with a copy of the report for review. All efforts by us to contact lawyers at the Justice Department either reporting directly to Jack Smith or who are not affiliated with the Special Counsel's Office have not proven successful in determining whether Mr. Clark will be mentioned in the report or not. It was only upon inquiring if the Government would consent to our filing this brief that any one at the Justice Department responded to our calls, letter, or emails. We have is an email from J.P. Cooney at the Office of Justice Programs indicating that a letter we sent on December 13, 2024 making points similar to those of this brief is "being given due consideration," whatever that means, and referral to and response from the head of the Civil Division, Brian Boynton, that DOJ takes no position on the filing of the brief. *See* Exhibit 1 (email chain).

Publication of a report of that investigation, if it mentions Mr. Clark, would **severely prejudice** Mr. Clark's due process rights in two separate pending and directly related proceedings: first, the pending criminal prosecution against him in Fulton County, Georgia Superior Court, Case No. 23SC188947*, State v. Jeffrey B. Clark, et al*., in which President Trump is a co-defendant; and second, pending bar disciplinary proceedings before the D.C. Bar's Board of Professional Responsibility, *see In re Jeffrey B. Clark*, Disciplinary Docket No. 2021-D193.

Both of these related proceedings arise—improperly and unconstitutionally—from precisely the same conduct falsely described in the original federal indictment in the Election Case and falsely described in both the Fulton County state court indictment and the D.C. Bar disciplinary proceedings as well. Even granting the credulous and unfounded assumption that the former Special Counsel and the Attorney General are not improperly waging politically motivated lawfare and are instead acting with motives as pure as the driven snow, it is undeniable that a public report of an improperly appointed federal special counsel's grand jury investigation, bearing a prosecutor's advocacy-driven characterization of Mr. Clark's conduct,

---

All of this gives us very little confidence that Mr. Clark is not mentioned in the report, given the appalling record of prosecutorial abuse racked up by the former Special Counsel and his office. After all, if Mr. Clark were not mentioned, the Government could moot this brief by simply saying so, but instead we are first cryptically told that our letter is being given "due consideration," while Mr. Boynton for DOJ adopted a pose of ostensible Olympian detachment on the filing of this brief.

which under *Trump v. United States* falls within the "exclusive and preclusive" zone of absolute presidential immunity, would poison jury pools and other adjudicators against Mr. Clark (the D.C. Bar's Board of Professional Responsibility includes two layperson members who are not cordoned off from media access). This is especially true because Mr. Clark will not have any right of reply to Jack Smith's report or recourse to an impartial judge or jury, all while he is the subject of simultaneous related criminal and bar disciplinary proceedings arising from the same transactions and occurrences. There is no basis for distinguishing harm in ongoing state and federal matters against Mr. Clark as it relates to volume 1 of Jack Smith's report from volume 2 of that report concerning the "Mar-a-Lago documents case." For this reason, one cannot credit the Justice Department's ploy to obviate Judge Cannon's order by voluntarily holding publication of volume 2 (while sharing it with Congress, from whence it will certainly leak), while pressing ahead with general public disclosure of volume 1. The D.C. Bar proceedings against Mr. Clark are federal in nature because they are occurring under the auspices of a federal government Article I Court—the D.C. Court of Appeals. And the Fulton County proceedings are occurring in state court. The fact that a bar proceeding is involved, on the one hand, and a state proceeding is involved, on the other, is immaterial to the prejudice in question, they are simply the vessels in which the prejudice is suffered. Mr. Clark possesses due process rights not just against federal prosecution

but equally against federal disciplinary actions and against state prosecution. Release of volume 1 of the report, if it mentions Mr. Clark, would disregard Mr. Clark's constitutional rights as well as violate the Special Counsel regulations and the D.C. Rules of Professional Responsibility (or their analogues in the States as applied to members of Jack Smith's or other Department of Justice lawyers working on this matter).

But Mr. Clark is not the only one who might suffer this concatenation of prejudices. Multiple individuals described in either the original or superseding indictments in the Election case are also facing related criminal prosecution in one or more States, and/or related bar disciplinary proceedings, to include attorneys John Eastman, Rudy Giuliani, Ken Chesebro, and Sidney Powell, but also non-attorneys former White House Chief of Staff Mark Meadows, Michael Roman, and possibly others. Their rights to due process would also be violated by the publication of any report describing their conduct, and this violation would be accompanied by the same panoply of violations of the Special Counsel regulations and rules of professional responsibility.

To our admittedly imperfect knowledge, no other party has alerted the Court to the extreme and unlawful prejudice to Mr. Clark or these other individuals that would ensue from publication of the former Special Counsel's report. Therefore, we trust that this brief will be helpful to the Court's resolution of this case.

# ARGUMENT

## I. PUBLICATION OF THE REPORT WOULD BE UNLAWFUL AND WOULD CAUSE UNDUE PREJUDICE TO MR. CLARK AND OTHERS.

### A. The *Per Se* Evidence Bar Prohibits Any Reporting on Conduct Within the Exclusive and Preclusive Zone of Presidential Authority.

In *Trump v. United States*, 603 U.S. 593, the Supreme Court held the entirety of the allegations relating to Mr. Clark were squarely within the zone of the President's "exclusive and preclusive" authority for which the President enjoyed absolute immunity. The Court further imposed an absolute *per se* bar on the use of any evidence from the "exclusive and preclusive" zone to prove any charges against the President for conduct in the presumptively immune or non-immune zones delineated in the opinion. Thereafter, the former Special Counsel filed a superseding indictment from which he removed any reference to any conduct or evidence falling into this "exclusive and preclusive" zone. This necessarily entailed stripping out any direct or indirect reference to Mr. Clark or any of his conduct.

The *per se* bar on any evidence from the zone of absolute immunity was to protect the immunity from "disintegrating erosion" by an accretion of exceptions. *Cf. Wendt v. Fischer*, 243 N.Y. 439, 443-44 (1926) (Cardozo, J.) ("Only by this uncompromising rigidity has the rule of undivided loyalty been maintained against disintegrating erosion.")

The Supreme Court was explicit that, on vital separation of powers grounds, the President's conduct within the exclusive and preclusive zone is unreviewable in Congress or any court.

If in drafting their report on the Election Case the former Special Counsel and the Attorney General were to heed the emphatic and pellucid rebuke administered by the Supreme Court in *Trump v. United States*, they would make no mention whatsoever of any evidence or conduct occurring within the absolutely immune exclusive and preclusive zone. That is their obligation under the Constitution as applied by the Supreme Court. We wrote to the former Special Counsel and the Attorney General demanding that they comply in this fashion with the Supreme Court's decision, but by email dated today, January 9, 2025 and sent at 1:34 pm, we are told only that our letter is "being given due consideration," a content-free brush-off that gives us no assurances the Constitution's limits will be obeyed. Exhibit 1 in fact portends the exact opposite when viewed through the lens of the undersigned's 39.5 years of litigation experience.

It is clear, therefore, that publication of the report on the Election Case investigation that described any evidence from within the exclusive and preclusive zone would be a clear-cut and unconstitutional violation of *Trump v. United States* and should therefore be permanently enjoined.

**B.    Publication Would Cause Undue Prejudice to Mr. Clark and Others in Related Proceedings.**

As noted above, Mr. Clark is a criminal defendant in a Fulton County, Georgia indictment arising from the same transactions and occurrences at issue in the original indictment in the Election Case in which he was initially named as an unindicted co-conspirator (but later removed in a superseding Election Case subsequent indictment). The Fulton County indictment criminally charges both President Trump and five others who were named as unindicted co-conspirators in the former Special Counsel's original indictment in the Election Case: Rudy Giuliani, John Eastman, Sidney Powell, Jeffrey Clark, and Kenneth Chesebro. Ms. Powell and Mr. Chesebro entered misdemeanor guilty pleas in the Georgia prosecution, but both face pending bar disciplinary proceedings arising from the same conduct, and Mr. Chesebro faces further criminal prosecution in Wisconsin. Mr. Eastman, for his part, faces further criminal prosecution in Arizona, and his bar disciplinary proceedings in California are ongoing.

The former Special Counsel's original indictment in the Election Case contained an extensive set of allegations regarding President Trump's interactions with Mr. Clark and these other co-defendants in the Georgia criminal case.

The D.C. Bar case against Mr. Clark overlaps entirely with the original allegations regarding Mr. Clark in the original indictment in the Election Case and

substantially with the allegations against Mr. Clark in the Fulton County prosecution.

The former Special Counsel's report of his investigation of the Elections Case necessarily draws on grand jury material, normally kept secret under Federal Rule of Criminal Procedure 6(e) for unassailable constitutional and policy reasons. No one mentioned in a Special Counsel report has any recourse to a neutral jury or judge to adjudicate the truth or falsity of whatever prosecutorial excesses might be splayed across the pages of such a report.

But in this case, publication of a report that tries to cast aspersions on Mr. Clark's conduct, or that of others within its compass who are currently facing criminal prosecution and bar disciplinary cases elsewhere, would result in a firestorm of intense publicity that would prejudicially influence jury pools and decisionmakers in both environments, and thus violate the due process rights of any one so mentioned.

Prosecutors are obliged to refrain from such conduct and do not get a free pass because of a regulation adopted by the Department of Justice, especially after the repeal of *Chevron* deference by *Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024). Upon what clear statement of statutory authority could such a report be released? We know of none, because prosecutors are bound by grand jury secrecy and do not release reports of grand jury investigations of one who is not indicted,

and especially not after the prosecutors file a superseding indictment that deletes any reference to such a person under the direct constitutional compulsion of a Supreme Court decision. Nor can it be justified by a gussied-up version of anti-Trump political bias. The Court should accordingly protect the due process rights of those still facing criminal prosecution or bar discipline, including Mr. Clark. And especially Mr. Clark since the entirety of the cases against him emanates from the exclusive and preclusive zone of presidential authority as well as from intrusions into executive privilege, law enforcement privilege, attorney-client privilege (Mr. Clark represented President Trump in his official capacity as head of the Executive Branch), and deliberative process privilege.

## II. PUBLICATION OF THE REPORT WOULD VIOLATE THE SPECIAL COUNSEL REGULATIONS.

The case against President Trump in the District of Columbia was dismissed "without prejudice" to a future prosecution of President Trump and his alleged co-conspirators. *Id.*, *United States v. Trump*, ECF Doc. # 281 (Government's Motion to Dismiss Superseding Indictment); Doc. ## 282 & 283 (Opinion and Order dismissing superseding indictment without prejudice); Doc. # 284 (Government's Motion to Dismiss the Original Indictment); Doc # 285 (Order dismissing the original indictment without prejudice).

The reason given for the dismissal was that Donald J. Trump is the President-elect and the Office of Legal Counsel's "prior opinions concerning the

Constitution's prohibition on federal indictment and prosecution of a sitting President apply to this situation and that as a result this prosecution must be dismissed before the defendant is inaugurated." Doc. # 281 at 1; Doc. # 284 (noting that "certain out-of-Circuit caselaw indicates that a superseding indictment does not void the original indictment, *see, e.g.*, *United States v. Vavlitis*, 9 F.3d 206, 209 (1st Cir. 1993)."

The Department took the position in the D.C. case that D.C. Circuit precedent required that President Trump's motion to dismiss on structural constitutional grounds be rejected. *See United States v. Trump*, No. 1:23-cr-00257-TSC, ECF Doc. #277 (Opposition to Defendant's Proposed Motion to Dismiss and for Injunctive Relief Based on the Appointment and Appropriations Clauses).

Because the Government takes the position that it can, in the future, re-indict for the same alleged crimes, President Trump, and ***all*** individuals alleged to have been part of the purported "conspiracy to overturn the 2020 election" remain under "investigation" either on an *ultra vires* basis by the former Special Counsel or ***by line Justice Department attorneys*** unless and until the cases are dropped ***with prejudice***. *See United States v. Welborn*, 849 F.2d 980 (5th Cir. 1988); *United States v. Strayer*, 846 F.2d 1262 (10th Cir. 1988); *United States v. Derr*, 726 F.2d 617 (10th Cir. 1984). Note as well that while Mr. Clark was dropped from the superseding indictment that gives Mr. Clark no protections of double jeopardy or preclusion law.

If the case against Trump is reactivated in 2029 or beyond, Mr. Clark remains at risk of a future Department of Justice or Special Counsel changing their minds and issuing a further superseding indictment unlawfully and unfairly (but still at great expense and reputational damage) putting Mr. Clark back under jeopardy of federal prosecution.

Even if the appointment of the former Special Counsel were constitutional (and we submit that it was not for the reasons given by Judge Cannon of the Southern District of Florida in the Mar-a-Lago documents case and by Justice Thomas in his *Trump v. United States* concurrence), and even if the Special Counsel regulations hastily adopted to replace the expired and unlamented Independent Counsel statute can be given any deference or validity after *Loper Bright* (and we submit such deference is impossible and thus the regulations cannot be interpreted to have the force of law), the release is not authorized even under the terms of those regulations because the "investigation" conducted by the former Special Counsel and the Department of Justice is not "concluded," as that term is used in 28 C.F.R. § 600.9(a)(3), until the cases filed by the former Special Counsel are resolved by final judgment of conviction, acquittal, or dismissal with prejudice. Former Special Counsel Smith or his successors cannot have their cake and eat it too: They may not try to issue a report premised on the notion that the investigation and litigation against President Trump and his allies is over while simultaneously purporting to

and successfully securing a dismissal *without prejudice* that would let them (or other federal prosecutors) pick up their cudgels on the other side of President Trump's second term.

In sum, neither the former Special Counsel nor any lawyer in the Department of Justice has authority to prepare such a report under 28 C.F.R. § 600.8 because the Department's own filings in the Election Case concede that the putative Special Counsel investigation is *not complete*. 28 C.F.R. § 600.9(a)(3) authorizes only the release of a report "[u]pon the *conclusion* of the Special Counsels [*sic*] investigation" if, and only if, "that public release of these reports would be in the public interest, to the extent that release would comply with applicable legal restrictions." 28 C.F.R. § 600.9(c) (emphasis added).

Here, the only conceivable intended purpose of such a report would be to make an "*extrajudicial statement*" concerning the work done by the former Special Counsel, which a significant percentage of the American people perceive to just be in service of the Democratic Party's and liberal media's narratives and political strategies — a perception that would be vindicated by the release or publication of any report.

Moreover, the Attorney General's decision on whether to release a report under 28 C.F.R. § 600.9 is permitted only "to the extent that release would comply with *applicable legal restrictions*." Any such report "shall be governed by the

generally applicable Departmental guidelines concerning public comment with respect to any criminal investigation, ***and relevant law***." *Id.* (emphasis added).

The "applicable legal restrictions" and "relevant law," as noted above, are set forth in the Constitution's Due Process Clause in the Fifth Amendment, the Constitution's separation of powers as explicated in *Trump v. United States*, 28 C.F.R. §§ 600.8 & 600.9, and the post-*Loper Bright* legal landscape bereft of any *Chevron* deference to the Special Counsel regulations under which the Government is proceeding in the first place. "Relevant law" does not permit any reporting on topics within the President's exclusive and preclusive authority or regarding investigations that the Government has represented to the courts are not yet complete. As a result, the former Special Counsel and the Attorney General are not permitted to report on any of the President's dealings with Mr. Clark, any of Mr. Clark's dealings and communications with the other participants in the Oval Office meeting of January 3, 2021, or any of Mr. Clark's dealings and communications with other Department of Justice or White House Counsel officials regarding his desire that evidence in Georgia warranted further investigation by the Georgia Legislature of the 2020 presidential election under the authority of the Constitution's Electors Clause or in the lead up to the January 3, 2021 Oval Office meeting.

### III.  PUBLICATION OF THE REPORT WOULD VIOLATE THE RULES OF PROFESSIONAL RESPONSIBILITY.

Rules 3.8(f) and 5.1 of the District of Columbia Rules of Professional Conduct also forbid the former Special Counsel — or any other member of the D.C. Bar on his team participating in the prosecutorial function — to make any "extrajudicial statements" "in a criminal case" that serve no "legitimate law enforcement purpose."[2] Any effort by the former Special Counsel or the Attorney General to justify the prosecutions or plead the case in the media would only "serve to heighten condemnation of the accused" and anyone else named in the report who were, or

---

[2] If the former Special Counsel or the Department of Justice contend that the D.C. Rules of Professional Conduct (or other state ethics rules) do not generally apply to General Garland's, the former Special Counsel, or other Special Counsel Office lawyers' conduct or cannot constitutionally apply to such conduct given constitutional Supremacy Clause or separation of powers issues, then, they should say so.

As to Mr. Clark, the D.C. Office of Disciplinary Counsel ("DC ODC") has taken the position that the D.C. Rules *do apply* to Mr. Clark's investigative, prosecutorial, and advice-giving conduct within the Department in 2020-2021 related to the 2020 election (even though no such advice was publicly disseminated), despite *Trump v. United States* and Mr. Clark's direct interchanges with President Trump.

To our knowledge, General Garland and the former Special Counsel could not advance Mr. Clark's constitutional defenses to the attempted application of the D.C. Rules by DC ODC, however, since all statements we have seen in the media attempt to maintain that General Garland and Mr. Smith acted wholly independently of President Biden or his subordinates, including but not limited to lawyers at the White House Counsel's Office. If President Biden did communicate instructions or pose questions to General Garland or Mr. Smith, etc., the former Special Counsel and the Department of Justice should say so now.

were rumored to be, alleged co-conspirators (either in the original indictment or the superseding indictment). Hence, that course of conduct does not serve any legitimate law enforcement purpose and it should not be tolerated.

It is equally unethical under Rule 3.6 of the New York Rules of Professional Conduct for Mr. Smith to write a report on his work as putative Special Counsel. The only conceivable purpose for such a report is to make "an extrajudicial statement that the lawyer knows or reasonably should know will be disseminated by means of public communication and will have a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter." As night follows day, either the report itself or a draft will "leak" from the Department of Justice or from Congress, and both the Special Counsel and General Garland will be responsible for failing to ensure "that all lawyers in the firm or agency conform to the Rules of Professional Conduct." D.C. Rules of Professional Conduct Rules 5.1(a) & (c); N.Y. Rules of Professional Conduct 5.1(a) & (c). Analogous restrictions exist in many state ethics rules, but we cannot comprehensively detail all applicable provisions because we do not know the identity and bar membership States of all of the lawyers who have worked for the former Special Counsel in his *ultra vires* persecution of President Trump.

Finally, we note that there are significant questions of the degree to which Fulton County District Attorney Fani Willis coordinated with the January 6 Select

Committee, the Justice Department, and the Biden White House Counsel's Office. Judicial Watch has been having a devil of a time trying to get documents out of Fani Willis' office that would expose one or more of those linkages. *See Judicial Watch v. Fani Willis*, Civ. A. 24-CV-002805 (Ga. Fulton Cty. Super. Ct. Jan. 3, 2025), in which the court awarded Judicial Watch $21,578 in attorney's fees for improperly resisting a Georgia Open Records Act request concerning interactions between the District Attorney's Office and federal actors based in part on the District Attorney's Office falsely denying that responsive records existed on three different occasions. Disgraceful prosecutorial misconduct afflicts every facet of these matters.

The fact that such linkages appear to exist but have just not yet been exposed to the light of public review provides a further reason to bar release of the former report's since such linkages will preclude the Justice Department from claiming that it conducted its prosecutorial war on President Trump and his allies in a pristine and hermetically sealed vacuum with no cooperation with lawfare efforts against the same defendants in state court and bar forums around the country.

## CONCLUSION

For the foregoing reasons, the Court should grant—permanently—the injunctive relief sought by Mr. Nauta and Mr. De Oliveira and ensure that the relief extends, as Judge Cannon intended, to bar release of the entire Jack Smith report— both volumes.

Alternatively, we would request that this Court enter an administrative stay to do two things: (1) allow the parties, any defendant-side *amici*, and any other parties, pursuant to a protective order, to review both volumes of the report to be able to pinpoint the prejudice to them and provide sufficient time (we suggest two weeks) to make follow-on filings to this Court before it decides this important matter, since once the report is released in whole or in part that bell cannot be unrung; and (2) allow this Court to review the report *in camera* to assess for itself the prejudice that defendants and *amici* like Mr. Clark or other potential *amici* might experience in violation of constitutional, statutory, or regulatory law.

Respectfully submitted, this 9th day of January, 20252025.

**CALDWELL, CARLSON, ELLIOTT & DELOACH, LLP**

HARRY W. MACDOUGALD
Georgia Bar No. 463076
6 Concourse Parkway
Suite 2400
Atlanta, Georgia 30328
404-843-1956
hmacdougald@ccedlaw.com

*Counsel for Amicus Curiae Jeffrey B. Clark*

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing document was filed on this 9th day of January 2025 with the Court's electronic filing system, which causes service to be made upon all counsel of record.

This 9th day of January 2025.

/s/ Harry W. MacDougald
Georgia Bar No. 463076
Attorney for Defendant

CALDWELL, CARLSON, ELLIOTT & DELOACH LLP
6 Concourse Parkway
Suite 2400
Atlanta, Georgia 30328
404-843-1956
hmacdougald@ccedlaw.com

# CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with Fed. R. App. P. 32(a)(7)(B) because it contains 4,066 words, excluding the portions of the brief exempted by Fed. R. App. P. 32(f) and Circuit Rule 32(e)(1), according to the count of Microsoft Word.

I certify that this brief complies with the typeface and type-style requirements of Fed. R. App. P. Rule 32(a)(5)-(6) because it has been prepared in a proportionally spaced 14-point font, Times New Roman.

*/s/ Harry W. MacDougald*

Harry W. MacDougald
Caldwell, Carlson,
  Elliott & DeLoach LLP
6 Concourse Parkway
Suite 2400
Atlanta, Georgia 30328
404-843-1956
hmacdougald@ccedlaw.com

**Subject:** Re: FW: [EXTERNAL] Jeffrey Clark
**Date:** Thursday, January 9, 2025 at 3:02:28 PM Eastern Standard Time
**From:** Charles Burnham
**To:** Boynton, Brian M. (CIV)
**CC:** JPC (JSPT), Harry MacDougald, TPW (JSPT)

We're trying to file sometime today.

On Thu, Jan 9, 2025 at 2:56 PM Boynton, Brian M. (CIV) <Brian.M.Boynton@usdoj.gov> wrote:

> Dear Mr. Burnham,
>
> Thank you for your email.  I assume this would be an amicus brief in support of the emergency motion filed by Mr. Nauta and Mr. De Oliveira in the Eleventh Circuit in case number 24-12311?  When would you be filing?
>
> Regards,
>
> Brian
>
> ---
>
> **From:** Charles Burnham <charles@burnhamgorokhov.com>
> **Sent:** Thursday, January 9, 2025 2:49 PM
> **To:** JPC (JSPT) <JPC@usdoj.gov>
> **Cc:** hmacdougald@ccedlaw.com; TPW (JSPT) <TPW@usdoj.gov>; Boynton, Brian M. (CIV) <Brian.M.Boynton@usdoj.gov>
> **Subject:** Re: FW: [EXTERNAL] Jeffrey Clark
>
> Thank you and nice to meet you Mr. Boynton.  Please let me know if you have any questions.
>
> On Thu, Jan 9, 2025 at 2:47 PM JPC (JSPT) <JPC@usdoj.gov> wrote:
>
>> Mr. Burnham:

With respect to your amicus inquiry, I am connecting you with Brian Boynton, the head of the Department's Civil Division.


J.P. Cooney

---

**From:** Charles Burnham <charles@burnhamgorokhov.com>
**Sent:** Thursday, January 9, 2025 1:59 PM
**To:** JPC (JSPT) <JPC@usdoj.gov>
**Cc:** hmacdougald@ccedlaw.com; TPW (JSPT) <TPW@usdoj.gov>
**Subject:** Re: FW: [EXTERNAL] Jeffrey Clark


Thank you Mr. Cooney. We would like to file an amicus brief in support of the contentions of Mr. Nauta and Mr. De Oliveira on behalf of Mr. Clark. Do you consent to us filing the brief?


On Thu, Jan 9, 2025 at 1:34 PM JPC (JSPT) <JPC@usdoj.gov> wrote:

> Mr. Burnham and Mr. MacDougald:
>
>
> The Department of Justice is in receipt of Mr. MacDougald's letter of December 13 and it is being given due consideration.
>
>
> J.P. Cooney
>
> Deputy Special Counsel

---

**From:** Charles Burnham <charles@burnhamgorokhov.com>
**Sent:** Wednesday, January 8, 2025 1:28 PM
**To:** Windom, Thomas (USADC) <twindom@usa.doj.gov>; Duree, Timothy (CRM) <Timothy.Duree2@usdoj.gov>; Duree, Timothy (USASPC) <Timothy.Duree@usdoj.gov>; Bernstein, Gregory (USACAC) <GBernstein2@usa.doj.gov>; TAD (JSPT) <TAD@usdoj.gov>; MET (JSPT) <MET@usdoj.gov>; Harry MacDougald <hmacdougald@ccedlaw.com>; Robert Destro

<Robert.Destro@protonmail.com>
**Subject:** [EXTERNAL] Jeffrey Clark

Members of OSC,

We sent you a letter by certified mail on December 13 raising serious legal objections to the report I understand your office to be preparing to release to the public.

Also, we are aware that several directly implicated individuals have reviewed the report, but for some reason Mr. Clark has not been given that opportunity. As ucc # 4 in your indictment and one of the individuals most directly affected by Trump v. United States, Mr. Clark cannot be excluded from the review process.

I have tried every phone number I've collected for any of you over these past few years but they all have a recording saying they're not accepting calls. Please contact us to discuss this important matter. Thank you.

--

Charles Burnham
Burnham & Gorokhov PLLC
1634 I St. NW # 575
Washington, DC 20006
phone 202-386-6920
fax 202-765-2173

--

Charles Burnham
Burnham & Gorokhov PLLC
1634 I St. NW # 575
Washington, DC 20006
phone 202-386-6920
fax 202-765-2173

--

Charles Burnham
Burnham & Gorokhov PLLC
1634 I St. NW # 575
Washington, DC 20006
phone 202-386-6920
fax 202-765-2173

--
Charles Burnham
Burnham & Gorokhov PLLC
1634 I St. NW # 575
Washington, DC 20006
phone 202-386-6920
fax 202-765-2173